1    Stephen D. Raber (State Bar No. 121958)
2    David M. Horniak (State Bar No. 268441)
     WILLIAMS & CONNOLLY LLP
3    725 Twelfth Street, N.W.
     Washington, DC  20005
4    Telephone:  (202) 434-5000
     Fax:  (202) 434-5029
5    E-mail:  sraber@wc.com
     E-mail:  dhorniak@wc.com
6
7    *Attorneys for Defendants*

8                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
9                       SAN JOSE DIVISION

10

11   PHYLLIS GUSTAVSON, individually and       **Case No. C12-01861 LHK**
     on behalf of all others similarly situated,
12                                              **WRIGLEY'S NOTICE OF MOTION**
                    Plaintiff,                  **AND MOTION TO DISMISS**
13                                              **AMENDED COMPLAINT;**
     v.                                         **MEMORANDUM OF POINTS AND**
14                                              **AUTHORITIES IN SUPPORT**
     WRIGLEY SALES COMPANY,                     **THEREOF**
15   WM. WRIGLEY JR. COMPANY,
     MARS, INC., and MARS CHOCOLATE            **CLASS ACTION**
16   NORTH AMERICA, LLC.
                                                Hearing Date:  January 31, 2013
17                  Defendants.                 Time:   1:30 p.m.
                                                Place:   Courtroom 8, 4th Floor
18                                              Judge:  Hon. Lucy H. Koh
19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO: THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 31, 2013, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 8, 4th Floor, of this Court, located at 280 South 1st Street, San Jose, California, Defendants Wrigley Sales Company and Wm. Wrigley Jr. Company (collectively "Wrigley") will and hereby do move the Court for an order dismissing Plaintiff Phyllis Gustavson's Amended Class Action and Representative Action Complaint for Damages, Equitable and Injunctive Relief ("Complaint") and each claim therein without leave to amend.

This Motion is made pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) on the grounds that:

(a) the Complaint fails to state a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, because (i) Plaintiff's allegations are based on statements not likely to deceive a reasonable consumer, (ii) Plaintiff has failed to plead claims premised on Wrigley's publications and website with the particularity required by Federal Rule of Civil Procedure 9(b), and (iii) FDA regulations do not apply to the publications and website relied on by Plaintiff;

(b) Plaintiff lacks standing to bring suit under the UCL, FAL, CLRA, and Article III of the United States Constitution;

(c) all claims in the Complaint are preempted by section 337 of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, which bars enforcement of the FDCA and its regulations through private lawsuits;

(d) all claims in the Complaint are barred by the express preemption provision in the Nutritional Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343-1(a);

(e) the Court should decline to adjudicate Plaintiff's claims because they implicate technical and policy questions that are committed to the primary jurisdiction of the FDA;

(f) Plaintiff's UCL, FAL, and CLRA claims are barred by the safe harbor doctrine;

(g) the Complaint fails to state a claim for restitution because Plaintiff's claim for restitution is duplicative of her other claims, and because Plaintiff has failed to allege facts to support a claim that Wrigley was unjustly enriched;

(h) the Complaint fails to state a claim under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.*, because Wrigley's products are not "consumer goods," *id.* § 1791(a), because statements on Wrigley's product labels do not constitute "express warranties," *id.* § 1791.2(a)(1), and because Wrigley did not breach any alleged "express warranties";

(i) the Complaint fails to state a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, because Magnuson-Moss is inapplicable to warranties governed by the Federal FDCA, because statements on Wrigley's product labels do not create "written warranties," *id.* § 2301(6), and because Wrigley did not breach any alleged "written warranties";

(j) the Complaint fails to state a claim against Wrigley based on Mars chocolate products because it does not allege facts sufficient to hold Wrigley liable for any of those products and fails to provide adequate notice to Wrigley of the conduct alleged.

Wrigley's Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, any reply memorandum, the pleadings and files in this action, and such other matters as may be presented at or before the hearing.

Dated:  September 14, 2012          Respectfully submitted,

By: /s/ Stephen D. Raber
Stephen D. Raber (State Bar No. 121958)
David M. Horniak (State Bar No. 268441)
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Fax:  (202) 434-5029
E-mail:  sraber@wc.com
E-mail:  dhorniak@wc.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

NOTICE OF MOTION ...................................................................................................i

TABLE OF CONTENTS ...............................................................................................iii

TABLE OF AUTHORITIES ..........................................................................................iv

STATEMENT OF ISSUES TO BE DECIDED ...........................................................viii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................2

LEGAL STANDARD......................................................................................................4

ARGUMENT ..................................................................................................................5

I.    The Complaint Fails To State a Claim Under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act. .............................................................................................5

   A.   The Labeling Is Not Likely To Deceive a Reasonable Consumer...............................5

   B.   Plaintiff Does Not Have Standing...............................................................9

   C.   The Complaint Fails To State a Claim Based on Wrigley's Publications. ............................10

II.   Plaintiff's Claims Are Preempted by Federal Law. ...............................................12

   A.   The FDCA Bars Enforcement Through Private Lawsuits. ..........................12

   B.   The NLEA Expressly Preempts Plaintiff's Claims...........................12

     1.   The NLEA Preempts Plaintiff's Claims Regarding "Sugar Free."...................13

     2.   The NLEA Preempts Plaintiff's Claims Regarding Serving Size....................16

   C.   In the Alternative, the Court Should Dismiss Plaintiff's Claims Under the Primary Jurisdiction Doctrine.......................................18

III.  Plaintiff's UCL, FAL, and CLRA Claims Are Barred by the "Safe Harbor" Doctrine.........21

IV.   The Complaint Fails To State a Claim for Restitution.............................21

V.    The Complaint Fails To State a Claim Under the Song-Beverly Act. ................22

VI.   The Complaint Fails To State a Claim Under the Magnuson-Moss Warranty Act. ............23

VII.  The Court Should Dismiss All Claims Against Wrigley Relating to Mars Products. ...........24

CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alvarez v. Chevron Corp.,*
    656 F.3d 925 (9th Cir. 2011)..................................................................................... 21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... passim

*Baltazar v. Apple, Inc.,*
    No. CV-10-3231, 2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ........................... 8

*Brennan v. Concord EFS, Inc.,*
    369 F. Supp. 2d 1127 (N.D. Cal. 2005) ............................................................... 24

*Chacanaca v. Quaker Oats Co.,*
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ......................................................... 13, 18

*Clark v. Time Warner Cable,*
    523 F.3d 1110 (9th Cir. 2008)................................................................... 19, 20, 21

*Diacakis v. Comcast Corp.*, No. C-11-3002, 2012 WL 43649 (N.D. Cal. Jan. 9, 2012).............. 22

*Dvora v. General Mills, Inc.,*
    No. CV 11-1074, 2011 WL 1897349 (C.D. Cal. May 16, 2011)........................... 16

*Freeman v. Time, Inc.,*
    68 F.3d 285 (9th Cir. 1995)................................................................................. 5, 7

*Gordon v. Church & Dwight Co.,*
    No. C 09-5585, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010) ......................... 20, 21

*Hairston v. South Beach Beverage Co.,*
    No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ............................ 6, 23

*Henderson v. Gruma Corp.,*
    No. CV-10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..................... 9, 11

*Hinds Investments., L.P. v. Angioli,*
    654 F.3d 846 (9th Cir. 2011)................................................................................... 4

*In re Apple & AT & T iPad Unlimited Data Plan Litigation,*
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............................................................... 22

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litigation,*
    588 F. Supp. 2d 527 (S.D.N.Y. 2008)................................................................... 18

*In re Sagent Technology, Inc. Derivative Litigation,*
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ............................................................... 24

WRIGLEY'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT - C12-01861 LHK

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)......................................................................... 10

*Kowalsky v. Hewlett-Packard Co.*,
    771 F. Supp. 2d 1156 (N.D. Cal. 2011) ............................................................ 5

*Lam v. General Mills, Inc.*,
    No. 11-5056, --- F. Supp. 2d ----, 2012 WL 1656731 (N.D. Cal. May 10, 2012) ...... 12, 13, 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 9

*Marilao v. McDonald's Corp.*,
    632 F. Supp. 2d 1008 (S.D. Cal. 2009) .......................................................... 22

*McKinnis v. Kellogg USA*,
    No. CV 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007).................... 22

*McKinniss v. Sunny Delight Beverages Co.*,
    No. 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ............................ 8

*Nordberg v. Trilegiant Corp.*,
    445 F. Supp. 2d 1082 (N.D. Cal. 2006) .......................................................... 24

*Peviani v. Hostess Brands, Inc.*,
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ..................................................... 13, 16

*Pom Wonderful LLC v. Coca-Cola Co.*,
    679 F.3d 1170 (9th Cir. 2012)......................................................................... 18

*Red v. Kroger Co.*,
    No. CV 10-010125, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010)...................... 16

*Rooney v. Cumberland Packing Corp.*,
    No. 12-CV-0033, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012)......................... 8

*Rosal v. First Federal Bank of California*,
    671 F. Supp. 2d 1111 (N.D. Cal. 2009) .......................................................... 22

*Sugawara v. PepsiCo, Inc.*,
    No. 2:08-cv-01335, 2009 WL 1439115 (E.D. Cal. May 21, 2009) ...................... 8

*Turek v. General Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011).......................................................................... 13

*United States v. 24 Bottles*,
    338 F.2d 157 (2d Cir. 1964)........................................................................... 12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).......................................................................... 4

*Videtto v. Kellogg USA,*
   No. 2:08-cv-01324, 2009 WL 1439086 (E.D. Cal. May 21, 2009) .......................................... 8

*Werbel v. PepsiCo, Inc.,*
   No. 09-04456, 2010 WL 2673860 (N.D. Cal. July 2, 2010)..................................................... 8

*Williams v. Gerber Products Co.,*
   552 F.3d 934 (9th Cir. 2008).............................................................................................. 5, 9

*Yumul v. Smart Balance, Inc.,*
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ................................................................................ 10

### STATE CASES

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
   973 P.2d 527 (Cal. 1999) ..................................................................................................... 21

*Hill v. Roll Int'l Corp.,*
   128 Cal. Rptr. 3d 109 (Ct. App. 2011) ................................................................................... 5

*Kwikset Corp. v. Superior Court,*
   246 P.3d 877 (Cal. 2011) ...................................................................................................... 9

*Lavie v. Procter & Gamble Co.,*
   129 Cal. Rptr. 2d 486 (Ct. App. 2003).................................................................................. 5

*Melchior v. New Line Prods., Inc.,*
   131 Cal. Rptr. 2d 347 (Ct. App. 2003)................................................................................ 21

*Munoz v. MacMillan,*
   124 Cal. Rptr. 3d 664 (Ct. App. 2011)................................................................................ 21

*Ramona Manor Convalescent Hospital v. Care Enterprises,*
   225 Cal. Rptr. 120 (Ct. App. 1986)..................................................................................... 22

### STATUTES

15 U.S.C. § 2301 ......................................................................................................................... 23

15 U.S.C. § 2311 ......................................................................................................................... 23

21 U.S.C. § 321 ........................................................................................................................... 12

21 U.S.C. § 337 ........................................................................................................................... 12

21 U.S.C. § 343 ............................................................................................................... 12, 17, 20

21 U.S.C. § 343-1 ................................................................................................................... 2, 13

21 U.S.C. § 393 ........................................................................................................................... 12

Cal. Bus. & Prof. Code § 17200 ......................................................................... 5

Cal. Bus. & Prof. Code § 17500 ......................................................................... 5

Cal. Civ. Code § 1770 ......................................................................................... 5

Cal. Civ. Code § 1780 ......................................................................................... 9

Cal. Civ. Code § 1791 ....................................................................................... 23

Cal. Civ. Code § 1791.2 .................................................................................... 23

Cal. Civ. Code § 1794 ....................................................................................... 23

**REGULATIONS**

21 C.F.R. § 100.1 .............................................................................................. 13

21 C.F.R. § 101.9 ........................................................................................... 17, 8

21 C.F.R. § 101.12 ............................................................................................ 17

21 C.F.R. § 101.60 ........................................................................... 13, 14, 15, 16

Food Labeling; Serving Sizes, 58 Fed. Reg. 2229 (Jan. 6, 1993) ..................... 17

Food Labeling; Serving Sizes; Reference Amount and Serving Size Declaration for Hard
    Candies, Breath Mints, 62 Fed. Reg. 67,775 (proposed Dec. 30, 1997) ........................ 7, 8, 17

Regulatory Agenda, 77 Fed. Reg. 7946-01 (Feb. 13, 2012) ......................... 17

**RULES**

Federal Rule of Civil Procedure 8 ................................................................. 24, 25

Federal Rule of Civil Procedure 9 ........................................................ 4, 10, 11, 25

Federal Rule of Civil Procedure 12 ........................................................... 4, 25

**OTHER AUTHORITIES**

FDA, Guidance for Industry: A Food Labeling Guide, Nutrition Labeling; Questions L1 to
    L153 (Oct. 2009) ......................................................................................... 17

Stephanie Strom, *After Tobacco, Lawyers Set Their Sights on Food Industry*, N.Y. Times,
    Aug. 19, 2012 .............................................................................................. 2

1

### STATEMENT OF ISSUES TO BE DECIDED

1. Is Wrigley's use of the term "sugar free" or a one-mint serving size likely to deceive a reasonable consumer?

2. Does Plaintiff have standing to bring suit under the UCL, FAL, CLRA, and Article III of the United States Constitution?

3. Has Plaintiff failed to plead claims premised on alleged misrepresentations on publications and websites with the particularity required by Federal Rule of Civil Procedure 9(b)?

4. Do FDA regulations even apply to the publications and website relied on by Plaintiff?

5. Are Plaintiff's claims preempted by section 337 of the FDCA, 21 U.S.C. § 337, which prohibits private causes of action based on the FDCA and its implementing regulations?

6. Are Plaintiff's claims preempted by the NLEA, 21 U.S.C. § 343-1(a), because they seek to impose labeling requirements not identical to the FDCA and its implementing regulations?

7. Does Wrigley's alleged conduct fall within the UCL, FAL, and CLRA safe harbor?

8. Should the Court decline to adjudicate Plaintiff's claims because they implicate technical and policy questions that are committed to the primary jurisdiction of the FDA?

9. Does the Complaint fail to state a claim for restitution because Plaintiff's legal remedies are adequate and her claim for restitution is duplicative of her other claims, or because Plaintiff has failed to allege facts to support a claim that Wrigley was unjustly enriched?

10. Does the Complaint fail to state a claim under the Song-Beverly Consumer Warranty Act because Wrigley's products are not "consumer goods," because statements on Wrigley's product labels do not constitute "express warranties," or because Wrigley did not breach any alleged "express warranties"?

11. Does the Complaint fail to state a claim under Magnuson-Moss Warranty Act because the act is inapplicable to warranties governed by the FDCA, because statements on Wrigley's product labels do not create "written warranties," or because Wrigley did not breach any alleged "written warranties"?

12. Does the Complaint fail to state a claim against Wrigley based on Mars chocolate products because it does not allege facts sufficient to hold Wrigley liable for Mars's conduct and does not provide adequate notice to Wrigley?

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3

The Complaint alleges that Plaintiff bought Wrigley chewing gum, breath mints, and hard

4

candy because the products' labeling is deceptive, but does *not* allege that anything on the labeling

5

is factually inaccurate.  Instead, the purported "deception" is based entirely on allegations that the

6

labeling violates federal regulations because (i) the products contain too many calories to be called

7

"sugar free"; and (ii) the serving size for Altoids Smalls breath mints should be ten mints

8

(5 calories) instead of one mint (0.5 calories).

9

The Complaint should be dismissed.  First, the statements about the Wrigley products are not

10

actionable under California law because no reasonable consumer could have been deceived by them.

11

The labeling does *not* violate federal regulations.  But even if it did, the alleged regulatory violations

12

would not cause the labeling to be deceptive in any way.  It is undisputed that the labeling for each

13

product truthfully states the number of calories per serving *and* in comparison to similar products

14

containing sugar.  That information alone defeats any allegation of deception.  And the absence of a

15

disclaimer that the products are "not low calorie" is not misleading to anyone.  First, as discussed

16

below, such a disclaimer is not required.  But regulatory definitions and requirements aside, when

17

consumed in any reasonable quantity, the products *are* low calorie.  The Food and Drug

18

Administration's ("FDA") threshold for "low calorie" is based on 40 calories per 50 grams of food,

19

which would require someone to eat *250* Altoids Smalls, *33* pieces of Eclipse gum, *26* pieces of

20

Orbit gum, or *13* individually-wrapped Lifesavers.  No reasonable consumer could be deceived into

21

buying the products because they did not realize that consuming such excessive quantities would

22

cause them to exceed a regulatory definition that is based on a normal intake of food.  Similarly, it is

23

not reasonable that a consumer could be tricked into purchasing Altoids Smalls because they did not

24

realize that eating ten mints instead of one mint would result in an extra 4.5 calories—the number of

25

calories contained in one cherry tomato or a single leaf of Romaine lettuce.  Thus, the Complaint

26

should be dismissed because its allegations of deception are spurious.

27

Second, Plaintiff's claims are preempted by federal law.  They are impliedly preempted

28

because The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*, ("FDCA") does not

permit enforcement through private rights of action.  And they are expressly preempted by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343-1, because they would impose labeling requirements that are "not identical" to those required by federal law.  Federal regulations permit the products' labeling to state that they are "sugar free"—even though they do not meet the regulatory definition of "low calorie"—because the labeling explains how many fewer calories the products contain in relation to similar products with sugar.  Similarly, the Complaint would require the serving size for Altoids Smalls to be ten mints, instead of one mint, but the FDA has taken exactly the opposite position.  It has proposed a rule that would *require* all breath mints to have a serving size of one mint—exactly what Plaintiff is challenging as misleading.  Even if the claims were not preempted by federal law, the Court should dismiss them because they raise regulatory issues that fall within the primary jurisdiction of the FDA.

Third, the Court should dismiss Plaintiff's causes of action under the Song-Beverly Act, the Magnuson-Moss Act, and for restitution because they do not apply to Plaintiff's allegations.

## BACKGROUND

Plaintiff Phyllis Gustavson's Amended Complaint ("Complaint") is one of more than 23 nearly-identical lawsuits filed within a twelve-week period against various food manufacturers alleging that products were "misbranded" under federal food labeling regulations.  *See* Wrigley Defs.' Req. for Judicial Notice ("WRJN") Ex. H (listing lawsuits); *see also* Stephanie Strom, *After Tobacco, Lawyers Set Their Sights on Food Industry*, N.Y. Times, Aug. 19, 2012, at A1.

The Complaint is really two complaints in one.  Plaintiff filed her original complaint against Defendants Wrigley Sales Company and Wm. Wrigley Jr. Company (collectively "Wrigley"), who are "leading producers of gum, breath mints and hard candies."  Compl. ¶ 2, Apr. 13, 2012 (ECF No. 1).  After Defendants moved to dismiss the complaint because it failed to allege any deception or regulatory violations by Wrigley, Plaintiff added as defendants Mars, Inc. and Mars Chocolate North America, LLC (collectively "Mars"), "leading producers of chocolate candy and other types of confectionary."  Am. Compl. ¶ 2, July 23, 2012 (ECF No. 21).  Wrigley does not manufacture or have any direct responsibility for Mars chocolate products.  The sole link between Wrigley and the Mars products is the fact that Wrigley is a subsidiary of Mars, Inc.  *Id.*

Plaintiff alleges that she purchased the following Wrigley sugarfree products:  (1) Eclipse sugar free gum, Winterfrost, 18 pieces; (2) Eclipse sugar free gum, Polar Ice, 12 pieces; (3) Altoids Smalls sugar free mints, Peppermint and Wintergreen, 50 mint tins; (4) Orbit sugar free gum, Peppermint and Spearmint, 14 pieces; and (5) Lifesavers sugar free hard candy, 5 flavors, 2.75 oz. *Id.* ¶ 213(A)-(E); *see also* WRJN Exs. A-G (exemplar copies).

Plaintiff alleges that she purchased the following Mars chocolate products: (1) M&M chocolate candy, 1.69 oz.; (2) Twix chocolate candy, 1.79 oz.; (3) Dove Dark Chocolate Bar, 3.3 oz.; (4) Dove Milk Chocolate Bar; 3.3 oz.; and (5) Snickers Fun Size, 11.8 oz.  *Id.* ¶ 213(F)-(J).

Plaintiffs' Amended Complaint does not clearly delineate its allegations against Wrigley and Mars.  Instead, it inaccurately makes sweeping allegations against "Defendants," even though some of them clearly relate to Mars (because they pertain to chocolate products) and others relate to Wrigley (because they pertain to sugar free products).  Notwithstanding the Amended Complaint's obfuscation, the claims against Wrigley and Mars can be segregated based on the products at issue.

The three sections of the complaint that relate to Wrigley products are as follows:

1.  "Unlawful 'Sugar free' Nutrient Claims," *id.* § C.1.d (¶¶ 106-128):  Plaintiff alleges that the Wrigley products' labeling violates "special requirements" under federal regulations regarding the use of the term "sugar free."  *Id.* ¶ 106.  The Complaint does *not* dispute that the products actually are "sugar free"—i.e., they do not contain a meaningful amount of sugar.  Rather, according to Plaintiff, the products are misbranded because "sugar free" products must also meet the regulatory definition of "low-calorie" foods (40 calories per 50 grams) or contain a disclaimer that the products do not satisfy that definition.

2.  "Unlawful Serving Sizes," *id.* § C.2 (¶¶ 129-137):  Plaintiff alleges that Altoids Smalls mints are misbranded because the labeling states that the serving size is one mint.  In its "Nutritional Facts," the Altoids Smalls label contains the following information:  "Serv Size: 1 mint (0.2 g)" and "Amount Per Serving: Calories 0.5."  WRJN Exs. C-D.  Again, the Complaint does *not* dispute that this information is factually accurate—i.e., that each mint weighs 0.2 grams and contains only 0.5 calories.  Instead, Plaintiff alleges that Altoids Smalls are misbranded because federal regulations require the serving size to be two grams—or *ten mints*.  Plaintiff thus contends that the one mint

serving size "understate[s]" the amount of calories per serving and that a proper ten-mint serving size would contain 5 calories instead of 0.5 calories.  Am. Compl. ¶¶ 129, 132.

3.  "Unlawful Low Calorie Nutrient Claims," *id.* § C.1.c (¶¶ 101-105):  The Complaint does not allege that the Wrigley *labeling* contains any statement that its sugar free products are "low-calorie."  Instead, it alleges that Wrigley's publications contained isolated statements referring to sugar free gum in general (not any specific product) as "low calorie."  *Id.* ¶ 101.

Based on these allegations, Plaintiff pleads nine causes of action.  The first, second, and third causes of action allege violations of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200 *et seq.*, for unlawful, unfair, and fraudulent business acts and practices.  The fourth and fifth causes of action allege violations of California's False Advertising Law ("FAL"), Business and Professions Code § 17500 *et seq.*, for misleading, deceptive, and untrue advertising.  The sixth cause of action alleges a violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*  The seventh cause of action seeks restitution based on unjust enrichment/quasi-contract.  The eighth cause of action alleges a violation of the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq.*  The ninth cause of action alleges a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

These claims are brought as a putative class action on behalf of "[a]ll persons in California" who purchased either Wrigley or Mars products in the last four years.  Am. Compl. ¶ 220.

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The complaint cannot make only an "unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quotation marks omitted).  "Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim."  *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).  Dismissal is also appropriate for failure to satisfy the pleading requirements of Rule 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

**ARGUMENT**

I.   **The Complaint Fails To State a Claim Under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act.**

The Complaint is based on allegations that Wrigley's products were misbranded under federal food labeling regulations.  But regardless of whether the labeling satisfies those highly technical regulations, the Complaint fails to state a claim under the UCL, FAL, and CLRA because it fails to allege any false or misleading representations about the Wrigley products.

A.   **The Labeling Is Not Likely To Deceive a Reasonable Consumer.**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200 (West 2012).  The FAL makes it "unlawful for any person . . . with intent directly or indirectly . . . to make or disseminate . . . any statement, concerning . . . real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500 (West 2012).  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770(a) (West 2012).  Because UCL, FAL, and CLRA claims alleging deceptive product packaging and advertising overlap in both scope and elements, courts often consolidate the analysis of motions to dismiss these claims.  *See, e.g.*, *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162-63 (N.D. Cal. 2011).

To state a claim under the UCL, FAL, and CLRA, the plaintiff must show that "members of the public are likely to be deceived."  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotation marks and citation omitted); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  To be actionable, the statements at issue must be likely to deceive a "reasonable consumer."  *Freeman*, 68 F.3d at 289.  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Ct. App. 2003); *see also Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 116 (Ct. App. 2011).

Whether a representation is "likely to deceive" a reasonable consumer is evaluated in the context of the label or advertisement as a whole, rather than "a single out-of-context phrase found in one component of [a product's] label." *Hairston v. S. Beach Beverage Co.,* No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012). "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Id.* at *4-5 (granting Rule 12 motion).

The Complaint fails to allege that the Wrigley product labeling contains any statement that is likely to mislead a reasonable consumer.

— "**Sugar free**":  The Complaint alleges that the labeling for Wrigley's products was misleading because a consumer might interpret the term "sugar free" as "indicating a product which is low in calories or significantly reduced in calories."  Am. Compl. ¶ 117.  But no reasonable consumer could have been misled by the "sugar free" claim for three reasons.

First, the Wrigley products are indeed "sugar free," as defined in 21 C.F.R. §§ 101.60(c)(1)(i)-(ii) (i.e., contain less than 0.5 grams of sugar per serving and no ingredient that is a sugar), and Plaintiff does not allege otherwise.

Second, the labeling states precisely how many calories are contained in the products.  The number of calories per serving is stated in the Nutritional Facts.  WRJN Exs. A-G.  Moreover, the labeling accurately states the reduction of calories *in comparison to similar products with sugar*:

- Eclipse sugar free gum, Winterfrost, 18 pcs: "*35% fewer calories than sugared gum. Calorie content has been reduced from 8 to 5 calories per two piece serving*."

- Eclipse sugar free gum, Polar Ice, 12 pcs: "*35% fewer calories than sugared gum. Calorie content has been reduced from 8 to 5 calories per two piece serving*."

- Altoids Smalls sugar free mints, Peppermint and Wintergreen, 50 mint tins: "*35% fewer calories than our regular mints.  Calorie content has been reduced from 0.8 to 0.5 calories per 0.2g of mints*."

- Orbit sugar free gum, Peppermint and Spearmint, 14 pcs: "*40% fewer calories than sugared gum.  Calorie content of this size piece has been reduced from 5 to 3 calories*."

- Lifesavers sugar free hard candy, 5 flavors, 2.75 oz: "*50% fewer calories than regular life savers 5 flavors hard candy. Calories reduced from 60 to 30 calories per serving*."

WRJN Exs. A-G.  Thus, to the extent that a consumer thought that the products had fewer calories because of their "sugar free" status, the labeling provides the exact amount of that reduction.

In *Freeman*, the Ninth Circuit affirmed the dismissal of the plaintiff's claims based on a "Million Dollar Dream Sweepstakes" mailer because "[a]ny persons who thought that they had won the sweepstakes would be put on notice that this was not guaranteed simply *by doing sufficient reading* to comply with the instructions for entering the sweepstakes."  68 F.3d at 289-90 (emphasis added).  Similarly, any consumer would know the number of calories contained in the Wrigley sugar free products (and how they compared with similar sugared products) *by reading the labeling*.

Third, the Wrigley products *are* "low calorie" foods when consumed in reasonable and ordinary amounts.  Plaintiff's allegations are based on the regulatory definition of "low calorie"— i.e., 40 calories per 50 grams of food.  But it is not reasonable to expect a consumer to consume 50 grams of the Wrigley products at once.  Indeed, if the FDA's definition were applied, it would require the consumer to eat *250* Altoids Smalls, *33* pieces of Eclipse gum, *26* pieces of Orbit gum, or *13* individually-wrapped Lifesavers.  *See* WRJN Exs. A-G.  No reasonable consumer would be misled by the absence of a disclaimer that the products are "not a low calorie food" (according to the FDA) when they are consumed in such excessive quantities.

— **Serving Size:**  The Complaint alleges that "Defendants have chosen not to use the correct serving size mandated by law in order to understate the calories in some of their breath mint products and call the product 'sugar free.'"  Am. Compl. ¶ 131.  But no reasonable consumer would be deceived by the "one mint" serving size for Altoids Smalls for three reasons.

First, there is no "understating" of the amount of calories in the products.  The Altoids Smalls label plainly and accurately states that the amount of calories per serving/mint is 0.5 calories.  Any reasonable consumer can easily calculate the caloric content of any number of mints using this "one mint" serving size by simply reading the labeling.  *See Freeman,* 68 F.3d at 289-90.

Second, the amount of calories at issue is inconsequential.  Plaintiff's proposed serving size of ten mints would be a whopping 5 calories per serving, instead of 0.5 calories.  This difference in calories is simply too small to matter to any reasonable consumer.  The FDA "considers the difference between 0 and 5 calories to be insignificant."  Food Labeling; Serving Sizes; Reference

Amount and Serving Size Declaration for Hard Candies, Breath Mints, 62 Fed. Reg. 67,775, 67,778 (proposed Dec. 30, 1997).  Indeed, the FDA expressly authorizes that "amounts less than 5 calories may be expressed as zero." 21 C.F.R. § 101.9(c)(1) (2012).  A consumer could eat the entire tin of 50 Altoids Smalls at once and ingest only 25 calories.  Because a serving size of one mint does not materially affect the amount of calories represented, Plaintiff's claim that the "one mint" serving size would deceive a reasonable consumer is not "plausible on its face."  *Iqbal*, 556 U.S. at 678.

Third, the FDA agrees that the one-mint serving size is not misleading.  It concluded, after reviewing consumer data, that *one mint* is the proper serving size for all breath mints because "it will prevent consumer confusion that could result from inappropriately high numbers of pieces specified for a serving on the nutrition label." 62 Fed. Reg. at 67,777.  Thus, although plaintiff's allegations are purportedly based on federal regulations, the FDA itself has determined that *Plaintiff's* proposed serving size of ten mints is potentially misleading.

Courts have frequently dismissed UCL, FAL, and CLRA claims on Rule 12 motions in food labeling cases based on a finding that no reasonable consumer is likely to be deceived.  *See Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033, 2012 WL 1512106, at *3-4 (S.D. Cal. Apr. 16, 2012) ("[A] reasonable consumer could not be led to believe that Sugar in the Raw contains unprocessed and unrefined sugar."); *Werbel v. PepsiCo, Inc.*, No. 09-04456, 2010 WL 2673860, at *3-5 (N.D. Cal. July 2, 2010) ("[N]o reasonable consumer would be deceived into believing that Cap'n Crunch "'has some nutritional value derived from fruit'" (citation omitted)); *Sugawara v. PepsiCo, Inc.*, No. 2:08-cv-01335, 2009 WL 1439115, at *3 (E.D. Cal. May 21, 2009) ("[A] reasonable consumer would not be deceived into believing that [Cap'n Crunch with Crunchberries] contained a fruit that does not exist."); *Videtto v. Kellogg USA*, No. 2:08-cv-01324, 2009 WL 1439086, at *3 (E.D. Cal. May 21, 2009) ("it is entirely unlikely that members of the public would be deceived" that Froot Loops cereal contains actual fruit); *McKinniss v. Sunny Delight Beverages Co.*, No. 07-02034, 2007 WL 4766525, at *3-5 (C.D. Cal. Sept. 4, 2007) ("no reasonable consumer, upon review of the label as a whole . . . would conclude that [Sunny Delight] products contain significant quantities of fruit or fruit juice"); *see also Baltazar v. Apple, Inc.*, No. CV-10-3231, 2011 WL 3795013, at *6 (N.D. Cal. Aug. 26, 2011).  Likewise, the Court should dismiss the Complaint's

misbranding allegations because they fail to allege that the Wrigley labeling was false or misleading to a reasonable consumer.[1]

### B.      Plaintiff Does Not Have Standing.

The Complaint is based on the mistaken premise that the products are "legally worthless" simply because they are allegedly misbranded in violation of federal regulations.  Am. Compl. ¶¶ 1, 83.  But Plaintiff cannot bring a private cause of action based solely on an allegation that the products' labeling violates federal or state labeling regulations.  Rather, Plaintiff must have "standing," which requires that she be actually injured.  In the case of the UCL and the FAL, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885 (Cal. 2011).  Thus, where a UCL or FAL claim relies "on a fraud theory involving false advertising and misrepresentations to consumers," the plaintiff "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions."  *Id.* at 888 (quotation marks omitted).  Similarly, the CLRA provides a cause of action only for consumers "who suffer[] any damage as a result of" conduct that violates the CLRA.  Cal. Civ. Code § 1780(a) (West 2012); *Henderson v. Gruma Corp.*, No. CV-10-04173, 2011 WL 1362188, at *6 (C.D. Cal. Apr. 11, 2011) ("The CLRA requires a demonstration of actual reliance for standing purposes.").  In addition to the standing requirements under California law, Plaintiff also must allege an "injury in fact" under Article III of the Constitution.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

It is not plausible that the regulatory violations alleged in the Complaint caused Ms. Gustavson to purchase the Wrigley products because, as discussed above, the labeling does not

---

[1] This case is not like *Williams*, in which the court held that product labeling that contained an express misrepresentation could not be cured by contradictory small print on the nutrition label. 552 F.3d at 939.  Here, the Complaint does not allege that Wrigley's labels contain express misrepresentations.

contain any false or misleading statements.  *See Iqbal*, 556 U.S. at 678.  Plaintiff could not have been under any misimpression as to the caloric effect of the products' "sugar free" status because the labeling told her (i) how many calories were in the products and (ii) how many fewer calories they had than similar products with sugar.  Nor is it plausible that Plaintiff would have abstained from purchasing Altoids if the serving size had been ten mints/5 calories instead of one mint/0.5 calories.  First, she knew—because the label informed her—that consuming ten mints would add 4.5 calories to her diet.  Moreover, alleging deception based on miniscule differences in calorie content is particularly fanciful in Ms. Gustavson's case.  Apparently she was so concerned about an extra 4.5 calories that she went to the store and also bought M&Ms, Twix bars, two types of Dove bars—milk chocolate and dark chocolate—and, to round things out, a "Fun Size" bag of Snickers bars.  Thus, the Complaint should be dismissed because Plaintiff has not alleged facts that would support a plausible claim that she purchased the Wrigley products because they were misbranded.

### C.   The Complaint Fails To State a Claim Based on Wrigley's Publications.

Plaintiff's allegation that Wrigley "represented through [its] advertising campaigns that their sugar free products are low-calorie," Am. Compl. ¶¶ 101-128, fails for four reasons.

First, the Complaint fails to allege a claim based on Wrigley's publications with particularity, as required by Federal Rule of Civil Procedure 9(b).  The Complaint's allegations that Wrigley's publications contained "misleading and false" statements, Am. Compl. ¶ 101, are "grounded in fraud" and thus subject to Rule 9(b)'s heightened pleading standards.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122 (C.D. Cal. 2010).  Plaintiff is required to plead the "who, what, when, where, and how" of the alleged misstatements with particularity.  *Kearns*, 567 F.3d at 1124.  In *Kearns*, the Ninth Circuit affirmed the dismissal of UCL and CLRA claims based on "Ford's televised national marketing campaign" and "sales materials found at the dealership where [the plaintiff] bought his vehicle" because the plaintiff had failed to plead, among other things, "when he was exposed" to the allegedly misleading materials, "which [of the sales materials] he found material," and "which sales material he relied upon in making his decision" to purchase a Ford.  *Id.* at 1125-26.

Similarly, the Complaint refers to two publications—the Benefits of Chewing publication and the Wrigley website, Am. Compl. ¶¶ 101, 112, 113—but does not allege that Plaintiff relied specifically on those publications in purchasing the Wrigley products.  Instead, it only alleges generally that Plaintiff relied on Wrigley's "false low calorie nutrient claims."  *Id*. ¶ 104.  Nor does the Complaint provide any specifics as to when, where, and how Plaintiff obtained, reviewed, or relied on any publications to purchase the Wrigley products.  And neither the Benefits of Chewing nor the website uses "low calorie" to refer to any specific Wrigley product, let alone one purchased by Plaintiff.  Thus, the Complaint fails to state a claim with particularity required by Rule 9(b).

Second, Plaintiff does not have standing to sue based on Wrigley's publications.  Even if the Complaint had alleged that Plaintiff saw and relied on specific publications, it is not plausible that they caused Plaintiff to purchase the products because she believed that they were "low-calorie."  Plaintiff admits that she "relied on Defendants' *package labeling* . . . and based and justified the decision to purchase Defendants' products in substantial part on Defendants' *package labeling*."  *Id*. ¶ 215 (emphases added).  As explained above, the products' labeling disclosed exactly how many calories were contained in them and how their caloric content compared with sugared products.  Thus, the allegations in the Complaint demonstrate that Plaintiff does not have standing to bring a UCL, FAL, or CLRA claim because her purchase was not "the result of" any statements made in Wrigley's publications.  *Henderson*, 2011 WL 1362188, at *3, *6.

Third, no reasonable consumer is likely to be misled by a statement that Wrigley's sugar free products were "low-calorie."  Fifty grams of these products (e.g., 33 pieces of Eclipse gum) may exceed the FDA's forty-calorie threshold for labeling the products "low calorie," but it also far exceeds the amount of the products that a consumer would consume at once (or even in a day).  And again, the actual labeling for the products—on which Plaintiff alleges that she relied, unlike the Benefits of Chewing publication or the Wrigley website—specifically and accurately states the number of calories per serving.

Fourth, Plaintiff's claim is based on federal regulations regarding the term "low calorie" that do not even apply to the Benefits of Chewing publication or the Wrigley website.  The FDCA and its accompanying FDA regulations only apply to product "labels and other written, printed, or

graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m) (2006).  The "distinguishing characteristic of a label is that, in some manner or another, it is presented to the customer in immediate connection with his view and his purchase of the product."  *United States v. 24 Bottles*, 338 F.2d 157, 159 (2d Cir. 1964).  Plaintiff has not alleged that the Benefits of Chewing or the website was "in immediate connection" with her (or any other person's) purchase of Wrigley chewing gum.

## II.     Plaintiff's Claims Are Preempted by Federal Law.

Plaintiff alleges that Wrigley is liable because the products' labeling violated the FDCA and its accompanying federal regulations.  This claim is preempted by federal law for two reasons.  First, section 337 the FDCA bars the enforcement of the FDCA and its regulations through private lawsuits.  Second, section 343-1 of the NLEA expressly preempts Plaintiff's misbranding claims because they would impose different labeling requirements than those under federal law.  Moreover, even if the claims were not preempted, the Court should dismiss them because they involve a federal regulatory issue committed to the primary jurisdiction of the FDA.

### A.     The FDCA Bars Enforcement Through Private Lawsuits.

In support of this argument, Wrigley adopts and incorporates by reference the argument in Part II.A of Mars's motion to dismiss.

### B.     The NLEA Expressly Preempts Plaintiff's Claims.

The FDCA establishes a comprehensive federal regulatory scheme to ensure that food is safe and is labeled in a manner that does not mislead consumers.  The FDCA vests the FDA with authority to "protect the public health by ensuring that . . . foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A) (2006).

In 1990, Congress enacted the NLEA, Pub. L. No. 101-535, 104 Stat. 2353 (1990), which amended the FDCA to "'establish uniform national standards for the nutritional claims and the required nutrient information displayed on food labels.'"  *Lam v. Gen. Mills, Inc.*, No. 11-5056, --- F. Supp. 2d ----, 2012 WL 1656731, at *3 (N.D. Cal. May 10, 2012) (quoting H.R. Rep. No. 101– 538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3342).  Two subsections of the NLEA, 21 U.S.C. § 343(q) and (r), set forth detailed requirements for nutritional information and claims on food

labels.  Pursuant to the NLEA, the FDA has promulgated a comprehensive set of regulations regarding food labeling.  *See* 21 C.F.R. §§ 101.1 *et seq.* (2012).

When it passed the NLEA, Congress expressly preempted any state law requirements "not identical" to those established by the NLEA:

> [N]o State . . . may directly or indirectly establish under any authority . . .
>
> (4) any requirement for nutrition labeling of food that is *not identical* to the requirement of section 343(q) of this title . . . or
>
> (5) any requirement respecting any claim of the type described in section 343(r)(1) . . . made in the label or labeling of food that is *not identical* to the requirement of section 343(r) . . . .

21 U.S.C. § 343-1(a)(4), (5) (2006) (emphases added).  Under FDA regulations, "not identical to" means "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling" that are "not imposed by or contained in the applicable provision [or regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable provision [or regulation]."  21 C.F.R. § 100.1(c)(4)(i)-(ii); *Lam*, 2012 WL 1656731, at *3.

Accordingly, the NLEA preempts state law claims that seek to require food labels to contain information that is not identical to the information required by the NLEA and its implementing regulations.  *See, e.g.*, *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (Posner, J.) ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test [for NLEA preemption]; identity is."); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (same); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1118 (C.D. Cal. 2010) (same).

Plaintiff's claims are preempted because they seek to impose labeling requirements that are "not identical" to those required by the NLEA and its implementing regulations.

### 1.        The NLEA Preempts Plaintiff's Claims Regarding "Sugar Free."

The FDA has enacted a regulation governing "[s]ugar content claims," including the use of the terms "sugar free" and "sugarless."  21 C.F.R. § 101.60(c).  Under this regulation, a food may not be labeled "sugar free" or "sugarless" unless three conditions are met:

> (i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving . . . ; and

(ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars . . . ; and

*(iii)(A) It is labeled "low calorie" or "reduced calorie" or bears a relative claim of special dietary usefulness labeled in compliance with paragraphs (b)(2), (b)(3), (b)(4), or (b)(5) of this section . . . ; or*

(B) Such term is immediately accompanied, each time it is used, by either the statement "not a reduced calorie food," "not a low calorie food," or "not for weight control."

*Id.* § 101.60(c)(1)(i)-(iii)(B) (emphasis added).

A product "bears a relative claim of special dietary usefulness labeled in compliance with" 21 C.F.R. § 101.60(b)(4) if it "contains at least 25 percent fewer calories per reference amount customarily consumed than an appropriate reference food," *id.* § 101.60(b)(4)(i), and the labeling displays the following information about the difference in calories:

(A) The identity of the reference food and the percent (or fraction) that the calories differ between the two foods are declared in immediate proximity to the most prominent such claim (e.g., reduced calorie cupcakes "33 1/3 percent fewer calories than regular cupcakes"); and

(B) Quantitative information comparing the level of the nutrient per labeled serving size with that of the reference food that it replaces (e.g., "Calorie content has been reduced from 150 to 100 calories per serving.") is declared adjacent to the most prominent claim or to the nutrition label, except that if the nutrition label is on the information panel, the quantitative information may be located elsewhere on the information panel in accordance with § 101.2.

*Id.* § 101.60(b)(4)(ii).

The labeling for each of the Wrigley products referenced in the Complaint contains a "relative claim of special dietary usefulness" in compliance with 21 C.F.R. § 101.60(b)(4).  *See supra* Part I.A; WRJN Exs. A-G.  Thus, the labels comply with 21 C.F.R. § 101.60(b)(4) because: (1) the products contain at least 25 percent fewer calories than the reference food (e.g., compared to sugared gum), 21 C.F.R. § 101.60(b)(4)(i); (2) the labels declare the identity of the reference food and the percent that the calories differ between the two foods (e.g., "35% fewer calories than sugared gum"), *id.* § 101.60(b)(4)(ii)(A); and (3) the labels declare quantitative information comparing the level of the nutrient per labeled serving size with that of the reference food that it

replaces (*e.g.*, "Calorie content has been reduced from 8 to 5 calories per two piece serving"), *id.* § 101.60(b)(4)(ii)(B).

The Complaint attempts to impose additional requirements that are not required by the federal regulations.  First, the Complaint alleges that because the products do not qualify as a "low-calorie" food under subsection (b)(2), their labeling must contain "mandated disclosure statement[s]" that they are "not a reduced calorie food," "not a low calorie food," or "not for weight control."  Am. Compl. ¶ 115.  But the "mandated disclosure statement[s]" are satisfied if the product "is labeled 'low calorie' or 'reduced calorie' or *bears a relative claim of special dietary usefulness labeled in compliance with paragraphs (b)(2), (b)(3), (b)(4), or (b)(5) of this section* . . . ." 21 C.F.R. § 101.60(c)(1)(iii)(A) (emphasis added).  Thus, the "disclaimer" allegation fails because it ignores the relative claim of special dietary usefulness that is stated on the label.

Second, the Complaint's allegation that the relative claim of special dietary usefulness is not "conspicuous" enough and should be on the front panel next to the "sugar free" claim, Am. Compl. ¶¶ 110-111, is also contrary to the regulations.  There is no requirement that the relative claim be adjacent to the "sugar free" claim.  Rather, subsection (b)(4)—the section governing "reduced calorie" claims—requires that the reference food and the percent reduction be declared in immediate proximity to "the most prominent such claim," which refers to the "reduced calorie claim," *not* the sugar-free claim.  21 C.F.R. §101.60(b)(4)(ii)(A).  Likewise, the quantitative information must appear adjacent to the most prominent claim *or* adjacent to the nutrition label.  *Id.* § 101.60(b)(4)(ii)(B).  The most prominent reduced calorie claim on the products' labeling is the words "fewer calories," and the reference food, percent reduction, and quantitative information appear in immediate proximity to that claim.  *See* WRJN Exs. A–G.  Thus, the products' labeling fully complies with applicable regulatory placement requirements.

The Complaint cites a 2005 letter from Wrigley to the FDA as evidence of Wrigley's "deliberate and willful disregard for the law," Am. Compl. ¶ 125, but the letter demonstrates the opposite.  In the letter, Wrigley requested that the FDA consider amending its regulatory definition of "low-calorie" (40 calories per 50 grams) as applied to sugar-free gum because it is not reasonable that consumers would chew 50 grams of gum at a time.  *See* Am. Compl. Ex. A.  The Complaint

alleges that because "FDA did not change the law as requested," Wrigley "decided to disregard the law and continue to make 'sugar free' and 'sugarless' claims *without the required disclosure*." *Id*. ¶ 126 (emphasis added).  But Plaintiff's own allegations show that Wrigley did *not* disregard the law, and instead made the "required disclosure" under federal regulations.  Indeed, the September 2007 FDA Guidance that Wrigley allegedly "ignored" plainly states that one way a "sugar free" food can meet the regulatory "requirement" is to include a "relative claim of special dietary usefulness in compliance with 21 C.F.R. 101.60(b)(2), (b)(3), (b)(4) or (b)(5)."  *Id*. ¶¶ 120-121.  Thus, Wrigley did not ignore anything.  It is Plaintiff who ignores the controlling regulation.[2]

Thus, insofar as Plaintiff's claims are based on the use of the term "sugar free," they are expressly preempted because they attempt to impose a labeling requirement that is "not identical" to the requirements of section 343(r) of the NLEA and 21 C.F.R. § 101.60.  *See, e.g.*, *Lam*, 2012 WL 1656731, at *4 (finding plaintiff's claims preempted because "the labeling challenged by [plaintiff] . . . is expressly permitted by FDA regulations"); *Peviani*, 750 F. Supp. 2d at 1119-20 ("Plaintiff's claims seek to enjoin the use of the very term permitted by the NLEA and its accompanying regulations.  Plaintiff's claims must therefore fail because they would necessarily impose a state-law obligation  . . . not required by federal law."); *Red v. Kroger Co.*, No. CV 10-010125, 2010 WL 4262037, at *7 (C.D. Cal. Sept. 2, 2010) (same); *Dvora v. Gen. Mills, Inc.*, No. CV 11-1074, 2011 WL 1897349, at *3-6 (C.D. Cal. May 16, 2011) (same).

### 2.   The NLEA Preempts Plaintiff's Claims Regarding Serving Size.

Plaintiff's claim that the serving size for Altoids Smalls should be two grams—or ten mints—is preempted because it seeks to require the labeling to contain a serving size that federal law does not require—and, indeed, is directly contrary to the FDA's position on the issue.  Section 343(q) of the NLEA provides that the serving size listed on food labeling is "an amount customarily consumed and which is expressed in a common household measure that is appropriate

---

[2] The Complaint alleges that the products fail to state that they "are sweetened with nutritive and non-nutritive sweeteners or to detail the percentage of the product that nonnutritive components comprise as required by regulation," but does not even cite an applicable regulation that was allegedly violated.  Am. Compl. ¶ 110.  Accordingly, Plaintiff has failed to provide Wrigley with adequate notice of the basis for her claim.

to the food." 21 U.S.C. § 343(q)(1)(A)(i) (2006).  The FDA has promulgated a list of "Reference Amounts Customarily Consumed Per Eating Occasion" ("reference amounts") for various foods.  21 C.F.R. § 101.12(b) (2012).  The reference amount is not necessarily the same as the serving size.  Rather, the reference amount is used to calculate a serving size that is appropriate for a specific product.  *See* 21 C.F.R. §§ 101.12(b) n.3, 101.9(b).[3]

In 1993, the FDA created a product category called "[h]ard candies, breath mints" with a reference amount of two grams.  21 C.F.R. § 101.12(b); Food Labeling; Serving Sizes, 58 Fed. Reg. 2229, 2297 (Jan. 6, 1993).  The FDA established this two-gram reference amount based only on data for *large* breath mints.  62 Fed. Reg. at 67,776 ("[D]ata on large breath mints were used to establish the 2-g reference amount for the 'Hard candies, breath mints' product category."); *see also* 58 Fed. Reg. at 2297.  Two grams "reflected the weight of one breath mint."  62 Fed. Reg. at 67,775.

Plaintiff's claim is based on the erroneous premise that "21 C.F.R. § 101.12 provides that the serving size for breath mints is 2 grams."  Am. Compl. ¶ 130.  But 21 C.F.R. § 101.12 does not establish a *serving size* for small breath mints, such as Altoids Smalls.  It simply lists two grams as a *reference amount* for breath mints generally.  Moreover, the FDA has since recognized that applying the two-gram reference amount to small breath mints can result in an inappropriate serving size.  In 1997, the FDA analyzed data specifically relating to small breath mints and concluded that "the data suggest that serving sizes near 2 g are too large for small breath mint products."  62 Fed. Reg. at 67,776.  The FDA stated that it was "concerned about the apparent inappropriateness of the resulting serving sizes on the labels of small and very small breath mints (e.g., 5 small breath mints or 15 very small breath mints per serving)."  *Id.* at 67,777.  As a result, the FDA proposed "requiring the serving size on the label of all breath mints to be declared as one mint to more accurately reflect consumption across the broad spectrum of breath mint sizes."  *Id.*  In other words, the FDA has proposed a serving size for all breath mints—one mint—that is contrary to what Plaintiff believes should be required.  In February 2012, the FDA included this proposal on its regulatory agenda for this year.  Regulatory Agenda, 77 Fed. Reg. 7946-01 (Feb. 13, 2012).

---

[3] *See also* WRJN Ex. I (FDA, Guidance for Industry: A Food Labeling Guide, Nutrition Labeling; Questions L1 to L153 (Oct. 2009), at L64).

1    Finally, contrary to Plaintiff's allegations, Am. Compl. ¶ 131, the serving size of Altoids

2    Smalls has nothing to do with the "sugar free" designation in the label.  Even if Wrigley were to use

3    a serving size of ten mints, Altoids Smalls would still be properly labeled "sugar free" in

4    conjunction with a relative claim like the one on the products' packaging.  The labeling would

5    simply state that the "calorie content has been reduced from 8 calories to 5 calories per 10 mints"

6    instead of "from 0.8 calories to 0.5 calories per mint."  And there would be a 35% reduction in

7    calories from regular mints under either serving size.

8    The Court should defer to the FDA's judgment in interpreting its own serving size

9    regulations.  *See In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d

10   527, 536 n.7 (S.D.N.Y. 2008) ("It is appropriate for Courts to consider the FDA's published

11   responses to commentators during the rule drafting process in determining the meaning of FDA

12   regulations promulgated in furtherance of the FDCA.").  Because the FDA specifically considered

13   the issue of serving size, as applied to small mints, and did *not* impose the serving size requirements

14   sought by Plaintiff in her Complaint, Plaintiff's claim is preempted.  *See Chacanaca*, 752 F. Supp.

15   2d at 1121-22 (finding claim preempted because the FDA specifically considered whether levels of

16   trans fat could disqualify other statements about health benefits and declined to impose such a

17   requirement;  "Essentially, plaintiffs' claim asks this Court to ascribe disqualifying status to trans

18   fats where the Agency has at least so far declined to do so." (emphasis omitted)); *cf. Pom Wonderful*

19   *LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1177 (9th Cir. 2012) ("Congress and the FDA have thus

20   considered and spoken to what content a label must bear, and the relative sizes in which the label

21   must bear it, so as not to deceive. . . .  If the FDA believes that more should be done to prevent

22   deception, or that Coca-Cola's label misleads consumers, it can act.  But . . . for a court to act when

23   the FDA has not—despite regulating extensively in this area—would risk undercutting the FDA's

24   expert judgments and authority.") (dismissing Lanham Act claim).

25   Thus, Plaintiff's claims are preempted because they seek to impose requirements that are not

26   "identical to" the labeling requirements under federal law.

27   **C.      In the Alternative, the Court Should Dismiss Plaintiff's Claims Under the**
             **Primary Jurisdiction Doctrine.**

28

1    The court should also dismiss Plaintiff's claims because they involve issues committed to the

2    primary jurisdiction of the FDA.  "The primary jurisdiction doctrine allows courts to stay

3    proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within

4    the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110,

5    1114 (9th Cir. 2008).  "[T]he doctrine is a 'prudential' one, under which a court determines that an

6    otherwise cognizable claim implicates technical and policy questions that should be addressed in the

7    first instance by the agency with regulatory authority over the relevant industry rather than by the

8    judicial branch."  *Id.*  The doctrine requires dismissal or a stay if a claim "requires resolution of an

9    issue of first impression, or of a particularly complicated issue that Congress has committed to a

10    regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary

11    resort to the agency which administers the scheme."  *Id.* (citations and quotation marks omitted).

12    Although "no fixed formula exists for applying the doctrine of primary jurisdiction," the

13    Ninth Circuit has "traditionally examined" the following four factors: "(1) a need to resolve an issue

14    that (2) has been placed by Congress within the jurisdiction of an administrative body having

15    regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive

16    regulatory authority that (4) requires expertise or uniformity in administration."  *Id.* at 1115

17    (brackets and quotation marks omitted).  "[T]he primary jurisdiction doctrine is designed to protect

18    agencies possessing 'quasi-legislative powers' and that are 'actively involved in the administration

19    of regulatory statutes.'"  *Id.* (citation omitted).

20    In *Clark*, the Ninth Circuit held that deferral of a plaintiff's claim to the FCC was

21    appropriate because it required a determination of whether a Voice over Internet Protocol service

22    was governed by a particular federal statute.  *See id.* at 1115-16.  The court reasoned that the issue

23    was one of first impression, that it required interpretation of a statute within the ambit of the FCC's

24    regulatory authority, and that the FCC had already exercised that authority by developing "a detailed

25    and comprehensive regulatory scheme in response to the statute's instructions."  *Id.* at 1115.  The

26    court also found it persuasive that a pending FCC Notice of Proposed Rulemaking demonstrated

27    "that the agency is actively considering how it will regulate VoIP services and that the agency's

28

- 19 -

development of a uniform regulatory framework to confront this emerging technology is important to federal telecommunications policy." *Id.*

Similarly, in *Gordon v. Church & Dwight Co.*, No. C 09-5585, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010), the court dismissed, on primary jurisdiction grounds, UCL, FAL, and CLRA claims alleging that a manufacturer of "N9" latex condoms misrepresented that the condoms reduced the spread of sexually transmitted disease.  The court concluded that the FDA's primary jurisdiction over warnings on condom packaging compelled dismissal, reasoning that the FDA had "actively regulated N9 condoms for thirty years, under the authority granted by the [FDCA]," including by "promulgating regulations governing the labeling of N9 condoms, and mandating the specific substance of warnings, instructions, and statements of use." *Id.* at *2.  Among other things, the court found it persuasive that "the FDA has stated that it is still considering public comments and other data in connection with warnings similar to those that plaintiffs seek to have the court impose." *Id.*  Under those circumstances, "[i]t would be inappropriate for this court to assume the FDA's regulatory role, and to interpret scientific studies or other evidence to determine whether the labeling of N9 latex condoms should be changed to include an additional warning." *Id.*

Plaintiff's claim that the appropriate serving size for Altoids Smalls is ten mints, rather than one mint, is a quintessential example of a decision on which this Court should defer to the FDA's primary jurisdiction.  The FDCA requires only that a serving size be expressed in "an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food." 21 U.S.C. § 343(q)(1)(A)(i).  Interpretation of what is "an amount customarily consumed" undoubtedly is a "technical" question that has been "committed to" the FDA, which has promulgated detailed regulations on the issue.  And the appropriate serving size for a small breath mint is an issue of "first impression" in that the FDA has only issued a final rule as to the appropriate serving size for large breath mints.  To resolve Plaintiff's serving-size claims, this Court would have to "resolve an issue" that "has been placed by Congress within the jurisdiction of an administrative body having regulatory authority" "pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority" and which "requires expertise or uniformity in administration." *See Clark*, 523 F.3d at 1114-15 (quotation marks omitted).

1    Moreover, the FDA currently has a proposed rule pending on its regulatory agenda for this

2    year that will explicitly establish the appropriate serving size for small breath mints.  Thus,

3    Plaintiff's Complaint asks this Court to decide the appropriate serving size of small breath mints—

4    and enjoin Wrigley from using a one mint serving size—when (i) that issue is already pending

5    before the FDA, (ii) the FDA has already expressed a view that one mint is an appropriate serving

6    size, and (iii) the FDA intends to take final action in the immediate future and has made that known.

7    In short, this is precisely the type of case in which deference to the FDA's exercise of its primary

8    jurisdiction is appropriate.  *See Clark*, 523 F.3d at 1115-16; *Gordon*, 2010 WL 1341184, at *2.

9    Likewise, Plaintiff's "sugar free" claims should be dismissed on primary jurisdiction grounds

10   because Wrigley has fully complied with FDA regulations governing the use of that term.  To permit

11   Plaintiff to proceed with those claims, this Court would have to override FDA regulations and

12   decide an issue in contravention of the "administrative body having regulatory authority" over the

13   FDCA.  *See Clark*, 523 F.3d at 1115 (quotation marks omitted).

14   **III.    Plaintiff's UCL, FAL, and CLRA Claims Are Barred by the "Safe Harbor" Doctrine.**

15   Plaintiff's misbranding claims are also barred by the "safe harbor" for conduct permitted by

16   other laws.  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527 (Cal. 1999).

17   Because federal regulations authorize the products' use of the term "sugar free" and the one-mint

18   serving size for the Altoids Smalls, they are protected by the "safe harbor" from claims under the

19   UCL, CLRA, and FAL.  *Id.* at 541; *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir.

20   2011) (dismissing UCL and CLRA claims because California's regulatory regime permitted the

21   dispenser design on which the causes of action were premised).

22   **IV.    The Complaint Fails To State a Claim for Restitution.**

23   The Court should dismiss Plaintiff's seventh cause of action for restitution for two reasons.

24   First, the Complaint fails to state a valid claim for restitution because it is entirely duplicative of her

25   statutory UCL, FAL, and CLRA claims. "There is no freestanding cause of action for 'restitution' in

26   California," *Munoz v. MacMillan*, 124 Cal. Rptr. 3d 664, 675 (Ct. App. 2011), and "there is no cause

27   of action in California for unjust enrichment," *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d

28   347, 357 (Ct. App. 2003).  And California recognizes "the general principle . . . that equitable relief

will not be afforded when the plaintiff's remedies at law are adequate to redress his or her injury." *Ramona Manor Convalescent Hosp. v. Care Enters.*, 225 Cal. Rptr. 120, 130-31 (Ct. App. 1986). Accordingly, "a claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort." *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009) ; *see also In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs can not assert unjust enrichment claims that are merely duplicative of statutory or tort claims.") (citing cases). Plaintiff's remedies at law are fully adequate because restitution is already an available remedy under the UCL, FAL, and CLRA. *See Diacakis v. Comcast Corp.*, No. C-11-3002 SBA, 2012 WL 43649, at *6 (N.D. Cal. Jan. 9, 2012) (dismissing restitution claim because restitution is already "available [as a] remedy under the UCL, FAL and CLRA"). As in *Rosal*, Plaintiff's claim for restitution does little more than "incorporate[] the other facts of the [complaint]" and make a "conclusory allegation that defendants have been 'unjustly enriched.'" 671 F. Supp. 2d at 1133.

Second, the Complaint fails to allege facts to support the claim that Wrigley was "unjustly enriched." Plaintiff's sole theory of unjust enrichment is that Wrigley violated federal labeling regulations. But Wrigley has fully complied with these regulations, and has truthfully represented the caloric and sugar content of its products. *See supra* Parts I, II.B. Thus, Plaintiff cannot show that it is "against equity and good conscience," Am. Compl. ¶ 291, for Wrigley to retain the monies class members paid to purchase its products, *see, e.g.*, *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1013 (S.D. Cal. 2009) (dismissing claim for unjust enrichment premised on violation of UCL where UCL claim was dismissed); *McKinnis v. Kellogg USA*, No. CV 07-2611, 2007 WL 4766060, at *6 (C.D. Cal. Sept. 19, 2007) (dismissing unjust enrichment claim because "Plaintiffs have failed to state any substantive claim" that Froot Loops cereal packaging misled consumers).

## V.     The Complaint Fails To State a Claim Under the Song-Beverly Act.

The Court should dismiss Plaintiff's eighth cause of action under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.*, for two reasons. First, Song-Beverly does not apply to Wrigley's products. The statute provides a private cause of action only for "[a]ny buyer of *consumer goods* who is damaged by a failure to comply with . . . an implied or express warranty .

. . ." Cal. Civ. Code § 1794(a) (West 2012) (emphasis added). "Consumer goods" are "any new product or part thereof . . . *except for . . . consumables*." *Id.* § 1791(a) (West 2012) (emphasis added). Exempt consumables include "any product that is intended for consumption by individuals . . . and that usually is consumed or expended in the course of consumption or use." *Id.* § 1791(d). Wrigley's gum, breath mints, and hard candies fit squarely within this "consumables" definition. Indeed, even Plaintiff admits that Wrigley's "non-gum food products" are consumables. Am. Compl. ¶ 296.

Second, the products' labels do not create "express warranties." An express warranty is "a written statement . . . pursuant to which the manufacturer . . . *undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance*." Cal. Civ. Code § 1791.2(a)(1) (West 2012) (emphasis added). The serving sizes and sugar free claims on the products' labels cannot reasonably be construed as promises to "preserve," "maintain," or "provide compensation if there is a failure in" the utility or performance of its gum, breath mints, or hard candy. Moreover, Plaintiff cannot establish that Wrigley breached any express warranties because, as explained above, the labels are truthful and not deceptive.

## VI.   The Complaint Fails To State a Claim Under the Magnuson-Moss Warranty Act.

The Court should dismiss Plaintiff's ninth cause of action under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, for two reasons. First, Magnuson-Moss is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d). The statements on the labels are governed by the FDCA and FDA regulations, a fact Plaintiff has expressly pled. *See* Am. Compl. ¶¶ 309-310. Accordingly, Magnuson-Moss does not apply to these statements. *See, e.g.*, *Hairston*, 2012 WL 1893818, at *5 (dismissing Magnuson-Moss claim where food product label statements governed by FDCA and FDA regulations).

Second, even if Magnuson-Moss did apply, the statements on Wrigley's product labeling are not "written warranties" because they do not promise a defect-free product, guarantee performance over a specific period of time, or undertake to remedy any product defects. 15 U.S.C. § 2301(6); *see Hairston*, 2012 WL 1893818, at *5-6 (dismissing Magnuson-Moss claim because the words "all natural" and fruit flavors specified on Lifewater beverage labels were not written warranties). And,

again, Plaintiff cannot establish that Wrigley breached any express warranties because the labels are truthful and not deceptive.  *See supra* Part I.

## VII.   The Court Should Dismiss All Claims Against Wrigley Relating to Mars Products.

First, the Complaint does not allege any facts that would support finding Wrigley liable for Mars products.  Plaintiff makes threadbare, conclusory allegations that the Wrigley and Mars entities acted as "co-conspirators," "agents," "alter-egos," and aiders and abettors of one another. Am. Compl. ¶¶ 34-39.  But courts routinely dismiss claims premised on conspiracy, aiding and abetting, agency, and alter ego theories of liability where those theories are supported only by conclusory allegations.  *See, e.g.*, *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1103 (N.D. Cal. 2006) (dismissing claims against parent corporation based on alter ego and aiding and abetting theories because complaint did not "make any specific factual allegations about any actions taken by [parent] that establish that it should be found indirectly liable for [subsidiary's] . . . acts"); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (dismissing claims against certain defendants because "[t]he allegations of the complaint regarding both the vicarious liability and conspiracy theories are simply legal conclusions without supporting facts").  Wrigley does not participate in the manufacturing or sale of Mars chocolate products, and Plaintiff has not alleged otherwise.  Instead, Plaintiff's allegations are precisely the types of "labels and conclusions" and "formulaic recitation[s] of the elements" that the Supreme Court has declared insufficient, *see Iqbal*, 556 U.S. at 678, and which courts have repeatedly rejected.

Second, the Complaint's vague allegations referring to "Defendants" do not state a claim. Even before *Twombly* and *Iqbal*, courts recognized that Federal Rule 8 requires that a complaint give "'fair notice' of the claim being asserted and the 'grounds upon which it rests.'"  *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) (citation omitted) (dismissing claim that implausibly "lump[ed] together thirteen 'individual defendants'" because "only three of the individuals w[ere] alleged to have been present for the entire period of the events alleged in the complaint" (citation omitted)).  Fair notice, in turn, requires that a complaint "state how each [defendant], *individually*," is responsible for the conduct alleged.  *See Brennan*, 369 F. Supp. 2d at 1136 (emphasis added) (dismissing conspiracy claim against two defendants because

"there are no allegations in the complaint specifically connecting [the defendants] to the alleged conspiracy").  Accordingly, when the Complaint makes allegations regarding "Defendants," but then refers only to Mars chocolate products and not Wrigley products, those allegations do not satisfy the most basic notice requirements under Rule 8 of identifying which Defendant is being sued, much less plead sufficient factual matter to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  Specifically, the following sections of the Complaint do not relate to Wrigley products:  "Unlawful Flavanol Nutrient Content Claims," Am. Compl. § C.1.a  (¶¶ 70-83); "Unlawful Calorie Related Content Claims," *id.* § C.1.b  (¶¶ 84-100); "Failing to Label Their Product Ingredients By Their Common Names," *id.* § C.3 (¶¶ 138-155); "Failing to Adhere to the Requirements of the Standards of Identity For Its Products," *id.* § C.4 (¶¶ 156-161); and "Unlawful Health Claims," *id.* § C.5 (¶¶ 155-185).  Section C.5 of the Complaint, "Unlawful Health Claims," contains a few scattered references to "sugar free gums."  *See id.* ¶¶ 165, 177.  But these scattered references plainly do not satisfy Rule 8 because they do not identify a specific Wrigley product or any allegedly "unlawful health claims" on its label.  To the extent that any of the claims are construed as applying to a Wrigley product notwithstanding this lack of notice, they fail to state a claim for the reasons stated in the Mars motion to dismiss pertaining to these sections of the Complaint, which Wrigley incorporates by reference.

## CONCLUSION

For the foregoing reasons, and pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), Plaintiff's Complaint should be dismissed in its entirety.

Dated:  September 14, 2012                    Respectfully submitted,

                                              By: /s/ Stephen D. Raber
                                              Stephen D. Raber (State Bar No. 121958)
                                              David M. Horniak (State Bar No. 268441)
                                              WILLIAMS & CONNOLLY LLP
                                              725 Twelfth Street, N.W.
                                              Washington, DC  20005
                                              Telephone:  (202) 434-5000
                                              Fax:  (202) 434-5029
                                              E-mail:  sraber@wc.com
                                              E-mail:  dhorniak@wc.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2012, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Ben F. Pierce Gore | pgore@prattattorneys.com |
| | equirk@prattattorneys.com |
| | PTaylor@barrettlawgroup.com |
| | rtrazo@prattattorneys.com |
| Brian K. Herrington | bherrington@barrettlawgroup.com |
| Carol Nelkin | c.nelkin@nelkinpc.com |
| | twhite@nelkinpc.com |
| Charles F. Barrett | charles@cfbfirm.com |
| | dawn@cfbfirm.com |
| David Shelton | david@davidsheltonpllc.com |
| David Malcolm McMullan, Jr. | dmcmullan@barrettlawgroup.com |
| | bherrington@barrettlawgroup.com |
| | ccmirick@barrettlawgroup.com |
| Dewitt Marshall Lovelace, Sr. | courtdocs@lovelacelaw.com |
| Jay P. Nelkin | jnelkin@nelkinpc.com |
| Richard Barrett | rrb@rrblawfirm.net |
| Stuart M. Nelkin | snelkin@nelkinpc.com |
| | twhite@nelkinpc.com |

And I hereby do certify that I have mailed by United States Postal Service the document to

the following non CM/ECF participants:

Alex Peet
Lovelace Law Firm, P.A.
12870 U.S. Highway 98 West
Suite 200
Miramar Beach, FL 32550

Keith M. Fleischman
Ananda N. Chaudhuri
Frank Karam
Fleischman Law Firm
565 Fifth Avenue, 7th Floor
New York, NY 10017

J. Price Coleman
Coleman Law Firm
1100 Tyler Avenue, Suite 102
Oxford, MS 38655

John W. (Don) Barrett
Katherine B. Riley

1

Don Barrett, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095

2

3

4    Dated:  September 14, 2012                 Respectfully submitted,

5                                               By: /s/ Stephen D. Raber
                                                Stephen D. Raber (State Bar No. 121958)
6                                               David M. Horniak (State Bar No. 268441)
                                                WILLIAMS & CONNOLLY LLP
7                                               725 Twelfth Street, N.W.
                                                Washington, DC  20005
8                                               Telephone:  (202) 434-5000
                                                Fax:  (202) 434-5029
9                                               E-mail:  sraber@wc.com
                                                E-mail:  dhorniak@wc.com
10

11                                              *Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28