1  Stephen D. Raber (State Bar No. 121958)
   David M. Horniak (State Bar No. 268441)
2  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, N.W.
3  Washington, DC  20005
   Telephone:  (202) 434-5000
4  Fax:  (202) 434-5029
   E-mail:  sraber@wc.com
5  E-mail:  dhorniak@wc.com
6
   *Attorneys for Defendants*
7
8              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
9                   SAN JOSE DIVISION
10
11  | PHYLLIS GUSTAVSON, individually and on behalf of all others similarly situated, | Case No. C12-01861 LHK |
    |---|---|
12  | | **MARS'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
    | Plaintiff, | |
13  | v. | |
14  | | **CLASS ACTION** |
    | WRIGLEY SALES COMPANY, | |
15  | WM. WRIGLEY JR. COMPANY, | |
    | MARS, INC., and MARS CHOCOLATE | Hearing Date:  January 31, 2013 |
16  | NORTH AMERICA, LLC, | Time:  1:30 p.m. |
    | | Place:  Courtroom 8, 4th Floor |
17  | Defendants. | Judge:  Hon. Lucy H. Koh |

18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

**TO: THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 31, 2013, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 8, 4th Floor, of this Court, located at 280 South 1st Street, San Jose, California, Defendants Mars, Inc. and Mars Chocolate North America, LLC (collectively "Mars") will and hereby do move the Court for an order dismissing Plaintiff Phyllis Gustavson's Amended Class Action and Representative Action Complaint for Damages, Equitable and Injunctive Relief ("Complaint") and each claim therein without leave to amend.

This Motion is made pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) on the grounds that:

(a) the Complaint fails to state a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, because (i) Plaintiff's allegations are based on statements not likely to deceive a reasonable consumer, (ii) Plaintiff has failed to plead claims premised on Mars websites with the particularity required by Federal Rule of Civil Procedure 9(b), and (iii) the Mars websites do not constitute "labeling" governed by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*;

(b) Plaintiff lacks standing to bring suit under the UCL, FAL, CLRA, and Article III of the United States Constitution;

(c) all claims in the Complaint are preempted by section 337 of the FDCA, which bars enforcement of the FDCA and its regulations through private lawsuits;

(d) all claims in the Complaint are barred by the express preemption provision in the Nutritional Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343-1(a);

(e) the Court should decline to adjudicate Plaintiff's claims because they implicate technical and policy questions that are committed to the primary jurisdiction of the FDA;

(f) Plaintiff's UCL, FAL, and CLRA claims are barred by the safe harbor doctrine;

(g) the Complaint fails to state a claim for restitution because Plaintiff's claim for restitution is duplicative of her other claims, and because Plaintiff has failed to allege facts to support a claim that Mars was unjustly enriched;

(h) the Complaint fails to state a claim under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.*, because Mars's products are not "consumer goods," *id.* § 1791(a), because statements on Mars's product labels do not constitute "express warranties," *id.* § 1791.2(a)(1), and because Mars did not breach any alleged "express warranties";

(i) the Complaint fails to state a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, because Magnuson-Moss is inapplicable to warranties governed by the FDCA, because statements on Mars's product labels do not create "written warranties," *id.* § 2301(6), and because Mars did not breach any alleged "written warranties";

(j) the Complaint fails to state a claim against Mars based on Wrigley's gum, breath mints, and hard candies because it does not allege facts sufficient to hold Mars liable for any of those products and fails to provide adequate notice to Mars of the conduct alleged.

Mars's Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, any reply memorandum, the pleadings and files in this action, and such other matters as may be presented at or before the hearing.


Dated:  September 14, 2012             Respectfully submitted,

                                       By: /s/ Stephen D. Raber
                                       Stephen D. Raber (State Bar No. 121958)
                                       David M. Horniak (State Bar No. 268441)
                                       725 Twelfth Street, N.W.
                                       Washington, DC  20005
                                       Telephone:  (202) 434-5000
                                       Fax:  (202) 434-5029
                                       E-mail:  sraber@wc.com
                                       E-mail:  dhorniak@wc.com

                                       *Attorneys for Defendants*

## TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................................i

TABLE OF CONTENTS ..........................................................................................................iii

TABLE OF AUTHORITIES .......................................................................................................v

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ix

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................1

INTRODUCTION .......................................................................................................................1

BACKGROUND .........................................................................................................................1

LEGAL STANDARD ..................................................................................................................2

ARGUMENT ..............................................................................................................................3

I.     The Complaint Fails To State a Claim Under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act. ........................................................3

   A.   The Products' Labels Are Not Likely To Deceive a Reasonable Consumer. ........................3

   B.   Plaintiff Does Not Have Standing. ...............................................................................9

   C.   The Complaint Fails To State a Claim Based on "Unlawful Health Claims" on Websites...10

II.    Plaintiff's Claims Are Preempted by Federal Law. ............................................................12

   A.   The FDCA Bars Enforcement Through Private Lawsuits. ......................................................13

   B.   The NLEA Expressly Preempts Plaintiff's Misbranding Claims. ........................................18

       1.   The NLEA Preempts Plaintiff's Claims Based on Statements About the Presence of Flavanols in Cocoa. ...................................................................................................18

       2.   The NLEA Preempts Plaintiff's Claims Regarding Caloric Daily Values. .......................20

       3.   The NLEA Preempts Plaintiff's Claims Regarding Use of "PGPR." ...............................21

       4.   The NLEA Preempts Plaintiff's Claims Regarding the Milk Chocolate Standard of Identity. .................................................................................................................22

   C.   In the Alternative, the Court Should Dismiss Plaintiff's Claims Under the Primary Jurisdiction Doctrine. ..................................................................................................24

III.   Plaintiff's UCL, FAL, and CLRA Claims Are Barred by the "Safe Harbor" Doctrine. ........24

IV.    The Complaint Fails To State a Claim for Restitution and for Breach of Warranty Under the Song-Beverly and Magnuson Moss Warranty Acts. ...................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V.    Claims Against Mars Based on Wrigley's Gum, Breath Mint, and Hard Candy Products Should Be Dismissed. ........................................................................................................24

CONCLUSION ........................................................................................................24

MARS'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT - C12-01861 LHK

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alberty Food Products Co. v. United States*,
    185 F.2d 321 (9th Cir. 1950)................................................................... 11

*Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*,
    626 F. Supp. 278 (D. Mass. 1986) ......................................................... 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................... 2, 22

*Bryant v. Medtronic, Inc. (In re Medtronic, Inc., Sprint Fidelis Leads Products Liability Litigation)*,
    623 F.3d 1200 (8th Cir. 2010)............................................................... 16

*Buckman Co. v. Plaintiffs' Legal Committee*,
    531 U.S. 341 (2001) ..................................................... 14, 15, 16, 17

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ................................................. 18

*Dvora v. General Mills, Inc.*,
    No. CV 11-1074, 2011 WL 1897349 (C.D. Cal. May 16, 2011)............. 23

*Fraker v. KFC Corp.*,
    No. 06-CV-01284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007)..................... 14, 15

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995)..................................................................... 3

*Goldsmith v. Allergan, Inc.*,
    No. CV 09-7088, 2011 WL 147714 (C.D. Cal. Jan. 13, 2011)............... 15

*Hairston v. South Beach Beverage Co.*,
    No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) .................... 4

*Hansen Beverage Co. v. Innovation Ventures, LLC*,
    No. 08-CV-1166, 2009 WL 6597891 (S.D. Cal. Dec. 23, 2009)............. 17

*Henderson v. Gruma Corp.*,
    No. CV-10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ........... 9

*Hinds Investments, L.P. v. Angioli*,
    654 F.3d 846 (9th Cir. 2011)................................................................... 2

*In re Epogen & Aranesp Off-Label Marketing & Sales Practices Litigation*,
    590 F. Supp. 2d 1282 (C.D. Cal. 2008) ................................................. 15

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................... 10

*Kordel v. United States*,
    335 U.S. 345 (1948) ............................................................................................... 11

*Kowalsky v. Hewlett-Packard Co.*,
    771 F. Supp. 2d 1156 (N.D. Cal. 2011) .................................................................. 3

*Lam v. General Mills, Inc.*,
    No. 11-5056, --- F. Supp. 2d ----, 2012 WL 1656731 (N.D. Cal. May 10, 2012) .....................
    ............................................................................................................. 12, 18, 20, 23

*Loreto v. Procter & Gamble Co.*,
    737 F. Supp. 2d 909 (S.D. Ohio 2010) ................................................................. 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................. 9

*Mason v. Coca Cola Co.*,
    774 F. Supp. 2d 699 (D.N.J. 2011) ................................................................. 5, 12

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ............................................................................................. 16

*Perez v. Nidek Co.*,
    657 F. Supp. 2d 1156 (S.D. Cal. 2009) ............................................................... 15

*Peviani v. Hostess Brands, Inc.*,
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ......................................................... 18, 23

*PhotoMedex, Inc. v. Irwin*,
    601 F.3d 919 (9th Cir. 2010) ...................................................................... 13, 14, 17

*Pom Wonderful LLC v. Coca-Cola Co.*,
    679 F.3d 1170 (9th Cir. 2012) .............................................................................. 14

*Red v. Kroger Co.*,
    No. CV 10-010125, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ....................... 23

*Stengel v. Medtronic Inc.*,
    676 F.3d 1159 (9th Cir. 2012) .............................................................................. 16

*Stengel v. Medtronic Inc.*,
    686 F.3d 1121 (9th Cir. 2012) (order) .................................................................. 16

*Turek v. General Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) ................................................................................ 18

*United States v. 24 Bottles*,
    338 F.2d 157 (2d Cir. 1964) .................................................................................. 11

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ........................................................................................ 20

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ........................................................................ 3

*Williams v. Gerber Products Co.,*
    552 F.3d 934 (9th Cir. 2008) .......................................................................... 3

*Yumul v. Smart Balance, Inc.,*
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................................ 10

**STATE CASES**

*Hill v. Roll Int'l Corp.,*
    128 Cal. Rptr. 3d 109 (Ct. App. 2011) ............................................................ 4

*In re Farm Raised Salmon Cases,*
    175 P.3d 1170 (Cal. 2008) ........................................................................ 15, 17

*Kwikset Corp. v. Superior Court,*
    246 P.3d 877 (Cal. 2011) ................................................................................ 9

*Lavie v. Procter & Gamble Co.,*
    129 Cal. Rptr. 2d 486 (Ct. App. 2003) ............................................................ 4

**STATUTES**

21 U.S.C. § 321 ................................................................................................ 11

21 U.S.C. § 336 ................................................................................................ 17

21 U.S.C. § 337 .................................................................................... 13, 16, 17

21 U.S.C. § 341 ................................................................................................ 22

21 U.S.C. § 343 .................................................................... 13, 19, 22, 23

21 U.S.C. § 343-1 .............................................................................. 1, 18, 13

21 U.S.C. § 393 ................................................................................................ 12

Cal. Bus. & Prof. Code § 17200 ........................................................................ 3

Cal. Bus. & Prof. Code § 17500 ........................................................................ 3

Cal. Civ. Code § 1770 ........................................................................................ 3

Cal. Civ. Code § 1780 ........................................................................................ 9

**REGULATIONS**

21 C.F.R. § 100.1 ................................................................................. 18, 20, 21, 22

21 C.F.R. § 101.4 ................................................................................................ 8, 21

21 C.F.R. § 101.9 ............................................................................................... 6, 19

21 C.F.R. § 101.13 ........................................................................................... 19, 21

21 C.F.R. § 101.22 .................................................................................................. 23

21 C.F.R. § 101.54 .................................................................................................... 5

21 C.F.R. § 101.60 .................................................................................................. 23

21 C.F.R. § 102.5 .................................................................................................... 21

21 C.F.R. § 163.130 .......................................................................................... 22, 23

21 C.F.R. § 182.60 .................................................................................................. 23

Food Labeling: Nutrient Content Claims, 58 Fed. Reg. 2302-01 (Jan. 6, 1993) ............... 7, 20, 21

Food Labeling; Reference Daily Intakes and Daily Reference Values, 58 Fed. Reg. 2206-01
    (Jan. 6, 1993) ................................................................................................ 6

## RULES

Federal Rule of Civil Procedure 9 ............................................................. 3, 10, 24, 11

Federal Rule of Civil Procedure 12 .............................................................. 2, 24

## OTHER AUTHORITIES

FDA Response Letter to GRAS Notice No. GRN 000270 ....................................... 22

1

## STATEMENT OF ISSUES TO BE DECIDED

2

1. Is a reasonable consumer likely to be deceived by:

3

    a. A truthful statement that cocoa flavanols are naturally present in chocolate?

4

    b. A statement of a product's percent "daily value" of calories based on a 2,000 calorie

5

       diet, which is disclosed in the product's labeling?

6

    c. Listing the ingredient "polyglycerol polyricinoleic acid" as "PGPR"?

7

    d. A statement that a product is milk chocolate, when the ingredients list discloses that

8

       the chocolate is "processed with alkali" and contains "artificial flavors"?

9

    e. Statements about chocolate on a website unrelated to the products the consumer

10

       purchased?

11

2. Does Plaintiff have standing to bring suit under the UCL, FAL, CLRA, and Article III of the

12

   United States Constitution?

13

3. Has Plaintiff failed to plead claims premised on alleged misrepresentations on unidentified

14

   websites with the particularity required by Federal Rule of Civil Procedure 9(b)?

15

4. Can Plaintiff state a claim based on websites that are not "labeling" of the products Plaintiff

16

   purchased and are not governed by the FDCA?

17

5. Are Plaintiff's claims preempted by section 337 of the FDCA, 21 U.S.C. § 337, which

18

   prohibits private causes of action based on the FDCA and its implementing regulations?

19

6. Are Plaintiff's claims preempted by the NLEA, 21 U.S.C. § 343-1(a), because they seek to

20

   impose labeling requirements not identical to the FDCA and its implementing regulations?

21

7. Should the Court decline to adjudicate Plaintiff's claims because they implicate technical

22

   and policy questions that are committed to the primary jurisdiction of the FDA?

23

8. Does Mars's alleged conduct fall within the UCL, FAL, and CLRA safe harbor?

24

9. Does the Complaint fail to state a claim for restitution because Plaintiff's legal remedies are

25

   adequate and her claim for restitution is duplicative of her other claims, or because Plaintiff

26

   has failed to allege facts to support a claim that Mars was unjustly enriched?

27

28

MARS'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT - C12-01861 LHK

10. Does the Complaint fail to state a claim under the Song-Beverly Consumer Warranty Act because Mars's products are not "consumer goods," because statements on Mars's product labels do not constitute "express warranties," or because Mars did not breach any alleged "express warranties"?

11. Does the Complaint fail to state a claim under Magnuson-Moss Warranty Act because the act is inapplicable to warranties governed by the FDCA, because statements on Mars's product labels do not create "written warranties," or because Mars did not breach any alleged "written warranties"?

12. Does the Complaint fail to state a claim against Mars based on Wrigley's gum, breath mints, and hard candies because it does not allege facts sufficient to hold Mars liable for Wrigley's conduct and does not provide adequate notice to Mars?

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Phyllis Gustavson alleges that she was deceived into buying five different types of Mars chocolate candy over a four-year span because she (i) thought it was a "good source" of flavanols; (ii) did not understand how many calories the candy contained; (iii) did not realize that "PGPR" stood for polyglycerol polyricinoleic acid; (iv) did not know that the candy contained alkalis or vanillin; and (v) thought that the FDA had approved the candy as a drug and that it was healthy.

Plaintiff's claims should be dismissed.  First, the Complaint fails to identify any representation about the Mars products that would be likely to deceive a reasonable consumer. Indeed, the Complaint does not allege that any representations about the Mars products were untruthful.  Instead, the alleged "deception" is based entirely on the mistaken premise that any violation of federal food and drug regulations—no matter how trivial—is "deceptive."  The labeling does *not* violate federal regulations.  But even if it did, the alleged regulatory violations do not cause the labeling to be deceptive in any way.  They are therefore not actionable under California law because no reasonable consumer could have been deceived by them and because Plaintiff herself has not established that the alleged regulatory violations caused her any injury.

Second, Plaintiff's claims are preempted by federal law.  They are impliedly preempted because the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*, ("FDCA") does not permit enforcement through private rights of action.  And they are expressly preempted by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343-1, because they would impose labeling requirements that are "not identical" to federal law.

Third, the Court should dismiss Plaintiff's causes of action under the Song-Beverly Act, the Magnuson-Moss Act, and for restitution, because they do not apply to Plaintiff's allegations.

### BACKGROUND

The Complaint is really two complaints in one.  It combines claims against Defendants Wrigley Sales Company and Wm. Wrigley Jr. Company (collectively "Wrigley") regarding gum,

breath mints, and hard candies, with claims against defendants Mars, Inc. and Mars Chocolate North America, LLC (collectively "Mars") regarding chocolate candy products.

Plaintiff alleges she purchased the following Mars chocolate products: (1) M&M chocolate candy, 1.69 oz.; (2) Twix chocolate candy, 1.79 oz.; (3) Dove Dark Chocolate Bar, 3.3 oz.; (4) Dove Milk Chocolate Bar, 3.3 oz.; and (5) Snickers Fun Size, 11.8 oz.  Am. Compl. ¶ 213(F)-(J); *see also* Mars Defs.' Req. for Judicial Notice ("MRJN") Exs. J-N (exemplar copies).

Wrigley has filed herewith its own motion to dismiss addressing the allegations involving the Wrigley products.  This motion and memorandum addresses the allegations involving the Mars products, which are contained in the following five sections of the Complaint:  (1) "Unlawful Flavanol Nutrient Content Claims," Am. Compl. § C.1.a (¶¶ 70-83); (2) "Unlawful Calorie Related Nutrient Content Claims," *id.* § C.1.b (¶¶ 84-100); (3) "Failing to Label Their Product Ingredients By Their Common Names," *id.* § C.3 (¶¶ 138-155.1)[1]; (4) "Failing to Adhere to the Requirements of the Standards of Identity," *id.* § C.4 (¶¶ 156.1-161.1); and (5) "Unlawful Health Claims," *id.* § C.5 (¶¶ 155.2-185).[2]

### LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The complaint cannot make only an "unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quotation marks omitted).  "Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654

---

[1] The Complaint repeats paragraph numbers 155-161. To avoid confusion, this memorandum will refer to the first set of paragraphs (Am. Compl. pp. 37-38) as paragraphs 155.1-161.1, and the second set (Am. Compl. pp. 39-40) as paragraphs 155.2-161.2.

[2] To avoid redundancy, this memorandum cross-references Wrigley's Memorandum of Points and Authorities in Support of its Motion to Dismiss Amended Complaint ("Wrigley Mem.") to the extent possible.

F.3d 846, 850 (9th Cir. 2011).  Dismissal is also appropriate for failure to satisfy the pleading requirements of Rule 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

ARGUMENT

I.     **The Complaint Fails To State a Claim Under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act.**

The Complaint alleges that the Mars products are misbranded in violation of federal food labeling regulations.  But regardless of whether the labeling satisfies those highly technical regulations, the Complaint fails to state a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, because it fails to allege any false or misleading representations about Mars's products.

A.     **The Products' Labels Are Not Likely To Deceive a Reasonable Consumer.**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200 (West 2012).  The FAL makes it "unlawful for any person . . . with intent directly or indirectly . . . to make or disseminate . . . any statement, concerning . . . real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500 (West 2012).  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770(a) (West 2012).  Because UCL, FAL, and CLRA claims alleging deceptive product packaging and advertising overlap in both scope and elements, courts often consolidate the analysis of motions to dismiss these claims.  *See, e.g., Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162-63 (N.D. Cal. 2011).

To state a claim under the UCL, FAL, and CLRA, the plaintiff must show that "members of the public are likely to be deceived."  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotation marks and citation omitted); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  To be actionable, the statements at issue must be likely to deceive a "reasonable consumer."  *Freeman*, 68 F.3d at 289.  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an

unreasonable manner.  Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Ct. App. 2003); *see also Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 116 (Ct. App. 2011).  Whether a representation is "likely to deceive" a reasonable consumer is evaluated in the context of the label or advertisement as a whole, rather than "a single out-of-context phrase found in one component of [a product's] label."  *Hairston v. S. Beach Beverage Co.,* No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012).  "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."  *Id.* at *4-5 (granting Rule 12 motion).

None of the Mars product labels are likely to deceive a reasonable consumer.

**— Presence of Flavanols**:  The Complaint alleges that Mars makes "unlawful flavanol nutrient content claims" on its Dove Dark Chocolate label.  Am. Compl. § C.1.a (¶¶ 70-83).  The Dove Dark Chocolate label contains two statements about flavanols:  (1) "Natural Source of Cocoa Flavanols," and (2) "Our special patented and proprietary COCOAPRO® process helps retain much of the naturally occurring cocoa flavanols."[3]  MRJN Ex. L.  The Complaint fails to state a claim because these statements are not deceptive in any way.

Notably, the Complaint does *not* contend that these statements are untruthful.  Not once does it allege that Dove Dark Chocolate is *not* a natural source of cocoa flavanols, that flavanols are *not* present in Dove Dark Chocolate, or that the COCOAPRO® process does *not* help retain much of chocolate's naturally occurring cocoa flavanols.  Thus, no reasonable consumer could have been misled by these statements regarding flavanols because they are 100% accurate.

Instead of identifying any statement that is actually false or misleading, the Complaint claims that the labeling is "false" only because it implies that Dove Dark Chocolate meets the FDA's

---

[3] The Complaint also attributes to Mars a paragraph about cocoa flavanols which states, among other things, that "[n]o other food on Earth can match the unique blend of flavanols found in cocoa."  Am. Compl. ¶ 75.  This statement does not appear on the labels of any of the products Plaintiff allegedly purchased.  Because it is similar to Plaintiff's other "health claim" allegations, it is addressed in that section.  *See infra* Part I.C.

nutritional requirements for claiming that a product is a "good source" of a nutrient—i.e., that it contains at least 10% of the FDA-established Reference Daily Intake ("RDI") or Daily Reference Value ("DRV") for that nutrient. Am. Compl. ¶¶ 71-72, 77-80. But that allegation conflates a technical regulatory term with a false or misleading representation that violates California consumer-protection law. It is not plausible that a reasonable consumer would even be aware of the FDA "good source" regulation, let alone infer that the term "natural source" means that the product contains a certain percentage of a set daily nutritional requirement of flavanols. *See Mason v. Coca Cola Co.*, 774 F. Supp. 2d 699, 705 n.4 (D.N.J. 2011) (rejecting plaintiff's "attempt to capitalize on an apparent and somewhat arcane violation of FDA food labeling regulations" because "not every regulatory violation amounts to an act of consumer fraud" and "[i]t is simply not plausible that consumers would be aware of FDA regulations regarding 'nutrient content'").

Moreover, Plaintiff's theory of deception based on an alleged violation of FDA regulations is self-defeating because the Dove Dark Chocolate label does not make a "good source" claim. In the unlikely event that a consumer were familiar with the obscure FDA "good source" regulation, she would realize that the term "natural source" is *not* a "good source" claim because it does not "utilize one of the limited defined terms" under FDA regulations for a "good source" claim. Am. Compl. ¶ 70; *see* 21 C.F.R. § 101.54(c). Indeed, it could not be a "good source" claim because there are no established nutritional requirements for flavanols. *See* Am. Compl. ¶ 70. Thus, the statements regarding flavanols are not deceptive.

— **Daily Value of Calories**: The Complaint makes two related allegations regarding the daily value of calories, Am. Compl. § C.1.b (¶¶ 84-100), neither of which has merit.

1. The Complaint alleges that the labels for M&Ms, Snickers "Fun Size," Dove Milk Chocolate and Dark Chocolate bars, and Twix are false and misleading because they state a percent daily value ("DV") of calories in each serving based on a 2,000 calorie diet. *Id.* ¶ 85. According to Plaintiff, these claims are misleading because the FDA has not established a DV for calories and "the exact amount of caloric intake that is appropriate is individualized." *Id.*

This claim fails because the labels tell consumers exactly what a percent DV of calories means. Each product's label states that the percent DV is calculated "based on a 2,000 calorie diet."

*See* MRJN Exs. J-N.  Any reasonable consumer would understand that 2,000 calories is a standardized diet that does not necessarily reflect the "exact amount of caloric intake that is appropriate" for them individually, and that the percent DV would change if a different daily caloric intake were used.[4]  Moreover, each label specifies in three places the precise number of calories per serving—including in large, bold script adjacent to the percent DV.  *See id.*  Thus, a consumer is informed not only of the percentage of the daily value of calories, but exactly how many calories they are consuming.  There is no deception.

Moreover, Plaintiff's claim of deception based on FDA regulations is contradicted by FDA regulations themselves, which *require* that the amount of nutrients in a product be calculated based on a 2,000-calorie diet.  FDA regulations specify that percent DVs for nutrients *must* be printed on product labels, that those percentages *must* be calculated based on a 2,000 calorie diet, and that the labels *must* state that the percent DVs were calculated based on a 2,000 calorie diet.  *See, e.g.*, 21 C.F.R. § 101.9(c)(9) (2012) ("For the purpose of labeling with a percent of the DRV, the following DRV's are established for the following food components *based on the reference caloric intake of 2,000 calories*" (emphasis added)), (d)(9)(i) (mandating that nutrition label shall include a footnote stating that "Percent Daily Values are based on a 2,000 calorie diet").  It defies logic that a reasonable consumer can understand FDA-mandated percent DVs for other nutrients based on a 2,000 calorie diet, but that the same consumer would be misled by a percent DV of calories because the 2,000 calorie diet itself has not been formally declared a "DV" by the FDA.

2.    The Complaint also mistakenly alleges that the labeling is deceptive because it provides a percent DV of calories without containing the following referral statement:  "See nutrition information for [fat, saturated fat, cholesterol, or sodium] content."  *See* Am. Compl. ¶¶ 87, 89, 93.  According to Plaintiff, the labeling misleadingly implies that the product does not "contain[]

---

[4] Contrary to Plaintiff's claim, calculations based on a 2,000 calorie diet do *not* "likely understate[] the actual percentage" of calories appropriate to women.  Am. Compl. ¶ 85.  The FDA extensively considered this issue before settling on a 2,000 calorie diet.  In fact, it originally proposed a 2,350 calorie diet, but reduced it to 2,000 in part to "approximate[] the caloric requirements for postmenopausal women who are at-risk for excessive intake of calories and fat."  Food Labeling; Reference Daily Intakes and Daily Reference Values, 58 Fed. Reg. 2206-01, 2217 (Jan. 6, 1993).

one or more nutrients like total fat or saturated fat at levels in the food that, according to the FDA, 'may increase the risk of disease or health related condition.'" *Id.* ¶ 100.

Plaintiff's allegation once again contradicts the actual product labeling and common sense. By stating the percent DV of calories, the labeling does not say anything about the amount of "unhealthy fat, saturated fat, cholesterol, or sodium levels" contained in the products. *Id.* ¶ 91. It states the amount of *calories*. No reasonable consumer would see a percent DV of calories on a Twix or M&Ms label and thereby infer that these chocolate candy products are all-around healthy and do not have "unhealthy fat, saturated fat, cholesterol, or sodium levels." *Id.* Moreover, the exact amount of fat, saturated fat, cholesterol, and sodium, as well as a percent DV for each of those nutrients (based on a 2,000 calorie diet) is set forth on the FDA-mandated nutrition panel. *See* MRJN Exs. J-N.

Plaintiff's allegation of deception is once again rooted in failure to distinguish FDA regulations from deception. Even if federal regulations required a referral statement (which they do not, *see infra* Part II.B.2), the absence of such a statement in this case does not make the labeling deceptive. The referral statement would not provide any additional information to a consumer—it would simply point to the nutrition panel information that is already present. Indeed, the FDA itself has recognized that the referral statement "is not intended to serve as a primary basis for making a purchase decision" and that it "disagrees with the assertion that the presence of a disclosure statement on a food label will lead consumers to perceive that the labeled food is 'bad,' or that the absence of a disclosure statement on a food label will be perceived as 'good.'" Food Labeling: Nutrient Content Claims, 58 Fed. Reg. 2302-01, 2307 (Jan. 6, 1993). It is not plausible that in the absence of a referral statement, a reasonable consumer could be misled by the percent DV of calories into inferring that a chocolate product does not contain high amounts of fat, saturated fat, cholesterol, or sodium.[5]  Am. Compl. ¶ 100.

---

[5] Nor is this supposed "problem" "compound[ed]" because Mars calculates percent DV on "a per piece or bar or pack basis." Am. Compl. ¶ 93. Adjacent to the percent DV on *every* label is a statement explaining exactly how the percent DV of calories was calculated. *See, e.g.*, MRJN Exs. J-N. M&Ms, Twix, and Dove state a percent DV that is based on serving size. *See id.* Exs. J-M.

(Footnote Cont'd on Following Page)

1    — **PGPR:** The Complaint alleges that Plaintiff was misled by the Twix label because it

2    discloses the ingredient "polyglycerol polyricinoleic acid" by using the acronym "PGPR."  Am.

3    Compl. § C.3 (¶¶ 138-155.1).  It is not plausible that any reasonable consumer would be tricked into

4    buying a chocolate candy bar because the labeling used the term "PGPR" instead of "polyglycerol

5    polyricinoleic acid."  Plaintiff's claim is once again rooted in a misguided interpretation of FDA

6    regulations rather than an allegation of actual deception.  Federal regulations require that the

7    "common or usual name" of each ingredient be printed in the ingredient list.  21 C.F.R. § 101.4(a)

8    (2012).  But "polyglycerol polyricinoleic acid" is not any more familiar to a reasonable consumer

9    than "PGPR" so as to make "PGPR" a deceptive or misleading substitute.  It would be impossible

10   for the acronym "PGPR" to deceive or mislead a reasonable consumer who is *not* familiar with

11   polyglycerol polyricinoleic acid because the full name of the ingredient would mean nothing to that

12   consumer even if it were printed on the label.  And the rare sophisticated consumer who *is* familiar

13   with the ingredient "polyglycerol polyricinoleic acid" would know what the acronym "PGPR"

14   means.  Indeed, Plaintiff does not allege what PGPR could possibly mean *other* than polyglycerol

15   polyricinoleic acid.  At a minimum, any consumer who would base their decision to purchase a

16   candy bar on whether the product contained "polyglycerol polyricinoleic acid" would not eat the

17   product without finding out what PGPR means.  "PGPR" therefore is not deceptive because it

18   precisely identifies the ingredient in a manner sufficient to inform consumers exactly what the

19   product contains.  Thus, the Court should dismiss Plaintiff's "failure-to-spell-out-PGPR" claim.

20   — **Milk Chocolate:**  The Complaint alleges that Dove Milk Chocolate, M&Ms, and Twix

21   labels are misleading because they contain "milk chocolate," but do not state that the milk chocolate

22   is made with alkalis (Dove Milk Chocolate) or vanillin (all three products).  Am. Compl. § C.4

23   (¶¶ 156.1-161.1).  According to the Complaint, by representing that products contain "milk

24   chocolate" without disclosing these ingredients, Plaintiff was misled into believing the products

25   contained "better chocolate."  *Id.* ¶¶ 160.1-61.1.

26

27   _____
(Footnote Cont'd From Previous Page)
Snickers Fun Size states a percent DV for one individually-wrapped bar.  *See id.* Ex. N.  No

28   reasonable consumer could be misled by this information.

The Complaint fails to state a claim because no reasonable consumer would be misled.  First, the Dove Milk Chocolate label states explicitly that its milk chocolate includes "chocolate processed with alkali."  MRJN Ex. M.  There is nothing misleading about a label that states exactly what Plaintiff claims is required.  Second, with regard to vanillin, the Twix, M&Ms, and Dove Milk Chocolate labels all state that their milk chocolate contains "artificial flavors."  *See* MRJN Exs. J, K, M.  FDA regulations specify that vanillin is an "artificial flavor" and require that the ingredients panel use the term "artificial flavor" to disclose the presence of vanillin.  *See infra* Part II.B.4.  There is nothing misleading about labels that contain the exact disclosure Plaintiff claims is "not present."  Am. Compl. ¶ 160.1.  No reasonable consumer would be misled into believing that these products do not contain "an artificial ingredient not found in better chocolate," *id.*, when the labels state explicitly that they *do* contain artificial ingredients.

### B.    Plaintiff Does Not Have Standing.

The Complaint is based on the mistaken premise that the products are "legally worthless" simply because they are allegedly misbranded in violation of federal regulations.  But Plaintiff cannot bring a private cause of action based solely on an allegation that the products' labeling violates federal or state labeling regulations.  Rather, Plaintiff must have "standing," which requires that she be actually injured.  In the case of the UCL and the FAL, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885 (Cal. 2011).  Similarly, the CLRA provides a cause of action only for consumers "who suffer[] any damage as a result of" conduct that violates the CLRA.  Cal. Civ. Code § 1780(a) (West 2012); *Henderson v. Gruma Corp.*, No. CV-10-04173, 2011 WL 1362188, at *6 (C.D. Cal. Apr. 11, 2011) ("The CLRA requires a demonstration of actual reliance for standing purposes.").  In addition to the standing requirements under California law, Plaintiff also must allege an "injury in fact" under Article III of the Constitution.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

It is not plausible that the regulatory violations alleged in the Complaint caused Ms. Gustavson to purchase the Mars candy products.  As explained above, the Mars products' labels are

not false and are not likely to mislead a reasonable consumer.  Rather, Plaintiff's allegations of "deception" are based on alleged violations of arcane federal regulations.  Thus, for these same reasons, Plaintiff has not suffered any actual injury and lacks standing.

> ### C.      The Complaint Fails To State a Claim Based on "Unlawful Health Claims" on Websites.

The Complaint also alleges that Mars makes "unlawful health claims" about unspecified chocolate products on unspecified "websites."  Am. Compl. § C.5 (¶¶ 155.2-185).  These allegations fail to state a claim for four reasons.

First, the Complaint fails to plead these allegations with the particularity required by Federal Rule of Civil Procedure 9(b).  The Complaint's allegations that Mars websites contained false or misleading representations are "grounded in fraud" and thus subject to Rule 9(b)'s heightened pleading standards.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122 (C.D. Cal. 2010).  Plaintiff is required to plead the "who, what, when, where, and how" of the alleged misstatements with particularity.  *Kearns*, 567 F.3d at 1124.  In *Kearns*, the Ninth Circuit affirmed the dismissal of UCL and CLRA claims based on "Ford's televised national marketing campaign" and "sales materials found at the dealership where [the plaintiff] bought his vehicle" because the plaintiff had failed to plead with particularity, among other things, "when he was exposed" to the allegedly misleading materials, "which [of the sales materials] he found material," and "which sales material he relied upon in making his decision" to purchase a Ford.  *Id.* at 1125-26.

Plaintiff has failed to allege the "who, what, when, where, and how" of the alleged "health claims."  As in *Kearns,* the Complaint makes general references to Defendants' "websites" and the "widespread practice of making unlawful and unauthorized health claims," but fails to identify which specific statements form the basis of the alleged fraud.  Am. Compl. ¶ 165.  The *only* statements identified in the Complaint are paragraphs on websites about cocoa flavanols.  *See id.* ¶¶ 75, 163-166.  These allegations are insufficient to state a claim because they do not state with specificity that Plaintiff *relied* on these statements to purchase the Mars candy.  *See Kearns*, 567 F.3d at 1124-26.  The Complaint makes only a generic allegation that Plaintiff "saw such health

MARS'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT - C12-01861 LHK

claims and relied on the Defendants' health claims which influenced her decision to purchase the Defendants' products."  Am. Compl. ¶ 167.  That reference is far too general to state a claim because it does not allege that Plaintiff saw and relied on any particular statement.  Moreover, the Complaint fails to identify with particularity the source(s) of the statements (i.e., the website and webpage), when or where the Plaintiff saw each statement, what parts of each statement she found material to her purchasing decision(s), and which specific Mars product(s) she allegedly purchased in reliance on which statement.  This lack of specificity fails to meet Rule 9(b)'s requirements.

Second, Plaintiff's claims are premised on alleged violations of federal regulations governing food and drug labeling, but the websites referenced in the Complaint are not "labeling" of the chocolate products at issue.  The FDCA and its accompanying food labeling regulations apply only to "labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."  21 U.S.C. § 321(m) (2006).   Printed or graphic matter "accompanies" a product's packaging "when it supplements or explains it, in the manner that a committee report of the Congress accompanies a bill," such that the literature and product packaging are "interdependent . . . parts of an integrated distribution program."  *Kordel v. United States*, 335 U.S. 345, 350 (1948); *see also Alberty Food Prods. Co. v. United States*, 185 F.2d 321, 325 (9th Cir. 1950) (holding newspaper advertisement not "labeling" because it was not "distributed to consumers as part of an integrated distribution program" and was not "an essential supplement to the label attached to the package" such that "the product and the literature [were] 'interdependent'"); *United States v. 24 Bottles*, 338 F.2d 157, 159 (2d Cir. 1964) ("The distinguishing characteristic of a label is that, in some manner or another, it is presented to the customer in immediate connection with his view and his purchase of the product.").

The Complaint alleges that Mars makes "health claims" on "websites," but does *not* allege that these representations were even about the products Plaintiff allegedly purchased, much less that they were an essential supplement to the label.  None of the alleged statements Plaintiff identifies refer to M&Ms, Snickers, Dove, or Twix.  *See*, *e.g.*, Am. Compl. ¶¶ 75, 164.  Rather, Plaintiff appears to be quoting from the website www.cocoavia.com—an unrelated website that does not even refer to M&Ms, Twix, Dove, or Snickers.  *See* MRJN Exs. O-R.  Accordingly, Plaintiff has not

alleged facts sufficient to establish that these purported "health claims" are part of the products' labeling.

Third, even if these statements on websites were part of the products' labeling, they are not likely to deceive a reasonable consumer. The Complaint does not allege that any of these purported statements are untrue. Rather, the Complaint implausibly alleges that they led Plaintiff to make broad, unwarranted inferences about the health qualities of the chocolate candy she purchased. For example, the Complaint claims that representations that Mars chocolate is "part of a healthy diet," Am. Compl. ¶ 163, and that cocoa flavanols help maintain circulatory health, *id.* ¶ 164, led Plaintiff to believe that M&Ms, Twix, Snickers, and Dove chocolate bars are drugs approved by the FDA for "for use in the cure, mitigation, treatment, or prevention of disease." *Id.* ¶¶ 166-168. But the products at issue are *chocolate candy*. It is not likely that a reasonable consumer would see those statements and conclude that M&Ms had undergone an FDA drug approval process. In fact, many of the supposed "health claims" on cocoavia.com that Plaintiff quotes contain explicit disclaimers that "[t]his statement has not been evaluated by the [FDA]" and "[t]his product is not intended to diagnose, treat, cure, or prevent any disease." *See* MRJN Exs. O, Q. Thus, Plaintiff's proposed inferences from these websites are not plausible. *See Mason*, 774 F. Supp. 2d at 703 (dismissing claim alleging "Diet Coke Plus" was misleading because "plaintiffs simply make a broad assumption that defendant intended for Diet Coke Plus's vitamin and mineral content to deceive plaintiffs into thinking that the beverage was 'healthy'" (citation omitted)).

## II.     Plaintiff's Claims Are Preempted by Federal Law.

The FDCA establishes a comprehensive federal regulatory scheme to ensure that food is safe and is labeled in a manner that does not mislead consumers. The FDCA vests the FDA with authority to "protect the public health by ensuring that . . . foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A) (2006).

In 1990, Congress enacted the NLEA, Pub. L. No. 101-535, 104 Stat. 2353 (1990), which amended the FDCA to "'establish uniform national standards for the nutritional claims and the required nutrient information displayed on food labels.'" *Lam v. Gen. Mills, Inc.*, No. 11-5056, --- F. Supp. 2d ----, 2012 WL 1656731, at *3 (N.D. Cal. May 10, 2012) (quoting H.R. Rep. No. 101–

538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3342).  Two subsections of the NLEA, 21 U.S.C. § 343(q) and (r), set forth detailed requirements for nutritional information and claims on food labels.  Pursuant to the NLEA, the FDA has promulgated a comprehensive set of regulations regarding food labeling.  *See* 21 C.F.R. §§ 101.1 *et seq.* (2012).

Plaintiff alleges that Mars is liable because the products' labeling violated the FDCA and its accompanying federal regulations.  This claim is preempted by federal law for two reasons.  First, section 337 the FDCA bars the enforcement of the FDCA and its regulations through private lawsuits.  Second, section 343-1 of the NLEA expressly preempts plaintiffs' misbranding claims because they would impose different labeling requirements than those under federal law.

### A.  The FDCA Bars Enforcement Through Private Lawsuits.

"Section 337(a) of the FDCA bars private enforcement of the statute . . . ."  *PhotoMedex, Inc. v. Irwin,* 601 F.3d 919, 924 (9th Cir. 2010).  Section 337(a) states that, except as set forth in section 337(b), "all . . . proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States.'"  21 U.S.C. § 337(a) (2006).  Section 337(b), enacted as part of the NLEA, permits a State to bring an enforcement proceeding "in its own name" for violation of the FDCA's food labeling requirements.  *Id.* § 337(b)(1).  The State, however, must first notify the FDA of its proposed enforcement proceeding and is barred from commencing the proceeding if the FDA chooses to engage in its own enforcement proceeding relating to the issue.  *Id.* § 337(b).

Plaintiff's complaint seeks to avoid this express prohibition on private enforcement suits by alleging that the products' labeling violates *California law* that incorporates the FDCA by reference, rather than the FDCA itself.  *See* Am. Compl. ¶ 47 (alleging that the product's labeling violates the Sherman Law, Cal. Health & Safety Code § 110110, a California statute that "has expressly adopted the federal labeling requirements as its own"); *see also id.* ¶ 48 (alleging violations of California "laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations").

But section 337 also bars private lawsuits seeking to enforce the FDCA indirectly through state law or other federal statutes.  "The Supreme Court made clear in *Buckman* that [section 337]

also limits the ability of a private plaintiff to pursue claims *under state law theories* where such claims collide with the exclusive enforcement power of the federal government." *PhotoMedex*, 601 F.3d at 924 (emphasis added) (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349-50 (2001)). In *Buckman*, the plaintiffs brought state tort law causes of action alleging that the defendant made fraudulent misrepresentations during the FDA approval process, in violation of federal regulations. 531 U.S. at 344. The Court stated that section 337 of the FDCA "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the [FDCA]." *Id.* at 349 n.4. The Court explained that the FDA uses its enforcement authority "to achieve a somewhat delicate balance of statutory objectives," which "can be skewed by allowing" state law causes of action based on regulatory violations. *Id.* at 348. The FDA "has at its disposal a variety of enforcement options that allow it to make a measured response" to regulatory violations, and "[t]his flexibility is a critical component of the statutory and regulatory framework under which the FDA pursues difficult (and often competing) objectives." *Id.* at 348-49. Accordingly, the Court held that plaintiff's state-law claims "conflict with, and are therefore impliedly pre-empted by, federal law." *Id.* at 348.

Applying *Buckman*, the Ninth Circuit has rejected private lawsuits seeking to enforce violations of the FDCA. In *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1176 (9th Cir. 2012), the Ninth Circuit held that "[a] plaintiff may not, for example, sue under the Lanham Act to enforce the FDCA or its regulations because allowing such a suit would undermine Congress's decision to limit enforcement of the FDCA to the federal government." And in *PhotoMedex*, the court held that "[b]ecause the FDCA forbids private rights of action under that statute, a private action brought under the Lanham Act may not be pursued when, as here, the claim would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation." 601 F.3d at 924.

Similarly, federal courts have rejected claims that attempt to enforce the FDCA through California law—just as plaintiff's claims seek to do here. In *Fraker v. KFC Corp.*, No. 06-CV-01284, 2007 WL 1296571, at *4 (S.D. Cal. Apr. 30, 2007), the court rejected a claim that sought to enforce the FDCA through the Sherman Act, holding that "to the extent [a] Plaintiff contends that

alleged violations of the FDCA and Sherman Law give rise to viable state law claims, such claims are impliedly preempted by the FDCA." *Id.* at \*4. *See also Goldsmith v. Allergan, Inc.*, No. CV 09-7088, 2011 WL 147714, at \*7 (C.D. Cal. Jan. 13, 2011) (dismissing UCL claim because "the UCL is not a proper vehicle for a private litigant to use to enforce the FDCA"); *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1164 (S.D. Cal. 2009) (dismissing "CLRA and UCL claims . . . premised on violations of the FDCA and its regulations . . . because they impermissibly seek private enforcement of the FDCA"); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290 (C.D. Cal. 2008) (courts will dismiss a lawsuit that "largely constitutes an attempt to shoehorn allegations that Defendants have . . . [acted] in violation of the FDCA into . . . state consumer fraud causes of action").

Contrary to these federal precedents, the California Supreme Court held in *Farm Raised Salmon* that section 337 does not preempt a state law claim brought under the Sherman Act based on violations of the FDCA. *In re Farm Raised Salmon Cases*, 175 P.3d 1170, 1181-84 (Cal. 2008). The court's opinion fundamentally misconstrues the federal statutory scheme and should not be followed.[6]

First, *Farm Raised Salmon* is based on the highly formalistic position that private actions brought under the Sherman Act are predicated solely under state law and "do not seek to enforce the FDCA," *id.* at 1181—notwithstanding that the Sherman law simply adopts the FDCA and its regulations wholesale. But that completely ignores the rationale of *Buckman*. As explained above, *Buckman* (and other courts) have found that private actions to enforce the FDCA are preempted, whether the claim is brought under the FDCA directly or indirectly through state law or other federal statutes. Indeed, *Buckman* itself addressed state law claims. Its rationale was that private enforcement actions "would exert an extraneous pull on the scheme established by Congress." 531 U.S. at 353. That same pull exists whether the vehicle for enforcement of the FDCA is state or federal law.

---

[6] This Court is not bound by a California state court's interpretation of federal law, particularly when the issue is whether federal law preempts California law.

Second, *Farm Raised Salmon* was based on a misinterpretation of *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 474 (1996), in which the Supreme Court held that the express preemption provision of section 360k of the FDCA did not preempt "a state common-law negligence action against the manufacturer of an allegedly defective medical device." But neither section 337 nor *Buckman* were implicated in *Lohr* because *Lohr* did not involve state law claims that arose "solely from the violation of FDCA requirements." *Buckman*, 531 U.S. at 352-53 (distinguishing *Lohr*). It is "a narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption." *Bryant v. Medtronic, Inc. (In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.)*, 623 F.3d 1200, 1204 (8th Cir. 2010).[7] "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Id.*; *see also Loreto v. Procter & Gamble Co.*, 737 F. Supp. 2d 909, 919 (S.D. Ohio 2010) ("A purported state-law claim does not exist where the claim is in substance (even if not in form) a claim for violating the FDCA—that is, when the state claim would not exist if the FDCA did not exist. Simply put, plaintiff must not be suing because the conduct violates the FDCA." (quotation marks and citations omitted)); *accord Animal Legal Def. Fund Boston, Inc. v. Provimi Veal Corp.*, 626 F. Supp. 278, 283 (D. Mass. 1986) (claims "based on violations of the FDCA or the parallel Massachusetts statute" barred by section 337), *aff'd*, 802 F.2d 440 (1st Cir. 1986) (Table).

There can be no question that Plaintiff is suing because the products' labeling allegedly violates the FDCA. The Complaint admits that the claims are brought under California statutes that have "expressly adopted the federal labeling requirements" under the FDCA. Am. Compl. ¶¶ 47, 48. And the bulk of the Complaint is devoted to detailed allegations attempting to explain why the products are "misbranded" under a maze of federal food labeling regulations. *See id.* ¶¶ 61-185. It is difficult to imagine a Complaint that is more squarely based on federal regulations. Thus, because

---

[7] A panel of the Ninth Circuit has endorsed the Eighth Circuit's explanation. *See Stengel v. Medtronic Inc.*, 676 F.3d 1159, 1165 (9th Cir. 2012). *Stengel* is currently under *en banc* review. *See* 686 F.3d 1121 (9th Cir. 2012) (order).

the Complaint is expressly based on alleged violations of the FDCA and its regulations, it crosses the line into an area in which the Supreme Court and Congress have prohibited private enforcement actions.

Third, *Farm Raised Salmon's* basic misunderstanding of *Buckman* and the FDCA is further demonstrated by its conclusion that "while allowing private remedies based on violations of state laws identical to the FDCA may arguably result in actions that the FDA itself might not have pursued, Congress appears to have made a conscious choice not to preclude such actions." 175 P.3d at 1184. But Congress decided exactly the opposite. In enacting section 337, it expressly barred private enforcement proceedings and determined that *only* the federal government and States in their own names can enforce the FDCA. Allowing private state lawsuits to enforce FDCA provisions in a manner that is inconsistent with the FDA's enforcement decisions would directly undermine the federal scheme established by Congress. As the Ninth Circuit stated:

> The FDCA explicitly says that enforcement power is reserved to the federal government. To permit PhotoMedex to proceed with a claim that Defendants violated this law when the FDA did not so determine would, in effect, permit PhotoMedex to assume enforcement power which the statute does not allow and require the finder of fact to make a decision that the FDA itself did not make.

*PhotoMedex*, 601 F.3d at 930.

Indeed, the FDA's discretion *not* to enforce certain regulations is a central feature of the FDCA enforcement scheme. The FDCA specifically recognizes this regulatory discretion: "Nothing in this chapter shall be construed as requiring the Secretary to report for prosecution, or for the institution of libel or injunction proceedings, minor violations of this chapter . . . ." 21 U.S.C. § 336 (2006). Every regulatory violation is not equal, and the FDA exercises its discretion on deciding which ones to enforce. Thus, permitting private action in state court based on alleged violations of FDCA regulations that "the FDA might not have pursued" is exactly the type of intrusion into the federal process that section 337 and *Buckman* prohibits.[8]

---

[8] Some other federal district courts have followed *Farm Raised Salmon*. *See, e.g.*, *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166, 2009 WL 6597891 (S.D. Cal. Dec. 23, 2009). They are incorrectly decided for the same reasons discussed above.

**B.      The NLEA Expressly Preempts Plaintiff's Misbranding Claims.**

When it passed the NLEA, Congress expressly preempted any state law requirements "not identical" to those established by the NLEA:

> [N]o State . . . may directly or indirectly establish under any authority . . .
>
> (4) any requirement for nutrition labeling of food that is *not identical* to the requirement of section 343(q) of this title . . . or
>
> (5) any requirement respecting any claim of the type described in section 343(r)(1) . . . made in the label or labeling of food that is *not identical* to the requirement of section 343(r) . . . .

21 U.S.C. § 343-1(a)(4), (5) (2006) (emphases added).  Under FDA regulations, "not identical to" means "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling" that are "not imposed by or contained in the applicable provision [or regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable provision [or regulation]."  21 C.F.R. § 100.1(c)(4)(i)-(ii); *Lam*, 2012 WL 1656731, at *3.

Accordingly, the NLEA preempts state law claims that seek to require food labels to contain information that is not identical to the information required by the NLEA and its implementing regulations.  *See, e.g.*, *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (Posner, J.) ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test [for NLEA preemption]; identity is."); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (same); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1118 (C.D. Cal. 2010) (same).

Plaintiff's claims are preempted because they seek to impose labeling requirements that are "not identical" to those required by the NLEA and its implementing regulations.

**1.      The NLEA Preempts Plaintiff's Claims Based on Statements About the Presence of Flavanols in Cocoa.**

The Complaint alleges that the statements on the Dove Dark Chocolate label regarding cocoa as a "natural source" of flavanols are "nutrient content claims" that violate FDA regulations.  Am. Compl. ¶¶ 70, 77.  But Plaintiff's allegations are founded on a mistaken premise.  These statements do not use FDA-defined terms, and are not required to use FDA-defined terms, because they are *not* "nutrient content claims," as defined by FDA regulations.

1   Under the NLEA, a statement on a food label that "expressly or by implication . . .

2   characterizes the level of any nutrient which is of the type required" by the NLEA to be listed on the

3   nutrition label "may be made only if the characterization of the level . . . uses terms which are

4   defined in" FDA regulations.  21 U.S.C. § 343(r)(1)(A), (r)(2)(A)(i).  Pursuant to this provision, the

5   FDA has promulgated regulations governing "nutrient content claims"—defined as "[a] claim that

6   expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition

7   labeling under § 101.9 or under § 101.36." 21 C.F.R. § 101.13(b) (2012).  The statements on the

8   Dove Dark Chocolate label do not meet this definition of "nutrient content claims" for two reasons.

9   First, FDA regulations do not list flavanols as nutrients "of the type required to be in

10   nutrition labeling under § 101.9 or under § 101.36." *Id.*  Flavanols are a category of antioxidant

11   compounds found in plants.  21 C.F.R. sections 101.9 and 101.36 list a number of nutrients that

12   must be included in nutrition labeling, including fat, sodium, potassium, carbohydrates, and a list of

13   over 20 vitamins and minerals. *See, e.g.*, 21 C.F.R. § 101.9(c).  No flavanols are listed.

14   Second, the statements do not "expressly or implicitly characterize[] the level" of flavanols

15   in Dove Dark Chocolate.  21 C.F.R. § 101.13(b).  They are not "expressed nutrient content claim[s]"

16   because they do not make any "direct statement about the level (or range)" of flavanols in the

17   product—e.g., they do not state that the product is "high" in flavanols. *Id.* § 101.13(b)(1).

18   Nor do they constitute implied nutrient content claims, which is a statement that either: (i)

19   "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or

20   present in a certain amount (e.g., 'high in oat bran')"; or (ii) "[s]uggests that the food, because of its

21   nutrient content, may be useful in maintaining healthy dietary practices and is made in association

22   with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')." *Id.*

23   § 101.13(b)(2)(i)-(ii).  A statement that the product is a "natural source" of cocoa flavanols does not

24   describe "the *food* or an *ingredient*," and it does not suggest that flavanols are "absent or present in a

25   *certain amount*." *Id.* § 101.13(b)(2)(i) (emphasis added).  Likewise, "natural source of cocoa

26   flavanols" is not a representation that Dove Dark Chocolate "may be useful in maintaining healthy

27   dietary practices" paired with a separate, "explicit claim or statement" about cocoa flavanols. *Id.*

28   § 101.13(b)(2)(ii).  Rather, these statements do no more than inform consumers that cocoa flavanols

are naturally present in the product—a truthful statement—without making any "characterizations" about the actual "level" of cocoa flavanols in the product.

Plaintiff's sole basis for alleging the contrary is to quote a letter from the FDA's New England District Office to a producer of clover sprouts. *See* Am. Compl. ¶ 73. That letter is irrelevant. First, it does not discuss *flavanols* or address the particular statements made on the Dove label. Second, it is inconsistent with the plain terms of the NLEA and FDA regulations governing nutrient content claims, as explained above. It is, at best, representative of an enforcement position taken by an FDA regional office against a different food producer on a particular matter; it does not amend the NLEA or its implementing regulations, nor does it necessarily represent the official interpretive position of the FDA. *See United States v. Mead Corp.*, 533 U.S. 218, 233-35 (2001) (holding customs letter ruling only entitled to *Skidmore* deference "proportional to its 'power to persuade'" because "[a]ny suggestion that rulings intended to have the force of law are being churned out at a rate of 10,000 a year at an agency's 46 scattered offices is simply self-refuting" (citation omitted)).

Thus, the statements on the Dove Dark Chocolate label are not nutrient content claims and are not required to use FDA-defined terms. Yet the Complaint attempts to impose liability on Mars on the basis that it fails to use an FDA-defined term. That claim is preempted because it would impose obligations that are "not imposed by or contained in" the FDCA or FDA regulations. 21 C.F.R. § 100.1(c)(4)(i) (2012); *Lam*, 2012 WL 1656731, at *3.

### 2. The NLEA Preempts Plaintiff's Claims Regarding Caloric Daily Values.

The NLEA preempts Plaintiff's claim that Mars chocolate products are misbranded because their labels state a percent DV of calories based on a 2,000-calorie diet. Am. Compl. ¶ 85. Nothing in the FDCA or its implementing regulations prohibits a label from stating a percent DV of calories based on a 2,000-calorie diet. To the contrary, the FDA itself calculates all RDIs and DRVs based on a 2,000 calorie diet. *See, e.g.*, 58 Fed. Reg. at 2317-18.

Moreover, FDA regulations expressly authorize that "the label or labeling of a product may contain a statement about the amount *or percentage* of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading

in any respect (e.g., '100 calories' or '5 grams of fat')."  21 C.F.R. § 101.13(i)(3) (emphasis added).

A percent DV of calories complies with 21 C.F.R. § 101.13(i)(3) because it is (1) a "percentage," (2) of a "nutrient," (3) that does not "implicitly characterize the level" of that nutrient, and (4) is not "false or misleading."  Providing a numerical percentage does not *imply* anything about the level of calories in the product (e.g., it does not state that the product is "low calorie").  *See, e.g.*, 58 Fed. Reg. at 2310 (explaining that statements like "100 calories" or "5 grams of fat" are "a simple statement of amount that, by itself, conveys no implied characterization of the level of the nutrient").  And the percent is not misleading because it is calculated using the same caloric baseline the FDA uses to calculate all other nutrient DVs and is always accompanied by disclosure of all of the information used to calculate that percentage: (1) the numerator (calories per measured serving), the denominator (a 2,000 calorie diet), and the size of the serving being measured (e.g., an individually wrapped package).  *See* MRJN Exs. J-N.  Thus, providing a percent DV of calories is expressly authorized by 21 C.F.R. § 101.13(i)(3).  To the extent Plaintiff alleges that this would violate California law, that claim is preempted by the NLEA because it attempts to impose obligations that are "not imposed by or contained in the applicable provision [or regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable provision [or regulation]."  21 C.F.R. § 100.1(c)(4)(i)-(ii).

### 3.    The NLEA Preempts Plaintiff's Claims Regarding Use of "PGPR."

The NLEA preempts Plaintiff's claim that Twix is misbranded under FDA regulations because it does not use the long form name of "polyglycerol polyricinoleic acid."  FDA regulations require that a food label identify its ingredients "by common or usual name."  21 C.F.R. § 101.4(a)(1) (2012).  A "common or usual" name "shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients."  21 C.F.R. § 102.5(a) (2012).  A common or usual name "may be established by common usage or by establishment of a regulation."  *Id.* § 102.5(d).

The Complaint alleges that "polyglycerol polyricinoleic acid," and not "PGPR," is the ingredient's common or usual name, yet pleads no facts to support that conclusory allegation.  *See* Am. Compl. ¶ 148.  Nor could it: neither the FDCA nor FDA regulations specify that the long-form

name of an ingredient is its "common or usual" name.  Nor do they specify that an acronym such as "PGPR" cannot be a common or usual name.  Indeed, even the FDA itself refers to polyglycerol polyricinoleic acid as "PGPR."  *See, e.g.*, MRJN Ex. S (FDA Response Letter to GRAS Notice No. GRN 000270).

To the extent Plaintiff purports to allege that California law requires otherwise, that claim is preempted by the NLEA because it attempts to impose an obligation "not imposed by or contained in the applicable provision [or regulation]."  21 C.F.R. § 100.1(c)(4).  And to the extent Plaintiff purports to allege that as a factual matter, PGPR is not a "common or usual name," Plaintiff's bare conclusory allegation is exactly the sort of "label[] and conclusion[]," without any factual support, that is inadequate to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.

### 4.       The NLEA Preempts Plaintiff's Claims Regarding the Milk Chocolate Standard of Identity.

Plaintiff claims that the labels for Dove Milk Chocolate, M&Ms and Twix violate federal regulations because they fail to disclose that they were processed with alkali or contain vanillin in accordance with the federal standard of identity for milk chocolate.  Am. Compl. ¶ 160.1.

The FDCA authorizes the FDA to promulgate "a reasonable definition and standard of identity" for any food.  21 U.S.C. § 341 (2006).  Any food which "purports to be . . . a food for which a definition and standard of identity has been prescribed" is misbranded unless "(1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food."  *Id.* § 343(g).  The FDA has promulgated a standard of identity for "milk chocolate" at 21 C.F.R. § 163.130(a), which includes certain declarations that must be made about optional ingredients.

First, 21 C.F.R. § 163.130(c)(1) specifies that "[w]hen optional alkali ingredients are used in the preparation of the chocolate liquor . . . from which the milk chocolate was prepared, the label shall bear the statement 'Processed with alkali'."  *Id.* § 163.130(c)(1).

Second, 21 C.F.R. § 163.130(c)(3) specifies that "[w]hen one or more of the . . . flavorings . . specified in paragraph (b)(3) of this section [which includes 'artificial flavorings'] are used . . . ,

the label shall bear an appropriate statement, e.g., . . . 'Flavored with _____', . . . the blank being filled in with the common or usual name of the . . . flavoring . . . used, *in accordance with § 101.22 of this chapter*." *Id.* §163.130(c)(3) (emphasis added).  Section 101.22 states, "[t]he label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way:  (1) . . . artificial flavor may be declared as . . . 'artificial flavor.'"  *Id.* § 101.22(h)(1).  Artificial flavoring is defined to include "the substances listed in . . . [section] 182.60 of this chapter."  *Id.* § 101.22(a)(1).  Vanillin is one of the substances listed in section 182.60.  *See id.* § 182.60.  Thus, FDA regulations establish that the use of vanillin in milk chocolate must be disclosed in the list of ingredients using the term "artificial flavor."

Contrary to Plaintiff's claims, the Mars products disclose the presence of alkali ingredients and vanillin in full compliance with these regulations.  Plaintiff alleges that Dove Milk Chocolate fails to state that it contains alkali and vanillin, Am. Compl. ¶ 160.1, but the label states explicitly that it contains "chocolate processed with alkali" and "artificial flavors."  *See* MRJN Ex. M.  Likewise, Plaintiff alleges that M&Ms and Twix fail to state that their milk chocolate was flavored with vanillin, Am. Compl. ¶ 160.1, but the labels of both products state that the milk chocolate contains "artificial flavors."  *See* MRJN Exs. J-K.

Thus, insofar as Plaintiff's claims are based on the disclosure of alkali or vanillin ingredients in milk chocolate products, they are expressly preempted because they attempt to impose a labeling requirement that is "not identical" to the requirements of Section 343(r) of the NLEA and 21 C.F.R. § 101.60.  *See, e.g.*, *Lam*, 2012 WL 1656731, at *4 (finding that plaintiff's claims were preempted because "the labeling challenged by [plaintiff] . . . is expressly permitted by FDA regulations"); *Peviani*, 750 F. Supp. 2d at 1119-20 ("Plaintiff's claims seek to enjoin the use of the very term permitted by the NLEA and its accompanying regulations.  Plaintiff's claims must therefore fail because they would necessarily impose a state-law obligation . . . that is not required by federal law."); *Red v. Kroger Co.*, No. CV 10-010125, 2010 WL 4262037, at *7 (C.D. Cal. Sept. 2, 2010) (same); *Dvora v. Gen. Mills, Inc.*, No. CV 11-1074, 2011 WL 1897349, at *3-6 (C.D. Cal. May 16, 2011) (same).

**C.    In the Alternative, the Court Should Dismiss Plaintiff's Claims Under the Primary Jurisdiction Doctrine.**

The court should also dismiss Plaintiff's claims because they involve issues committed to the primary jurisdiction of the FDA.  In support of this argument, Mars adopts and incorporates by reference the argument in Part II.C of Wrigley's motion to dismiss.

**III.    Plaintiff's UCL, FAL, and CLRA Claims Are Barred by the "Safe Harbor" Doctrine.**

In support of this argument, Mars adopts and incorporates by reference the argument in Part III of Wrigley's motion to dismiss.

**IV.    The Complaint Fails To State a Claim for Restitution and for Breach of Warranty Under the Song-Beverly and Magnuson Moss Warranty Acts.**

In support of this argument, Mars adopts and incorporates by reference the argument in Parts IV through VI of Wrigley's motion to dismiss.

**V.    Claims Against Mars Based on Wrigley's Gum, Breath Mint, and Hard Candy Products Should Be Dismissed.**

For the reasons explained in Part VII of Wrigley's motion to dismiss, the Court should dismiss all claims against Mars relating to Wrigley's gum, breath mint, and hard candy products. Specifically, the following sections of the Complaint do not identify a Mars product:  "Unlawful Low Calorie Nutrient Claims," Am. Compl. § C.1.c  (¶¶ 101-105); "Unlawful 'Sugar Free' Nutrient Claims," *id.* § C.1.d (¶¶ 106-128); and "Unlawful Serving Sizes," *id.* § C.2 (¶¶ 129-137).  To the extent that any of these claims are construed as applying to a Mars product, notwithstanding this lack of notice, they fail to state a claim for the reasons stated in Wrigley's motion to dismiss pertaining to those sections of the Complaint, which Mars incorporates by reference.

**CONCLUSION**

For the foregoing reasons, and pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), Plaintiff's Complaint should be dismissed in its entirety.

Dated:  September 14, 2012                    Respectfully submitted,

                                                                      By: /s/ Stephen D. Raber
                                                                      Stephen D. Raber (State Bar No. 121958)
                                                                      David M. Horniak (State Bar No. 268441)
                                                                      WILLIAMS & CONNOLLY LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Fax:  (202) 434-5029
E-mail:  sraber@wc.com
E-mail:  dhorniak@wc.com

MARS'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT - C12-01861 LHK

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on September 14, 2012, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

4

Ben F. Pierce Gore                        pgore@prattattorneys.com
equirk@prattattorneys.com

5

PTaylor@barrettlawgroup.com
rtrazo@prattattorneys.com

6

Brian K. Herrington                       bherrington@barrettlawgroup.com

7

Carol Nelkin                              c.nelkin@nelkinpc.com
twhite@nelkinpc.com

8

Charles F. Barrett                        charles@cfbfirm.com

9

dawn@cfbfirm.com

David Shelton                             david@davidsheltonpllc.com

10

David Malcolm McMullan, Jr.               dmcmullan@barrettlawgroup.com
bherrington@barrettlawgroup.com

11

ccmirick@barrettlawgroup.com

Dewitt Marshall Lovelace, Sr.             courtdocs@lovelacelaw.com

12

Jay P. Nelkin                             jnelkin@nelkinpc.com

13

Richard Barrett                           rrb@rrblawfirm.net
Stuart M. Nelkin                          snelkin@nelkinpc.com

14

twhite@nelkinpc.com

15

And I hereby do certify that I have mailed by United States Postal Service the document to

16

the following non CM/ECF participants:

17

Alex Peet

18

Lovelace Law Firm, P.A.
12870 U.S. Highway 98 West
Suite 200

19

Miramar Beach, FL 32550

20

Keith M. Fleischman

21

Ananda N. Chaudhuri
Frank Karam

22

Fleischman Law Firm
565 Fifth Avenue, 7th Floor

23

New York, NY 10017

24

J. Price Coleman

25

Coleman Law Firm
1100 Tyler Avenue, Suite 102

26

Oxford, MS 38655

27

John W. (Don) Barrett

28

Katherine B. Riley

1

Don Barrett, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095

2

3

4

Dated:  September 14, 2012

Respectfully submitted,

5

By: /s/ Stephen D. Raber
Stephen D. Raber (State Bar No. 121958)

6

David M. Horniak (State Bar No. 268441)
WILLIAMS & CONNOLLY LLP

7

725 Twelfth Street, N.W.

8

Washington, DC  20005
Telephone:  (202) 434-5000

9

Fax:  (202) 434-5029
E-mail:  sraber@wc.com

10

E-mail:  dhorniak@wc.com

11

*Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARS'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT - C12-01861 LHK