1   Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
2   1871 The Alameda, Suite 425
    San Jose, CA 95126
3   Telephone:  (408) 429-6506
    Fax:  (408) 369-0752
4   pgore@prattattorneys.com

5   *Attorney for Plaintiff*

6

7                   UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9                         SAN JOSE DIVISION

10

11  PHYLLIS GUSTAVSON, individually and on        Case No. 12-cv-01861 (LHK)
    behalf of all others similarly situated,
12                                                **PLAINTIFF'S MEMORANDUM IN**
                    Plaintiff,                     **OPPOSITION TO MOTION TO**
13                                                **DISMISS AMENDED COMPLAINT BY**
    v.                                            **DEFEEENDANTS WRIGLEY SALES**
14                                                **COMPANY AND WM. WRIGLEY JR.**
    WRIGLEY SALES COMPANY,                        **COMPANY**
15  WM. WRIGLEY JR. COMPANY,
    MARS, INC., and
16  MARS CHOCOLATE NORTH AMERICA,
    LLC,                                          Hearing Date:   January 31, 2013
17                                                Time:           1:30 p.m.
                    Defendants.                   Place:          Courtroom 8, 4th Floor
18                                                Judge:          Hon. Lucy H. Koh

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................. vi

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ................................................................................................................. 1

FACTUAL ALLEGATIONS.................................................................................................. 4

ARGUMENT ...................................................................................................................... 5

I.    Standard of Review ................................................................................................ 5

II.   Plaintiff Has Adequately Pleaded Claims Under California's Unfair
      Competition Law, False Advertising Law, and Consumers Legal Remedy
      Act ..................................................................................................................... 6

      B.   The "Reasonable Consumer" Test Is Inapplicable at This Stage............................ 7

      C.   Wrigley's "Reasonable Consumer" Arguments Have No Merit ............................ 8

      D.   Plaintiff Has Standing Because She Has Adequately Alleged Legal
           Injury and Injury-in-Fact .......................................................................... 12

      E.   Plaintiff Has Adequately Alleged Reliance and Deception ................................. 13

      F.   Plaintiff's Allegations Related to Wrigley's Website and "Benefits
           of Chewing" Publication Satisfy Rule 9(b)......................................................... 14

III.  Plaintiff's Claims Are Not Preempted ...................................................................... 17

      A.   There is a Strong Presumption Against Preemption ............................................. 17

      B.   Plaintiff Is Not Enforcing the FDCA .................................................................. 17

      C.   Plaintiff May Bring Suit to Enforce *California* Food-Labeling
           Requirements That Are Identical to FDCA Requirements .................................... 17

IV.   The Doctrine of Primary Jurisdiction Is Inapplicable ............................................. 24

V.    Plaintiff's Claims Are Not Barred By the "Safe Harbor Provision"............................. 25

VI.   Plaintiff Has Properly Pleaded Unjust Enrichment, Song-Berverly
      Consumer Warranty Act And Magnuson-Moss Warranty Act Claims ........................... 25

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Altria Group, Inc. v. Good*,
    555 U.S. 70 (2008) ................................................................................................................ 17

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ............................................................................................................ 5

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    2011 WL 2111796 (N.D. Cal. May 26, 2011) ............................................................... *passim*

*Baas v. Dollar Tree Stores, Inc.*,
    2007 U.S. Dist. LEXIS 65979 (N.D. Cal. Aug. 29, 2007)................................................. 14

*Bank of the West v. Superior Court*,
    2 Cal. 4th 1254 (1992) .......................................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................... 5

*Briseno v. Conagra Foods, Inc.*,
    No. 2:11-cv-05379 MMM-AGR, Slip. Op. (C.D. Cal. Nov. 23, 2011) .............................. 7

*Brooks v. ComUnity Lending, Inc.*,
    2010 U.S. Dist. LEXIS 67116 (N.D. Cal. Jul. 6, 2010) ..................................................... 14

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ........................................................................................................ 25

*Chacanaca v. Quaker Oats*,
    752 F. Supp. 2d 1111 (2010)............................................................................................... 19

*Chavez v. Blue Sky Natural Bev. Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010) ....................................................................................... 18

*Chavez v. Blue Sky Natural Bev. Co.*,
    340 Fed. Appx. 359 (9th Cir 2009) .................................................................................... 12

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008).............................................................................................. 24

*Comm. on Children's Television, Inc. v. General Foods Corp.*,
    35 Cal. 3d 197 (1983) ........................................................................................................... 6

*Delacruz v. Cytosport, Inc.*,
    2012 WL 2563857 (N.D. Cal. June 28, 2012) ................................................................... 24

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995).................................................................................................... 7

*Henderson v. Gruma Corp.*,
    2011 WL 136188 (C.D. Cal. April 11, 2011) ....................................................................... 7

*Hitt v. Arizona Beverage Co., LLC*,
    2009 WL 449190 (S.D. Cal. Feb. 4, 2009) ...................................................................... 19

*In re Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008) ....................................................................................... 17, 18, 19

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................................................................ 5

*In re Steroid Hormone Product Cases*,
    181 Cal. App. 4th 145 (2010)..................................................................................... 8, 12

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ...................................................................................................... 8

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ...................................................................................................... 6

*Khasin v. Hershey Co.*,
    2012 WL 5471153 (N.D. Cal. Nov. 9, 2012).......................................................... *passim*

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) .................................................................................................... 12

*Langdon v. Credit Mgmt., LP*,
    2010 U.S. Dist. LEXIS 16138 (N.D. Cal. Feb. 24, 2010)................................................ 5

*Linear Technology v. Applied Materials, Inc.*,
    152 Cal. App. 4th 115 (2007)......................................................................................... 7

*Lockwood v. Conagra Foods, Inc.*,
    597 F. Supp. 2d 1028 (N.D. Cal. 2009) ........................................................................ 18

*Mangini v. R.J. Reynolds Tobacco Co.*,
    7 Cal. 4th 1057 (1994) .................................................................................................... 6

*Medrazo v. Honda of North Hollywood*,
    2012 Cal. App. LEXIS 2316 (Cal. App. March 21, 2012) ................................................ 8

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009).......................................................................................... 5

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*,
    104 Cal. App. 4th 508 (2002)......................................................................................... 6

*Rooney v. Cumberland Packing Corp.*,
    2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ................................................................ 11

*Saunders v. Superior Court*,
    27 Cal. App. 4th 832 (1994)........................................................................................... 6

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011)....................................................................................... 12

*Sugawara v. Pepsico, Inc.*,
  2009 WL 1439115 (E.D. Cal. May 21, 2009) .................................................................. 11

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ......................................................................................... 14

*Thomas v. Imbrolio*,
  2012 Cal. App. Unpub. LEXIS 3111 (Cal. Ct. App. 2nd Dist., April 25, 2012) ............. 12

*United States v. Gonzalez-Alvarez*,
  277 F.3d 73 (8th Cir. 2002) ........................................................................................... 12

*Vicuna v. Alexia Foods, Inc.*,
  2012 WL 1497507 (N.D. Cal. April 27, 2012) .................................................................. 2

*Von Koenig v. Snapple Beverage Corp.*,
  713 F. Supp. 2d 1066 (E.D. Cal. 2010) ............................................................................ 7

*Werbel ex rel. v. Pepsico, Inc.*,
  2010 WL 2673860 (N.D. Cal. July 2, 2010) .................................................................... 11

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ...................................................................................... 5, 7

*Wright v. General Mills, Inc.*,
  2009 U.S. Dist. LEXIS 90576 (S.D. Cal. 2009) ............................................................. 25

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ....................................................................................................... 17

**Statutes and Regulations**

21 C.F.R. § 101.12 ................................................................................................................. 22

21 C.F.R. § 101.15 ................................................................................................................. 21

21 C.F.R. § 101.60 .................................................................................................... 3, 15, 24

21 C.F.R. § 101.9 ........................................................................................................... 22, 24

21 C.F.R. § 101.13 ......................................................................................................... 20, 24

21 C.F.R. § 105.66 ......................................................................................................... 15, 20

21 C.F.R. § 101.2 ................................................................................................................... 21

21 U.S.C. § 301 ....................................................................................................................... 1

21 U.S.C. § 321(m) ............................................................................................................... 14

21 U.S.C. § 343(a) ................................................................................................................... 4

43 F.R. 43249 .......................................................................................................................... 3

48 F.R. 43256 ........................................................................................................................ 15

48 F.R. 43258 ........................................................................................................... 15

56 F.R. 60421 ............................................................................................................. 9

58 F.R. 2229 ............................................................................................................. 22

58 F.R. 2278 ............................................................................................................. 11

62 F.R. 67777 ........................................................................................................... 23

77 F.R. 7946 ............................................................................................................. 24

Cal. Bus. & Prof. Code § 1750 ............................................................................... 6, 7

Cal. Bus. & Prof. Code § 17500 ............................................................................... 6

Cal. Health & Safety Code § 109875 ........................................................................ 1

Cal. Health & Safety Code § 110100(a) ................................................................. 17

Cal. Health & Safety Code § 110660 ........................................................................ 4

**<u>Other Authorities</u>**

Bus. & Prof. C. § 17200 Practice § 5.166 (The Rutter Group 2012) .......................... 8

# STATEMENT OF THE ISSUES TO BE DECIDED

**Preemption:**

1. Does a preemption provision that expressly preempts only state requirements "that [are] not identical to" the federal requirements imply that Congress also intended to preempt state requirements that *are* identical to the federal requirements?

2. Is the Court not competent to determine whether a state requirement is identical to a federal requirement?

3. Is equitable abstention and/or stay or dismissal under the doctrine of primary jurisdiction appropriate where there is no allegation of a pending agency enforcement action and the case does not involve issues of first impression?

**Article III/Standing:**

4. Does delving into what a reasonable consumer would rely on and determining whether Plaintiff was or was not deceived by Mars' product labeling raise questions of fact that are beyond the scope of a Rule 12(b)(6) motion?

5. Where the Supreme Court of California and the Ninth Circuit mistaken when they ruled that a plaintiff adequately pleads "injury in fact" when she alleges that, as a result of the false advertising, she purchased a product that she otherwise would not have purchased and paid a premium that she otherwise would not have paid?

6. Can a plaintiff have standing to represent a class for products she himself purchased and a group of similarly labeled products that she did not purchase, so long as it is alleged that there is sufficient similarity between the label of the same defendant's products purchased and not purchased, and that the challenged claims on the labels of the two groups of products are identical in all material aspects?

**Plausibility (*Iqbal/Twombly*):**

7. When a product label is misleading under FDA regulations and California law, can a court say, as a matter of law, that it is plausible that a consumer would be misled by and detrimentally rely on the misleading label?

8. Is Plaintiff required to plead her claims with even more particularity than that required by Rule 9(b)?

9. When a misbranded product cannot be legally sold or held and it is a strict liability crime to do either, is it plausible that Plaintiff and members of the class who purchased such a misbranded product for valuable consideration have been injured by the unlawful sale to them of goods that were illegal to sell to them and illegal for them to hold or resell?

10. Is it plausible that said injury was attributable to the unlawful acts of Defendant?

**Individual Causes of Action:**

11. Do Plaintiff's allegations that, as a result of misleading advertising and labels, she purchased products that she would not otherwise have purchased and paid more than she otherwise would have paid, fail to state a claim under California's false advertising and consumer protection laws?

12. Did Plaintiff fail to adequately allege facts necessary to state warranty claims under the Magnuson-Moss Act?

13. Is a claim for "Restitution Based on Unjust Enrichment/Quasi Contract" subject to dismissal for failure to state a claim on the theory that California does not recognize an independent cause of action for unjust enrichment?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff submits this memorandum in opposition to the motion to dismiss filed by Defendants Wrigley Sales Company and WM. Wrigley JR. Company (collectively "Wrigley" or "Defendants").[1]

Plaintiff's case has two facets:

First, the "*misbranding*" part.  Plaintiff alleges that Wrigley packages, labels and markets "misbranded" food products.  These acts are unlawful and unfair and, standing alone without any allegations of deception, give rise to various claims for relief including relief under the unlawful and unfair prongs of California's Unfair Competition Law and the Consumers Legal Remedies Act.  Plaintiff describes how Wrigley's products are misbranded, alleging unlawful and unfair conduct.  Plaintiff's Amended Complaint ("AC") describes in detail Wrigley's violations of specific sections of California's Sherman Food, Drug and Cosmetic Act, California Health & Safety Code § 109875 *et seq.* (the "Sherman Law") which adopts the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") in defining food as "misbranded" if its labeling is false or misleading, or if it does not contain certain information on its label.  The law is clear: misbranded food cannot be legally manufactured, advertised, distributed, sold or held.  In fact, Wrigley does not argue otherwise.  Misbranded food has no economic value and is worthless *as a matter of law.*

Second, the "*deceptive*" part.  Plaintiff alleges that Wrigley's packaging and labels are misleading, deceptive, fraudulent and unlawful.  Plaintiff's AC comprehensively alleges the falsity, deception and unlawfulness of Wrigley's package labels, product placement and website claims.  Plaintiff alleges that she reasonably relied on Wrigley's misrepresentations, and was thereby deceived, in deciding to purchase Wrigley's products.

To be clear, Plaintiff does not seek to enforce *federal* regulations in this Court; instead Plaintiff seeks to enforce California law, as alleged in the AC.  Plaintiff references Food and Drug

---

[1] Wrigley refers to and incorporates sections of the memorandum submitted by Defendants Mars, Inc. and Mars Chocolate North America, LLC ("Mars") in support of Mars' separate motion to dismiss.  Plaintiff incorporates herein her response in opposition to Mars' memorandum.

Administration ("FDA") regulations because California law adopts and incorporates the text of those regulations. For the reasons explained herein, this Court should deny Wrigley's motion in its entirety.

Facing Plaintiff's allegations, Wrigley's motion recycles arguments that have been rejected so often in the Northern District that they are now discredited. For example, on November 9, 2012 this Court denied a similar motion in *Khasin v. Hershey Co.*, 2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) (J. Davila). That case involved similar products and contained the very issues discussed in this case including those related to preemption, particularity, plausibility and unjust enrichment. Last year, another food company made, and lost, the same arguments in *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ("*Ben & Jerry's*"). Likewise, in April 2012, Judge Hamilton disposed of these same arguments in *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507 (N.D. Cal. April 27, 2012).

Moreover, Wrigley's brief makes several inaccurate statements and arguments which are fully described below, but two are particularly glaring.

First, in response to the allegations in the AC that many Wrigley products claim to be "low calorie" on their labeling when these products, in fact, are not low calorie and cannot be so described under the law, Wrigley states its "products *are* 'low calorie' when consumed in reasonable and ordinary amounts." (Wrigley Br. at 7). This is both nonsense, contrary to governing regulation and contrary to what Wrigley itself told the FDA in 2005. It is nonsense because whether a food product is low calorie or not, is defined by the applicable regulations (21 C.F.R. § 101.60(b)(2), and how much is or is not consumed outside of the definitions provided in the regulations is completely irrelevant. Under Wrigley's rational, each consumer would determine if a food is "low calorie" by adjusting the amount consumed. For example, Wrigley must concede ice cream is not low calorie. However, if a consumer took a single bite of a bowl of ice cream does that render the product "low calorie?" Clearly the answer is no, but that is precisely what Wrigley argues for its products. Wrigley compounds this problem by using unlawfully small serving sizes that result in the understatement of calories per serving size. (AC ¶¶ 129-137).

Wrigley's approach directly contradicts both the governing regulations which make clear that to be low calorie products with reference amounts customarily consumed of 30 grams or less must have 40 calories or less both per reference amount and per 50 gram sample so that calorie dense foods like candy and sugar are not unfairly classified as low calorie merely because of a small serving size or reference amount. 21 C.F.R. § 101.60(b)(2)(i)(B). According to the FDA "[c]alorically dense foods such as sugar, many candies, or potato chips may have a low number of calories but are not appropriately viewed as low calorie." 43 F.R. 43249.

Moreover, Plaintiff has described in detail in the AC that Wrigley has repeatedly represented through its product websites (which according to the FDA constitute labeling because of references to the website on product packaging) that Wrigley's "sugar free" products are low-calorie. For example, a publication entitled "Benefits of Chewing," available on the Wrigley website, falsely represents that Wrigley sugar free gums are "a very low-calorie option." This publication falsely states, in relevant part that "the FDA has allowed the claim 'Low-calorie [sugar free chewing gum] may be useful in weight control.' The insertion of the bracketed phrase "sugar free chewing gum" to the actual words of the FDA is misleading and false because the FDA only approved such a claim for low calorie products, which Defendants' sugar free gum is not." (AC ¶102).

Wrigley's contention is also directly contrary to what Wrigley told the FDA.  In a 2005 letter to the FDA asking the FDA to change the law regarding "sugar free" claims on gum products which are high in calories Wrigley stated, in part, "sugar-free chewing gum cannot be labeled as low-calorie, however, because it contains more than 40 calories per 50 grams." (AC ¶ 103).

Wrigley does more.  Wrigley's website states that "[s]everal types of artificial sweeteners are used in Wrigley's sugar-free products and as flavor enhancers in some other brands." Wrigley lists maltitol, sorbitol and xylitol as part of this group and then falsely states: [t]hese artificial sweeteners deliver long-lasting noncaloric taste." (AC ¶ 112).  What Wrigley does not say is that maltitol, sorbitol and xylitol are all nutritive, caloric sweeteners.  *Id*. Moreover, Wrigley fails to make a number of required disclosure statements that are designed to inform

consumers of the nutritional aspects of food. (AC ¶ 110-112).

To summarize, Wrigley is proclaiming many products as low calorie, but has already admitted to the FDA these products are not because they cannot comply with the low calorie requirements.  It falsely misrepresents its sweeteners as non-caloric when they are caloric and it fails to make required labeling disclosures that would inform consumers of the nutritional aspects of Wrigley products. It then compounds this problem by utilizing unlawfully small serving sizes that understate calories on a per serving size basis. Wrigley's efforts are unlawful and misleading in this regard.  It is false to represent Wrigley "sugar free" gums as being low calories as they provide more than 40 calories per 50 gram basis. For example, Wrigley's Eclipse Winterfrost sugar free gum has 83 calories per 50 grams.  (AC ¶¶ 102, 114).  Wrigley conveniently ignores the allegations related to the product.

Second, in an attempt to justify its unlawfully small serving sizes, Wrigley cites from a nearly fifteen year old 1997 FDA "rule" named Food Labeling; Serving Sizes; Reference Amount and Serving Size Declaration for Hard Candies, Breath Mints.  (Wrigley Br. at 7-8).  Wrigley however, ignores that this was just a proposal that never advanced in the nearly 15 years since it was proposed since the initial floating of the concept.  It was never enacted by the FDA and the controlling regulation was never changed. The proposal has no bearing on any of the issues in this case.  However, the reader is led to believe that Wrigley cites to a binding FDA rule.

## FACTUAL ALLEGATIONS

Food manufacturers like Defendants are required to comply with federal and state laws that govern the labeling of food products, and Wrigley knows about these laws. First and foremost among these laws is the FDCA and its labeling regulations. The California legislature adopted the requirements of the FDCA in the Sherman Law.  Under both the Sherman Law and FDCA § 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or in its labeling.  California Health & Safety Code § 110660; 21 U.S.C. § 343(a). Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any single

1    representation in the labeling is misleading, the entire food is misbranded.  No other statement in

2    the labeling can cure a misleading statement.

3        Plaintiff alleges that she purchased the following misbranded Wrigley products: (1)

4    Eclipse sugar free gum, Winterfrost, 18 pcs; (2) Eclipse sugar free gum, Polar Ice, 12 pcs; (3)

5    Altoids sugar free smalls mints, peppermint and wintergreen, 50 mint tins; (4) Orbit sugar free

6    gum, peppermint and spearmint, 14 pcs; (5) Lifesavers sugar free hard candy, 5 flavors, 2.75 oz.

7    (AC ¶ 213).  Plaintiff also alleges that Wrigley has made the following unlawful and misleading

8    claims on these types of misbranded products:  (1) "low calorie" nutrient content claims (AC ¶¶

9    101-105); (2) "sugar free" nutrient claims (AC ¶¶ 106-128); and (3) serving size claims (AC ¶¶

10   129-137).

**ARGUMENT**

11

12   **I.    <u>Standard of Review</u>**

13       In considering a motion to dismiss, all allegations in the complaint must be taken as true

14   and construed in the light most favorable to the plaintiff.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

15   (2009).  A complaint need only allege sufficient facts to show "a claim to relief that is plausible

16   on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Ninth Circuit has

17   stated that, "*Twombly* should not be read as effecting a sea change in the law of pleadings." *Moss*

18   *v. U.S. Secret Serv.*, 572 F.3d 962, 968 (9th Cir. 2009).  *See also Langdon v. Credit Mgmt., LP*,

19   2010 U.S. Dist. LEXIS 16138, at *9 (N.D. Cal. Feb. 24, 2010) ("In the court's view, these

20   decisions did not alter pleading standards outside these and analogous situations.").

21       The plausibility analysis is "context-specific," and courts are advised to draw upon

22   "judicial experience and common sense" in applying it.  *Iqbal*, 129 S.Ct. at 1950.  However,

23   assessing plausibility does not involve analysis of the merits. *Twombly*, 550 U.S. at 556-57.  "[I]t

24   is a 'rare situation' where granting a motion to dismiss claims under the UCL is appropriate." *In*

25   *re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011). "California courts . . . have

26   recognized that whether a business practice is deceptive will usually be a question of fact not

27   appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir.

28   2008).

1
2

## II.   Plaintiff Has Adequately Pleaded Claims Under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedy Act

3

### A.   The Statutory Provisions

4

Wrigley argues Plaintiff has failed to state claims under the California Unfair Competition

5

Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), the False Advertising Law, Cal. Bus. & Prof.

6

Code § 17500 ("FAL"), and California's Consumer Legal Remedies Act, Cal. Bus. & Prof. Code

7

§ 1750 ("CLRA").

8

The UCL prohibits three types of wrongful business practices: any (1) unlawful, (2)

9

unfair, or (3) fraudulent business practice or act.  Plaintiff has pleaded all three prongs.  (AC ¶¶

10

231-254). "[I]n essence, an action based on Cal. Bus. & Prof. Code § 17200 to redress an

11

unlawful business practice 'borrows' violations of other laws and treats these violations, when

12

committed pursuant to a business activity, as unlawful practices independently actionable under

13

Bus. & Prof. Code §17200 and subject to the distinct remedies provided thereunder." *People ex*

14

*rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002).  The violation of

15

almost any federal, state, or local law, *i.e.*, the Sherman Law, may serve as the basis for a UCL

16

claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832 (1994).  The UCL authorizes actions for

17

injunctive relief by certain state and local officers and persons acting for the interests of

18

themselves or the general public." *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057, 1061

19

(1994), *cert. denied,* 513 U.S. 1016, 130 L. Ed. 2d 493, 115 S. Ct. 577 (1994). California law

20

"authorizes courts to make such orders as 'may be necessary to restore to any person in interest

21

any money or property, real or personal, which may have been acquired by such unfair

22

competition.'" *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992) (quoting Cal.

23

Bus. & Prof. Code § 17203).

24

The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. &

25

Prof. Code § 17500.  "'Any violation of the false advertising law necessarily violates' the UCL."

26

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (quoting *Comm. on Children's Television, Inc. v.*

27

*General Foods Corp.,* 35 Cal. 3d 197, 210 (1983).  Cal. Bus. & Prof. Code § 17500 contains a

28

false advertising provision that prohibits dissemination of any statement concerning items for sale

1    "which is untrue or misleading, and which is known, or which by the exercise of reasonable care

2    should be known, to be untrue or misleading."

3         The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

4    practices." Cal. Bus. & Prof. Code § 1750.

5              **B.     The "Reasonable Consumer" Test Is Inapplicable at This Stage**

6         Wrigley spends five pages arguing the "reasonable consumer test" dooms the AC from the

7    start and that the whole case must be dismissed now. *See Freeman v. Time, Inc*., 68 F.3d 285 (9th

8    Cir. 1995). This is wrong for several reasons.

9         First, Wrigley argues at length that this Court must act as a fact finder at this early stage of

10   the litigation and rule, on the face of the AC alone, that no reasonable consumer could possibly be

11   deceived by Wrigley's claims. However, these are fact intensive issues not suitable for a decision

12   at the motion to dismiss stage. Numerous courts, in cases similar to Plaintiff's, have agreed and

13   denied motions to dismiss on this very basis. The most recent decision was by Judge Davila in

14   *Khasin*. *See Khasin*, at *7 ("The Court rejects this argument simply because the issues Defendant

15   raises ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the

16   labeling; this argument is there beyond the scope of this Rule 12(b)(6) motion."). *See also*

17   *Williams*, 552 F.3d at 938-39 (dealing with representations that defendant's products were made

18   with "fruit juice and other all natural ingredients"); *Ben & Jerry's*, at *4 (alkalized cocoa in ice

19   cream and frozen yogurt labeled "all natural" the court held "[i]n particular, the issues of reliance

20   and materiality are too fact-dependent to be resolved on [a] 12(b)(6) motion."); *Briseno v.*

21   *Conagra Foods, Inc.*, No. 2:11-cv-05379 MMM-AGR, Slip. Op. at 21 (C.D. Cal. Nov. 23, 2011)

22   (genetically modified organisms in defendant's cooking oil labeled "100% natural"); *Von Koenig*

23   *v. Snapple Beverage Corp*., 713 F. Supp. 2d 1066, 1071, 1079-80 (E.D. Cal. 2010) (high fructose

24   corn syrup in beverages labeled "All Natural"); *Henderson v. Gruma Corp.*, 2011 WL 136188, at

25   *11 (C.D. Cal. April 11, 2011) (trans fat in guacamole and bean dip labeled "All Natural");

26   *Linear Technology v. Applied Materials, Inc.,* 152 Cal. App. 4th 115, 134 (2007) ("Whether a

27   practice is deceptive, fraudulent, or unfair is generally a question of fact which requires

28   consideration and weighing of evidence from both sides and which usually cannot be made on

1  demurrer.").  At the pleading stage, nothing more is required.

2       Second, but perhaps more importantly, *the "reasonable consumer" test is inapplicable to*

3  *a UCL claim under the unlawful prong* because reliance and deception are not elements of that

4  claim.  That "[t]here are a number of theories that have been litigated and rejected as defenses to

5  claims alleging 'unlawful' business practices . . . .  That no one was actually deceived by the

6  practice is not a defense to a section 17200 "unlawful" business practice claim." Stern, § 5.166,

7  Bus. & Prof. C. § 17200 Practice (The Rutter Group 2012).  *See also Medrazo v. Honda of North*

8  *Hollywood,* 2012 Cal. App. LEXIS 2316, at *21 (Cal. App. March 21, 2012) ("the Supreme Court

9  also explained that an actual reliance requirement does not apply to UCL actions that are not

10  based upon a fraud theory") (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 fn.17 (2009))

11  ("There are doubtless many types of unfair business practices in which the concept of reliance, as

12  discussed here, has no application."); *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th

13  145, 157 (2010) ("Thus, the question that must be answered in this case is whether a reasonable

14  person would find it important when determining whether to purchase a product that it is unlawful

15  to sell or possess that product.  It requires no stretch to conclude that the proper answer is yes —

16  we assume that a reasonable person would not knowingly commit a criminal act.").  Here,

17  Plaintiff has alleged throughout the AC that Wrigley has violated the Sherman Law and that it is

18  illegal to hold, advertise, distribute or sell misbranded food products.  (AC ¶¶ 1, 17, 26, 81, 100,

19  105, 128, 137, 154, 186, 253).  Such violations give rise to an unlawful claim under the UCL.

20  Under the circumstances of this case, Wrigley's misbranding is essentially a strict liability offense

21  under the UCL.

22       **C.    Wrigley's "Reasonable Consumer" Arguments Have No Merit**

23       Even if the court applies the reasonable consumer test at this early stage, Plaintiff wins.

24  Plaintiff's AC more than adequately pleads that a reasonable consumer, like Plaintiff, could have

25  been deceived by Wrigley's unlawful and misleading claims.  As stated, this test applies to

26  Plaintiff's claims under the FAL, CLRA and the unfair and fraudulent prongs of the UCL.  In

27  support of its argument, though, Wrigley *grossly* misstates the allegations in the AC, ignores

28  many of Plaintiff's allegations altogether, misconstrues the applicable regulations, and only cites

distinguishable cases.

In additional to the misstatements described previously in the Introduction, Wrigley states that its product do meet the requirements to place "sugar free" on its misbranded products including gum, breath mints and hard candies. (Wrigley Br. at 6). This is simply wrong. As the AC alleges, "they all contain more than the 40 calories per 50 grams which the maximum" allowed. (AC ¶ 109). Moreover, they contain ingredients such as maltodextrin that the FDA has held preclude the use of the term sugar free because of the component sugars it contains. According to the FDA:

> During the last several years, FDA has sent letters to food manufacturers that have set forth agency policy on the use of the term "sugar free." In a 1988 memorandum (Ref. 20) and memorandum of telephone conversation (Ref. 20a), the agency addressed the question of whether a "sugar free" claim would be considered appropriate for a food containing maltodextrin as an ingredient (e.g., a popsicle). FDA responded that, based on the recommendations of the tri-agency task group, a food product with a substantial amount of maltodextrin as an ingredient most likely would be considered misbranded if it bears a "sugar free" claim because while it may contain no added sucrose, it still contains significant amounts of indigenous sugars and sugars other than sucrose. FDA also responded (Ref. 21) to a question concerning the appropriateness of a "sugar free" claim on a product containing polydextrose by noting that at least 10 percent of polydextrose (by weight) qualifies as "sugar" and thus is subject to the same guidelines as specified for maltodextrin.56 F.R. 60421.

Second, Wrigley argues that even though its products say "sugar free" the labeling "states precisely how many calories are contained in the products." (Wrigley Br. at 6). Wrigley is essentially arguing that it may place any statement or phrase it wants on the front panel of its labels as long as the number of calories are on the back panel of the product. This is incorrect and precisely the reason this rule was promulgated. These rules described in the AC are designed to give consumers clear and useful information in making food choices. A product bearing "sugar free" (even though it is not) will obviously make consumers more inclined to purchase the product and no statement of the amount of calories will cure that.

The FDA stated in a September 2007 guidance letter to the food industry that the FDA was concerned about unlawful sugar free type claims that fail to bear the required disclaimer statement when these foods are not low or reduced in calories or fail to bear the required disclaimer statement in the required location or with the conspicuousness required by regulation.

1   The letter stated:

2       FDA has historically taken the position that consumers may associate claims
        regarding the absence of sugar with weight control and with foods that are low
3       calorie or that have been altered to reduce calories significantly. Therefore, the
        definition for "sugar free" includes the requirement that any food that is not low
4       or reduced in calorie disclose that fact. Without such information some consumers
        might think the food was offered for weight control. *See* 56 FR 60421 at 60435.
5       Consequently, the definition for "sugar free" includes the requirement that the
        food be labeled with the claim "low-calorie" or "reduced calorie" or bear a
6       relative claim of special dietary usefulness labeled in compliance with 21 C.F.R.
        101.60(b)(2), (b)(3), (b)(4), or (b)(5) or such claim is immediately accompanied,
7       each time it is used, by one of the following disclaimer statements: "not a reduced
        calorie food," "not a low-calorie food," or "not for weight control" (*see* 21 C.F.R.
8       101.60(c)(1)(iii)). The disclaimer statement, when required, must accompany the
        claim each time it is used. In addition, the disclaimer statement is subject to the
9       requirements of 21 C.F.R. 101.2(c) and must appear prominently and
        conspicuously but in no case may the letters be less than one-sixteenth inch in
10      height.

11  (AC ¶ 120).

12      In what appears to be a fatal blow to Wrigley's arguments that it complied with the

13  disclosure requirements of the sugar free rules of 21 C.F.R. § 101.60 by the placement of small

14  print on the underside of its packaging while making sugar free claims prominently on the front

15  or top of its packaging, 21 C.F.R. § 101.15(a) states that "a word, statement, or other information

16  required by or under authority of the act to appear on the label may lack that prominence and

17  conspicuousness required by section 403(f) of the act by reason (among other reasons) of: (1) The

18  failure of such word, statement, or information to appear on the part or panel of the label which is

19  presented or displayed under customary conditions of purchase." This provision would also

20  appear relevant to the express conspicuous requirement of 21 C.F.R. § 105.66.

21      Third, Wrigley argues that its failure to follow the governing serving size requirements by

22  using an unlawfully small serving size that understated calories per serving was an acceptable

23  practice,. (Wrigley Br. at 7). In support of this position, Wrigley cites to a proposed FDA rule

24  from 1997 that, as stated above, was never implemented or in effect. Proposed rules have no

25  authority. By way of comparison, if the Congressional House Judiciary Committee proposed a

26  change to the Federal Rules of Civil Procedure federal courts would certainly not begin to

27  implement the rule unless it was finally adopted into law. The rule would be just that, *proposed*.

28      Wrigley, ignoring products discussed below that have far more calories at issue, picks a

1  single product from the AC, the Altoids Smalls, and contends that no reasonable consumer cares

2  about a product that has 5 calories as opposed to 0.5 calories. Wrigley's own website belittles its

3  argument.  "Benefit of Chewing," available on Wrigley's website, states, in part "a small calorie

4  savings each day can make an impact in decreasing total calorie intake over time.[2]  Plaintiff

5  agrees with Wrigley, calories matter and consumers do care.  Wrigley's position is inconsistent

6  with the FDA position that incorrect serving sizes for small unit foods can be misleading.

7  According to the FDA:

8  products in discrete units vary greatly in size. Also, "mini" or "bite" size versions
   (e.g., "mini" cookies) are gaining popularity in the marketplace. FDA believes
9  that per unit nutrition information on some of these products would be
   misleading. For example, a "bite" size version of a product could be labeled as
10 containing zero fat or calories because of FDA's round-off rules for nutrient
   declaration, when in fact, enough units to constitute a serving contain significant
11 amounts of fat and calories. The agency, therefore, considers that per unit labeling
   of "mini" or "bite" size products is misleading. FDA will consider regulatory
12 action under section 403(a) of the act for any misuse of this allowance. 58 F.R.
   2278-79.

13
   Moreover, Wrigley chosen example ignores products like its sugar free Lifesavers and
14
   sugar free gums where significantly more calories are involved. Thus depending on flavor it
15
   would only take 4.5 to 5.5 sugar free Lifesavers to exceed the low calorie standard that consumers
16
   expect sugar free products to comply with. Similarly given the fact that its gum and mints contain
17
   2 to three times the maximum caloric value of low calorie products it would take far less than the
18
   amounts cited by Wrigley to exceed the low calorie threshold for these sugar free products.
19
   Moreover, even small amounts of calories can make a big difference to a person's weight. At up
20
   to 8.75 calories per piece, two extra sugar free Lifesavers a day would add nearly 2 pounds to a
21
   person's weight annually.
22
   In support of its arguments, Wrigley only cites distinguishable cases with wholly different
23
   alleged representations.  For example, in *Rooney v. Cumberland Packing Corp.*, 2012 WL
24
   1512106 (S.D. Cal. Apr. 16, 2012), the plaintiff alleged that the use of the phrase "in the raw"
25
   misled her into believing the product was unprocessed and unrefined sugar.  However, nowhere
26
   on the box did the words "unprocessed" or "unrefined" appear and the description on the back of
27

28
   ---
   [2] http://www.wrigley.com/hr/documents/weight_management_fact_sheet.pdf

the box expressly stated that the product was "turbinado cane sugar" but did not represent that this was the result of less refining or less processing. *Id*. at *4. *See also*, *Werbel ex rel. v. Pepsico, Inc*., 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (the plaintiff contended a cereal was made with "real fruit," but there are no representations on the product that it was derived from real fruit nor were there any depictions of any fruit on the cereal box.); *Sugawara v. Pepsico, Inc.,* 2009 WL 1439115, at *3 (E.D. Cal. May 21, 2009) (cereal did not represent to be made with real fruit and did not contain any pictures of fruit).

### D.     Plaintiff Has Standing Because She Has Adequately Alleged Legal Injury and Injury-in-Fact

Plaintiff has suffered a *legal injury* solely on the basis she purchased misbranded products, which by law are worthless and illegal to purchase or possess.  Wrigley argues Plaintiff has no standing under the UCL, FAL or CLRA, however, and makes the "no plausible injury" argument that has been made, and rejected, several times in this very Court.  (Wrigley Br. at 9-10).  For example, Judge Hamilton rejected the no plausible injury argument in *Ben & Jerry's*, 2011 WL 2111796, at *5 ("The injury alleged is that [plaintiffs] were deceived, and paid money they would not otherwise have paid had they known about the potassium carbonate in the cocoa.").  Judge Davila did the same in *Khasin*.  He ruled "courts have found it to be an adequate allegation to satisfy the injury-in-fact prong of Article III standing."  *Khasin*, at *6.

Moreover, Wrigley ignores controlling case law concerning allegations of "loss of money or property" and "injury in fact" in labeling cases. As California's Supreme Court cautioned:

> " . . . labels matter.  The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source . . ."

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).  Plaintiff here did not receive what Wrigley said she was purchasing. Under *Kwikset*, nothing more is required to allege "loss of money or property" and "injury in fact." *See also Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1021 n.13 (9th Cir. 2011) ("California has created what amounts to a conclusive presumption that when a defendants puts out tainted bait and a person sees it and bites, the defendants has caused an injury."); *Chavez I*, 340 Fed. Appx. at 361 (allegation that plaintiff lost money as a result of

defendants' deception in that he did not receive what he paid for is sufficient to allege injury-in-fact).  Moreover, courts have repeatedly held that misbranded and adulterated food and drugs have no economic value, and are legally worthless.  *United States v. Gonzalez-Alvarez,* 277 F.3d 73, 78 (8th Cir. 2002) ("where a product [milk] cannot be sold lawfully it has a value of zero for the purpose of calculating loss"); *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th at 157 (reasonable person would not purchase a product that could not be legally sold or possessed); *Thomas v. Imbrolio*, 2012 Cal. App. Unpub. LEXIS 3111, at *21-22 (Cal. Ct. App. 2nd Dist., April 25, 2012) ("The jury simply determined the fair market value of the product was zero, perhaps in light of the testimony of class members who stated they would not have purchased Avacor had they known the truth about it.  The court also concluded Avacor was worthless.").

### E.   Plaintiff Has Adequately Alleged Reliance and Deception

On the factual issues of "plausible reliance" and "deception" Wrigley's counsel recycles failed arguments from *Khasin* and *Ben & Jerry's*.  Again, these arguments fail.  Plaintiff here alleges in detail that:

a.   Plaintiff read the labels on Defendants' Misbranded Food Products, including the serving sizes, ingredients, nutrient content, sugar free and health claims before purchasing them. (AC ¶ 104, 127, 137, and 214);

b.   Plaintiff reasonably relied on Defendants' package labeling including the serving sizes, ingredients, nutrient content, sugar free and health claims, and representations related to Defendants' products, and based and justified the decision to purchase Defendants' products in substantial part on Defendants' package labeling including the antioxidant, nutrient content and health claims before purchasing them. (AC ¶¶ 105, 128, 137, and 215-216);

c.   Plaintiff reasonably relied on Defendants' package labeling, packaging, product placement, and website and justified the decision to purchase Defendants' Misbranded Food Products in substantial part on Defendants' package labeling and web claims as well as product packaging and product placement. (AC ¶¶ 105, 128, 137 and 215-216);

d.   At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' labeling claims including the serving sizes, ingredients, antioxidant, sugar free, health and nutrient content claims were unlawful and unauthorized as set forth herein, and would not have bought the products, or paid a premium for them, had she known the truth about them. (AC ¶ 216);

e.   A reasonable person would attach importance to whether Defendants' products were legally salable and capable of legal possession and to

Defendants' representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased the Defendants' Misbranded Food Products, or paid a premium for them, had he known they were not capable of being legally sold or held. (AC ¶ 219).

At the pleading stage, nothing more is required. *Khasin*, at *6-7; *Ben & Jerry's*, at *32.

### F.     Plaintiff's Allegations Related to Wrigley's Website and "Benefits of Chewing" Publication Satisfy Rule 9(b)

Wrigley argues Plaintiff's allegations pertaining to Wrigley's website and the "Benefits of Chewing" publication fail to plead claims specifically enough because (i) Plaintiff did not rely on the website, (ii) it is "not plausible" Plaintiff relied on them, (iii) no reasonable consumer would be deceived, and (iv) the applicable regulations are inapplicable.  These arguments all fail.

Rule 9(b) requires only that allegations of fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brooks v. ComUnity Lending, Inc.*, 2010 U.S. Dist. LEXIS 67116, at *27 (N.D. Cal. Jul. 6, 2010) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).  Rule 9(b) "must be read in harmony with (Rule) 8's requirement of a 'short and plain' statement of the claim." *Baas v. Dollar Tree Stores, Inc.*, 2007 U.S. Dist. LEXIS 65979, at *5 (N.D. Cal. Aug. 29, 2007).  Plaintiff more than satisfies these requirements.

Wrigley itself notes that Plaintiff alleges she relied on the package labeling. (Wrigley Br. at 11).  Plaintiff also alleges, though, that a food manufacturer's website is an extension of the product's label and thus constitutes package labeling.  (AC ¶ 13).  21 U.S.C. § 321(m) defines the term ''labeling'' as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."  The FDA has confirmed the meaning of this section and stated that websites are indeed part of a products' labeling.  For example, in an August 23, 2010 warning letter to Unilever, Inc. (Lipton Tea) the FDA stated:

A link to your website, www.lipton.com. appears on your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product label. This website directs U.S. visitors to another website, www.liptont.com. We have determined that your websites, www.lipton.com and www.liptont.com are labeling within the meaning of section 201(m) of the Act for your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product.

8/23/12 Unilever, Inc. Letter (attached as Exhibit 1).[3]  Because Plaintiff has pleaded repeatedly that she saw and relied on the labels and labeling of Wrigley's misbranded products, those allegations are sufficient to protect the allegations of other publications, including Wrigley's website.

Wrigley's "reasonable consumer" and "not plausible" arguments merely restate the same arguments already discussed herein.  Again, Wrigley's arguments have no merit.  These exact same plausibility and reasonable consumer arguments concerning serving size and sugar free regulations were rejected by Judge Davila in *Khasin*, when they were raised by Wrigley's competitor Hershey in connection with its Ice Breaker mints, which like the Altoids Smalls mints at issue here used an improperly small serving size and made unlawful sugar free claims for which they failed to meet the regulatory requirements.  *Khasin,* at *7-8.  There, the court analyzed claims that were both factually and legally were virtually identical to the ones at issue here (compare AC ¶¶ 106-137 with *Khasin* Amended Complaint ¶¶ 119-151)(attached as Exhibit 2).

It is also worth noting that Wrigley distorts the facts at issue.  Given that Wrigley falsely represented that many of its products are low calorie when none are, that its non-low calorie foods were  low calorie, that its caloric sweeteners were  non-caloric, utilized unlawfully small serving sizes that understated calories per serving size, and failed to make a number of mandated disclosure statements about the nutritional aspects of its products it is false for Wrigley to assert that there were no false or misleading statements that could have misled consumers. Nor can Wrigley shield itself by arguing that a number of its claims were only made on Wrigley product websites or marketing materials contained on those websites as such websites and materials constitute product labeling because the websites are referenced on product packaging and thus an extension of the labeling (and regardless also a form of false advertising actionable under California law).

Wrigley's effort to argue that its failure to comply with the sugar free rules of 21 C.F.R. § 101.60 or the special dietary use rules of 21 C.F.R. § 105.66 could not have misled any consumers flies in the face of FDA "findings of fact" that indicate that:

---

[3] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2010/ucm224509.htm

[i]t is reasonable and necessary to fully inform purchasers of the value of food for special dietary uses to require that the labels of any food that purports to be or is represented as useful in maintaining or reducing caloric intake or body weight bear label statements as required by §105.66." 48 F.R. 43258-59.

Similarly, the FDA has found that:

[w]here a food that contains one or more constituents is offered for special dietary use for   reduction or maintenance of body weight or carbohydrate intake, it is necessary for the purpose of fully informing puirchasers that the label state the percent by weight of such ingredients and whether they are nutritive or nonnutritive. 48 F.R. 43256-57.

It also ignores the language of 21 C.F.R. § 101.60(c)(1) that states that:

Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories.

Plaintiff stated in the AC:

Because consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners (e.g., "sugar free," or "sugarless") as indicating a product which is low in calories or significantly reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law are falsely represented to be low-calorie through the unlawful use of terms like "sugar free" that they are not allowed to bear due to their high calorific levels and absence of mandated disclosure statements. (AC ¶ 117).

The Defendants have failed to include on any of their sugar free products a "conspicuous" statement of dietary usefulness explaining the basis for the claim which also precludes the use of such a claim. Similarly, the Defendants have also failed indicate on any of their product labels the fact that its products are sweetened with nutritive and non-nutritive sweeteners or to detail the percentage of the product that nonnutritive components comprise as required by regulation. (AC ¶ 110).

The Defendants thus place a prominent sugar free claim on the principal display panel of their sugar free gums. This is what is visible to consumers. The Defendants hide their purported statement of dietary usefulness on the back of the package where it is invisible to the consumer as it is either underneath or in back of the panel consumers' view. This is contrary to the rules for statements of dietary usefulness as well as other labeling provisions. The whole point of the labeling rules is to provide useful information to consumers not hide it away from them. (AC ¶ 111).

Wrigley also ignores a number of facts. First, given the small difference in caloric value between Wrigley's sugar free products and its sugared ones (3 calories for the gum and 5 calories for the mints), it is more than plausible that a consumer would chose not to pay more for less

1  product had they been fully aware of the minimal nutritional benefit they were actually getting.

2  Equally plausible is they might have chosen not to ingest artificially sweetened products had they

3  known the true nature of the nutritional aspects of the products in question. By concealing this

4  information through its unlawful labeling practices, Wrigley misled consumers like the Plaintiff

5  and deprived them of the ability to make a fully informed choice.

6  **III.    Plaintiff's Claims Are Not Preempted**

7      **A.    There is a Strong Presumption Against Preemption**

8          Wrigley argues this case should be dismissed on preemption grounds.  Wrigley faces a

9  steep climb from the start, however, because there is a strong "presumption against pre-emption"

10  recognized by the United States Supreme Court in *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009).

11  Further, the "historic police powers of the States [are] not to be superseded by the Federal Act

12  unless that was the clear and manifest purpose of Congress." *Altria Group, Inc. v. Good*, 555

13  U.S. 70, 77 (2008) (emphasis added).   In cases like this, courts have clearly held that laws

14  regulating "the proper marketing of food, including the prevention of deceptive sales practices,

15  are . . . within states' historic police powers." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077,

16  1088 (2008).  Wrigley cannot overcome this high burden.

17      **B.    Plaintiff Is Not Enforcing the FDCA**

18          Plaintiff incorporates the argument made in the opposition to the Mars' motion to dismiss.

19      **C.    Plaintiff May Bring Suit to Enforce *California* Food-Labeling Requirements
            That Are Identical to FDCA Requirements**

20

21          Wrigley next argues that Plaintiff's state claims are expressly preempted because Plaintiff

22  is attempting to impose labeling requirements not identical to federal rules. (Wrigley Br. at 12-

23  13).  Defendant is simply wrong.  As stated repeatedly throughout this memorandum, Plaintiff is

24  not seeking to enforce FDA regulations.  Plaintiff only seeks to enforce the California Sherman

25  Law that imposes a standard of conduct that is identical to that imposed by the FDCA.

26  Consequently, Plaintiff does not bring a claim under the FDCA, but rather for violations of these

27  identical California laws – which provide a cause of action.  Therefore, Plaintiff is not seeking to

28  "enforce" the FDCA.  Again, Plaintiff's claims are based on the California Sherman Law which

1  adopts the FDCA provisions as its own.[4]

2      Judge Davila addressed this very issue in *Khasin*.  There, he held:

3      ***This argument is inapposite. In this case, Plaintiff has not brought suit to
enforce the federal statute; rather, Plaintiff's action is based on parallel state
laws that mirror the relevant sections of the FDCA and the NLEA.*** Plaintiff's
multiple claims are predicated upon state laws, such as the Sherman Food, Drug
and Cosmetic Law, which prescribes labeling requirements that are similar, if not
identical to, the requirements under FDCA and NLEA. In such cases, courts have
refused to find that preemption precludes the private, state-based causes of action.

7  *Khasin*, at * 4 (emphasis added) (citations omitted).

8      Also, the California Supreme Court has conclusively and unequivocally stated the

9  Sherman Law is identical, because it incorporated the FDCA.  It held:

10      The words of section 343-1 clearly and unmistakably evince Congress's intent to
authorize states to establish laws that are "identical to" federal law. ***That is
precisely what California did in enacting the Sherman Law*** …Additionally, the
Sherman Law incorporates all of the food labeling regulations promulgated by the
FDA…Accordingly, the state requirements at issue here are explicitly permitted
by section 343-1.

13  *In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1090 (citations omitted) (emphasis added).[5]

14      Like the defendants in *In Re Farm Raised Salmon Cases*, "[t]he crux of Defendant's

15  preemption argument is that Plaintiff's private state claims are precluded because they improperly

16  seek to enforce the FDCA in violation of section 337(a). ***Defendant's starting assumption is***

17  ***incorrect***." *In Re Farm Raised Salmon Cases*, 42 Cal. 4th at 1096 (emphasis added).  State

18  statutes like California's Sherman Law that are identical to the FDCA are permitted.  Indeed,

19  Defendant cannot and has not suggested otherwise.  *See Khasin*, at *4 ("Plaintiff has not brought

20  suit to enforce the federal statute; rather, Plaintiff's action is based on parallel state laws that

21  mirror the relevant sections of the FDCA and the NLEA."); *Ben & Jerry's,* 2011 WL 2111796, at

22  *9 ("The purpose of the [National Labeling and Education Act] . . . is not to preclude all state

23

24  [4] Cal. Health & Safety Code § 110100(a) states "all food labeling regulations and any amendments to those
regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be
the food labeling regulations of this state."

25

26  [5] The FDA and the Department of Justice agree.  In the DOJ's *amicus* brief to the U.S. Supreme Court in the *In Re
Farm Raised Salmon Cases*, the DOJ plainly stated "California's food-labeling requirements are, therefore,
substantively identical to the requirements of the FDCA."  DOJ *Amicus* Br. at 3 (attached as Exhibit A to the
27  Plaintiff's Request for Judicial Notice).  The DOJ went further and unquestionably declared "the California Supreme
Court's ruling that the FDCA does not preempt respondent's state-law suit is correct," *Id*. at 8, and "actions to
28  enforce state laws that impose requirements identical to those under the FDCA are not actions to enforce the FDCA
itself."  *Id*. at 12.

1    regulation of nutritional labeling, but to 'prevent State and local governments from adopting

2    inconsistent requirements with respect to the labeling of nutrients.'") (quoting H. Rep. No. 101–

3    538, at 10 (1990)); *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 372 (N.D. Cal. 2010)

4    ("*Chavez I*") ("[T]he mere fact that Plaintiff's state law claims threaten private liability that does

5    not exist under the FDCA is not sufficient to bring those claims within the preemptive scope of

6    Section 403A [21 U.S.C. § 343-1(a)(1)]"); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d

7    1028, 1032 (N.D. Cal. 2009) (finding no preemption of consumers' claims related to state food

8    labeling requirements and stating, "The NLEA amended the FDCA to include an express

9    preemption provision that *allows* state regulations that are identical to federal law.") (emphasis in

10   original); *Hitt v. Arizona Beverage Co., LLC*, 2009 WL 449190, at *4 (S.D. Cal. Feb. 4, 2009)

11   ("In a note to section 343–1, Congress stated that '[t]he [NLEA] shall not be construed to preempt

12   any provision of State law, unless such provision is expressly preempted under [1 U.S.C. § 343-

13   1(a)].'"); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) ("Where

14   a requirement imposed by state law effectively parallels or mirrors the relevant sections of the

15   NLEA, courts have repeatedly refused to find preemption . . . . The FDA itself appears to endorse

16   this approach.").

17          Wrigley spends five pages arguing that California's Sherman Law is not identical to the

18   FDCA and NLEA.  Wrigley's arguments are a series of attempts to confuse and twist Plaintiff's

19   allegations.  Plaintiff contends throughout the AC that Plaintiff is bringing state claims "identical"

20   to federal.  (*See* AC ¶¶ 1, 14, 23, 83, 138, 140, 152, 155, 156, 171).

21          Wrigley argues that Plaintiff cannot use the Sherman Law to enforce FDA regulations.

22   Again, Plaintiff is using the Sherman Law to enforce Sherman Law requirements that are

23   identical to FDA regulations which is permissible. *See In re Farm Raised Salmon Cases*, 42 Cal.

24   4th at 1096 ("Plaintiffs do not seek to enforce the FDCA; rather, their deceptive marketing claims

25   are predicated on violations of obligations imposed by the Sherman Law, something that state law

26   undisputedly allows."). Because Plaintiff is seeking redress for injuries resulting from Wrigley's

27   unlawful and misleading labels that violate *California state law*, Plaintiff's claims are not

28   preempted.

Despite identifying discrete categories of statutory violations alleged by Plaintiff, Wrigley fails to identify any actual non-identical requirements for the health, "healthy," nutrient content, lower calorie, serving size, or sugar free claims alleged by the Plaintiff.  In doing so, it has completely failed to carry its burden of overcoming the "presumption against preemption." In fact, it is impossible for California's Sherman Law to impose non-identical requirements because the Sherman law adopts and incorporates the federal provisions as its own.  To obscure this fact, Wrigley disingenuously misrepresents the applicable regulatory provisions. This fails for a number of reasons.

First and foremost, these exact same non-identical arguments concerning serving size and sugar free regulations were rejected by Judge Davila in *Khasin*, when they were raised by Wrigley's competitor Hershey in connection with its Ice Breaker mints, which like the Altoids Smalls mints at issue here used an improperly small serving size and made unlawful sugar free claims for which they failed to meet the regulatory requirements.  *Khasin*, at * 5-6. Again, in *Khasin*, the court analyzed claims that both factually and legally were virtually identical to the ones at issue here (compare AC ¶¶ 106-137 with *Khasin* Amended Complaint ¶¶ 119-151).

Second, Wrigley simply fails to respond to Plaintiff's allegations that Wrigley sugar free products were unlawfully labeled and misbranded because they failed to bear on their labels (1) a statement disclosing that they contained a nonnutritive ingredient and the percentage by weight of the nonnutritive ingredient and (2) a statement disclosing that they were sweetened with both nutritive and non-nutritive sweeteners. Instead Wrigley disingenuously argues it cannot respond because it falsely claims Plaintiff "does not even cite an applicable regulation that was allegedly violated."  (Wrigley Br. at 16 fn. 2). This demonstrably false as Plaintiff alleged in the AC at ¶¶ 199-200:

> Defendants have violated the standard set by 21 C.F.R. §§ 101.2, 101.3, 101.4; 101.9, 101.12, 101.22, 102.5, and 105.66 all of which have been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.
>
> Defendants have violated and continue to violate the standards set by 21 C.F.R. §§ 101.13, 101.54, 101.60 and 105.66, which have been adopted by reference in the Sherman Law, by including unauthorized nutrient content, sugar free, sugarless and low-calorie claims on their products.

1  Moreover, in the 26 paragraphs of the AC where the Plaintiff delineated the specific provision of

2  California and federal law the Plaintiff also alleged that "Defendants have violated California

3  Health & Safety Code § 110705 because words, statements and other information required by the

4  Sherman law to appear on their labeling either are missing or not specifically conspicuous." (AC

5  ¶ 193). Notwithstanding the Plaintiff's multiple citation to 21 C.F.R. § 105.66, the provision

6  mandating label statements governing the disclosure of the presence of nutritive and non-nutritive

7  ingredients and the fact that compliance with this provision is expressly required by other

8  regulations cited by the Plaintiff including 21 C.F.R. § 101.13, Despite seeking to rely on a

9  statement of dietary usefulness. Wrigley and its counsel claim they were not given sufficient

10 notice that 21 C.F.R. § 105.66, the dietary usefulness provision, was at issue and therefore do not

11 put forth any argument as to why the Plaintiff's claims are inconsistent with federal law or why

12 Plaintiff's allegations do not state a claim.

13        The AC makes clear that Wrigley's sugar free gums, mints and hard candies violated 21

14 C.F.R. § 105.66(b) because these products contained both nutritive (caloric) sweeteners like

15 sorbitol, xylitol, maltitol and maltodextrin and non-caloric sweeteners like sucralose, aspartame

16 and acesulfame potassium but failed to adequately disclose this with the disclosure statement

17 required by 21 C.F.R. § 105.66(b)(2) let alone with a sufficiently conspicuous one as required by

18 21 C.F.R. §§ 101.2 and 101.15. (AC ¶ 110-112). Moreover, Wrigley further deprived Plaintiff of

19 the ability to make an informed decision by falsely representing that the nutritive caloric

20 sweeteners it used were "noncaloric." (AC ¶ 112). Similarly, the AC makes clear that Wrigley

21 sugar free products violated 21 C.F.R. § 105.66(b)(1) by failing to utilize a label statement

22 disclosing the fact that they utilized non-nutritive ingredients and in the case of non-nutritive

23 ingredients not serving as sweeteners by additionally failing to disclose the percentage by weight

24 of that ingredient. The relevant portion of 21 C.F.R. § 105.66 is:

25      *(a) General requirements.* Any food that purports to be or is represented for
        special dietary use because of usefulness in reducing or maintaining body weight
26      shall bear:
        (1) Nutrition labeling in conformity with §101.9, or, where applicable, §101.36 of
27      this chapter, unless exempt under that section; and
        (2) A conspicuous statement of the basis upon which the food claims to be of
28      special dietary usefulness.

(b) *Nonnutritive ingredients.* (1) Any food subject to paragraph (a) of this section that achieves its special dietary usefulness by use of a nonnutritive ingredient (i.e., one not utilized in normal metabolism) shall bear on its label a statement that it contains a nonnutritive ingredient and the percentage by weight of the nonnutritive ingredient.

(2) A special dietary food may contain a nonnutritive sweetener or other ingredient only if the ingredient is safe for use in the food under the applicable law and regulations of this chapter. Any food that achieves its special dietary usefulness in reducing or maintaining body weight through the use of a nonnutritive sweetener shall bear on its label the statement required by paragraph (b)(1) of this section, but need not state the percentage by weight of the nonnutritive sweetener. If a nutritive sweetener(s) as well as nonnutritive sweetener(s) is added, the statement shall indicate the presence of both types of sweetener, e.g., "Sweetened with nutritive sweetener(s) and nonnutritive sweetener(s)."

(c) *"Low calorie" foods.* A food purporting to be "low calorie" must comply with the criteria set forth for such foods in §101.60(b)(2) and (b)(3) of this chapter.

(d) *"Reduced calorie" foods and other comparative calorie claims.* A food purporting to be "reduced calorie" or otherwise containing fewer calories than a reference food must comply with the criteria set forth for such food in §101.60(b)(4) and (b)(5) of this chapter . . . .

(f) *"Sugar free," and "no added sugar."* Criteria for the use of the terms "sugar free" and "no added sugar" are provided for in §101.60(c) of this chapter.

Similarly, Wrigley's disingenuous argument that it is an "erroneous premise that '21 C.F.R. § 101.12(b) provides that the serving size for breath mints is 2 grams'" cannot withstand scrutiny. It is a demonstrable fact that 21 C.F.R. § 101.12(b) states that the reference amount for breath mints is 2 grams. This results in a serving size for Altoids Smalls of 2 grams because pursuant to 21 C.F.R. § 101.9 (b)(2)(i)(A):

For products in discrete units (e.g., muffins, sliced products, such as sliced bread, or individually packaged products within a multiserving package) and for products which consist of two or more foods packaged and presented to be consumed together where the ingredient represented as the main ingredient is in discrete units (e.g., pancakes and syrup), the serving size shall be declared as follows: (A) If a unit weighs 50 percent or less of the reference amount, the serving size shall be the number of whole units that most closely approximates the reference amount for the product category.

Each individual Altoids Smalls mint weighs 0.2 grams and thus 10 such mints exactly equals the stated reference amount of 2 grams. This serving size is required by identical California and federal law. The falsity of Wrigley's argument that small breath mints are not covered by the breath mint category of 21 C.F.R. § 101.12(b) is conclusively demonstrated by the FDA's more detailed List Of Product Categories and Products referenced in 21 C.F.R. § 101.12(b) which indicates that the breath mint category covers small breath mints like Tic Tacs that like Altoids

1    Smalls have individual unit sizes of under 0.5 grams.[7] Moreover, the FDA's published comments

2    that were issued when enacting the current governing regulations make clear that the FDA was

3    asked to consider "a 1-piece reference amount for breath mints" but that the FDA "has not

4    adopted this request." 58 F.R. 2229. It is thus clear that at the time it issued the current regulations

5    the FDA contemplated and rejected the type of serving size requirement Wrigley desires and

6    instead adopted regulations which clearly cover the Wrigley mints and that those regulations

7    remain in effect.

8         Wrigley inexplicably ignores these controlling regulations which have the force of law

9    and instead seeks to rely on a nearly 15 year old proposal that was never enacted and thus never

10   replaced the current set of regulations which continue to govern.  Wrigley bizarrely claims that

11   the never enacted proposal somehow represents the FDA's position on the issue and that the

12   actual regulations enacted by the FDA after formal rule making do not. Contrary to Wrigley's

13   argument laws must be followed until they are modified or repealed or else anarchy reigns. [8]  In

14   fact the FDA itself indicated in its unenacted proposal that the effective date of any labeling

15   changes would not be effective until at least "1 year following publication of any final rule based

16   upon this proposal" and that companies should follow labeling requirements that had "been

17   published as final regulations up to that time." Wrigley's approach is particularly strange because

18   until federal law formally changes California law continues to mirror the existing federal law and

19

20   [7] Available at http://www.fda.gov/ICECI/Inspections/InspectionGuides/ucm114704.htm
     [8] Although irrelevant because it was never enacted, Wrigley greatly overstates the content of the portion of the

21   Federal Register on which it seeks to rely. In fact, the document indicated that the FDA felt that the data showed that
     the typical consumer consumed more than 1 breath mint at a time and that the FDA did not believe it was appropriate

22   to establish different serving sizes for small breath mints or revising the reference amount for mints to the one mint
     amount advocated by Wrigley. As stated by the FDA:

23        However, FDA is not convinced that creating a separate category for small breath mints in Table 2 of § 101.12
          (b) (21 C.F.R. 101.12(b)), as suggested by the petitioner, is the most reasonable option for achieving appropriate

24        serving sizes for labeling all of the different breath mint products on the market. The agency is reluctant to create
          a 0.5 g-reference amount for small breath mints (as requested by the petitioner) or a reference amount equivalent

25        to "2 pieces" (as supported by the data). These options may not be appropriate for other breath mint products and
          could result in a proliferation of requests for additional product categories for other breath mints. This action

26        could evolve into reference amounts that are brand dependent (e.g., separate reference amounts for each size or
          brand of breath mints) and would require each manufacturer to obtain independent data to demonstrate how their

27        particular product is used. …the data available to the agency indicate that some people may consume more small
          breath mints than large breath mints at a single eating occasion, resulting in an amount consumed that is greater

28        than the weight of an individual small breath mint. Accordingly, FDA tentatively concludes that there is not a
          sufficient basis for revising the current reference amount of "2 g." 62 F.R. 67777.

1  federal action that is proposed but not enacted would have no effect on California law nor would

2  it preempt California law which would remain identical to the existing unmodified federal

3  standard.

4       Instead of following current regulations, Wrigley instead arrogated to itself the right to

5  follow a course of conduct based on its own view of what a future law might look like on the

6  assumption that at some point in the future final regulations would be drafted and the law would

7  one day be in enacted, something that has not occurred in the nearly 15 years since the initial

8  proposal was issued.[9]  Wrigley's violation of existing law by selling a misbranded product that it

9  was illegal to sell based on its belief that one day in the future the law would change exposes it to

10  the legal consequences of its illegal actions and can be analogized to a person who sells illegal

11  drugs prior to their legalization.

12       Equally unavailing is Wrigley's argument that "the serving size of Altoids Smalls has

13  nothing to do with the 'sugar free' designation on the label." 21 C.F.R. § 101.13(b), 21 C.F.R. §

14  101.60(a)(2) and (3)  and 21 C.F.R. § 105.66(a)(1) mandate compliance with the serving size

15  requirements of 21 C.F.R. § 101.9(b) as a prerequisite for a "sugar free claim. Thus by violating

16  21 C.F.R. § 101.9 by failing to use a correct serving size Wrigley is barred from making a sugar

17  free claim.

18  **IV.     The Doctrine of Primary Jurisdiction Is Inapplicable**

19       The primary jurisdiction doctrine is inapplicable in this case.  To begin with, Wrigley's

20  argument was recently rejected by this Court in precisely this kind of case.  In that case, the court

21  held:

22           The FDA's expertise, however, is not necessary to determine whether the labels
             are misleading. ***The reasonable-consumer determination and other issues***
23           ***involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.***
             ***Application of the primary jurisdiction doctrine is not warranted.***

24  *Delacruz v. Cytosport, Inc.*, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012) (emphasis

25  added).  "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [9] Wrigley attempts to bolster its argument by asserting that the a proposal to amend the regulations issue is on the
    FDA' s Regulatory Agenda FDA's but in fact all that is on the FDA's agenda is a NPRM or notice of proposed rule
28  making" which is exactly what the original proposal was classified as. 77 F.R. 7946-01. Thus, it appears that the FDA
    is no further along than it was back in 1997 when the original proposal was first floated.

complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine is to be used only if a claim involves an issue of first impression or a particularly complicated issue that Congress has committed to a regulatory agency. *Clark*, 523 F.3d at 1114. The primary jurisdiction doctrine is inapplicable to Plaintiff's claims that Wrigley has made false and misleading statements on its labels, thus, violating California law.  *See Wright v. General Mills, Inc.*, 2009 U.S. Dist. LEXIS 90576, at *8-9 (S.D. Cal. 2009).

## V.    Plaintiff's Claims Are Not Barred By the "Safe Harbor Provision"

Wrigley contends that federal regulations "authorize" use of the term sugar free on one particular product out of the many described in the AC and therefore all Plaintiff's claims are barred under the safe-harbor doctrine.  The federal regulations do not in anyway authorize the use of the term "sugar free" on Altoids Small.  Second, that is but one of the various products Plaintiff has claimed is misbranded in the AC.  Even assuming the safe harbor provision somehow applied, which it does not, that is only one product out of the various examples in the AC.  Moreover, it must be stated again that the samples of products cited in the AC are just representative samples of the types of unlawful and misleading claims by Wrigley.  Finally, "to forestall an action under the unfair competition law, another provision ***must actually 'bar' the action*** or clearly permit the conduct."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 183 (1999) (emphasis added).  In this case, the federal regulations do anything but bar Plaintiff's claims and Wrigley cannot suggest otherwise.

## VI.   Plaintiff Has Properly Pleaded Unjust Enrichment, Song-Beverly Consumer Warranty Act And Magnuson-Moss Warranty Act Claims

Plaintiff incorporates the arguments made in the opposition to the Mars' motion to dismiss.[10]

## CONCLUSION

Plaintiff respectfully requests that the Court deny Wrigley's motion in its entirely.

---

[10] Wrigley asserts that the Court should dismiss the claims in the AC related to its sister company Mars.  Plaintiff concedes that Wrigley is not liable for Mars' misbranded products.  The reverse is not true, however.  Mars, as the controlling parent company, is liable and responsible for Wrigley's misbranded products.  Plaintiff makes this argument in full in her memorandum opposing the Mars' motion to dismiss.

1    Dated:  November 21, 2012.

                                        Respectfully submitted,
2

3
                                         /s/ *Ben F. Pierce Gore*
4                                        Ben F. Pierce Gore (SBN 128515)
                                        PRATT & ASSOCIATES
5                                        1871 The Alameda, Suite 425
                                        San Jose, CA 95126
6                                        (408) 429-6506
                                        pgore@prattattorneys.com
7
                                        J. Price Coleman
8                                        COLEMAN LAW FIRM
                                        1100 Tyler Avenue, Suite 102
9                                        Oxford, MS 38655
                                        (662) 236-0047
10                                       colemanlawfirmpa@bellsouth.net

11                       **CERTIFICATE OF SERVICE**

12        I hereby certify that I have on November 21, 2012 filed and served through the Court's

13   ECF system a true and correct copy of the foregoing.

14                                        /s/ *Ben F. Pierce Gore*
                                         Ben F. Pierce Gore (SBN 128515)
15

16

17

18

19

20

21

22

23

24

25

26

27

28