1  Ben F. Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1871 The Alameda, Suite 425
   San Jose, CA 95126
3  Telephone:  (408) 429-6506
   Fax:  (408) 369-0752
4  pgore@prattattorneys.com

5  *Attorney for Plaintiff*

6

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9                   SAN JOSE DIVISION

10

11 PHYLLIS GUSTAVSON, individually and on        Case No. 12-cv-01861 (LHK)
   behalf of all others similarly situated,
12                                               **PLAINTIFF'S MEMORANDUM IN**
                 Plaintiff,                      **OPPOSITION TO MOTION TO**
13                                               **DISMISS AMENDED COMPLAINT BY**
   v.                                            **DEFENDANTS MARS, INC. AND MARS**
14                                               **CHOCOLATE NORTH AMERICA, LLC**
   WRIGLEY SALES COMPANY,
15 WM. MARS JR. COMPANY,
   MARS, INC., and
16 MARS CHOCOLATE NORTH AMERICA,                 Hearing Date:   January 31, 2013
   LLC,                                          Time:           1:30 p.m.
17                                               Place:          Courtroom 8, 4th Floor
                 Defendants.                     Judge:          Hon. Lucy H. Koh
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

STATEMENT OF THE ISSUES TO BE DECIDED ............................................................... vi

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

INTRODUCTION ......................................................................................................................... 1

FACTUAL ALLEGATIONS......................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

I.      Standard of Review ........................................................................................................... 3

II.     Plaintiff Has Adequately Pleaded Claims Under California's Unfair
        Competition Law, False Advertising Law, and Consumers Legal Remedy
        Act ..................................................................................................................................... 3

        B.      The "Reasonable Consumer" Test Is Inapplicable at This Stage............................ 3

        C.      Mars' "Reasonable Consumer" Arguments Have No Merit.................................... 3

        D.      Plaintiff Has Standing Because She Has Adequately Alleged Legal
                Injury and Injury-in-Fact .................................................................................... 10

        E.      Plaintiff Has Adequately Alleged Reliance and Deception ................................. 11

        F.      Plaintiff's Allegations Related to Mars' Website Satisfy Rule 9(b) .................... 11

III.    Plaintiff's Claims Are Not Preempted ............................................................................ 11

        A.      There is a Strong Presumption Against Preemption ........................................... 11

        B.      Plaintiff Does Not Seek To Enforce the FDCA .................................................. 11

        C.      Plaintiff May Bring Suit To Enforce *California* Food-Labeling
                Requirements That Are Identical to FDCA Requirements ................................... 12

                1.      Mars' Implied Preemption Argument Fails ............................................... 12

                2.      *In Re Farm Raised Salmon* Is Persuasive Authority.............................. 12

                3.      *Pom Wonderful LLC v. Coca-Cola Co*. Does Not Require Preemption .... 15

IV.     The Doctrine of Primary Jurisdiction Is Inapplicable ........................................... 23

V.      Plaintiff's UCL, FAL and CLRA Claims Are Not Barred By the "Safe
        Harbor Provision" ....................................................................................................... 23

VI.     Plaintiff Has Properly Pleaded an Unjust Enrichment Claim ............................................ 23

VII.    Plaintiff Has Properly Pled Song-Beverly Consumer Warranty Act And
        Magnuson-Moss Warranty Act Claims............................................................................ 24

1

VIII.   Plaintiff Has Claims Against Mars for Wrigley's Misbranded Food
        Products................................................................................................................ 25

2

CONCLUSION .................................................................................................................... 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   2011 WL 2111796 (N.D. Cal. May 26, 2011) .................................................. 2, 10, 11, 13

*Astiana v. Dryer's Grand Ice Cream*,
   2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012) ................................ 10

*Bassiri v. Xerox Corp.*,
   463 F.3d 927 (9th Cir. 2006) ........................................................................... 17

*Bruno v. Quten Research Inst., LLC*
   280 F.R.D. 524 (C.D. Cal. 2011) ..................................................................... 10

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) ....................................................................................... 12, 14

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal 2010) ............................................................ 11

*Chavez v. Blue Sky Natural Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) ..................................................................... 13

*Chavis v. Fidelity Warranty Services, Inc.*,
   415 F. Supp. 2d 620 (D.S.C. 2006) ................................................................. 24

*Delacruz v. Cytosport, Inc.*,
   2012 WL 2563857 (N.D. Cal. June 28, 2012) .................................................. 15

*Forcellati v. Hyland's, Inc.*
   2012 U.S. Dist. LEXIS 91393 (C.D. Cal. June 1, 2012) ................................... 10

*In re Sony Grand Wega*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................ 24

*Khasin v. Hershey Co.*,
   2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) .............................................. *passim*

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ........................................................................................ 14

*Pom Wonderful LLC v. Coca-Cola Co.*,
   679 F.3d 1170 (9th Cir. 2012) ......................................................................... 15

*Public Lands for the People, Inc. v. United States Dep't of Agric.*,
   2012 U.S. App. LEXIS 20175 (9th Cir. 2012) .................................................. 17

*Reyes v. McDonald's Corp.*,
   2006 U.S. Dist. LEXIS 81684 (N.D. Ill. 2006) ................................................ 11

*Rooney v. Cumberland Packing Corp.*,
   2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ................................................... 9, 10

*Sugawara v. Pepsico, Inc.*,
   2009 WL 1439115 (E.D. Cal. May 21, 2009) .................................................. 10

*U.S. v. Mead Corp.*,
   533 U.S. 218 (2001) ........................................................................................ 17

*Vicuna v. Alexia Foods, Inc.*,
   2012 WL 1497507 (N.D. Cal. April 27, 2012) ..................................... 2, 23, 24

*Werbel ex rel. v. Pepsico, Inc.*,
   2010 WL 2673860 (N.D. Cal. July 2, 2010) .................................................... 10

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................... 3, 5, 20, 21

**Statutes and Regulations**

15 U.S.C. § 2301 ............................................................................................... 24

15 U.S.C. § 2310(d) .......................................................................................... 24

21 C.F.R. § 101.13 ............................................................................ 6, 7, 22, 23

21 C.F.R. § 101.4 .............................................................................................. 21

21 C.F.R. § 101.65 ............................................................................................ 17

21 C.F.R. § 101.9 ................................................................................................ 6

21 C.F.R. § 102.5 .............................................................................................. 21

21 C.F.R. § 163.130 .......................................................................................... 19

21 U.S.C. § 301 ................................................................................................... 1

21 U.S.C. § 343(a) .............................................................................................. 2

58 F.R. 2079 ........................................................................................................ 6

58 F.R. 2218 ................................................................................................... 6, 23

58 F.R. 2345 ...................................................................................................... 17

Cal. Civ. Code § 1790 ....................................................................................... 24

Cal. Civ. Code § 1791.2 .................................................................................... 24

Cal. Civ. Code § 1793.35 .................................................................................. 24

Cal. Health & Safety Code § 109875 .................................................................. 1

Cal. Health & Safety Code § 110660 .................................................................. 2

Cal. Health & Safety Code § 110725 ................................................................ 21

1    **<u>Rules</u>**

2    Fed. R. Civ. P. 8(e)(2) ................................................................................................................ 24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# STATEMENT OF THE ISSUES TO BE DECIDED

**Preemption:**

1.  Does a preemption provision that expressly preempts only state requirements "that [are] not identical to" the federal requirements imply that Congress also intended to preempt state requirements that *are* identical to the federal requirements?

2.  Is the Court not competent to determine whether a state requirement is identical to a federal requirement?

3.  Is equitable abstention and/or stay or dismissal under the doctrine of primary jurisdiction appropriate where there is no allegation of a pending agency enforcement action and the case does not involve issues of first impression?

**Article III/Standing:**

4.  Does delving into what a reasonable consumer would rely on and determining whether Plaintiff was or was not deceived by Mars' product labeling raise questions of fact that are beyond the scope of a Rule 12(b)(6) motion?

5.  Where the Supreme Court of California and the Ninth Circuit mistaken when they ruled that a plaintiff adequately pleads "injury in fact" when she alleges that, as a result of the false advertising, she purchased a product that she otherwise would not have purchased and paid a premium that she otherwise would not have paid?

6.  Can a plaintiff have standing to represent a class for products she himself purchased and a group of similarly labeled products that she did not purchase, so long as it is alleged that there is sufficient similarity between the label of the same defendant's products purchased and not purchased, and that the challenged claims on the labels of the two groups of products are identical in all material aspects?

**Plausibility (*Iqbal/Twombly*):**

7.  When a product label is misleading under FDA regulations and California law, can a court say, as a matter of law, that it is plausible that a consumer would be misled by and detrimentally rely on the misleading label?

8.  Is Plaintiff required to plead her claims with even more particularity than that required by Rule 9(b)?

9.  When a misbranded product cannot be legally sold or held and it is a strict liability crime to do either, is it plausible that Plaintiff and members of the class who purchased such a misbranded product for valuable consideration have been injured by the unlawful sale to them of goods that were illegal to sell to them and illegal for them to hold or resell?

10. Is it plausible that said injury was attributable to the unlawful acts of Defendant?

**Individual Causes of Action:**

11. Do Plaintiff's allegations that, as a result of misleading advertising and labels, she purchased products that she would not otherwise have purchased and paid more than she otherwise would have paid, fail to state a claim under California's false advertising and consumer protection laws?

12.     Did Plaintiff fail to adequately allege facts necessary to state warranty claims under the Magnuson-Moss Act?

13.     Is a claim for "Restitution Based on Unjust Enrichment/Quasi Contract" subject to dismissal for failure to state a claim on the theory that California does not recognize an independent cause of action for unjust enrichment?

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff submits this memorandum in opposition to the motion to dismiss filed by Defendants Mars, Inc. and Mars Chocolate North America, LLC (collectively "Mars").[1]

Plaintiff's case has two facets:

First, the "*misbranding*" part.  Plaintiff alleges that Mars packages, labels and markets "misbranded" food products.  These acts are unlawful and unfair and, standing alone without any allegations of deception, give rise to various claims for relief including relief under the unlawful and unfair prongs of California's Unfair Competition Law and the Consumers Legal Remedies Act.  Plaintiff describes how Mars' products are misbranded, alleging unlawful and unfair conduct.  Plaintiff's Amended Complaint ("AC") describes in detail Mars' violations of specific sections of California's Sherman Food, Drug and Cosmetic Act, California Health & Safety Code § 109875 *et seq.* (the "Sherman Law") which adopts the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") in defining food as "misbranded" if its labeling is false or misleading or if it does not contain certain information on its label.  The law is clear:  misbranded food cannot be legally manufactured, advertised, distributed, sold or held. In fact, Mars does not argue otherwise.  Misbranded food has no economic value and is worthless *as a matter of law*.

Second, the "*deceptive*" part.  Plaintiff alleges that Mars' packaging and labels are misleading, deceptive, fraudulent and unlawful.  Plaintiff's AC comprehensively alleges the falsity, deception and unlawfulness of Mars' package labels, product placement and website claims.  Plaintiff alleges that she reasonably relied on Mars' misrepresentations, and was thereby deceived, in deciding to purchase Mars' products.

To be clear, Plaintiff does not seek to enforce **federal** regulations in this Court; instead Plaintiff seeks to enforce California law, as alleged in the AC.  Plaintiff references FDA regulations because California law adopts and incorporates the text of those regulations.  For the reasons explained herein, this Court should deny Mars' motion in its entirety.

---

[1] Mars refers to and incorporates sections of the memorandum submitted by Defendants Wrigley Sales Co. and WM. Wrigley JR. Co. ("Wrigley") in support of Wrigley's separate motion to dismiss.  Plaintiff incorporates herein her response in opposition to Wrigley's memorandum.

1   Facing Plaintiff's allegations, Mars' motion recycles arguments that have been rejected so

2   often in the Northern District that they are now discredited.  For example, on November 9, 2012

3   this Court denied a similar motion in *Khasin v. Hershey Co.*, 2012 WL 5471153 (N.D. Cal. Nov.

4   9, 2012) (J. Davila).  That case involved similar products and contained the very issues discussed

5   in this case including those related to preemption, particularity, standing, plausibility and unjust

6   enrichment. Last year, another food company made, and lost, the same arguments in *Astiana v.*

7   *Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ("*Ben & Jerry's*").

8   Likewise, in April 2012, Judge Hamilton disposed of these same arguments in *Vicuna v. Alexia*

9   *Foods, Inc.*, 2012 WL 1497507 (N.D. Cal. April 27, 2012).

10  **FACTUAL ALLEGATIONS**

11  Food manufacturers like Mars are required to comply with federal and state laws that

12  govern the labeling of food products, and Mars knows about these laws. First and foremost

13  among these laws is the FDCA and its labeling regulations. The California legislature adopted the

14  requirements of the FDCA in the Sherman Law.  Under both the Sherman Law and FDCA §

15  403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does

16  not contain certain information on its label or in its labeling.  California Health & Safety Code §

17  110660; 21 U.S.C. § 343(a). Under the FDCA, the term "false" has its usual meaning of

18  "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false

19  claims, but also those claims that might be technically true, but are still misleading.  If any single

20  representation in the labeling is misleading, the entire food is misbranded, and no other statement

21  in the labeling can cure a misleading statement.

22  Plaintiff alleges that she purchased the following misbranded Mars products: (1) M&M

23  chocolate candy; (2) Twix chocolate candy; (3) Dark Chocolate Dove Bar; (4) Milk Chocolate

24  Dove Bar; and (5) Snickers Fun Size. (AC ¶ 213).

25  Plaintiff also alleges that Mars has made the following unlawful and misleading claims on

26  these types of misbranded products:  (1) flavanol nutrient content claims (AC ¶¶ 70-83); (2)

27  calorie nutrient content claims (AC ¶¶ 84-100); (3) failing to call product ingredients by common

28  names (AC ¶¶ 138-155); failing to adhere to the "standards of identity" of the products (AC ¶¶

156-166); and health claims (AC ¶¶ 155-185).

## ARGUMENT

### I.   Standard of Review

Plaintiff incorporates the arguments made in section I in the opposition to the Wrigley motion to dismiss.

### II.   Plaintiff Has Adequately Pleaded Claims Under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedy Act

#### A.   The Statutory Provisions

Plaintiff incorporates the arguments made in section II(A) in the opposition to the Wrigley motion to dismiss.

#### B.   The "Reasonable Consumer" Test Is Inapplicable at This Stage

Plaintiff incorporates the arguments made in section II(B) in the opposition to the Wrigley motion to dismiss.

#### C.   Mars' "Reasonable Consumer" Arguments Have No Merit

Even if the court applies the reasonable consumer test at this early stage, Plaintiff wins. Plaintiff's AC more than adequately pleads that a reasonable consumer, like Plaintiff, could have been deceived by Mars' unlawful and misleading claims.  As stated, this test applies to Plaintiff's claims under the FAL, CLRA and the unfair and fraudulent prongs of the UCL.  In support of its argument, though, Mars *grossly* misstates the allegations in the AC, ignores many of Plaintiff's allegations altogether, misconstrues the applicable regulations, and only cites distinguishable cases.

Mars' argument that it is not plausible that any reasonable consumer would have been misled by Mar's claim that its chocolate was a "natural source of cocoa flavanols" has been expressly rejected by Judge Davila in connection with nearly identical "natural source of flavanol antioxidants" claims by Hershey about its chocolate and cocoa. Judge Davila held:

> Defendant points to Plaintiff's claims that the Hershey labels stating that its products are sources of antioxidants were misleading and in violation of the FDA regulations. Defendant contends that in order to actually have been misled by this allegedly non-compliant labeling, Plaintiff would have had to (i) have been familiar with the FDA regulations regarding the use of phrases like "excellent source" and "good source"; (ii) have believed that Hershey's use of the word

"source" without a modifying adjective was the legal equivalent of the claim that the products were a "good source" or "excellent source" of antioxidants; and (iii) have concluded based on the "source of antioxidants" labeling alone that the products contained more antioxidants than they actually do contain. Defendant argues that the notion that a "reasonable consumer," as Plaintiff purports to be, had this knowledge and reached these conclusions is legally implausible under the standards set forth in <u>Iqbal</u> and <u>Twombly</u>. The Court rejects this argument simply because the issues Defendant raise ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this <u>Rule 12(b)(6)</u> motion.

*Khasin*, at *7.

Similarly, Mars seeks to dismiss on plausibility grounds the same polyglycerol polyricinoleic acid that Judge Davila let proceed over Hershey's plausibility and reasonable consumer objections. (Compare AC ¶¶ 138-155 with *Khasin* Amended Complaint ¶¶ 152-168 (Ex. 1)). This effort is unavailing. First, it is misleading to fail to use the common or usual name of ingredients as that obscures the true nature of the food. Second, it is completely plausible that a consumer might want to avoid an ingredient with a long, possibly scary chemical name, particularly one that contains the term ricin, one of the world's most toxic poisons used in chemical warfare and highly publicized espionage assassinations. It is equally plausible as the Plaintiff alleged that:

> Hiding the presence of the polyglycerol polyricinoleic acid allows them to pass off their chocolate products as higher value items. As the Defendants themselves note, if consumers want real chocolate then consumers should try and search out products that contain 100% cocoa butter. The Defendants make this harder to do by their labeling practices.

(AC ¶150.) By failing to use the common or usual name, Mars, concealed the inferior nature of its chocolate and injured the Plaintiff. Mars arguments to the contrary are at best fact specific questions that are not proper at the 12(b)(6) stage.

Mars also seeks to dismiss on plausibility grounds the claim that Mars sold chocolate that failed to adhere to the standard for chocolate. This is identical to the claim that Judge Davila let proceed over Hershey's plausibility and reasonable consumer objections. (Compare AC ¶¶ 156-161 with *Khasin* Amended Complaint ¶¶ 169-178 (Ex. 1)). Mars argument is unavailing. It is obvious that it states a plausible claim to allege that a company misled consumers by utilizing cheaper artificial ingredients not found in standard chocolate while failing to adequately disclose

1   that fact as required by law. As discussed below, the milk chocolate standard of identity requires

2   that:

3   > Whenever the name of the food appears on the label so conspicuously as to be
>   easily seen under customary conditions of purchase, the statements prescribed in
>   this paragraph showing optional ingredients used shall precede or follow such

4   > name without intervening printed or graphic matter.

5   Mars failed to do this despite using ingredients like cocoa processed with alkali that

6   require disclosure. Plaintiff alleges that Mars engaged in just the type of unlawful labeling

7   practice the third requirement of the standard of identity was designed to prevent, namely the

8   misrepresentation of a chocolate product as a premium product – standard milk chocolate -  on

9   the front of the package which plays a significant role in consumer purchasing decisions while

10  concealing the fact that optional or artificial ingredients like alkalized cocoa or artificial flavors

11  not found in premium or standard milk chocolate were present in the food by only disclosing that

12  fact  on a less visible panel.  To the extent Mars is deemed to be arguing that its mandated

13  disclosures in the less visible ingredient list on the back of the panel somehow shield it from

14  liability such an argument is unavailing. First, the standard of identity requires compliance with

15  both front of pack disclosure requirements and ingredient list disclosure requirements.  Second,

16  This  argument contradicts the Ninth Circuit decision in *Williams v. Gerber Prods. Co.*, 552 F.3d

17  934 (9th Cir. 2008).  In *Williams*, the court rejected this very argument and said:

18  > ***We disagree with the district court that reasonable consumers should be
>   expected to look beyond misleading representations on the front of the box to***

19  > ***discover the truth from the ingredient list in small print on the side of the box.***
>   The ingredient list on the side of the box appears to comply with FDA regulations

20  > and certainly serves some purpose. ***We do not think that the FDA requires an
>   ingredient list so that manufacturers can mislead consumers and then rely on***

21  > ***the ingredient list to correct those misinterpretations and provide a shield for
>   liability for the deception.*** Instead, reasonable consumers expect that the

22  > ingredient list contains more detailed information about the product that confirms
>   other representations on the packaging.

23  *Id.* at 938-40 (emphasis added).

24  Mar's argument that it is not plausible that anyone was misled by its unlawful practice of

25  falsely claiming that its products supplied a percentage of a set recommended daily value of

26  calories when no such value existed and the caloric level used by Mars exceeded recommended

27  levels for various parts of the population including women 51 years and older as well as many

28

1   other women and children in some cases by 25% defies logic.

2         Mars argument that it was not misleading to represent that its products were supplying a

3   certain percentage of a "daily value" of calories when no recognized daily value has been

4   recognized is also unavailing. First, even if correct which it is not, it fails to address the fact that

5   the claim would still be misleading and in violation of law because as a nutrient content claim it

6   failed to be accompanied by the disclosure statement required by 21 C.F.R. § 101.13(h)

7   (discussed below) that was triggered by the high levels of things like saturated fat in Mars'

8   products to let consumers know the product had good and bad aspects. Second, Mars is simply

9   wrong that the daily value for calories it used does not overstate calories for parts of the

10  population like women and children. As recognized by the FDA "Typical [calorie] intakes for

11  women are 1,600 to 2,200 calories, for men 2,000 to 3,000 calories, and for children (ages 4 to

12  14) 1,800 to 2,500 calories. 58 F.R. 2079. Thus, Mars' unauthorized daily value for calories

13  overstates the amount of calories for certain women by 25% and for certain children by over 11%.

14  As even the documents cited by Mars confirm, its 2000 calorie DV would overstate the calories

15  for women 51 or older who the FDA recommended an intake of 1900 calories. 58 F.R. 2218.

16  Mars completely distorts the 2000 calorie guideline used by the FDA to calculate the DVs of

17  other nutrients. This reference point is just that it is used so that people can then mathematically

18  calculate their nutrient percentages based on their own caloric intake as compared to the 2000

19  calorie benchmark. It was not intended and would be wrong to utilize it as a dietary

20  recommendation guideline for calories because caloric intake requirements vary widely.[2]  Mars'

21  statements about its daily value claim confirms the falsity of the DV claim. Mars states:

22         **Percentage Daily Values (DV)**
          This term refers to the percentage of your overall recommended daily intake of
23

---

24  [2] In fact, the FDA made clear that the 2000 calorie was merely a benchmark and that people's needs vary according
    to caloric intake stating "Therefore, to decrease the likelihood of consumer misunderstanding, the agency is requiring
25  in § 101.9(d)(9)(i) that a footnote accompany the percent DV declarations stating that these declarations are based on
    a 2,000 calorie diet, and that personal needs vary depending on an individual's calorie intake.  In addition, to assist
26  consumers in estimating their own quantitative dietary needs relative to the reference DV's, the footnote will display
    daily values of total fat, saturated fat, cholesterol, sodium, total carbohydrate, and dietary fiber based on 2,000
27  calories and 2,500 calories.  By providing a concrete example of how individual dietary needs may vary depending
    on calorie intake level, the footnote will help people to place their personal dietary needs with respect to the reference
28  Daily Values and to avoid any misunderstanding as to whether the reference DV's are dietary guidance meant for
    them." 58 F.R. 2079

certain ingredients and calories (e.g., sugars, fats, sodium, etc.) in your food. That means that if you eat a food in the morning that contains 10% of the DV for calories, you are 10% of the way to the recommended amount of calories to maintain good health and a healthy weight.
http://www.marshealthyliving.com/whats-gda.

2000 calories is not a recommended daily intake of calories (nor for matter is there one for sugars)  nor is it the recommended amount of calories to maintain good health and a healthy weight as it overstates the amount of calories suitable for women 51 and over, as well as numerous other women and children.

Mar's second argument that its failure to make mandated disclosures of unhealthy components as required by 21 C.F.R. § 101.13(h) could not mislead anyone is not credible. The disclosure requirements were imposed to prevent consumers from being mislead as to the overall nutritional profile of foods by the highlighting of healthier aspects while less healthy aspects were concealed. As discussed below in the preemption section Mars' calorie claim was a nutrient content claim. The selective presentation by Mars of the calorie claim on the front of the package while failing to use other icons like the one for saturated fat is the type of labeling practice that the FDA expressed "concern" about because of its "potential for product mislabeling to mislead consumers by presenting only 'good news' about nutrient content on the front of the package, which is the concern the regulations governing nutrient content claims were intended to address." (Ex. 2).  Because the calorie claim that Mars used is clearly a nutrient content claim and because Mars failed to adhere to the requirements stated by the FDA for enforcement discretion, Mars was required under identical California and federal law to follow the disclosure rules of 21 C.F.R. § 101.13(h) and notify consumers on the front of the package that its products contained levels of deleterious items such as saturated fat at levels the FDA deemed sufficient to increase the risk of a diet related disease or condition. Failing to do so is misleading. As the FTC noted in its food advertising enforcement guide:

As mandated by the NLEA, FDA's nutrient content labeling regulations require a number of disclosures. These mandated disclosures include, but are not limited to: ….disclosure of nutrients (fat, saturated fat, cholesterol, and sodium) present in a food at a level that FDA has concluded increases the risk of diet-related disease, required whenever a nutrient content claim is made.….In determining whether such disclosures are necessary to prevent deception, the Commission will

consider several factors. First, the Commission will carefully evaluate nutrient content claims for foods that contain a nutrient at a level considered by FDA to increase the risk of a diet-related disease.60 When the context of an ad as a whole conveys to consumers the net impression that the food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease, the failure to disclose the presence of risk-increasing nutrients is likely to be deceptive.[3]

Thus, it is more than plausible that Mar's failure to disclose such information on the front of its package is deceptive. Mar's argument that the ingredient list shields it from liability was rejected in the Williams case discussed elsewhere in this response. Mars' argument that no reasonable consumer would think that its calorie claims would cause a consumer to think of its products as healthy is dispelled when Mars itself tells consumers in connection with its calorie claim that the percentage of calories on its candy indicates the what percent "of the way to the recommended amount of calories to maintain good health and a healthy weight" you will be by eating its candy.

Particularly, egregious is Mars' false argument that (1) the Plaintiff never alleged that Mars' health claims were untrue and (2) that it is implausible that the Plaintiff could have been misled by Mars statements into believing the products had health or drug characteristics.  First, Plaintiff did allege that  Mars (and Wrigley's "health related claims are false and misleading." (AC ¶171).  Second, Mars draws the Court's attention to paragraphs 163-164 and 166-168 of the complaint and highlights claims it made about the candy being "part of a healthy diet"  or able to "help  maintain circulatory health" arguing that is unreasonable to conclude that its candy might be useful for the "cure, mitigation, treatment or prevention of disease. Curiously, while these prior claims are actionable for the reasons stated in the AC at ¶¶ 155-185), Mars does not reference paragraph 165 of the AC which completely destroys Mars' claim by alleging:

> These are not isolated claims on its websites that cocoa flavanols and chocolate and gum may among other things help prevent or treat cancer, heart disease, diabetes, stroke, decrease skin reddening cause by UV exposure, infection, dental sensitivity and have "aspirin like effects."  These claims are merely typical examples of Defendants' widespread practice of making unlawful and unauthorized health claims. Defendants' websites contain an abundance of instances where Defendants, like the snake oil salesmen of yore with their cure-all

---

[3] http://www.ftc.gov/bcp/policystmt/ad-food.shtm.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

elixirs, promote the ability of their products to preserve one's health and to prevent and cure all sorts of diseases and medical conditions.

If anything is implausible it is Mars' argument that it marketing team and their supporting cast of scientists could falsely represent and disseminate materials purporting to support the claims that Mars' chocolate products had special, almost magical health properties capable of warding off or treating a wide range of diseases and conditions and that somehow it would be implausible if Plaintiff's believed the purported science Mars claimed backed its unauthorized health claims.

Mars also completely fails to address Plaintiff's allegations contained at AC ¶¶ 155-185, that she was misled by Mars' making of health, healthy and drug claims on products that contained disqualifying levels of deleterious components like high levels of saturated fat that barred those claims from being made even if accurate because doing so would implicitly misrepresent unhealthy foods as healthy. Mars' argument that it was implausible the Plaintiff thought these products had FDA approval as drugs is a red herring as Plaintiff claimed merely that Mars sold and advertised foods bearing unapproved health claims or making unapproved drug claims not that she was defrauded as to whether a particular Mars product had been falsely represented as having FDA approval when it did not.  While Mars makes a number of improper and unlawful health claims on Mars product websites, Mars' websites are interlinked and thus Mars' argument that the cocovia website where it makes certain general chocolate and cocoa website claims is unrelated to the products is false. Mars's claim that its occasional use of a dietary supplement disclaimer shields it from liability is at odds with the fact that it did not include such a disclaimer on all claims and that such a disclaimer is not capable of shielding a company from liability for health and drug related claims it makes about its food products.

In support of its arguments Mars only cites distinguishable cases with wholly different alleged representations.  For example, in *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012), the plaintiff alleged that the use of the phrase "in the raw" misled her into believing the product was unprocessed and unrefined sugar.  However, nowhere on the box did the words "unprocessed" or "unrefined" appear and the description on the back of

the box expressly stated that the product was "turbinado cane sugar" but did not represent that this was the result of less refining or less processing. *Id*. at \*4. *See also*, *Werbel ex rel. v. Pepsico, Inc*., 2010 WL 2673860, at \*3 (N.D. Cal. July 2, 2010) (the plaintiff contended a cereal was made with "real fruit," but there are no representations on the product that it was derived from real fruit nor were there any depictions of any fruit on the cereal box.); *Sugawara v. Pepsico, Inc.,* 2009 WL 1439115, at \*3 (E.D. Cal. May 21, 2009) (cereal did not represent to be made with real fruit and did not contain any pictures of fruit).

> **D.    Plaintiff Has Standing Because She Has Adequately Alleged Legal Injury and Injury-in-Fact**

Plaintiff incorporates the arguments made in section II(D) in the opposition to the Wrigley motion to dismiss.

Additionally, to the extent that Mars argues that Plaintiff does not have standing to sue because she did not identify each and every purchase of a Mars product it is unavailing.  First and foremost, Plaintiff purchased many of Defendants' Misbranded Food Products since 2008 but only gave a non-exhaustive list in which she named  a number of specific products she purchased (AC ¶ 213), and pleaded, "Thus the violations and misrepresentations are similar across product labels and product lines." (AC ¶ 26).  Contrary to Mars' position, Plaintiff in fact does have standing to represent a class even on products she herself did not purchase, so long as there is sufficient similarity between the products purchased and products not purchased. *See, e.g., Ben & Jerry's*, at \*5.  Here there is a sufficient similarity between all of Mars' products.  Furthermore, as the court noted in *Astiana* v. *Dryer's Grand Ice Cream*, "any concerns… about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage."[4] *Astiana v. Dryer's Grand Ice Cream*, 2012 U.S. Dist. LEXIS 101371, at \*37 (N.D. Cal. July 20, 2012). This court adopted the same approach in *Khasin. Khasin,* at \*9.

---

[4] While courts are not unanimous on this point, it appears to be the prevailing view.  *See Forcellati v. Hyland's, Inc*., 2012 U.S. Dist. LEXIS 91393, at \*13-14 (C.D. Cal. June 1, 2012) ("Although the district courts within this circuit have not been entirely consistent on this issue, we agree with the numerous recent decisions that have concluded that Defendants'' argument is better taken under the lens of typicality or adequacy of representation, rather than standing."); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530-31 (C.D. Cal. 2011)  ("District courts in California routinely hold that the issue of whether a class representative 'may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.' Treatises and other circuits reach the same conclusion." (citations omitted).

**E.**      **Plaintiff Has Adequately Alleged Reliance and Deception**

Plaintiff incorporates the arguments made in section II(E) in the opposition to the Wrigley motion to dismiss.

**F.**      **Plaintiff's Allegations Related to Mars' Website Satisfy Rule 9(b)**

Plaintiff incorporates the arguments made in section II(F) the opposition to the Wrigley motion to dismiss.

**III.      Plaintiff's Claims Are Not Preempted**

**A.**      **There is a Strong Presumption Against Preemption**

Plaintiff incorporates the arguments made in section III(A) the opposition to the Wrigley motion to dismiss.

**B.**      **Plaintiff Does Not Seek To Enforce the FDCA**

Mars argues that this case should be dismissed on preemption grounds.  In an implicit acknowledgement that this Court recently rejected nearly identical arguments based upon express federal preemption, *see Khasin v. Hershey Co.,* 2012 WL 5471153, at *10 (N.D. Cal. Nov. 9, 2012), Mars has narrowed its position to argue that Plaintiff's claims are ***impliedly*** preempted by the FDCA.  These implied preemption arguments also fail.

Plaintiff's state statutory claims are predicated on state laws that mirror the FDCA, and such claims are not preempted. *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal 2010) ("Where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption . . . The FDA itself appears to endorse this approach."); *Reyes v. McDonald's Corp*., 2006 U.S. Dist. LEXIS 81684, at *19 (N.D. Ill. 2006) ("[T]here is no express provision in the text of the NLEA that indicates that a state common law action seeking to enforce the exact terms of the NLEA is preempted. There is also no requirement . . . that a state expressly adopt the exact language of the NLEA in order to allow a cause of action to proceed.")

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C.   Plaintiff May Bring Suit To Enforce *California* Food-Labeling Requirements That Are Identical to FDCA Requirements

### 1.   Mars' Implied Preemption Argument Fails

Mars relies heavily on the United States Supreme Court's holding in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349-350 (2001), to argue that preemption of Plaintiff's claims is implied by federal law. (Mars Br. at 14).  Mars' primary difficulty in making this argument is that the *Buckman* rule has no bearing on this case.  In *Buckman*, the plaintiffs claimed injuries caused by the use of orthopedic bone screws in the pedicles of their spines. *Id.* at 345. The FDA application sought clearance to market the screws for use in arm and leg bones, not the spine. *Id.* at 346.  Claiming that the FDA would not have approved the screws had petitioner not made fraudulent representations regarding their intended use, plaintiffs sought damages under state tort law. *Id.*  The District Court dismissed the fraud-on-the-FDA claims on, *inter alia*, the ground that they were pre-empted by the Medical Devices Act ("MDA").  After appeals, the U.S. Supreme Court affirmed the District Court's holding that the plaintiffs' state-law fraud-on-the-FDA claims conflicted with, and were therefore impliedly pre-empted by, the FDCA, as amended by the MDA.  *Id.*

*Buckman* bears no relation to any issues presently before this Court.  The *Buckman* rule is that a private litigant cannot seek an entirely derivative remedy against a defendant as a result of that defendant's fraud against the FDA.  The Court stated that policing fraud against federal agencies is hardly "a field which the States have traditionally occupied," *Buckman,* 531 U.S. at 347.  Because policing fraud in product applications is entirely the province of the FDA, the plaintiff could not proceed.

In this case, of course, Plaintiff's claims against Mars are not derivative of any alleged fraud on the FDA.  Rather, Plaintiff's state law claims arise as a result of numerous misrepresentations in product labeling.  A remedy for these misrepresentations is provided in California's Sherman Act.  Mars' heavy reliance on the *Buckman* case is entirely misplaced.

### 2.   *In Re Farm Raised Salmon* Is Persuasive Authority

In opening its lengthy discussion of *In Re Farm Raised Salmon Cases*, 42 Cal. 4th 1077

1    (2008), Mars points out that this Court is "not bound by a California state court's interpretation of

2    federal law, particularly where the issue is whether federal law preempts California law."  (Mars

3    Br. at fn. 6).   In doing so, Mars merely re-states the obvious.  However, the fact that this Court is

4    not bound by a ruling does not mean that the reasoning should be disregarded in its entirety.

5    *Farm Raised Salmon* provides a well-reasoned analysis and useful guidance regarding the

6    interaction of the Sherman Act and federal laws governing product labeling.

7           Like the defendant in *In Re Farm Raised Salmon Cases*, "[t]he crux of defendants'

8    preemption argument is that plaintiffs' private state claims are precluded because they improperly

9    seek to enforce the FDCA in violation of section 337(a). Defendants' starting assumption is

10    incorrect." *In Re Farm Raised Salmon Cases*, 42 Cal. 4th at 1096. *See also Ben & Jerry's*, 2011

11    WL 2111796, at *9 ("The purpose of the [National Labeling and Education Act] . . . is not to

12    preclude all state regulation of nutritional labeling, but to 'prevent State and local governments

13    from adopting inconsistent requirements with respect to the labeling of nutrients.'") (quoting H.

14    Rep. No. 101–538, at 10 (1990)); *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 372

15    (N.D. Cal. 2010) ([T]he mere fact that Plaintiffs' state law claims threaten private liability that

16    does not exist under the FDCA is not sufficient to bring those claims within the preemptive scope

17    of Section 403A [21 USC § 343-1(a)(1)]"); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d

18    1028, 1032 (N.D. Cal. 2009) (finding no preemption of consumers' claims related to state food

19    labeling requirements and stating, "The NLEA amended the FDCA to include an express

20    preemption provision that *allows* state regulations that are identical to federal law.") (emphasis in

21    original.)

22           Mars attacks the reasoning of *In Re Farm Raised Salmon Cases* in three ways. (Mars. Br.

23    at 15-16).  All three of Mars' arguments may be distilled into the following assertion: "*Farm*

24    *Raised Salmon* is based on the highly formalistic position that private actions brought under the

25    Sherman Act are predicated solely under state law and 'do not seek to enforce the FDCA,' –

26    notwithstanding that the Sherman law simply adopts the FDCA and its regulations wholesale."[6]

27

28    _____
     [6] Mars' second and third arguments that *In Re Farm Raised Salmon* was wrongly decided are mere variations on the
     first.

1  Recently, Judge Davila recently had no difficulty in allowing Plaintiff's allegedly

2  "formalistic" claims to proceed, reasoning as follows:

3  > **This argument is inapposite. In this case, Plaintiff has not brought suit to**
> **enforce the federal statute; rather, Plaintiff's action is based on parallel state**
4  > **laws that mirror the relevant sections of the FDCA and the NLEA.** Plaintiff's
> multiple claims are predicated upon state laws, such as the Sherman Food, Drug
5  > and Cosmetic Law, which prescribes labeling requirements that are similar, if not
> identical to, the requirements under FDCA and NLEA. In such cases, courts have
6  > refused to find that preemption precludes the private, state-based causes of action.

7  *Khasin,* at *4 (emphasis added) (internal citations omitted).

8  Judge Davila is correct.  The preemption analysis is simple, despite Mars' efforts to

9  muddy the waters.  A state law remedy for these claims exists – the Sherman Act.  Plaintiff seeks

10  to avail herself of the remedy provided by the Sherman Act.  Mars cannot argue away a state law

11  remedy because it does not approve of the fact that such a remedy exists.  Indeed, it is obvious

12  that one reason for the California Legislature's adoption of the Sherman Act was to provide

13  private plaintiffs with a remedy where federal law provides no remedy.

14  Mars next attacks the *Farm Raised Salmon* reasoning by analyzing the case of *Medtronic,*

15  *Inc. v. Lohr,* 518 U.S. 470, 474 (1996).  Mars' entire argument that *Medtronic* should not have

16  been cited by the *Farm Raised Salmon* court is that *Medtronic* "did not involve state law claims

17  that arose 'solely from the violation of FDCA requirements.'" (Mars Br. at 16).  The incorrect

18  assumption made by Mars is that the case here does, in fact, involve state law claims that arise

19  solely from the violation of FDCA requirements.  The simple rebuttal is that this case is brought

20  on Sherman Act claims, which are separate and distinct from FDCA requirements.  Mars' second

21  attack on *Farm Raised Salmon* fails for the same simple reason as the first:  Plaintiffs are

22  proceeding under the Sherman Act, not the FDCA.

23  Finally, Mars mount a collateral attack on Plaintiff's case by arguing that *Buckman*

24  prohibits intrusion into the federal regulatory enforcement arena.  (Mars Br. at 17).  As has been

25  discussed, *Buckman* only prohibits intrusion into the FDA process of policing fraud in a product

26  application.  *Buckman,* 531 U.S. at 347.  Therefore, the *Buckman* case is irrelevant to the issues

27  presented in Plaintiff's AC.

28

3.    ***Pom Wonderful LLC v. Coca-Cola Co*. Does Not Require Preemption**

Mars misconstrues the holding in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012). Mars declares that the *Pom Wonderful* decision forecloses a private party from bringing indirectly a claim to enforce alleged violations of FDA labeling regulations." (Mars Br. at 14). This simply is not *Pom Wonderful's* holding. In *Pom Wonderful*, the court held that a plaintiff could not bring *federal* Lanham Act claims for a deceptive juice label where the label presumptively *complied* with FDCA regulations. *Pom Wonderful*, 679 F.3d at 1178 (emphasis added). However, the court remanded the plaintiff's *state* law claims for further determination in light of the California Supreme Court's decision in *Kwikset. Id.* at 1179. This Court has acknowledged the limiting holding in *Pom Wonderful*.  *See Delacruz v. Cytosport, Inc.*, 2012 WL 2563857, at n.3 (N.D. Cal. June 28, 2012) ("The Ninth Circuit's preemption ruling was limited to a finding that the FDCA preempted Pom's claims under the [federal] Lanham Act.").  Judge Davila recently reaffirmed this reasoning, as follows:

> [C]ontrary to Defendant's contention, the *Pom Wonderful* court only held that the FDCA bars causes of action brought under the federal Lanham Act where doing so would implicate the rules and regulations set forth under the FDCA. In this case, as noted, Plaintiff does not bring a cause of action based on the federal FDCA or NLEA, but rather based on state laws; as such, the *Pom Wonderful* holding is inapplicable as to whether section 337(a) preempts the claims based upon California state law.

> *Khasin,* at *5 (internal citations omitted).

One of Mars' primary arguments for preemption is based on a case that does not support Mars' position.

Mars spends six pages arguing that California's Sherman Law is not identical to the FDCA and NLEA.  Mars' arguments are a series of attempts to confuse and twist Plaintiff's allegations.  Plaintiff contends throughout the AC that Plaintiff is bringing state claims "identical" to federal.  (*See* AC ¶¶ 1, 14, 23, 83, 138, 140, 152, 155, 156, 171).

Despite identifying discrete categories of statutory violations alleged by Plaintiff, Mars fails to identify any non-identical requirements for the health, "healthy," nutrient content, serving size, or sugar free claims alleged by the Plaintiff.  In doing so, it has completely failed to carry its

1  burden of overcoming the "presumption against preemption." Mars  argues that four specific

2  claims by the Plaintiff are preempted by the NLEA. While each will be dealt with specifically

3  below it should be noted that three of these claims were also at issue in the *Khasin* case where

4  Mars' competitor Hershey engaged in identical or very similar practices. As a result of Judge

5  Davila's order in *Khasin* in which he rejected all of Hershey's preemption arguments, these

6  claims remain live and viable in the *Khasin* case. Thus, Hershey continues to face claims arising

7  from its use of improper "natural source" nutrient content claims related to flavanols; its failure to

8  use the common and usual name polyglycerol polyricinoleic acid on its chocolate product labels;

9  and its failure to abide by front of package disclosure requirements arising from its use of optional

10 and artificial ingredients in its chocolate products. It is these exact claims that Judge Davila

11 allowed to proceed over preemption arguments by Hershey that Mars now seeks to have this court

12 dismiss on preemption grounds. (Compare AC ¶¶ 70-83, 138-161 with *Khasin* Amended

13 Complaint 51-63, 152-178 (Ex. 1))

14        Mars' claims that the NLEA preempts Plaintiff's  claims regarding Mars' use of unlawful

15 flavanol related nutrient claims is wrong. Mars argues that its phrase "natural source of cocoa

16 flavanols" is really not a nutrient content claim because it does not characterize the level of

17 flavanols.  (Mars Br. at 18-20).  This is not true.  The FDA has expressly stated that this exact

18 "source of" claim is a nutrient content claim.  A stated in the AC, on March 24, 2011, the FDA

19 sent Jonathan Sprouts, Inc. a warning letter where it specifically targeted a "source" type claim

20 like the one used by  Defendant. In that letter the FDA stated:

21        Your Organic Clover Sprouts product label bears the claim "Phytoestrogen
          Source[.]" Your webpage entitled "Sprouts, The Miracle Food! - Rich in
22        Vitamins, Minerals and Phytochemicals" bears the claim "Alfalfa sprouts are one
          of our finest food ***sources of*** . . . saponin." ***These claims are nutrient content***
23        ***claims subject to section 403(r)(1)(A) of the Act because they characterize the***
          ***level of nutrients of a type required to be in nutrition labeling (phytoestrogen***
24        ***and saponin) in your products by use of the term "source."*** Under section
          403(r)(2)(A) of the Act, nutrient content claims may be made only if the
25        characterization of the level made in the claim uses terms which are defined by
          regulation. However, FDA has not defined the characterization "source" by
26        regulation. Therefore, this characterization may not be used in nutrient content
          claims.

27

28

1     (AC ¶ 54)(emphasis added).[7]

2           Mars argues that this FDA letter is only entitled to "*Skidmore* deference 'proportional to

3     its 'power to persuade'" and cites *U.S. v. Mead Corp*., 533 U.S. 218, 233-35 (2001). In fact,

4     however, Mead goes a bit further than Mars reports. According to *Mead:*

5           When Congress has "explicitly left a gap for an agency to fill, there is an express
delegation of authority to the agency to elucidate a specific provision of the

6           statute by regulation," *Chevron*, 467 U.S. at 843-844, and any ensuing regulation
is binding in the courts unless procedurally defective, arbitrary or capricious in

7           substance, or manifestly contrary] to the statute. [6] *See id*., at 844; *United States* v.
*Morton,* 467 U.S. 822, 834, 81 L. Ed. 2d 680, 104 S. Ct. 2769 (1984); APA, 5

8           U.S.C. §§ 706(2)(A), (D). But whether or not they enjoy any express delegation
of authority on a particular question, agencies charged with applying a statute

9           necessarily make all sorts of interpretive choices, and while not all of those
choices bind judges to follow them, they certainly may influence courts facing

10          questions the agencies have already answered. "The well-reasoned views of the
agencies implementing a statute 'constitute a body of experience and informed

11          judgment to which courts and litigants may properly resort for guidance,'"
*Bragdon* v. *Abbott,* 524 U.S. 624, 642, 141 L. Ed. 2d 540, 118 S. Ct. 2196 (1998)

12          (quoting *Skidmore,* 323 U.S. at 139-140), and "we have long recognized that
considerable weight should be accorded to an executive department's construction

13          of a statutory scheme it is entrusted to administer . . . ." *Chevron, supra,* at 844.

14     *Mead,* at 227-228. Moreover, where, as here, the agency is interpreting its own regulations

15     such as the food labeling rules and nutrient content claims embodied in 21 C.F.R. § 101 that

16     interpretation is "controlling." Thus the Ninth Circuit has stated: "[w]e give wide **deference** to an

17     agency's reasonable interpretation of its own regulation." *Public Lands for the People, Inc. v.*

18     *United States Dep't of Agric.,* 2012 U.S. App. LEXIS 20175 (9th Cir. 2012). "[W]here an agency

19     interprets its own regulation, even if through an informal process, its interpretation of an

20     ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the

21     regulation.'" *Id.* (*quoting Bassiri v. Xerox Corp*., 463 F.3d 927, 930 (9th Cir. 2006)). Mars'

22     argument that the warning letter "does not necessarily represent the official interpretive position

23

24

---

[7] Source" claims are also improper because 1) they use a term "source" that even Defendant admits is undefined and
only those claims, or their synonyms, that are specifically defined in the regulations may be used; all other claims are

25     prohibited. 21 CFR 101.13(b) and 2) claims that products contain or are made with an ingredient that is known to
contain a particular nutrient, can only be made if the products are a "good source" of the nutrient 21 C.F.R. §

26     101.65(c)(3). Defendant misrepresents the FDA position in the Federal Register which is actually consistent with the
FDA position in the Jonathan Sprouts letter and which makes clear that the FDA chose to use the defined term

27     "'good source' (as a replacement for 'source')" because "consumers may not be able to understand the distinction
between the meanings of 'high' and 'source'  and "the term 'source' alone does not enable the consumer to conclude

28     that the level of nutrient present is less than 'high'". 58 F.R. 2345.

of the FDA is belied by the FDA's July 2012 Regulatory Procedures Manual which indicates that a warning letter "communicates the agency's position on a matter" and that "Warning Letters are issued only for violations of regulatory significance." This also undercuts Mars (and Wrigley) argument that the violations at issue in this case are merely "technical" and not significant as Plaintiff has alleged how the FDA has sent numerous warning letters for violations similar to those at issue here.

Mars' argument that flavanol are not nutrients subject to the nutrient content claim rules is specious. The FDA has repeatedly issued warning letters for such nutrient claims including ones for flavonoids (of which flavanols are a subset), polyphenols, theaflavins, thearubigin, theobrownin, amino acids, L-Theanine amino acid, linoleic acid, and phytostrogens) (*See e.g.* FDA Warning Letters, collectively, Exhibit 2).

Mars' claim the NLEA preempts Plaintiff's claims regarding Mars' illegal sale of chocolate products that failed to comply with the standards of identity for milk chocolate and other chocolate products is wrong. Mars disingenuously argues that it has complied with the standards of identity for milk chocolate but only focuses on the first two requirements of that standard while completely ignoring and failing to respond in any way to the Plaintiff's allegation about the Mar's violation of the third requirement of the standard of identity which was the basis for Plaintiff's claim. As alleged by Plaintiff in paragraphs 156-161 of the AC:

> Identical California and federal law require foods to comply with specified standards of identity. Both California and federal law deem a food to be misbranded if it purports to be a standardized food (*e.g.*, milk chocolate, sweet chocolate or cocoa) but does not comply with the applicable standard of identity.
>
> Certain standards of identity require that particular optional ingredients, such as artificial flavorings or alkali ingredients, be declared in a specified manner on the label in conjunction with the name of the standardized food.
>
> Defendants' milk chocolate and sweet chocolate products violate 21 C.F.R. § 163.130 because these products contain vanillin, an artificial ingredient, and/or

alkali ingredients but fail to disclose this fact as required by the standard of identity.

The standard of identity for milk chocolate, 21 C.F.R. § 163.130 provides:

When optional alkali ingredients are used in the preparation of the chocolate liquor or the cacao nibs from which the milk chocolate was prepared, the label shall bear the statement "Processed with alkali", or "Processed with ___", the blank being filled in with the common or usual name of the specific alkali ingredient used in the food.
When one or more of the spices, flavorings, or seasonings specified in paragraph (b)(3) of this section are used in the breakfast cocoa [sic], the label shall bear an appropriate statement, e.g., "Spice added", "Flavored with ___", or "With ___ added", the blank being filled in with the common or usual name of the spice, flavoring, or seasoning used, in accordance with 101.22 of this chapter….

Whenever the name of the food appears on the label so conspicuously as to be easily seen under customary conditions of purchase, the statements prescribed in this paragraph showing optional ingredients used shall precede or follow such name without intervening printed or graphic matter.

Defendants fail to do this. Thus, for example, the Dove Milk Chocolate bar purchased by the Plaintiff purports to be milk chocolate and is labeled as such on the principal display panel yet the product contains both artificial ingredients and alkali ingredients not found in better chocolate. Similarly, the M&M Milk and Twix candy purchased by the Plaintiff purports to be milk chocolate and is labeled as such on the principal display panel yet these products contain vanillin, an artificial ingredient not found in better chocolate. The disclosure statements mandated by 21 C.F.R. 163.130 are not present on the label, however.

Mars focuses solely on how its back of package ingredient list represented  optional and artificial ingredients and  never addresses Plaintiff's allegation that Mars represented its products as milk chocolate on the principal display panel located on the front of their packaging. Mars' use of the food name "milk chocolate" on the principal display panel on the front of the package is clearly an instance of placing "the name of the food appears on the label so conspicuously as to be easily seen under customary conditions of purchase" yet Mars failed to place the statements "showing optional ingredients used" either preceding or following the name of the food without intervening printed or graphic matter. This is basis for Plaintiff's claim that Mars violated the milk chocolate standard of identity and Mars imply ignores it without a response.

1    Plaintiff alleges that Mars engaged in just the type of unlawful labeling practice the third

2    requirement of the standard of identity was designed to prevent, namely the misrepresentation of

3    a chocolate product as a premium product – standard milk chocolate -  on the front of the package

4    which plays a significant role in consumer purchasing decisions while concealing the fact that

5    optional or artificial ingredients like alkalized cocoa or artificial flavors not found in premium or

6    standard milk chocolate were present in the food by only disclosing that fact  on a less visible

7    panel.  Mars argues that it was proper to represent on the front of its packaging it was selling

8    "milk chocolate" despite the fact that according to the standard of identity it was required to

9    represent on the front of its packaging it was selling "milk chocolate processed with alkali."

10   Obviously such a difference in representation would be important to consumers and it was to

11   protect such consumers from companies like Mars that would try and pass off inferior products as

12   something they were not that the disclosure requirement of the milk chocolate standard of identity

13   were enacted.

14         While Mars simply fails to respond to this allegation and thus should be deemed to have

15   waived any arguments it may have on this issue, to the extent Mars is deemed to be arguing that

16   its mandated disclosures in the less visible ingredient list on the back of the panel somehow shield

17   it from liability such an argument is unavailing. First, the standard of identity requires compliance

18   with both front of pack disclosure requirements and ingredient list disclosure requirements.

19   Second, this argument contradicts the Ninth Circuit decision in *Williams v. Gerber Prods. Co.*,

20   552 F.3d 934 (9th Cir. 2008).  In *Williams*, the court rejected this very argument and said

21         The district court suggests that "no reasonable consumer upon review of the
           package as a whole would conclude that Snacks contains juice from the actual and
22         fruit-like substances displayed on the packaging particularly where the ingredients
           are specifically identified." ***We disagree with the district court that reasonable
23         consumers should be expected to look beyond misleading representations on the
           front of the box to discover the truth from the ingredient list in small print on
           the side of the box.*** The ingredient list on the side of the box appears to comply
           with FDA regulations and certainly serves some purpose. ***We do not think that
           the FDA requires an ingredient list so that manufacturers can mislead***

***consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.*** Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id.* at 938-40 (emphasis added).  The Ninth Circuit holding drives a stake through this argument and a host of other similar arguments raised by Mars and Wrigley that seek to shield them from liability for their pervasive practices of making unlawful and misleading front of package claims designed to influence consumer purchasing decisions and drive sales by claiming some less visible label statement renders their practices acceptable.

Mars' claim the NLEA preempts Plaintiff's claims regarding  Mars' illegal use of a non-common name to obscure its use of the cocoa butter substitute polyglycerol polyricinoleic acid in its chocolate products is wrong because California law is identical to federal law. Under California law "[a]ny food fabricated from two or more ingredients is misbranded unless it bears a label clearly stati**n**g the common or usual name of each ingredient." California Health & Safety Code § 110725. California's law is identical to federal law on this point. Moreover, California has expressly adopted the federal regulations as it own. Thus California has adopted the requirements of 21 C.F.R. § 101.4 which mandate that the ingredient names listed on product labels be the common or usual name of those ingredients.  In its guidance for industry and warning letters to manufacturers, the FDA has repeatedly stated its policy of restricting the ingredient names listed on product labels to their common or usual name, as provided in 21 C.F.R. § 101.4(a)(1).  An ingredient's common or usual name is the name established by common usage or regulation, as provided in 21 C.F.R. § 102.5(d) which has been adopted by the State of California.  Mars' argument is simply a factual argument disputed by Plaintiff that PGPR is the common name for polyglycerol polyricinoleic acid. Such an argument is inappropriate at the 12(b)(6) stage. While Plaintiff has plenty of evidence of its own (including numerous FDA documents that expressly state the common or usual name of the chemical is polyglycerol polyricinoleic acid and not some other name such as PGPR), at this stage Plaintiff's allegations that Mars failed to list the ingredient polyglycerol polyricinoleic acid.

1

2

> by its common or usual name in some of the Defendants' chocolate products
> like Twix. Instead the Defendants listed it by a non-common or usual name
> PGPR. Moreover, when they listed it they did not describe its function.

3

4

5

6

7

> Polyglycerol polyricinoleic acid is used to reduce the amount of high cost cocoa
> butter that is used in the chocolate. This form of economic adulteration saves
> the Defendants considerable amounts of money. Hiding the presence of the
> polyglycerol polyricinoleic acid allows them to pass off their chocolate products
> as higher value items. As the Defendants themselves note, if consumers want
> real chocolate then consumers should try and search out products that contain
> 100% cocoa butter. The Defendants make this harder to do by their deceptive
> labeling practices.

8

(AC ¶¶ 148-49).  These allegations, which must be taken as true, are certainly are sufficient to

state a claim and are not merely "conclusory" as alleged by Mars.

9

10

11

12

13

14

15

16

17

18

19

20

Mars' claims that the NLEA preempts Plaintiff's claims regarding Mars' use of unlawful

calorie related nutrient claims is wrong. Mars argument that the standalone Nutrition Key for

calories on the front of its candy packaging is not a nutrient content claim is contrary to FDA

guidance which confirms that the "FDA views the Nutrition Keys Basic Icons (calories, saturated

fat, sodium and total sugar content) and Optional Icons as nutrient content claims subject to all

the requirements of the FDCA and the Agency's regulations." (*See* Dec. 13, 2011 FDA Letter,

attached as Exhibit 3).[8] Moreover, the FDA indicated it would only exercise enforcement

discretion (when a company failed as Mars did to make the disclosures required under 21 C.F.R.

§ 101.13(h)) when all four of the basic icons were utilized by a company on the principal display

panels of virtually all of its products. The FDA expressly indicated that selective presentation of

the icons would not result in enforcement discretion if a company failed to follow the disclosure

rules of 21 C.F.R. § 101.13(h). *Id.*

21

22

23

24

25

The selective presentation by Mars of the calorie icon on the front of the package while

failing to use other icons like the one for saturated fat is the type of labeling practice that the FDA

expressed "concern" about because of its "potential for product mislabeling to mislead consumers

by presenting only 'good news' about nutrient content on the front of the package, which is the

26

27

28

---

[8] Mars' front of package icon is an example of the Nutrition Key discussed in the FDA letter to the Grocer
Manufacturers Association as confirmed by the content of the letter and materials from that group announcing the
Nutrition Keys which unlike Mars do not use a DV percentage for calories or other nutrients like sugar where there is
no recognized daily value standard. http://www.gmaonline.org/news-events/newsroom/food-and-beverage-industry-
launches-nutrition-keys-front-of-pack-nutrition-/

1   concern the regulations governing nutrient content claims were intended to address." *Id.*

2   Because, the calorie icon that Mars used is clearly a nutrient content claim and because Mars

3   failed to adhere to the requirements stated by the FDA for enforcement discretion,  Mars was

4   required under identical California and federal law to follow the disclosure rules of 21 C.F.R. §

5   101.13(h) and notify consumers on the front of the package that its products contained levels of

6   deleterious items such as saturated fat at levels the FDA deemed sufficient to increase the risk of

7   a diet related disease or condition. Since it did not its products are misbranded.

8        Mars attempt to rely on 21 C.F.R. § 101.13(i)(3) is misplaced because that provision

9   expressly bars claims that are false or misleading as the presentation of a purported percentage of

10  an unauthorized and inaccurate daily value for calories would be.  Mars argument that DV for

11  other nutrients must be calculated using a 2000 calorie diet is misplaced for the reasons stated

12  above and because the FDA also authorizes calculation based on other caloric values on a

13  voluntary basis.  58 F.R. 2218 (using 1500 calories as an example).

14  **IV.    The Doctrine of Primary Jurisdiction Is Inapplicable**

15       Plaintiff incorporates the arguments made in the opposition to the Wrigley motion to

16  dismiss.

17  **V.    Plaintiff's UCL, FAL and CLRA Claims Are Not Barred By the "Safe
        Harbor Provision"**

18       Plaintiff incorporates the arguments made in the opposition to the Wrigley motion to

19  dismiss.

20  **VI.    Plaintiff Has Properly Pleaded an Unjust Enrichment Claim**

21       Mars incorporates the Wrigley argument.  Recently, in *Vicuna v. Alexia Foods, Inc.*, Judge

22  Hamilton allowed an unjust enrichment claim to go forward on the grounds that it was essentially

23  a claim for restitution based on quasi-contract despite finding that unjust enrichment is not a

24  cause of action in California.  *Vicuna*, 2012 WL 1497507, at *3.  Plaintiff has alleged that

25  Defendants were enriched, i.e., received a benefit, by means of unlawful, fraudulent and

26  misleading labeling. (AC ¶ 290).  Plaintiff has, consistent with *Vicuna*, chosen to seek restitution

27  on a quasi-contract theory, as evidenced by the style of their cause of action - "Restitution Based

28  on Unjust Enrichment/Quasi Contract."  Further, as recognized by the court in *Vicuna*, Plaintiff

may plead a restitution claim in the alternative, pursuant to Fed. R. Civ. P. 8(e)(2), even where

such a claim is inconsistent and incompatible with a related claim for breach of contract or a

claim in tort. *Vicuna,* 2012 WL 1497507, at *3.

**VII.   Plaintiff Has Properly Pled Song-Beverly Consumer Warranty Act And
Magnuson-Moss Warranty Act Claims**

Mars incorporates the Wrigley argument.  Again, Plaintiff has alleged sufficient facts to

maintain claims under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.*

and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*  The Song-Beverly Consumer

Warranty Act provides a right of action where the defendants have created express warranties as

defined by Cal. Civ. Code § 1791.2. Plaintiff has provided an extensive factual basis

demonstrating that Mars' labels created express warranties, and Mars violated those warranties.

The AC alleges that the food products at issue are consumables. (AC ¶ 296). Further, the AC

alleges that Mars created express warranties by making affirmations of fact about the nature and

quality of their food products. (AC ¶¶ 297-299, 308-312). Therefore, under the provisions of Cal.

Civ. Code § 1793.35, which unlike other sections of the FDCA apply to consumables, Plaintiff's

claims fall within the provisions of the Song-Beverly Act. To establish violations of § 1793.35, it

is necessary to establish that the factual circumstances of the food purchases made by Plaintiff

give rise to liability. However, success or failure on the merits is not at issue at this stage of the

litigation.

The Magnuson-Moss Warranty Act provides that a consumer may assert a civil cause of

action to enforce the terms of an implied or express warranty. 15 U.S.C. § 2310(d) provides that

any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to

comply with any obligation under this chapter, or under a written warranty, implied warranty, or

service contract" may sue for damages and other legal and equitable relief. Breach of an

obligation imposed by state law will support a claim under the Magnuson-Moss Act. *In re Sony

Grand Wega*, 758 F. Supp. 2d 1077, 1101 (S.D. Cal. 2010).  There is no 100 plaintiff requirement

due to diversity jurisdiction.  *See Chavis v. Fidelity Warranty Services, Inc.,* 415 F. Supp. 2d 620,

622-24 (D.S.C. 2006).

1    Mars argues that a Magnuson-Moss claim cannot be sustained when the making or content

2    of the written warranty is governed by federal law. Mars' argument fails because the written

3    warranties in this case are governed by both federal and California law. California law provides

4    substantive rights and remedies to Plaintiff, and Plaintiff's AC seeks relief based on California

5    law.  Additionally, Mars asserts that Mars' label statements do not amount to a written warranty.

6    A warranty is defined as "[a] written statement arising out of a sale to the consumer of a

7    consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve

8    or maintain the utility or performance of the consumer good or provide compensation if there is a

9    failure in utility or performance." Cal Civ. Code § 1791.2, Subd. (a)(1). Clearly, Mars' labels fall

10   within the definition of "warranty."

11   **VIII.   Plaintiff Has Claims Against Mars for Wrigley's Misbranded Food Products**

12   Mars asserts "the Court should dismiss all claims against Mars relating to Wrigley's gum,

13   breath mint, and hard candy products."  (Mars Br. at 24).  This is wrong.  Mars is liable and

14   responsible for the Wrigley misbranded products at issue in this case.  Mars, Inc. is the parent

15   company of Wrigley.  (AC ¶ 2).  Mars controls and Wrigley and uses Wrigley as a brand to sell

16   Mars global brands.  On Mars' website, http://www.mars.com/global/brands.aspx, Mars listed

17   Wrigley as one of its global brands.  This website describes Wrigley's products at issue in this

18   case and refers to these products as "all our Wrigley products."  The nutrition and science page

19   describes the alleged health benefits of both "sugar-free" gum and cocoa flavanols. It is on Mars

20   websites that various Wrigley related claims at issue in this case are made. Moreover, all of the

21   claims at issue are made part of a global nutrition and health plan implemented and managed by

22   Mars. Moreover Plaintiff has alleged Defendants are juridically linked, pursued a common plan,

23   design, and course of conduct, had a unity of interests and cooperated in the scheme. (*See* AC ¶¶

24   34-39).  This is sufficient to impose liability on Mars for the sale and advertising of the products

25   of its subsidiary, Wrigley.

**CONCLUSION**

26   Plaintiff respectfully requests that the Court deny Mars' motion in its entirely.

27

28

1

2      Dated:  November 21, 2012.

                                        Respectfully submitted,
3

4
                                          /s/ *Ben F. Pierce Gore*
5                                       Ben F. Pierce Gore (SBN 128515)
                                        PRATT & ASSOCIATES
6                                       1871 The Alameda, Suite 425
                                        San Jose, CA 95126
7                                       (408) 429-6506
                                        pgore@prattattorneys.com
8
                                        J. Price Coleman
9                                       COLEMAN LAW FIRM
                                        1100 Tyler Avenue, Suite 102
10                                      Oxford, MS 38655
                                        (662) 236-0047
11                                      colemanlawfirmpa@bellsouth.net

12                        **CERTIFICATE OF SERVICE**

13          I hereby certify that I have on November 21, 2012 filed and served through the Court's

14     ECF system a true and correct copy of the foregoing.

15                                        /s/ *Ben F. Pierce Gore*
                                        Ben F. Pierce Gore (SBN 128515)
16

17

18

19

20

21

22

23

24

25

26

27

28