Stephen D. Raber (State Bar No. 121958)
David M. Horniak (State Bar No. 268441)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Fax:  (202) 434-5029
E-mail:  sraber@wc.com
E-mail:  dhorniak@wc.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| PHYLLIS GUSTAVSON, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WRIGLEY SALES COMPANY, WM. WRIGLEY JR. COMPANY, MARS, INC., and MARS CHOCOLATE NORTH AMERICA, LLC, <br><br> Defendants. | **Case No. C12-01861 LHK** <br><br> **JOINT REPLY OF MARS AND WRIGLEY IN SUPPORT OF THEIR MOTIONS TO DISMISS THE AMENDED COMPLAINT** <br><br> **CLASS ACTION** <br><br> Hearing Date:  January 31, 2013 <br> Time:  1:30 p.m. <br> Place:  Courtroom 8, 4th Floor <br> Judge:  Hon. Lucy H. Koh |

1

2

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................................. ii

INTRODUCTION .............................................................................................................................1

I.      The Complaint Fails To State a Claim Under the UCL, FAL, and CLRA. ...........................1

    A.   Plaintiff Must Allege a Plausible Claim of Deception. ............................................1

    B.   The Reasonable Consumer Test Applies on a Motion To Dismiss. ........................6

    C.   Plaintiff's UCL, FAL, and CLRA Claims Against Wrigley Fail. ...........................7

        1.   Wrigley's Labels Are Not Likely To Deceive a Reasonable Consumer. ...........7

        2.   Plaintiff Does Not Have Standing. ........................................................11

        3.   Plaintiff Has Failed To State a Claim Based on Wrigley's Publications. ..........11

    D.   Plaintiff's UCL, FAL, and CLRA Claims Against Mars Fail. ...............................12

        1.   Mars's Labels Are Not Likely To Deceive a Reasonable Consumer. ...............12

        2.   Plaintiff Does Not Have Standing. ........................................................16

        3.   Plaintiff Has Failed To State a Claim Based Mars's Websites. ........................16

II.     Plaintiff's Claims Are Preempted by Federal Law. ...........................................................17

    A.   Plaintiff's Claims Are Impliedly Preempted Under *Buckman*. ...............................17

    B.   Plaintiff's Claims Are Expressly Preempted. ........................................................21

        1.   The Wrigley Claims Are Expressly Preempted. ...............................................21

        2.   The Mars Claims Are Expressly Preempted. ....................................................24

III.    Plaintiff's Claims Are Barred by the Safe Harbor Doctrine. .................................................28

IV.     The Complaint Fails To State a Claim for "Restitution on a Quasi-Contract Theory." ........28

V.      The Complaint Fails to State a Claim Under Song-Beverly or Magnuson Moss. .................29

VI.     Plaintiff Has Not Stated a Claim Against Mars Based on Wrigley's Products. ....................30

CONCLUSION .................................................................................................................................30

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*American Frozen Food Institute v. Mathews*,
  413 F. Supp. 548 (D.D.C. 1976) ...................................................................... 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 22

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  Nos. 10-4387 & 10-4937, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ............... 4, 7

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
  Nos. 11-2910 & 11-3164, 2012 WL 2990766 (N.D. Cal. July 20, 2012).............. 29

*Auer v. Robbins*,
  519 U.S. 452 (1997) ......................................................................................... 25

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................... 22

*Briseno v. Conagra Foods, Inc.*,
  No. 11-05379, 2011 U.S. Dist. LEXIS 154750 (N.D. Cal. Nov. 23, 2011) ............... 7

*Bryant v. Medtronic, Inc. (In re Medtronic, Inc, Sprint Fidelis Leads Products Liability Litigation)*,
  623 F.3d 1200 (8th Cir. 2010)........................................................................... 20

*Buckman Co. v. Plaintiffs' Legal Committee*,
  531 U.S. 341 (2001) ............................................................................. 17, 18, 19, 21

*Christensen v. Harris County*,
  529 U.S. 576 (2000) ......................................................................................... 25

*Christopher v. SmithKline Beecham Corp.*,
  132 S. Ct. 2156 (2012) ..................................................................................... 25

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008)........................................................................... 23

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012)......................................................................... 6, 7

*Delacruz v. Cytosport, Inc.*,
  No. 11-3532, 2012 U.S. Dist. LEXIS 90847 (N.D. Cal. June 28, 2012) ............... 23

*Dvora v. General Mills, Inc.*,
  No. 11-1074, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ............................... 15

*Freeman v. Time, Inc.*,
　　68 F.3d 285 (9th Cir. 1995)........................................................................ 6, 7, 13

*Garcia v. Sony Computer Entertainment America, LLC*,
　　859 F. Supp. 2d 1056 (N.D. Cal. 2012) ................................................................ 6

*Gonzales v. Oregon*,
　　546 U.S. 243 (2006)........................................................................................... 25

*Gray v. Hernandez*,
　　651 F. Supp. 2d 1167 (S.D. Cal. 2009)............................................................ 9, 26

*Henderson v. Gruma Corp.*,
　　No. 10-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ............................... 7

*Khasin v. Hershey Co.*,
　　No. 12-01862, 2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) ......................... passim

*McKinniss v. General Mills, Inc.*,
　　No. 07-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ......................... 15, 28

*Medtronic, Inc. v. Lohr*,
　　518 U.S. 470 (1996).......................................................................................... 18

*PhotoMedex, Inc. v. Irwin*,
　　601 F.3d 919 (9th Cir. 2010)........................................................................ 19, 20

*Pom Wonderful LLC v. Coca-Cola Co.*,
　　679 F.3d 1170 (9th Cir. 2012)....................................................................... 19, 20

*Riegel v. Medtronic, Inc.*,
　　552 U.S. 312 (2008).......................................................................................... 20

*Rodriguez v. JP Morgan Chase & Co.*,
　　809 F. Supp. 2d 1291 (S.D. Cal. 2011) .............................................................. 30

*Schneider v. California Department of Corrections*,
　　151 F.3d 1194 (9th Cir. 1998).................................................................... 9, 26, 30

*Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*,
　　802 F. Supp. 2d 1125 (C.D. Cal. 2011) .............................................................. 16

*Taradejna v. General Mills, Inc.*,
　　No. 12-993, 2012 WL 6113146 (D. Minn. Dec. 10, 2012)............................. 23, 24

*United States v. 24 Bottles*,
　　338 F.2d 157 (2d Cir. 1964)............................................................................... 12

*Von Koenig v. Snapple Beverage Corp.*,
　　713 F. Supp. 2d 1066 (E.D. Cal. 2010)................................................................. 7

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008)............................................................ 6, 7, 14

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ....................................................................... 21

**STATE CASES**

*Buckland v. Threshold Enterprises, Ltd.*,
   66 Cal. Rptr. 3d 543 (Ct. App. 2007).................................................. 2, 5

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
   973 P.2d 527 (Cal. 1999) ................................................................ 28

*Durell v. Sharp Healthcare*,
   108 Cal. Rptr. 3d 682 (Ct. App. 2010)................................................. 3

*In re Farm Raised Salmon Cases*,
   175 P.3d 1170 (Cal. 2008) .............................................................. 21

*In re Steroid Hormone Products Cases*,
   104 Cal. Rptr. 3d 329 (Ct. App. 2010)............................................ 3, 4, 5

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877 (Cal. 2011) ......................................................... 2, 3, 4, 5

*Medrazo v. Honda of North Hollywood*,
   No. B230410, 2012 Cal. App. Unpub. LEXIS 2316 (Ct. App. Mar. 27, 2012). ....... 4

*Thomas v. Imbrolio*,
   No. A130517, 2012 Cal. App. Unpub. LEXIS 3111 (Ct. App. Apr. 25, 2012)......... 5

**STATUTES**

15 U.S.C. § 2311 ............................................................................ 29

21 U.S.C. § 321 .......................................................................... 12, 17

21 U.S.C. § 343 .......................................................................... 24, 25

Cal. Bus. & Prof. Code § 17204 ......................................................... 2, 4

Cal. Civ. Code § 1791 ...................................................................... 29

Cal. Civ. Code § 1793.35 ................................................................... 29

Cal. Civ. Code § 1794 ...................................................................... 29

**REGULATIONS**

21 C.F.R. § 101.2 ............................................................................ 5

21 C.F.R. § 101.13 ............................................................................................ 25, 26, 27

21 C.F.R. § 101.22 ...................................................................................................... 15

21 C.F.R. § 101.60 ........................................................................................... 9, 10, 22

21 C.F.R. § 102.5 ....................................................................................................... 14

21 C.F.R. § 105.66 ..................................................................................................... 22

21 C.F.R. § 130.11 ............................................................................................ 15, 27, 28

21 C.F.R. § 163.130 ............................................................................................... 15, 27

Food Labeling: Label Statements on Foods for Special Dietary Use, 58 Fed. Reg. 2427 (Jan. 6, 1993) ................................................................................................ 22

Food Labeling: Nutrient Content Claims, 58 Fed. Reg. 2302 (Jan. 6, 1993) ............................... 26

Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 56 Fed. Reg. 60,421 (Nov. 27, 1991) (proposed rule) ....................................... 10, 18

Food Labeling; Declaration of Ingredients, 58 Fed. Reg. 2850 (Jan. 6, 1993)............................ 28

Food Labeling; Serving Sizes; Reference Amount and Serving Size Declaration for Hard Candies, Breath Mints, 62 Fed. Reg. 67,775 (Dec. 30, 1997) (proposed rule)........................ 23

**RULES**

Federal Rule of Civil Procedure 8................................................................................ 22

Federal Rule of Civil Procedure 9....................................................................... 12, 16, 30

Federal Rule of Civil Procedure 12.............................................................................. 30

1

## INTRODUCTION

Plaintiff's Oppositions make two crucial legal errors that render their analysis fatally flawed: (i) that Plaintiff can state a claim based solely on alleged misbranding, even if the products' labels were *not* deceptive; and (ii) that the reasonable consumer test does not apply on a motion to dismiss.  Both these arguments are contrary to California law.  Without the support of these erroneous legal premises, Plaintiff's claims crumble because she has failed to allege *any* statements in the Wrigley or Mars labeling that are likely to deceive a reasonable consumer.

In addition, Plaintiff's claims are preempted by federal law.  First, Plaintiff's Oppositions further demonstrate that her claims exist because of *federal regulations* and are thus impliedly preempted under *Buckman*.  Plaintiff's argument that she can state a claim based on alleged misbranding, even if the statements were not deceptive, is further proof that her claims are dependent on federal law.  Moreover, the Oppositions, like the Amended Complaint ("Complaint"), are replete with quotations of hyper-technical FDA regulations, historical FDA policies, and FDA letters.  The notion that Plaintiff's claims are nonetheless based on state law because of the Sherman Law's one-sentence incorporation-by-reference of FDA regulations is a fiction; the legal *substance* of Plaintiff's claims is supplied by federal law.  Second, Plaintiff's claims are expressly preempted.  Because Plaintiff has not alleged facts showing that Wrigley or Mars has violated any federal regulations, she is attempting to impose different requirements under California state law than those required by federal law.  Finally, at a minimum, Plaintiff's claims raise technical regulatory matters that are within the FDA's primary jurisdiction.  Thus, the Court should grant Defendants' motions to dismiss.

## I.   The Complaint Fails To State a Claim Under the UCL, FAL, and CLRA.

### A.   Plaintiff Must Allege a Plausible Claim of Deception.

Plaintiff concedes that she must prove that she was deceived by Wrigley's and Mars's labels to state a claim under the FAL, the CLRA, and the "unfair" and "fraudulent" prongs of the UCL—

her second through sixth causes of action.  *See* W. Opp. 8.[1]  But she argues that her first cause of action— under the "unlawful" prong of the UCL—enables her to state claims based on alleged violations of food labeling regulations that "stand[] alone without any allegations of deception." W. Opp. 1, 8 ("[T]he 'reasonable consumer' test is inapplicable to a UCL claim under the unlawful prong because reliance and deception are not elements of that claim." (emphasis omitted)). Plaintiff is wrong for three reasons.

1.      Plaintiff ignores the UCL's standing requirement.  In 2004, California voters enacted "Proposition 64," an amendment to the UCL's standing provision, that was meant to "materially curtail[] the universe of those who may enforce" the UCL and "confine standing to those *actually injured* by a defendant's business practices."  *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 884 (Cal. 2011) (emphasis added); *see also Buckland v. Threshold Enters., Ltd.*, 66 Cal. Rptr. 3d 543, 552–53 (Ct. App. 2007) (observing Proposition 64 was enacted to prevent plaintiffs' attorneys from "'scour[ing] public records . . . for what are often ridiculously minor violations of some regulation or law . . . and su[ing] that business'" (quoting *People ex rel. Lockyer v. Brar*, 9 Cal. Rptr. 3d 844, 845 (Ct. App. 2004)).  After Proposition 64, a plaintiff has standing to sue under the UCL only if she has "suffered injury in fact and has lost money or property *as a result of* the unfair competition."  Cal. Bus. & Prof. Code § 17204 (West 2012) (emphasis added).  This means "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury, . . .* that . . . was the result of, i.e., *caused by,* the unfair business practice."  *Kwikset*, 246 P.3d at 885. Proposition 64's standing requirement applies to *all* causes of action under *every* prong of the UCL. *See* Cal. Bus. & Prof. Code § 17204.

In *Kwikset*, the California Supreme Court held that Proposition 64's standing requirement applies equally to allegations brought under the "unlawful" prong of the UCL.  The plaintiffs alleged that a lockset manufacturer, Kwikset, had violated a California law prohibiting the labeling of a product "Made in U.S.A." when its subcomponents were manufactured elsewhere.  246 P.3d at

---

[1] Wrigley's and Mars's opening memoranda in support of their motions to dismiss are referred to as "W. Mem." and "M. Mem."  Plaintiff's oppositions to those motions are referred to as "W. Opp." and "M. Opp."

882.  The court found that the alleged "economic injury" caused by such labeling was that each plaintiff "*paid more for* [the product] than he or she otherwise might have been willing to pay if the product had been labeled accurately." *Id.* at 890.  To show that the mislabeled products caused this injury, the *Kwikset* court held that the plaintiffs "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Id.* at 888 (internal quotation marks omitted).  This was true even though the plaintiffs "also allege[d] unlawful conduct" based on violations of California's "Made in U.S.A." statute, because "[t]he theory of the case" was still that "Kwikset engaged in misrepresentations and deceived consumers," and the "Made in U.S.A." statute "simply codif[ied] prohibitions against certain specific types of misrepresentations." *Id.* at 888 n.9.

*Kwikset* is controlling here.  Plaintiff's "unlawful" UCL claim alleges that she purchased Wrigley and Mars products that were labeled in violation of food labeling laws.  Plaintiff must therefore show that the alleged violations of these labeling laws caused her economic harm—to "*pa[y] more for* [the products] than . . . she otherwise might have been willing to pay." *Kwikset*, 246 P.3d at 890.  If Plaintiff was not deceived by the labels, then the alleged violations could not have caused her to overvalue the products, and she suffered no plausible economic injury "'as a result of'" the alleged misbranding.  *See id*; *see also Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 694 (Ct. App. 2010) ("A consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes.").  Thus, even under the UCL's "unlawful" prong, Proposition 64 requires Plaintiff to show that Mars and Wrigley "engaged in misrepresentations and deceived consumers." *Kwikset*, 246 P.3d at 888 n.9.

The cases cited by Plaintiff are inapposite.  Plaintiff quotes a discussion in *In re Steroid Hormone Product Cases* relating to whether materiality and reliance under the CLRA can be inferred on a class-wide basis for purposes of class certification; it has *absolutely no bearing* on whether deception and reliance are elements of a claim under the UCL's "unlawful" prong.  *See* 104 Cal. Rptr. 3d 329, 338 (Ct. App. 2010).  To the contrary, *Steroid Hormone* acknowledges that Proposition 64 "amended the UCL to provide that a private action for relief may be maintained only

if the person bringing the action" has suffered an injury, and it holds that a reasonable consumer *could have relied* on the misrepresentation in that case.  *See id.* at 338–39.

Likewise, Plaintiff selectively quotes from *Medrazo v. Honda of North Hollywood* for the proposition that "the Supreme Court [in *Tobacco II*] also explained that an actual reliance requirement does not apply to UCL actions that are not based upon a fraud theory." No. B230410, 2012 Cal. App. Unpub. LEXIS 2316, at *21 (Ct. App. Mar. 27, 2012).  But Plaintiff omits the following sentence, which clarifies that even under other UCL prongs, a plaintiff must still "show that the alleged violation *caused or resulted in the loss of money or property*." *Id.* (emphasis added).  It is axiomatic that "'reliance is the causal mechanism of fraud.'" *Kwikset*, 246 P.3d at 888 (quoting *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009)).  Without establishing reliance on a deceptive statement, Plaintiff cannot show she suffered an economic injury "caused" by Mars's or Wrigley's labeling.  As the California Supreme Court held in *Kwikset*, "[t]he reasoning of *Tobacco II* concerning [reliance as the causal mechanism of fraud] *applies equally to the 'unlawful' prong of the UCL* when . . . the predicate unlawfulness is misrepresentation and deception." *Id.* at 888 n.9 (emphasis added) (brackets and internal quotation marks omitted).

2.      Plaintiff incorrectly argues that she suffered a "*legal injury* solely on the basis she purchased misbranded products, which by law are worthless and illegal to purchase or possess." W. Opp. 12.  First, the unmistakable language of the UCL's standing provision makes clear that a purely "legal" injury is not sufficient—the plaintiff must have suffered an "injury *in fact*" in the form of "lost money or property."  Cal. Bus. & Prof. Code § 17204 (emphasis added).   Indeed, the cases Plaintiff cites stand for precisely that proposition.  *See, e.g.*, *Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. 10-4387 & 10-4937, 2011 WL 2111796, at *5 (N.D. Cal. May 26, 2011) ("The injury alleged is that [plaintiffs] *were deceived*, and paid money *they would not otherwise have paid* . . . ." (emphases added)); *Khasin v. Hershey Co.*, No. 12-01862, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012) ("Plaintiff has alleged that he *would not have purchased the products but for Defendants' allegedly misleading conduct* . . . . As such, Plaintiff has made a showing of an injury in fact and loss of money or property . . . ." (emphasis added)).

Second, it is not correct that the products were "worthless" as a matter of law if they were misbranded. Ms. Gustavson did not "lose" any money or property simply because the products' labeling allegedly did not comply with a food labeling regulation. Ms. Gustavson still purchased the products and ingested them (and presumably enjoyed them, as she alleges that she purchased a striking number of Mars and Wrigley products over the years). They were not "worthless" to her. She only suffered injury in fact if the labeling *deceived* her on an issue that was material to her purchasing decision, and she would not have purchased the products but for this deception.

The cases cited by Plaintiff do not support her argument that the products were worthless as a matter of law. In *Steroid Hormone,* the plaintiff allegedly was misled into purchasing an over-the-counter nutritional supplement that contained an *illegal controlled substance*—a crime to possess without a prescription. 104 Cal. Rptr. 3d at 338–39. Under those circumstances, the court concluded that the product was worthless because a reasonable consumer might not have purchased it absent the deception. But Ms. Gustavson does not allege that she was facing criminal liability for possessing Mars or Wrigley products. Likewise, in *United States v. Gonzalez-Alvarez*, the defendant was convicted of a conspiracy to adulterate milk; the issue in that case was not the value to a consumer of a misbranded product, but rather how to calculate "loss" under the U.S. Sentencing Guidelines. *See* 277 F.3d 73, 77–78 (1st Cir. 2002). Finally, in *Thomas v. Imbrolio*, the court did not hold a food product "legally worthless" due to misbranding; it upheld, on a motion for new trial, a jury's *factual finding* regarding the "fair market value" of a hair regrowth product. *See* No. A130517, 2012 Cal. App. Unpub. LEXIS 3111, at *21–22 (Ct. App. Apr. 25, 2012).

Third, if Plaintiff's theory of "legal injury" were correct, it would vitiate the purpose of the UCL's standing requirement—to prevent attorney-driven lawsuits by plaintiffs who suffered no actual injury. *See Kwikset*, 246 P.3d at 885; *Buckland*, 66 Cal. Rptr. 3d at 552–53. Under Plaintiff's theory, she could seek restitution because a product was "misbranded" for failure to comply with required font sizes—even if the labels were not misleading or deceptive. *See* 21 C.F.R. § 101.2(c) (2012) (specifying height of text). That is exactly what Proposition 64 prohibits.

3.      Plaintiff ignores the controlling law cited by Defendants in which courts have repeatedly applied the "reasonable consumer" test to claims brought under the UCL, FAL, and

CLRA alleging deceptive product labeling and advertising.  *See* W. Mem. 5–6, 8.  In *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), for example, the Ninth Circuit applied the "reasonable consumer" test to allegations based on allegedly deceptive statements made on food labeling, *id.* at 937–38.  None of those courts applied an *exception* to the "reasonable consumer" test for claims brought under the "unlawful" prong of the UCL.  Rather, they applied the test to all of the plaintiffs' claims.

Thus, reliance and deception are elements of Plaintiff's "unlawful" UCL claim.

### B.        The Reasonable Consumer Test Applies on a Motion To Dismiss.

Plaintiff argues that "the reasonable consumer test is inapplicable at this stage" because whether a reasonable consumer is likely to be deceived is a "fact intensive issue[] not suitable for a decision" on a motion to dismiss.  W. Opp. 7.  That is incorrect.  The Ninth Circuit has repeatedly affirmed the dismissal of UCL, FAL, and CLRA claims for failure to allege a misrepresentation likely to deceive a reasonable consumer.  *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) ("We therefore hold that Best Buy's advertising was not likely to deceive a reasonable consumer; the district court's dismissal of the [FAL] claim was proper."); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (affirming dismissal of UCL and CLRA claims because argument "that [plaintiff's] complaint adequately allege[d] that members of the public would be deceived . . . is not persuasive").  Likewise, lower federal and state courts routinely dismiss UCL, FAL, and CLRA claims on that basis.  *See* W. Mem. 8–9 (citing cases); *see also Garcia v. Sony Computer Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1065–66 (N.D. Cal. 2012) ("[Plaintiff] insists that whether or not defendants' statements are likely to be deceptive is usually a question of fact . . . .  The issue is not triable, however, if he cannot first identify a plausible misrepresentation.").

Plaintiff cites cases in which courts denied motions to dismiss because they found that the alleged misrepresentations plausibly could have deceived reasonable consumers.  Those cases did *not* hold that the reasonable consumer test was *inapplicable* at the pleadings stage.  *See Williams*, 552 F.3d at 939–40 (observing "a number of features of the packaging . . . which could likely deceive a reasonable consumer" and concluding that plaintiffs "could plausibly prove" their claim);

*Briseno v. Conagra Foods, Inc.*, No. 11-05379, 2011 U.S. Dist. LEXIS 154750, at 43 (N.D. Cal. Nov. 23, 2011) ("[T]he court concludes that a reasonable consumer could have been misled by the labeling, marketing, and advertising at issue in this case."); *Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188, at *11 (C.D. Cal. Apr. 11, 2011) (finding reasonable consumer could be deceived by "all natural" claim because "[the] products could be found to be 'unnatural'"); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1079–80 (E.D. Cal. 2010) ("[P]laintiffs have stated a plausible claim that a reasonable consumer would be deceived."). Plaintiff cites two cases in which courts deferred decision on the issue, concluding "the issues Defendant raise[s] ultimately involve questions of fact . . . beyond the scope of this Rule 12(b)(6) motion." *Khasin*, 2012 WL 5471153, at *7; *Astiana*, 2011 WL 2111796, at *4 (same). In doing so, however, these decisions merely concluded that the factual allegations were sufficient to support a claim; they did not purport to hold that the likelihood of deception could *never* be decided on a motion to dismiss. To the extent Plaintiff urges a different interpretation, it is inconsistent with binding Ninth Circuit precedent. *See Davis*, 691 F.3d at 1162; *Williams*, 552 F.3d at 939–40; *Freeman*, 68 F.3d at 289.

### C.   Plaintiff's UCL, FAL, and CLRA Claims Against Wrigley Fail.

#### 1.   Wrigley's Labels Are Not Likely To Deceive a Reasonable Consumer.

Plaintiff fails to identify any statements in Wrigley's labeling that could be deceiving to a reasonable consumer. Although Plaintiff jumbles her allegations (and attempts to add new ones), the Complaint alleges that Wrigley's labeling is misleading in two ways: (i) "Unlawful 'Sugar free' Nutrient Claims," Am. Compl. ¶¶ 106–28; and (ii) "Unlawful Serving Sizes," *id.* ¶¶ 129–137. Plaintiff's arguments in opposition only further confirm she has failed to allege a plausible claim of deception.

—**"Sugar free":** Plaintiff's argument is based on the false premise that "Wrigley products claim to be 'low calorie' . . . when these products, in fact, are not low calorie and cannot be so described under the law." W. Opp. 2. The Wrigley labeling does *not* state that the products are "low calorie." *See* WRJN Exs. A–G. To the contrary, the labels state exactly how many calories the products contain and how they compare to similar products with sugar, as permitted by the regulations. *Id.*; W. Mem. 6–7, 13–15. For example, the labeling for Eclipse sugar free gum,

Winterfrost, states:  "*35% fewer calories than sugared gum.  Calorie content has been reduced from 8 to 5 calories per two piece serving.*"  WRJN Ex. A.[2]  Thus, Plaintiff is simply wrong when she argues that the Wrigley labeling states that the products are "low calorie."[3]

Plaintiff's claim that it is "nonsense" to argue that Wrigley's products "*are* 'low calorie' when consumed in reasonable and ordinary amounts," W. Opp. 2, fails to distinguish between two issues:  (1) the FDA regulation governing the phrase "low calorie"; and (2) the ordinary meaning of that phrase to a reasonable consumer.  Let us be clear:  the Wrigley products do *not* meet the FDA's regulatory definition of low calorie because they contain more than 40 calories per 50 grams of food.  *See* W. Mem. 7.  That is why the labeling does *not* claim that they are "low calorie."  But, as explained above, the issue under California law is not whether the products met the FDA definition for "low calorie," but whether the labeling is deceptive to a reasonable consumer.

Even if Plaintiff were somehow deceived into believing that the products were "low calorie" (even though the labeling does *not* say that), that is still not a plausible claim of deception because they *were* low calorie based on reasonable levels of consumption.  Plaintiff suggests that there is something wrong with an understanding of "low calorie" that depends on "adjusting the amount consumed," W. Opp. 2, but that is precisely the point: to an ordinary person, the product and the manner in which it is consumed *does* matter.  The only reason that Wrigley's products exceed the regulatory definition of "low calorie" is because the technical definition requires calculation based on consumption of huge quantities of the products—e.g., 33 pieces of chewing gum.  Although consumers do not generally eat a "single bite" of ice cream, they usually do chew one (or at most a few) pieces of gum and not the entire pack (or more) at once.  Thus, the only thing "nonsensical" is Plaintiff's claim that she was deceived about how many calories she would consume from chewing more than an entire pack of chewing gum.

---

[2] Plaintiff inexplicably argues that Wrigley "ignores the allegations" regarding Eclipse Winterfrost sugar free gum, W. Opp. 4, even though Wrigley specifically addressed them, *see* W. Mem. 3.
[3] As addressed in Part I.C.3, *infra*, the *only* reference to "low calorie" is in a publication that does not even refer to a specific product and that Plaintiff does not allege that she ever saw.

Moreover, it is simply not true that Wrigley's argument is "contrary to what Wrigley itself told the FDA in 2005." W. Opp. 2. Wrigley's letter to the FDA in 2005 made precisely the point it is making here: "sugar-free chewing gum does not qualify as 'low calorie' according to the criteria established in 21 C.F.R. 101.60(b)(2)," but even among heaviest chewing gum consumers, it contributes only "15 calories to an individual's diet per day," which "should qualify as 'low calorie' by any reasonable definition." *See* Am. Compl. Ex. 1, at 2. In other words, Wrigley argued the FDA regulation should not apply to chewing gum, but still complied with it. Thus, it is Plaintiff, not Wrigley, who makes a "glaring" inaccuracy in describing Wrigley's letter to the FDA. W. Opp. 2

Plaintiff appears to recognize that her original allegations are deficient. Thus, she hatches a new theory in her Opposition: that the Wrigley products "contain ingredients such as maltodextrin that the FDA has held preclude the use of the term sugar free because of the component sugars it contains." W. Opp. 9. As an initial matter, this allegation is *nowhere* to be found in Plaintiff's Complaint and therefore should not be considered by the Court. *See, e.g.*, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Gray v. Hernandez*, 651 F. Supp. 2d 1167, 1182 (S.D. Cal. 2009) ("[W]hen resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. This precludes consideration of 'new' allegations that may be raised in a plaintiff's opposition to a motion to dismiss . . . ." (citation omitted)).

In any event, this new allegation should be rejected because it misstates FDA regulations. Plaintiff does not allege, and could not allege, that a miniscule amount of maltodextrin in Altoids Smalls—the only product at issue that contains maltodextrin—renders the product not "sugar free." To be "sugar free," a product must contain "less than 0.5 g of sugars . . . per reference amount customarily consumed and per labeled serving," and cannot contain an ingredient "that is a sugar or that is generally understood by consumers to contain sugars." 21 C.F.R. § 101.60(c)(1)(i)–(ii) (2012). Plaintiff does not allege either that Altoids Smalls (i) contain more than 0.5 g of sugars per reference amount or serving size or (ii) that maltodextrin is a sugar or is generally understood by

consumers to contain sugars.  Thus, Plaintiff has not alleged a violation of the FDA regulation.

The only support Plaintiff proffers for this allegation is an out-of-context block quote from the "Regulatory history" section of the FDA's 1991 proposed rule for the use of the term "sugar free."  *See* Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 56 Fed. Reg. 60,421, 60,435 (Nov. 27, 1991) (proposed rule).  But this passage merely reflects an explanation of the FDA's *past* (i.e., pre-1991) regulatory efforts, which led the FDA to enact the current revised definition of "sugar free" in 1993.  Indeed, the very next section is titled "Need for change."  *Id.* at 60,436.  The FDA's final regulation provides the criteria for "sugar free," not this excerpt from its regulatory history.

Moreover, this passage does *not* state that a product should not be labeled "sugar free" just because it contains some maltodextrin.  It states that a product should not be labeled "sugar free" if it contains a "substantial amount" of maltodextrin.  W. Opp. 9.  The actual FDA regulation addresses this issue by setting a maximum amount of sugars that can be contained in a "sugar free" product (0.5 g per reference amount or serving size) from *all* sources.  21 C.F.R. § 101.60(c)(i).  Plaintiff does not allege, and could not allege, that the maltodextrin in Altoids Smalls causes it to exceed this regulatory threshold.  Thus, the FDA's policy in the quoted passage has been subsumed by the current "sugar free" regulation—a regulation with which Wrigley has fully complied.

**—Serving Size:**  Wrigley did not "pick[] a single product from the [Complaint,] the Altoids Smalls," while "ignoring products . . . that have far more calories at issue."  W. Opp. 10–11.  Altoids Smalls is the *only* product that Plaintiff has alleged was misleading because of its serving size.  *See* Am. Compl. ¶¶ 129–137.  Plaintiff's theory of deception is based on a regulation that applies specifically to *breath mints*, and Altoids Smalls is the only breath mint product identified in the Complaint.  Thus, Plaintiff's examples of other, higher calorie products, such as Lifesavers, are completely irrelevant because Plaintiff does not allege that there was any regulatory issue with the serving size of those products.  The Court should reject Plaintiff's attempt to confuse this issue.  It is telling that Plaintiff attempts to deflect the discussion to other irrelevant products, because she has *no response* to how she could have been tricked into purchasing Altoids Smalls based on an alleged serving size dispute that amounts to less than 5 calories.  It is not a plausible theory of deception.

Plaintiff's argument that the FDA's proposed rule on breath mints has not yet been finalized misses the point entirely. The threshold issue under the CLRA, FAL, and UCL is whether the one-mint serving size was deceptive to a reasonable consumer, not whether it complied with the FDA regulation. Whether the FDA's regulation has been finalized is immaterial. The FDA's current position is that the one-mint serving size is *not* misleading and that the serving size recommended by Plaintiff leads to "consumer confusion" and should be changed. W. Mem. 8. Whether final or not, the Court should not permit Plaintiff to claim that a one-mint serving size is misleading based on a technical FDA regulation when the FDA has said exactly the opposite. Thus, there is simply no plausible allegation that a one-mint serving size on the Altoids Smalls label was deceptive.

### 2.    Plaintiff Does Not Have Standing.

Plaintiff's standing argument is based entirely on a misunderstanding of the law. The cases she cites stand only for the undisputed legal premise that *if* Plaintiff were deceived and paid money for the products that she would not have otherwise paid, then she has standing. W. Opp. 12–13. As explained above, however, Plaintiff has alleged no plausible claim of deception here. *See supra* Part I.C.1. Thus, she does not have standing.

### 3.    Plaintiff Has Failed To State a Claim Based on Wrigley's Publications.

The Court should reject Plaintiff's attempt to confuse the issue of Wrigley's actual product labeling with statements made in other publications. To be clear, in addition to the statements on the actual Wrigley labels addressed above, the Complaint alleges claims based on a few isolated statements in two other Wrigley publications: (i) a Wrigley website that lists maltitol, sorbitol, and xylitol and states that "[t]hese artificial sweeteners deliver long-lasting noncaloric taste," Am. Compl. ¶ 112; W. Opp. 3; and (ii) a "Benefits of Chewing" publication that refers to chewing gum as a "low-calorie option." Am. Compl. ¶ 101; W. Opp. 3. Plaintiff fails to offer a valid reason why she has stated a claim based on these statements.

Plaintiff concedes that the Complaint does *not* allege that Ms. Gustavson *saw* and *relied* on the Benefits of Chewing publication or the Wrigley website's discussion of artificial sweeteners, let alone specific facts to support that claim, as required under Rule 9(b). That is a dispositive failure.

At a minimum, Plaintiff must allege that she relied on these specific statements before she can state a claim.  She has not done so.

Instead, Plaintiff incorrectly argues that her allegation that she relied on Wrigley "labeling" is sufficient because Wrigley's website should be considered part of the labeling.  W. Opp. 14–17. But Plaintiff cites no facts to support a claim that the Wrigley publications "accompan[ied]" the labeling, 21 U.S.C. § 321(m), and were "presented to the customer in immediate connection with his view and his purchase of the product."  *United States v. 24 Bottles*, 338 F.2d 157, 159 (2d Cir. 1964).  Rather, Plaintiff relies exclusively on an FDA letter regarding a Lipton label that directed the consumer to a particular website.  But Plaintiff does not allege that the Wrigley labeling directs the consumer to the websites cited by Plaintiff.  Thus, the Lipton letter is inapplicable.  The Wrigley publications are not part of the Wrigley labeling.

Moreover, even if Plaintiff had alleged that she saw and relied on the Wrigley publications, she would still have failed to state a claim. Plaintiff admits that at the time of purchase, she saw and relied on the actual packaging of each product.  That packaging does *not* state the products are low calorie, and it specifically informs the consumer how many calories each product contains.  Plaintiff cannot have it both ways.  It is not plausible that Plaintiff was tricked by generic statements in the publications—which did not even refer to a specific product—when she admits that she saw and relied on the actual labeling that told her exactly how many calories each product contained.

### D.	Plaintiff's UCL, FAL, and CLRA Claims Against Mars Fail.

#### 1.	Mars's Labels Are Not Likely To Deceive a Reasonable Consumer.

— **Presence of Flavanols:**  Plaintiff does not dispute that Mars's statements about flavanols are *true*: Dove Dark Chocolate is indeed a "natural source of cocoa flavanols," and the COCOAPRO® process does "help[] retain much of the naturally occurring cocoa flavanols." MRJN Ex. L.  Plaintiff mistakenly argues that this argument was rejected by the court in *Khasin*.  M. Opp. 3–4.  In fact, *Khasin* does not address whether the statements about flavanols on Hershey's labels were *actually truthful* and therefore non-deceptive. *See* 2012 WL 5471153, at *7.  And, in any event, *Khasin* involved different products and different labels. *See id.*  Thus, Plaintiff has failed to state a claim because no reasonable consumer could have been deceived by the entirely true

statement that Dove Dark Chocolate is a natural source of cocoa flavanols.

— **Daily Value of Calories:**  Plaintiff offers no valid response to Mars's argument that a percent DV of calories is not likely to deceive a reasonable consumer.  She contends the FDA has not formally established a DV for calories, *see* M. Opp. 6, but fails to explain how consumers could be misled when "based on a 2,000 calorie diet" is *printed on the label*, *see* MRJN Exs. J–N.  She contends that some women and children will not understand that 2,000 calories a day is too much for them, but does not explain why the same women and children are not equally confused by FDA-mandated DVs for nutrients such as fat, saturated fat, and total carbohydrates—all of which are calculated using the well-known 2,000 calorie benchmark.  *See* M. Opp. 6.  Indeed, she concedes that a caloric DV is *not* misleading by arguing that 2,000 calories "is used so that people can then mathematically calculate their nutrient percentages *based on their own caloric intake as compared to the 2000 calorie benchmark.*"  *Id.* (emphasis added).

Plaintiff also defies common sense by alleging that it is deceptive to state a percent DV of calories without also including a referral statement, "see nutrition information for __ content."  M. Opp. 7.  She implies this is an example of "presenting only 'good news' about nutrient content on the front of the package," but the percent DV of calories contained in these products can hardly be considered deceptive "good news."  *See, e.g.*, MRJN Ex. J (12% calorie DV per pack), Ex. K (13% calorie DV per pack).  Moreover, these products are chocolate candy, and consumers understand that.  It is not reasonable to infer from a DV of calories that chocolate candy does not contain high levels of fat, cholesterol, or sodium.  Moreover, the reverse side of each package displays large text boxes stating the amount and DV percentage of other nutrients in the products, including saturated fat and sodium.  *See, e.g.*, MRJN Ex. J.  Plaintiff's argument requires a consumer not only to make an unreasonable inference, but also to fail to read the label.  The Ninth Circuit has rejected precisely that argument.  *See Freeman*, 68 F.3d at 289 (holding sweepstakes promotion not deceptive where "[a]ny persons who thought that they had won the sweepstakes would be put on notice that this was not guaranteed simply by doing sufficient reading").

Finally, Plaintiff incorrectly claims that the Ninth Circuit in *Williams* "rejected" Mars's argument.  M. Opp. 8.  *Williams* is inapposite here.  At issue in *Williams* was a baby-food label

juxtaposing "Fruit Juice" with images of "oranges, peaches, strawberries, and cherries"—none of which were in the product. 552 F.3d at 936. On those facts, the Ninth Circuit held that the ingredients listed on the reverse-side of the label did not cancel-out an *affirmative misrepresentation*. *Id.* at 939. In contrast to *Williams*, the percent DV of calories on Mars's product packages does not misrepresent anything; it truthfully and accurately states the percentage of calories using a 2,000 calorie denominator.

—**PGPR:**  Plaintiff fails to respond to Mars's argument that no consumer familiar with the ingredient polyglycerol polyricinoleic acid would be misled by "PGPR," and that consumers not familiar with the ingredient would not be misled by the use of one term over the other. Instead, Plaintiff again attempts to duck the issue by arguing that Judge Davila "let proceed" a similar claim. M. Opp. 4. But the PGPR issue was not addressed in either Judge Davila's order or Hershey's motion to dismiss. *See Khasin*, 2012 WL 5471153, at *6. The fact that Judge Davila "let proceed" a claim when no argument was made is not a persuasive argument that the claim has merit.

In addition, the Court should reject Plaintiff's claim that "it is completely plausible that a consumer might want to avoid an ingredient with a long, possibly scary chemical name, particularly one that contains the term ricin, one of the world's most toxic poisons." M. Opp. 4. First, Plaintiff's argument is irrelevant because she does *not* allege that PGPR has any dangerous side effects. Second, Plaintiff misunderstands the law. The purpose of the "common or usual name" requirement is not to help irrational consumers avoid ingredients with "scary" chemical names; it is to help consumers understand what ingredients are in the product. *See* 21 C.F.R. § 102.5(a) (2012) ("The common or usual name of a food . . . shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients."). Many perfectly safe, ordinary ingredients have "long, possibly scary chemical name[s]." For example, a particularly common ingredient, sodium chloride, includes chlorine—the same element in chlorine gas, a chemical weapon used during World War I. But FDA regulations do not require manufacturers to list that ingredient using the "possibly scary" term "sodium chloride." Rather, they require the "common or usual name" of that ingredient: salt. 21 C.F.R. § 101.22(h)(4).

1    Finally, Plaintiff asserts the logically flawed argument that use of the term "PGPR" "allows

2    [Mars] to pass off [its] chocolate products as higher value items."  M. Opp. 4 (quoting Am. Compl.

3    ¶ 150).  There is no "passing off" when a product discloses the ingredients it contains, and Plaintiff

4    has no response to the argument that "polyglycerol polyricinoleic acid" is no more informative to

5    consumers than "PGPR."  "PGPR" tells any interested consumer exactly what is in the product.

6    **—Milk Chocolate:**  Plaintiff does not dispute that Mars's products contain "milk

7    chocolate."  She also does not dispute that the products' labels disclose the presence of alkalis and

8    artificial flavors.  Rather, she claims only that "processed with alkali" and "contains artificial

9    flavors" should have been on the front of the package as well as on the back.  M. Opp. 4–5.

10    This claim does not withstand scrutiny.  Plaintiff again attempts to rely on *Khasin*, but this

11    issue was not addressed in that order.  *See* 2012 WL 5471153, at *6.  Moreover, a reasonable

12    consumer would not be misled by the term "milk chocolate" on the front of the package.  The

13    product contains milk chocolate.  The regulatory definition of milk chocolate specifically allows the

14    use of alkalis and artificial flavors (such as vanillin).  *See* 21 C.F.R. § 163.130(b).  Any consumer

15    interested in finding out whether that milk chocolate includes optional ingredients allowed by the

16    FDA would undoubtedly review the ingredients panel of the label and not rely solely on the front of

17    the package.  *See Dvora v. Gen. Mills, Inc.*, No. 11-1074, 2011 WL 1897349, at *7 (C.D. Cal. May

18    16, 2011) ("[A]ny reasonable consumer would be put on notice of the product's contents simply by

19    doing sufficient reading of the ingredient list." (internal quotation marks omitted)); *McKinniss v.*

20    *Gen. Mills, Inc.*, No. 07-2521, 2007 WL 4762172, at *5 (C.D. Cal. Sept. 18, 2007) ("Defendant

21    truthfully disclosed the ingredients for each of the products at issue . . . .  Accordingly, a reasonable

22    consumer would be put on notice, simply by doing sufficient reading, of the product's contents.").

23    And in any event, the FDA *does not* require the duplicative declaration of optional ingredients like

24    alkalis and artificial flavors on the principal display panel.  *See* 21 C.F.R. § 130.11; *infra* Part II.B.2.

25    Finally, Plaintiff attempts to equate this to *Williams*, but as explained above, *Williams*

26    involved an affirmative misrepresentation, not a true statement about the product.  *See supra* pp. 13–

27    14.  Here, the labels truthfully state that the products contain milk chocolate, and list the ingredients

28    in that chocolate on the ingredients panel.  No reasonable consumer could be deceived.

1

### 2.     Plaintiff Does Not Have Standing.

2      Mars asserts that Plaintiff lacks standing because it is not plausible that the regulatory

3  violations alleged in the Complaint, which would not deceive a reasonable consumer, caused her to

4  purchase Mars's products.  *See supra* Part I.D.1.  Plaintiff's response is a series of irrelevancies

5  regarding class certification.  *See* M. Opp. 10.  The issue is not whether Plaintiff has "standing to

6  represent a class even on products she herself did not purchase."  *Id.*  Mars has not raised that issue

7  because it is irrelevant here.  The only issue here is whether Plaintiff herself has standing based on

8  the products she *did* purchase.  If the labels of *those* products did not cause her injury, then she

9  lacks standing.  *See supra* Part I.A.

### 3.     Plaintiff Has Failed To State a Claim Based Mars's Websites.

11      Plaintiff has not offered a credible response to any of Mars's arguments as to why Plaintiff

12  failed to state a claim regarding alleged "unlawful health claims" on unspecified "websites."

13      First, Plaintiff fails meaningfully to respond to Mars's argument that the Complaint does not

14  plead her claims based on "unlawful health claims" with the particularity required by Rule 9(b).  She

15  purports to incorporate by reference "section II(F) [of] the opposition to the Wrigley motion to

16  dismiss," M. Opp. 11, but that section addresses the Complaint's allegations regarding a Wrigley

17  publication and Wrigley's websites.  *See* W. Opp. 14–17.  It has no bearing on whether Rule 9(b) is

18  satisfied by *different* allegations relating to Mars's websites.  By not attempting to rebut Mars's

19  argument, Plaintiff effectively concedes that her "unlawful health claims" allegations fail to satisfy

20  Rule 9(b).  *See, e.g.*, *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125,

21  1132 (C.D. Cal. 2011) (observing that "[i]n most circumstances, failure to respond in an opposition

22  brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to

23  the uncontested issue" (brackets in original) (internal quotation marks omitted)).  They should be

24  dismissed for that reason alone.

25      Second, even if Plaintiff's argument regarding Wrigley were construed in a manner that

26  would apply to Mars's websites, Plaintiff's allegation that "she relied on the package labeling," and

27  that "a food manufacturer's website is an extension of the product's label," W. Opp. 14, fails for the

28  reasons stated above (in relation to Wrigley), *see supra* Part I.C.3.  The website www.cocoavia.com

does not constitute "labeling" of the products at issue because it did not "accompany" the products. *See* 21 U.S.C. § 321(m).  *Plaintiff does not even allege that she bought Cocoavia.*  None of the products' labels refer to www.cocoavia.com.  *See* MRJN Exs. J–N.  Nor does Plaintiff allege that www.cocoavia.com makes statements about products she purchased.  Thus, she has not alleged facts sufficient to establish that cocoavia.com "accompanies" the packaging of Mars's products.

Third, Plaintiff simply ignores the crux of Mars's likely-to-deceive argument: any reasonable consumer would understand that these alleged "health claims" do not imply that chocolate candy is all-around healthy. M. Mem. 12.  In short, Plaintiff has no answer to the argument that a reasonable consumer would not be deceived by these alleged "health claims."

## II.     Plaintiff's Claims Are Preempted by Federal Law.

Plaintiff's response to preemption boils down to a single argument:  she is not seeking to enforce the FDCA, but rather "to enforce the California Sherman Law that imposes a standard of conduct that is identical to that imposed by the FDCA." W. Opp. 17.  That argument fails for two reasons. First, Plaintiff's claims are impliedly preempted under *Buckman* because they are based on alleged violations of the FDCA and its regulations.  The preemption analysis in *Buckman* does not depend on whether the claims are brought directly under the FDCA or under the Sherman Law, which incorporates the FDCA by reference.  In either case, the claims exist *because of* the FDCA and are preempted.  Second, Plaintiff's claims are expressly preempted by the NLEA because she does not allege facts demonstrating that Defendants violated federal regulations.  As a result, Plaintiff is attempting to impose a standard under state law that is *not identical* to the requirements of federal law.

### A.     Plaintiff's Claims Are Impliedly Preempted Under *Buckman*.

1.     Plaintiff argues that *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), is distinguishable because it involved state law claims that were "derivative" of alleged violations of the FDCA.  M. Opp. 12.  But the same is true here.  In *Buckman*, the plaintiff's state law claims were based on the allegation that the defendants violated the FDCA by defrauding the FDA in the product approval process.  531 U.S. at 346.  Here, Plaintiff's state law claims are based on the allegation that Defendants violated the FDCA's labeling requirements.  *See* Am. Compl.

¶¶ 49–185.  Indeed, Plaintiff emphasizes that California's Sherman Law does not impose its own *independent* substantive state law standards, but simply "incorporate[s] the FDCA."  W. Opp. 18 & n.4.  It is difficult to imagine a state law claim that is more "derivative" of federal law than claims based on the Sherman Law.  Thus, Plaintiff's attempt to distinguish *Buckman* only further illustrates that her claims are preempted.

The Sherman Law's incorporation of the FDCA as its standard is dispositive under *Buckman*.  In *Buckman*, the Supreme Court explained that although federal law might not preempt certain state-law causes of actions that "parallel" federal law, those that exist "solely by virtue of the FDCA" are preempted.  531 U.S. at 353 (distinguishing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 474 (1996)).  The Court explained that fraud-on-the FDA claims were not based on "traditional state tort law which had predated the federal enactments in questions," but rather "*the existence of these federal enactments is a critical element in their case*."  *Id.* (emphasis added).  The same is true here.  Plaintiff is not relying on traditional state law that "predates" the FDCA, but rather on the Sherman Law, which is "entirely derivative" of the FDCA.  M. Opp. 12.  The FDCA is a "critical element" of Plaintiff's claim.  Thus, as in *Buckman*, it is preempted.

Indeed, Plaintiff further demonstrates that her allegations are based on federal law by relying not only on federal regulations, but also on the FDA's "policy" statements and enforcement letters.  *See, e.g.*, W. Opp. 9–10.  Plaintiff argues, for example, that Wrigley violated the FDA's statements of its pre-1993 "policy on the use of the term sugar-free" in products containing maltodextrin, even though this "policy" was superseded by the FDA's 1993 "sugar free" regulations.  W. Opp. 9 (citing 56 Fed. Reg. at 60,421).  In other words, to find Wrigley liable, this Court would have to find that the FDA's pre-1993 policy overruled its actual regulation and became part of California law through the Sherman Law.  Even if this were a permissible theory of liability (it is not), there can be no question that it derives from the FDCA, not traditional state law, and is impliedly preempted under *Buckman*.

*Buckman* also rebuts Plaintiff's claim that there is a presumption against preemption here.  There is a presumption against preemption only if the state law involves "a field which the States have traditionally occupied."  531 U.S. at 347 (internal quotation marks omitted).  Just as *Buckman*

1    recognized that the FDA is exclusively responsible for policing whether companies comply with its

2    regulations during the product approval process, *id.*, the FDA is also exclusively responsible for

3    policing whether food labeling meets its highly specialized labeling regulations.  Plaintiff argues that

4    states have traditionally regulated "the proper marketing of food, including the prevention of

5    deceptive sales practices," W. Opp. 17 (citation omitted), but does *not* cite, and cannot cite, any

6    authority for the proposition that enforcing technical *federal* regulations under the FDCA is a

7    traditional matter of state law—particularly where the labels themselves are not deceptive.  To the

8    contrary, whether the FDCA's labeling requirements are met is "inherently federal in character"

9    because these requirements "originate[] from, [are] governed by, and terminate[] according to

10   federal law."  531 U.S. at 347.   The labeling statements at issue "were dictated by [the FDCA's]

11   provisions."  *Id.* at 348.  Thus, as in *Buckman*, there is no presumption against preemption here.

12         Not only does Plaintiff fail to distinguish *Buckman,* but she fails to offer any logical reason

13   why the FDCA would prohibit private lawsuits to enforce its provisions directly (something Plaintiff

14   does not dispute), yet allow private lawsuits that attempt to enforce the FDCA indirectly through

15   state law.  The FDCA provides the substantive law in both cases.  And the same "extraneous pull"

16   on the federal scheme cited by *Buckman* applies—whether the FDCA is enforced directly or through

17   state law.  *Id.* at 353.

18         2.     Plaintiff attempts to distinguish *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d

19   1170 (9th Cir. 2012), on the basis that it addressed claims brought under the federal Lanham Act,

20   not state law.  But Plaintiff offers no reason why that distinction matters.  The Ninth Circuit's policy

21   of avoiding interference with the FDA's authority in enforcing the FDCA applies here.  *See id.* at

22   1176–77.  As the court stated in *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 925 (9th Cir. 2010),

23   another Ninth Circuit case that Plaintiff fails to even address:  "Permitting PhotoMedex's Lanham

24   Act claim to proceed in the circumstances of this case would intrude on the exclusive government

25   enforcement authority established under the FDCA."  A claim brought under the Sherman Law

26   interferes with the FDA's "exclusive government enforcement authority" just as much as a claim

27   brought under the Lanham Act.  Indeed, the Ninth Circuit specifically stated that this policy applies

28   to claims under state law:  "The Supreme Court made clear in *Buckman* that [section 337 of the

- 19 -

FDCA] also limits the ability of a private plaintiff to pursue claims *under state law theories* where such claims collide with the exclusive enforcement power of the federal government." *Id.* at 924 (emphasis added). Moreover, although *Pom Wonderful* did not address federal preemption of state law, it specifically instructed the district court to consider that issue on remand. 679 F.3d at 1179. The rationale of *Pom Wonderful* and *PhotoMedex* applies here.

Plaintiff also suggests that *Pom Wonderful* is distinguishable because the label in that case "presumptively *complied* with FDCA regulations." M. Opp. 15. But the Ninth Circuit specifically stated otherwise: "We are primarily guided in our decision not by [Defendant's] apparent compliance with FDA regulations but by Congress's decision to entrust matters of juice beverage labeling to the FDA and by the FDA's comprehensive regulation of that labeling." 679 F.3d at 1178. Thus, this is not a valid distinction.

3.      Plaintiff's reliance on *Khasin* is misplaced because it addressed only the issue of express preemption and not Defendants' implied preemption argument under *Buckman*. Indeed, Plaintiff admits that the *Khasin* order was "based upon express federal preemption." M. Opp. 11.[4] *Khasin* does not even mention *Buckman*, let alone explain why it does not apply here. For example, *Khasin* cited *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), in which the Supreme Court stated in dicta that section 360(k) of the Medical Device Act would not *expressly* preempt parallel state law claims, but did *not* address whether such claims were *impliedly* preempted under *Buckman*. Even if a parallel state law claim is not expressly preempted, it is impliedly preempted under *Buckman* if, as here, it exists "by virtue of" the FDCA. *See Bryant v. Medtronic, Inc. (In re Medtronic, Inc, Sprint Fidelis Leads Prods. Liab. Litig.)*, 623 F.3d 1200, 1204 (8th Cir. 2010). Thus, *Khasin* is inapposite on the implied preemption issue.

4.      Plaintiff cites non-binding cases that have held that her Sherman Law claims are not preempted, but makes no attempt to distinguish cases cited by Defendants that held exactly the opposite. *See* M. Mem. 14–15. Thus, there is a split of authority, and this Court should make its

---

[4] Plaintiff makes the bizarre allegation that "Mars has narrowed its position" in response to the *Khasin* order, M. Opp. 11, even though that order was issued on November 9, 2012, almost two months *after* Wrigley and Mars filed their motions to dismiss.

own decision on the issue in accordance with binding authority, including *Buckman*.

5. Finally, Plaintiff's reliance on the United States' amicus brief in *In re Farm Raised Salmon Cases*, 175 P.3d 1170 (Cal. 2008), is misplaced. According to the FDA, one reason that the plaintiff's claims under the Sherman Law were not impliedly preempted was that, in addition to the regulatory labeling requirements, state law imposed "additional elements, such as damage or injury as a result of the violation." Pls.' Req. for Judicial Notice ("PRJN") Ex. A at 14 n.2 (Dkt. No. 40-1). But Plaintiff is taking the position that she need not show deception and reliance under California law and that her claims can exists solely by virtue of federal misbranding regulations. Plaintiff cannot have it both ways. By arguing that she need not show deception, she demonstrates that her claims are based on federal regulations, not state law, and are therefore impliedly preempted under *Buckman*.

Moreover, the Court should not defer to the FDA's analysis as to whether a state law is preempted. *See Wyeth v. Levine*, 555 U.S. 555, 576–577 (2009). Rather, "[t]he weight . . . accord[ed] the agency's explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness." *Id.* The United States' position in *Farm Raised Salmon* is unpersuasive and superficial, for the reasons discussed above. *See also* M. Mem. 15–17 (discussing *Farm Raised Salmon*). In particular, its cursory discussion of *Buckman*—relegated to two paragraphs at the end of the brief—is wholly inadequate. *See* PRJN Ex. A at 19. It attempts to confine *Buckman* to the regulatory approval context, even though *Buckman* explained that claims that exist "by virtue of the FDCA" are preempted, 531 U.S. at 353—a rationale that extends beyond the approval context and applies here. Moreover, *Farm Raised Salmon* is distinguishable because it involved a substantive statute specifically prohibiting the coloring of salmon—i.e., not just the Sherman Law's naked incorporation of the FDCA by reference. *See* PRJN Ex. A at 13. Thus, unlike here, the plaintiff in *Farm Raised Salmon* could prove a "violat[ion of] the Sherman Law requirement without even referring to the FDCA." *Id.*

**B.     Plaintiff's Claims Are Expressly Preempted.**

**1.     The Wrigley Claims Are Expressly Preempted.**

- 21 -

1    —**"Sugar free"**:  Plaintiff has no answer to the fact that Wrigley's statements about the

2    caloric content of its sugar free products complied with FDA regulations because they contained a

3    relative claim.  Rather than attempting to defend that baseless allegation, Plaintiff abandons it

4    entirely and shifts to arguing that the labels violated 21 C.F.R. § 105.66(b) because they failed to

5    disclose the presence of "nutritive (caloric) sweeteners."  W. Opp. 21 (citing Am. Compl. ¶¶ 110–

6    112).  As an initial matter, Plaintiff's allegation that she adequately stated a claim based on 21

7    C.F.R. § 105.66 by including that regulatory citation in a laundry-list of regulatory citations fails to

8    satisfy the pleading requirements of Rule 8 and the Supreme Court's decisions in *Bell Atlantic Corp.*

9    *v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiff cannot state

10   a claim by string-citing numerous federal regulations and expecting Wrigley to piece together how it

11   allegedly violated them.  The theory stated for the first time in Plaintiff's opposition papers is simply

12   not adequately pleaded in the Complaint.

13        In any event, Plaintiff's theory is refuted by the text of 21 C.F.R. § 105.66 itself, quoted in

14   her opposition papers, which specifically *exempts* "sugar free" claims:  "Criteria for the use of the

15   terms 'sugar free' and 'no added sugar' are provided for in § 101.60(c) of this chapter."  21 C.F.R.

16   § 105.66(f) (2012).  Lest there be any doubt that section 101.60(c) provides the *exclusive* criteria for

17   sugar free claims, the FDA stated that section 105.66(f) was added because "sugar free" and similar

18   terms were "*no longer appropriately regulated under the regulations for foods for special dietary*

19   *use* but are now more appropriately defined under the 1990 amendments as nutrient content claims

20   for foods intended for use by the general population."  Food Labeling: Label Statements on Foods

21   for Special Dietary Use, 58 Fed. Reg. 2427, 2427 (Jan. 6, 1993) (emphasis added).  Thus, like her

22   previous claims, Plaintiff's new alleged "sugar free" regulatory violation has no merit.

23        — **Serving Size:**  Plaintiff attempts to discount the FDA's proposed rule on breath mints

24   because it is not yet final, but does not dispute the FDA's most recent position: the FDA has

25   specifically considered the issue of small breath mints—as opposed to breath mints generally—and

26   has proposed a rule that would *require* the serving size for small breath mints to be one mint, as with

27   Altoids Smalls.  Instead, Plaintiff argues that Altoids Smalls are misbranded because they fail to

28   comply with the general regulation for all breath mints—even though the FDA has recognized it

results in "consumer confusion" when applied to small breath mints.  *See* Food Labeling; Serving

Sizes; Reference Amount and Serving Size Declaration for Hard Candies, Breath Mints, 62 Fed.

Reg. 67,775, 67,777 (Dec. 30, 1997) (proposed rule).  Notably, the FDA has not charged the Altoids

Smalls labeling as misbranded.  Plaintiff is attempting to hold Wrigley liable on the basis that

Altoids Smalls are misbranded, even though the FDA is in the process of implementing a regulation

that specifically *endorses* the content of the Altoids Smalls label.  Plaintiff's lawsuit is thus

preempted because it would impose a state law requirement that is "not identical" (and in fact,

directly contrary) to the FDA's position on this issue.

At a minimum, the Court should dismiss Plaintiff's serving size claim under the primary

jurisdiction doctrine.  Plaintiff fails to respond to the critical fact that the serving size issue is *under*

*active FDA review*.  She cites *Delacruz v. Cytosport, Inc.*, No. 11-3532, 2012 U.S. Dist. LEXIS

90847 (N.D. Cal. June 28, 2012)*,* but that case did not involve an issue under active FDA review,

*see id.* at \*27–28.  Plaintiff also purports to rely on *Clark v. Time Warner Cable*, 523 F.3d 1110 (9th

Cir. 2008), but it affirmed dismissal on primary jurisdiction grounds in part because, as here, the

claim involved a proposed rule that "the agency [wa]s actively considering," *id.* at 1115.  Indeed,

Plaintiff admits that the primary jurisdiction doctrine should be used if a claim "involves an issue of

first impression or a particularly complicated issue that Congress has committed to a regulatory

agency."  W. Opp. 25.  That is exactly the case here.  The application of the FDA's rule governing

all breath mints to small breath mints is a prime example of a technical regulatory issue squarely

within the jurisdiction of the FDA.  The breath mint serving-size regulation is entirely the FDA's

creation, and the FDA is now in the process of refining that regulation.  The Court should not

interfere with this regulatory evolution.

In fact, just last week, another federal district court invoked the primary jurisdiction doctrine

to dismiss claims based on an issue the FDA is actively reviewing.  *See Taradejna v. Gen. Mills,*

*Inc.*, No. 12-993, 2012 WL 6113146, at \*5–6 (D. Minn. Dec. 10, 2012).  According to that court,

because the FDA "has issued its 2009 Proposed Rule on the standard of identity for yogurt, it would

be imprudent for the Court, at this juncture, to substitute its judgment for that of the Agency's while

revision of the standard of identity is pending." *Id.* at \*5.  The Court specifically noted that "[t]he

- 23 -

Agency's unique role in ensuring such consistency and uniformity is particularly significant here, as several recently-filed yogurt lawsuits throughout the country involve the same or similar issues as found in the instant suit." *Id.* at *6.  The same is true here.

## 2. The Mars Claims Are Expressly Preempted.

—**Flavanols**:  Mars argued that the statements about flavanols on the Dove Dark Chocolate label are permitted because they do not "expressly or by implication . . . characterize[] the level of any nutrient which is of the type required" to be on the nutrition label.  21 U.S.C. § 343(r)(1)(A) (2006).  Instead of addressing this argument, Plaintiff relies solely on FDA warning letters to different food manufacturers concerning different labels, claiming that these letters establish that "natural source" is a nutrient content claim.  *See* M. Opp. 16–18.  That is not correct.

First, Plaintiff's claim that the FDA "has repeatedly issued warning letters for such nutrient content claims," M. Opp. 18, exaggerates the four warning letters she actually cites.  Indeed, three of these letters—to Unilever, Inc., Diaspora Tea & Herb Co., and Hail Merry, LLC—are entirely inapposite here.  *See* M. Opp. Ex. 2.  For example, in the Unilever letter, the FDA's New Jersey district office took issue with the statements "*rich* in . . . antioxidants," "*rich* source of antioxidants," and "*packed with* . . . FLAVONOID ANTIOXIDANTS." *Id.* (emphases added).  In the Diaspora letter, the Minneapolis district office addressed statements such as "*rich* in tea polyphenols" and "*high* in amino acids."  *See id.* (emphases added).  And in the Hail Merry letter, the Dallas district office took issue with "*RICH* IN OMEGAS," "*loaded with* antioxidants," and "*rich* source of . . . iron."  *See id.* (emphases added).  "Natural source" or "source" was not one of the statements at issue in those letters.  *See id.*  Nor does the Dove Dark Chocolate label use terms such as "rich" or "packed with" that could be interpreted to "characterize the level" of flavanols.[5]

Second, Plaintiff is wrong when she contends that a warning letter to Jonathan's Sprouts, Inc., establishes a "controlling" interpretation of FDA regulations under *Auer v. Robbins*, 519 U.S. 452 (1997).  M. Opp. 17.  As Plaintiff concedes, *Auer* deference applies only when "the agency is

---

[5] Even the fourth letter to Jonathan's Sprouts—which Plaintiff repeatedly quotes—deals almost exclusively with claims such as "*HIGH* IN ANTIOXIDANTS," "*Rich* in Vitamins, Minerals and Phytochemicals," and "*good source of* . . . calcium."  M. Opp. Ex. 2 (emphases added).

interpreting its own regulations." *Id.* But the Jonathan's Sprouts warning letter purports to interpret *the FDCA*—not FDA regulations. *See* M. Opp. Ex. 2 (alleging "Phytoestrogen Source" is a "nutrient content claim[] *subject to section 403(r)(1)(A) of the Act*" (emphasis added)). Thus, the letter is not entitled to *Auer* deference.

Moreover, even if the warning letter did purport to interpret FDA regulations, *Auer* deference would still be inappropriate for three additional reasons:

1.   The Supreme Court has held *Auer* deference inapplicable to an agency's interpretation of a regulation that simply "parrot[s]" the words of a statute. *Gonzales v. Oregon*, 546 U.S. 243, 257–58 (2006). In such a case, the interpretation is only entitled to deference according to its "power to persuade." *Id.* at 255. Here, the applicable FDA regulation simply "parrots" the words of the FDCA. *Compare* 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient"), *with* 21 U.S.C. § 343(r)(1)(A) ("a claim . . . which expressly or by implication . . . characterizes the level of any nutrient").

2.   *Auer* deference does not come into play unless "the language of the regulation is ambiguous." *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000). The regulation here is *not* ambiguous; rather, as Mars explained in its opening memorandum, it is clear that the term "source," standing alone, does not "expressly or implicitly characterize[] the level of a nutrient." 21 C.F.R. § 101.13(b); M. Mem. 18–20.

3.   *Auer* does not apply when "there is reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment on the matter in question," or "when the agency's interpretation conflicts with a prior interpretation." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (citation omitted). Here, a single conclusory sentence in a warning letter from an FDA regional office to a particular manufacturer about a specific product, which did not undergo notice and comment rulemaking, does not qualify as the FDA's "fair and considered judgment." And even if it did, it conflicts with a prior FDA statement on this issue: "the term 'source' *merely connotes that a nutrient is present but does not signify the quantity present*." Food Labeling: Nutrient Content Claims, 58 Fed. Reg. 2302, 2345 (Jan. 6, 1993) (emphasis added).

1       Finally, Plaintiff claims that warning letters to other manufacturers about other products

2   indicate that the FDA views this issue as one of "regulatory significance." M. Opp. 18.  But this

3   argument cuts in favor of Mars: *Plaintiff does not allege that the FDA has sent such a warning letter*

4   *to Mars*.  And even a cursory review of the warning letters Plaintiff cites makes clear that they must

5   be understood in context with the products and representations at which they were directed.  *See* M.

6   Opp. Ex. 2.  Plaintiff's argument only highlights the fact that Mars's statements about flavanols do

7   *not* violate federal regulations.

8       **—Caloric Daily Values:** Mars contends that a "DV" of calories is not prohibited by FDA

9   regulations, and in fact is affirmatively permitted because it states a "percentage of a nutrient" that

10  "does not in any way implicitly characterize the level of the nutrient" and "is not false or

11  misleading in any respect." 21 C.F.R. § 101.13(i)(3).  Plaintiff's only response to that argument is

12  to offer the conclusory assertion that a DV of calories does not satisfy the regulation because it *is*

13  "false or misleading."  *See* M. Opp. 23.  As explained above and in Mars's opening memorandum,

14  however, that is not correct.  *See supra* Part I.D.1.

15      Instead of addressing this issue, Plaintiff introduces an irrelevancy by raising new allegations

16  about Mars's use of "Guideline Daily Amount" ("GDA") icons.  M. Opp. 22–23.  These allegations

17  are not in the Complaint, which alleges *only* that Mars's products violate FDA regulations by stating

18  that they "supply a certain percentage of the Daily Value ("DV") of calories."  *See* Am. Compl.

19  ¶¶ 85–100.  Plaintiff's new GDA allegations are therefore not appropriate for consideration here.[6]

20  *See, e.g.*, *Schneider*, 151 F.3d at 1197; *Gray*, 651 F. Supp. 2d at 1182.

21      Moreover, to the extent Plaintiff purports to claim that Mars's labeling was required to

22  contain a referral statement, "[s]ee nutrition information for __ content," under 21 C.F.R.

23  § 101.13(h)(1), that argument contradicts the plain language of 21 C.F.R. § 101.13(i)(3).  Section

24  101.13(i)(3) states that a label "*may contain*" a statement about the percentage of a nutrient "*if* . . .

25

26  ─────────────────────
    [6] Plaintiff's GDA argument also misstates Mars's argument by alleging that Mars contends "that
    the standalone Nutrition Key for calories . . . is not a nutrient content claim."  M. Opp. 22.  Mars
27  has not made any such argument here.  Mars has argued only that the percent DV for calories is
    expressly authorized by 21 C.F.R. § 101.13(i)(3) as a statement of a "percentage of a nutrient."  *See*
28  M. Mem. 20–21.

─────────────────────
JOINT REPLY OF MARS AND WRIGLEY IN SUPPORT OF MOTIONS TO DISMISS - C12-01861 LHK

[t]he statement does not in any way implicitly characterize the level of the nutrient in the food *and* it is not false or misleading in any respect." *Id.* (emphases added).  It does *not* require that the percentage be accompanied by a referral statement.

**— PGPR**:  Plaintiff has no response to the merits of Mars's argument that Plaintiff's "failure-to-spell-out PGPR" claim is preempted because FDA regulations do not require that a long-form chemical name be used.  As courts have recognized, "[i]f a food is neither standardized nor one for which a common and usual name is known, it may bear any name its manufacturer wishes, providing it does not violate any provision of the Act."  *Am. Frozen Food Inst. v. Mathews*, 413 F. Supp. 548, 550 (D.D.C. 1976).   Plaintiff contends her claim survives with the conclusory proposition that "California's law is identical to federal law."  M. Opp. 21.  But if so, then California law does not require Mars to use "polyglycerol polyricinoleic acid" in lieu of "PGPR."

**—Milk Chocolate:**  Plaintiff does not dispute that Mars's milk chocolate products comply with back-of-package disclosure requirements for optional alkali and flavoring ingredients.  Instead, Plaintiff incorrectly contends that because "milk chocolate" is printed on the principal display panel of the products "so conspicuously as to be easily seen under customary conditions of purchase," *see* 21 C.F.R. § 163.130(c)(5), these optional alkali and flavoring ingredients must also be printed on the principal display panel, M. Opp. 19.

Plaintiff overlooks a different regulation which overrides and nullifies her argument.  According to 21 C.F.R. § 130.11 (2012):

> Some definitions and standards of identity for foods set forth below require that designated optional ingredients such as spices, flavorings, colorings, emulsifiers, flavor enhancers, stabilizers, preservatives, and sweeteners be declared in a specified manner on the label wherever the name of the standardized food appears on the label so conspicuously as to be easily seen under customary conditions of purchase.  Such requirements shall apply to a manufacturer, packer, or distributor of a standardized food *only if the words or statements on the label of the standardized food significantly differentiate between two or more foods that comply with the same standard* by describing the optional forms or varieties, the packing medium, or significant characterizing ingredients present in the food.

*Id.* (emphasis added).  This overriding language was adopted because, according to the FDA, "[i]n most cases, the declaration of certain optional ingredients in conjunction with the name [of the

standardized ingredient, i.e., milk chocolate] *would be duplicative and unnecessary* now that the 1990 amendments require that all ingredients of standardized foods be declared in the ingredient list." Food Labeling; Declaration of Ingredients, 58 Fed. Reg. 2850, 2851 (Jan. 6, 1993) (emphasis added). "It is not the agency's intent to require dual declaration of noncharacterizing optional ingredients." *Id.* Accordingly, the Mars labels are not required to state "processed with alkalis" or "contains artificial flavors" on the principal display panel. *See* 21 C.F.R. § 130.11. Plaintiff's claim to the contrary is expressly preempted and should be dismissed.

### III.   Plaintiff's Claims Are Barred by the Safe Harbor Doctrine.

Everything in Plaintiff's one-paragraph response regarding the safe harbor doctrine is erroneous. First, Defendants' argument was not limited to Altoids Smalls, but rather applies to all of the products at issue. *See* W. Mem. 21; M. Mem. 24 (incorporating by reference). Second, Plaintiff's argument that the "samples" of products cited in the Complaint are "just representative samples of the types of unlawful and misleading claims by Wrigley," W. Opp. 25, ignores federal pleading standards. Plaintiff cannot state a claim based on products that are not even identified in the Complaint. Third, Plaintiff argues that a safe harbor applies only if her claims are expressly barred by law, but the very quotation cited in her opposition papers states that the doctrine applies if another law "'clearly permit[s] the conduct.'" *Id.* (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 562 (Cal. 1999)). That is exactly the basis of Defendants' argument: their conduct is expressly permitted by applicable federal regulations.

### IV.   The Complaint Fails To State a Claim for "Restitution on a Quasi-Contract Theory."

In response to the argument that Plaintiff's unjust enrichment claim is not cognizable in California and is duplicative of her UCL, FAL, and CLRA claims, Plaintiff recharacterizes her claim as an "in the alternative" claim for "restitution on a quasi-contract theory." M. Opp. 23–24. But regardless of the "theory" Plaintiff invokes, the Complaint still fails to state a claim because it does not allege facts showing that the labels of Wrigley and Mars were misleading. *See McKinnis*, 2007 WL 4762172, at *5–6 (dismissing claim for "restitution under a quasi-contract theory" for failure to "allege facts sufficient to support any claims based on . . . alleged misrepresentation" that cereal contained "real fruit or fruit juice").

1    **V.    The Complaint Fails to State a Claim Under Song-Beverly or Magnuson Moss.**

2         As an initial matter, Plaintiff's breach of warranty claims fail because, as explained above,

3    Plaintiff has failed to identify a 'breach"—i.e., that there is a false or misleading statement on a

4    Wrigley or Mars label.  Moreover, Plaintiff's arguments further show that her claims fail to meet the

5    requirements of the Song-Beverly and Magnuson-Moss statutes.

6         **—Song-Beverly:** Plaintiff concedes that Song-Beverly "provides a right of action where the

7    defendants have created express warranties as defined by Cal. Civ. Code § 1791.2."  M. Opp. 24.

8    This is precisely the point: Section 1791.2 defines "express warranties" to apply only to "consumer

9    goods," the definition of "consumer goods" excludes "consumables," Cal. Civ. Code § 1791, and

10   Mars and Wrigley food products are "consumables," *see id.*  Judge Davila dismissed a Song-Beverly

11   claim against Hershey for exactly this reason. *See Khasin*, 2012 WL 5471153, at *8.  Plaintiff

12   mistakenly argues that she has stated a claim "under the provisions of California Civil Code

13   § 1793.35 which . . . appl[ies] to consumables," M. Opp. 24, but that provision discusses a right to

14   return non-conforming goods; it does *not* provide a cause of action.  Rather, the cause of action is

15   provided by Cal. Civ. Code § 1794(a), and that provision applies only to "consumer goods," not to

16   consumables.  Thus, Plaintiff offers no credible response to Defendants' argument.

17        **—Magnuson Moss:**  Plaintiff fails to offer a non-conclusory response to the argument that

18   the products' labels do not create "written warranties" as defined in Magnuson-Moss.  For that

19   reason alone, her claim should be dismissed. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos.

20   11-2910 & 11-3164, 2012 WL 2990766, at *3 (N.D. Cal. July 20, 2012) (observing "[n]umerous

21   courts" have held food label descriptions do not create "written warranties" under Magnuson-Moss).

22        Moreover, even if the labels did create written warranties, Magnuson-Moss would still not

23   provide Plaintiff a cause of action because the statute is "inapplicable to any written warranty the

24   making or content of which is otherwise governed by Federal law."  15 U.S.C. § 2311(d).   Plaintiff

25   contends her claim survives because she also relies on California law, M. Opp. 25, but California

26   law is irrelevant.  Magnuson-Moss is a federal statute, and the statements on the labels are

27   "otherwise governed by Federal law"—the FDCA and FDA regulations.  Thus, they are exempt

28   from Magnuson-Moss.

**VI.     Plaintiff Has Not Stated a Claim Against Mars Based on Wrigley's Products.**

Plaintiff's allegations regarding Mars's alleged liability for Wrigley's labels are based on facts not pleaded in the Complaint and are therefore not appropriate for consideration on a motion to dismiss. *See Schneider*, 151 F.3d at 1197 n.1.  Moreover, Plaintiff's allegations do not come close to justify piercing the corporate veil. *See, e.g.*, *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1299–1300 (S.D. Cal. 2011) (discussing elements of corporate alter ego and agency liability).  "It is the general rule that a parent corporation and its subsidiary will be treated as separate legal entities." *Id.* at 1299.  Alleging that Mars is Wrigley's "parent company," that Mars "controls" Wrigley, and that Mars listed Wrigley on its website, M. Opp. 25, shows only that Mars and Wrigley have an ordinary parent-subsidiary relationship.  And Plaintiff's generic allegations that the Mars websites contain "various Wrigley related claims at issue" fail to identify a single allegedly deceptive statement, or for that matter one that relates to a specific Wrigley product.  Thus, any claims against Mars based on Wrigley products should be dismissed.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening briefs, and pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), Plaintiff's Complaint should be dismissed in its entirety.

Dated:  December 21, 2012                Respectfully submitted,

By: /s/ Stephen D. Raber
Stephen D. Raber (State Bar No. 121958)
David M. Horniak (State Bar No. 268441)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Fax:  (202) 434-5029
E-mail:  sraber@wc.com
E-mail:  dhorniak@wc.com

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on December 21, 2012, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

4

Ben F. Pierce Gore    pgore@prattattorneys.com

5

          equirk@prattattorneys.com
PTaylor@barrettlawgroup.com

6

          rtrazo@prattattorneys.com
Brian K. Herrington    bherrington@barrettlawgroup.com

7

Carol Nelkin      c.nelkin@nelkinpc.com

8

          twhite@nelkinpc.com
Charles F. Barrett     charles@cfbfirm.com

9

          dawn@cfbfirm.com
David Shelton      david@davidsheltonpllc.com

10

David Malcolm McMullan, Jr.  dmcmullan@barrettlawgroup.com
          bherrington@barrettlawgroup.com

11

          ccmirick@barrettlawgroup.com

12

Dewitt Marshall Lovelace, Sr.  courtdocs@lovelacelaw.com
Jay P. Nelkin      jnelkin@nelkinpc.com

13

Richard Barrett     rrb@rrblawfirm.net
Stuart M. Nelkin     snelkin@nelkinpc.com

14

          twhite@nelkinpc.com

15

And I hereby do certify that I have mailed by United States Postal Service the document to

16

the following non CM/ECF participants:

17

Alex Peet

18

Lovelace Law Firm, P.A.
12870 U.S. Highway 98 West

19

Suite 200
Miramar Beach, FL 32550

20

21

Keith M. Fleischman
Ananda N. Chaudhuri

22

Frank Karam
Fleischman Law Firm

23

565 Fifth Avenue, 7th Floor
New York, NY 10017

24

25

J. Price Coleman
Coleman Law Firm

26

1100 Tyler Avenue, Suite 102
Oxford, MS 38655

27

28

John W. (Don) Barrett
Katherine B. Riley

1

Don Barrett, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095

2

3

4

Respectfully submitted,

5

By: /s/ Stephen D. Raber
Stephen D. Raber (State Bar No. 121958)
David M. Horniak (State Bar No. 268441)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Fax:  (202) 434-5029
E-mail:  sraber@wc.com
E-mail:  dhorniak@wc.com

6

7

8

9

10

11

*Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28