1

1                       UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5 PHYLLIS GUSTAVSON, INDIVIDUALLY   )  C-12-01861 LHK
  AND ON BEHALF OF ALL OTHERS       )

6 SIMILARLY SITUATED,              )  SAN JOSE, CALIFORNIA
                              )

7                PLAINTIFF,     )  MAY 2, 2013
                              )

8              VS.              )  PAGES 1-20
                              )

9 WRIGLEY SALES COMPANY, WM.        )
  WRIGLEY JR. COMPANY, MARS,       )

10 INC., AND MARS CHOCOLATE NORTH   )
  AMERICA, LLC,                 )

11                             )
             DEFENDANTS.    )

12 _____)

13                 TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE LUCY H. KOH

14              UNITED STATES DISTRICT JUDGE

15 A P P E A R A N C E S:

16 FOR THE PLAINTIFF:     PRATT & ASSOCIATES
                        BY:  BEN F. PIERCE GORE

17                         1871 THE ALAMEDA, SUITE 425
                        SAN JOSE, CALIFORNIA  95126

18

19                         COLEMAN LAW FIRM
                        BY:  J. PRICE COLEMAN

20                         1100 TYLER AVENUE, SUITE 102
                        OXFORD, MISSISSIPPI  38655

21 FOR THE DEFENDANT:     WILLIAMS & CONNOLLY LLP
                        BY:  STEPHEN D. RABER

22                             DAVID M. HORNIAK
                        725 TWELFTH STREET, N.W.

23                         WASHINGTON, D.C.  20005

24 OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                           CERTIFICATE NUMBER 9595

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
          TRANSCRIPT PRODUCED WITH COMPUTER

```
1     SAN JOSE, CALIFORNIA              MAY 2, 2013
2                    P R O C E E D I N G S
3          (COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)
4              THE CLERK:  CALLING CASE NUMBER C-12-01861 LHK,
5     GUSTAVSON VERSUS WRIGLEY SALES COMPANY, ET AL.
6              MR. GORE:  GOOD AFTERNOON, YOUR HONOR.  PIERCE GORE
7     FOR PLAINTIFF.  I'M HERE WITH MY CO-COUNSEL, PRICE COLEMAN.
8              MR. COLEMAN:  GOOD AFTERNOON, YOUR HONOR.
9              THE COURT:  GOOD AFTERNOON.
10             MR. RABER:  GOOD AFTERNOON, YOUR HONOR.  MY NAME IS
11    STEVE RABER, AND I'M HERE FOR WRIGLEY AND MARS.
12             THE COURT:  OKAY.  GOOD AFTERNOON.
13             MR. HORNIAK:  GOOD AFTERNOON, YOUR HONOR.  I'M
14    DAVID HORNIAK.  I AM HERE FOR WRIGLEY AND MARS.
15             THE COURT:  OKAY.  GOOD AFTERNOON.
16         ALL RIGHT.  JUST OUT OF CURIOSITY, WHAT IS THE TOTAL NUMBER
17    OF THE FOOD COURT CASES NOW IN THIS DISTRICT?
18             MR. GORE:  IT'S 34, YOUR HONOR.
19             THE COURT:  OKAY, 34.  AND DO I STILL HAVE SIX, OR --
20             MR. GORE:  I BELIEVE DEFENDANT TURTLE MOUNTAIN
21    DECLINED ASSIGNMENT TO A MAGISTRATE, SO I BELIEVE YOU NOW HAVE
22    SEVEN.
23             THE COURT:  OH, OKAY.  ALL RIGHT.
24         OKAY.  SO I JUST HAVE A FEW QUESTIONS TO ASK YOU AND THEN I
25    WOULD LIKE TO HANDLE THE CASE MANAGEMENT CONFERENCE.
```

1          LET ME START OFF WITH ASKING MR. RABER -- DID I PRONOUNCE

2     THAT CORRECTLY?

3               MR. RABER:  YES, YOU DID, RHYMES WITH NEIGHBOR.

4               THE COURT:  OKAY.

5          -- WHETHER THE FDA HAS ADOPTED THE PROPOSED RULE ON BREATH

6     MINT SERVINGS.

7               MR. RABER:  NOT YET.  IT'S ON THE 2013 AGENDA.

8               THE COURT:  OKAY.

9               MR. RABER:  WE HAVE A COPY OF THAT IF YOU'D LIKE TO

10     TAKE JUDICIAL NOTICE OF THAT.

11               THE COURT:  OKAY.  NOW, WOULD THAT -- WOULDN'T THAT

12     SUPPORT THE PLAINTIFF'S ARGUMENT THAT THE CURRENT REQUIREMENT

13     IS THE TWO GRAMS?

14               MR. RABER:  NO, IT WOULDN'T.

15               THE COURT:  WHY?

16               MR. RABER:  BECAUSE THE TWO GRAMS ARE WHAT'S CALLED

17     A -- THEY'RE NOT SERVING SIZE.  THEY'RE A RESOURCE TO DETERMINE

18     SERVING SIZE.  IT'S KIND OF A TECHNICALITY, BUT THAT'S WHAT

19     THESE REGULATIONS ARE.

20          AND WHAT THE FDA FOUND WAS THAT WHEN YOU APPLY THAT

21     REFERENCE AMOUNT TO SMALL BREATH MINTS, IT CAN CREATE PROBLEMS,

22     WHICH IS WHY THEY PUT ON THEIR AGENDA TO HAVE A UNIFORM SERVING

23     SIZE OF ONE MINT, BECAUSE WHEN THEY ADOPTED THE SERVING SIZE

24     STANDARDS, THERE WERE ONLY THESE LARGE MINTS AND THEN PEOPLE

25     FIGURED OUT, WE CAN MAKE THEM REALLY SMALL AND POTENT, AND THE

1    FDA DETERMINED THAT USING THAT REFERENCE GUIDE TO DETERMINE A

2    SERVING SIZE PROBABLY DOESN'T WORK AND CAN CAUSE CONFUSION WITH

3    THE SMALL BREATH MINTS, SO IT DOESN'T SUPPORT IT.

4        BUT I THINK MORE IMPORTANTLY, IT'S -- IT'S A CLASSIC CASE

5    FOR PRIMARY JURISDICTION BECAUSE THIS IS UNDER ACTIVE REVIEW.

6    IN THE FDA, THIS IS A RULE THAT THEY'RE RECOMMENDING BE ONE

7    MINT PER SERVING SIZE, AND AS A PRUDENTIAL MATTER, TO RELEASE

8    THE HOUNDS ON DISCOVERY, SO TO SPEAK, ONLY TO HAVE THE FDA

9    DETERMINE A ONE MINT SERVING SIZE LATER THIS YEAR, WHICH PUTS

10   US SQUARELY IN THE REALM OF EXPRESS PREEMPTION, THAT CRIES OUT

11   FOR DISMISSAL BASED ON PRIMARY JURISDICTION.

12           MR. COLEMAN:  YOUR HONOR, CAN I RESPOND?

13           THE COURT:  JUST VERY BRIEFLY.

14           MR. COLEMAN:  YOU'RE DOING A PRETTY GOOD JOB

15   YOURSELF, BUT IT'S SORT OF LIKE YOU'VE GOT A SPEED LIMIT OF 65

16   MILES AN HOUR SOMEWHERE AND ALL OF A SUDDEN THE GOVERNMENT

17   SAYS, "WELL, WE MAY RAISE THE SPEED LIMIT TO 70."  BUT UNTIL

18   THEY DO, THE SPEED LIMIT IS 65.

19       SINCE 1997 WHEN THIS PURPORTED NOTICE OF A -- TO HAVE

20   COMMENTS FOR CHANGE WAS FIRST FILED, THE RULE HAS BEEN TWO

21   GRAMS PER SERVING.

22       WRIGLEY KNEW THAT, BUT YET, THEY DECIDED THEY WERE GOING TO

23   USE A DIFFERENT FIELD FOR THEIR SMALL MINTS, EVEN THOUGH THE

24   RULE -- AND THERE WERE SMALL MINTS BACK THEN.

25       THIS RULE, AS I UNDERSTAND IT IN 2013, IS NOT THE PROPOSED

1    RULE THAT WAS FIRST PROPOSED.  WHAT'S UNDER CONSIDERATION NOW

2    IS NOT THE INITIAL RULE THAT THEY PROPOSED IN 1997 ANYWAY.

3         SO WHO KNOWS WHAT THEY WILL CHANGE IT TO, IF AT ALL.

4         BUT THE PLAINTIFF PURCHASED THESE MINTS DURING THE CLASS

5    PERIOD WHEN THE RULE WAS TWO GRAMS FOR A SERVING SIZE.  WRIGLEY

6    KNEW THAT.

7         SO I DON'T SEE WHERE THERE'S ANY OPPORTUNITY FOR THERE TO

8    BE ANY CONFUSION ABOUT WHAT THE LAW IS AT PRESENT AND WHAT IT'S

9    BEEN DURING THE FOUR, NOW ALMOST FIVE YEARS FOR THE CLASS

10   PERIOD THAT HAS BEEN VIOLATED.

11        THE COURT:  LET ME ASK MR. RABER, WHY SHOULDN'T THE

12   PRESUMPTION AGAINST PREEMPTION APPLY IN THIS CASE?

13        MR. RABER:  BECAUSE DETERMINING SERVING SIZES OF

14   BREATH MINTS IS NOT SOMETHING THAT HAS BEEN SORT OF WITHIN THE

15   HISTORICAL LAW OF, YOU KNOW, COMMON LAW OF STATE REGULATION.

16        YOU KNOW, I THINK THAT THIS REALLY GOES TO A

17   MORE FUNDAMENTAL POINT HERE.  IT TOUCHES ON IMPLIED PREEMPTION,

18   AND ALSO ON THE NO REASONABLE CONSUMER CAN BE MISLED.

19        SO IF WE'RE TALKING ABOUT THE REGULATION -- LET'S TAKE A

20   STEP BACK.  WHAT IS THE PLAINTIFF CLAIMING?  SHE'S CLAIMING

21   THAT SHE WAS DECEIVED BECAUSE THE PROPER SERVING SIZE SHOULD

22   HAVE BEEN TEN MINTS, WHICH IS FIVE CALORIES, AS OPPOSED TO ONE

23   MINT, WHICH IS A HALF A CALORIE.

24        SO YOU'RE TALKING ABOUT A DIFFERENCE HERE THAT'S EQUIVALENT

25   TO A SINGLE LEAF OF ROMAINE LETTUCE, AND I WOULD SAY THAT FOR

1    CONSUMERS WHO ACTUALLY CARE ABOUT THE NUMBER OF CALORIES IN

2    SUGAR FREE BREATH MINTS, THE LABEL TELLS YOU EXACTLY HOW MANY

3    CALORIES THERE ARE, EXACTLY HOW MANY IT COMPARES TO SUGARED

4    MINTS.

5         AND THIS NOTION THAT A FOUR AND A HALF CALORIE DIFFERENCE

6    HERE -- THIS IS THE KIND OF CLAIM THAT MAKES THE LEGAL SYSTEM

7    THE BUTT OF JOKES ON LATE NIGHT TELEVISION.

8         THIS PLAINTIFF, THE SAME PLAINTIFF WHO ALLEGES THAT A FOUR

9    AND A HALF -- THAT SHE WAS MISLED BY THIS UNDERSTATEMENT OF

10   CALORIES BY FOUR AND A HALF, WHICH SHE COULD HAVE FIGURED OUT

11   JUST LOOKING AT THE TIN, THE LABEL, SHE'S THE SAME PLAINTIFF

12   WHO WENT OUT AND BOUGHT M & M'S, TWIX BARS, BOTH KINDS OF DOVE

13   BARS, AND A FUN SIZE BAG OF SNICKERS BARS.

14        SO WHETHER WE CALL IT THE IQBAL PLAUSIBILITY STANDARD,

15   WHETHER WE CALL IT NO REASONABLE CONSUMER COULD BE DECEIVED, OR

16   WHETHER WE CALL IT DON'T GET US ON LATE NIGHT TV, THIS IS RIGHT

17   UP THERE WITH THE CRUNCH BERRIES CLAIM THAT EVERYBODY TALKS

18   ABOUT WHERE THE PLAINTIFF SAYS "I THOUGHT THAT CRUNCH BERRIES

19   WERE A REAL FRUIT AND I WAS MISLED INTO BUYING CAP'N CRUNCH."

20        SO THIS CLAIM IS -- IT SHOULD BE DISMISSED FOR THOSE

21   REASONS ALONE, YOU KNOW, FORGETTING ABOUT --

22             THE COURT:  I'M SORRY TO INTERRUPT YOU, BUT WHY

23   AREN'T LAWS PROTECTING PEOPLE FROM FRAUD AND DECEPTION IN THE

24   SALE OF FOOD PRODUCTS, WHY ISN'T THAT WITHIN THE STATE'S

25   TRADITIONAL POWER OF HEALTH AND SAFETY REGULATION?

1          MR. RABER:  WELL, IT CAN BE.

2          THE COURT:  UH-HUH.

3          MR. RABER:  BUT IT HAS TO BE -- IF YOU LOOK AT THE

4    CASE LAW, THOSE TYPICALLY ARISE IN SITUATIONS WHERE IT'S A

5    FAILURE TO WARN OF A SAFETY PROBLEM OR SOME ISSUE LIKE THAT.

6        AND THAT'S WHAT YOU SEE WHEN YOU, WHEN YOU'RE IN THE

7    IMPLIED PREEMPTION CASES.  THERE'S SOME DANGER OR SAFETY SIGNAL

8    AND THE COURTS ALLOW A FAILURE TO WARN THEORY TO PROCEED

9    BECAUSE THAT'S A TRADITIONAL STATE REMEDY.

10        THERE WOULDN'T BE A VIOLATION HERE, SO TO SPEAK, BUT FOR

11    THE REGULATION GOVERNING SERVING SIZES.

12        THE IDEA THAT YOU WOULD HAVE A STATE COMMON LAW DECEPTION

13    CLAIM UNDERSTATING THE NUMBER OF CALORIES WHEN THE NUMBER OF

14    CALORIES IS ON THE LABEL PER MINT, HOW CAN ANYBODY BE DECEIVED

15    IN THAT CIRCUMSTANCE?

16         YOU CAN LOOK AT THE LABEL AND SAY "I WANT TO HAVE TEN OF

17    THESE INSTEAD OF ONE OF THEM.  IT'S FIVE CALORIES."  IT'S RIGHT

18    THERE ON THE LABEL.

19          MR. COLEMAN:  YOUR HONOR, CAN I RESPOND?

20          THE COURT:  LET ME ASK YOU A SEPARATE QUESTION.

21        I GUESS THE -- THE FAIRLY RECENT PEREZ CASE, IN CONJUNCTION

22    WITH THE STENGEL CASE, GIVES THIS COURT A LITTLE BIT OF PAUSE

23    ON THE IMPLIED PREEMPTION ISSUE BECAUSE IT DOES SEEM LIKE YOUR

24    CLIENT'S CLAIMS EXIST SOLELY BECAUSE OF THE NLEA'S ENACTMENTS.

25    CAN YOU RESPOND TO THAT?

```
 1              MR. COLEMAN:  YES.  YOUR HONOR, I THINK THERE'S BEEN

 2    A CONSISTENT POSITION ON THAT ISSUE SINCE THE IN RE:  SALMON

 3    CASES, AND THE DIFFERENCE IN THE OUTCOME OF THE CASES THAT HAVE

 4    COME IN THE NINTH CIRCUIT OR THE U.S. SUPREME COURT THAT ARE

 5    CITED IN THE PEREZ CASE AND MOST OF THEM, EXCEPT PEREZ, WERE

 6    CITED IN YOUR OPINION IN THE DOLE CASE.

 7         AND I THINK THAT THE PEREZ OPINION, WHEN IT SAID THERE'S A

 8    NARROW GAP THAT A PLAINTIFF MUST GO THROUGH, THAT IS A PRETTY

 9    GOOD WAY OF PUTTING IT.

10         AND IN FACT, THAT WAS CITED, THAT VERY THING, IN THE

11    DEFENDANTS' BRIEFS IN THIS CASE, AND I THINK THAT'S ACCURATE.

12    THAT IS -- AND YOU -- I WANT TO FINISH THAT THOUGHT, BUT I WANT

13    TO ALSO MAKE THE POINT, YOU SAID THAT OUR CLAIMS ARE BASED ON

14    THE FDA, THE FEDERAL LAW.

15         THAT'S NOT --

16              THE COURT:  NLEA.

17              MR. COLEMAN:  WE WOULD DISAGREE WITH THAT --

18              THE COURT:  UM-HUM.

19              MR. COLEMAN:  -- AND POINT TO THE SHERMAN LAW, AND

20    CALIFORNIA CERTAINLY HAS INTEREST IN PROTECTING ITS CITIZENS

21    FROM FRAUD ON FOOD.

22         BUT GETTING BACK TO THIS GAP, IS THERE A VIOLATION OF THE

23    FDA REGULATION IN OUR CASE?

24          AND THERE'S MORE CLAIMS THAN JUST THIS, THIS ALTOID SMALL

25    CASE AND, YOU KNOW, WE'VE GOT TO --
```

1          THE COURT:  THAT WAS ONE OF MY POINTS.  I THINK THERE

2     ARE TOO MANY CLAIMS IN THIS COMPLAINT.  THERE MAY BE IMPROPER

3     JOINDER HERE.  WOULD YOU BE WILLING TO FILE ONE COMPLAINT

4     AGAINST MARS AND ANOTHER COMPLAINT AGAINST WRIGLEY?  BECAUSE

5     IT'S -- I THINK FOR PURPOSES OF THIS, IF THIS EVER GOES TO

6     TRIAL OR WHATNOT, IT'S A LOT AND IT'S GOING TO BE SLIGHTLY

7     CONFUSING.

8          MR. COLEMAN:  CERTAINLY.  WE JUST THINK THOSE TWO

9     COMPANIES WERE JOINED AT THE HIP AND SO WE FILED THEM TOGETHER,

10    BUT I CAN UNDERSTAND WHY THERE WOULD BE SOME CLARITY IF THE

11    CASES WERE SEPARATED.  WE HAVE NO OBJECTION TO THAT BEING DONE.

12          THE COURT:  OKAY.

13          MR. COLEMAN:  BUT THESE TWO COMPANIES, WE'VE PLED IN

14    OUR COMPLAINT, AND I THINK THAT THE DISCOVERY WILL SHOW, THAT

15    THEY ARE DOING THEIR MARKETING AND DISCOVERY TOGETHER TO SOME

16    EXTENT.  THEIR WEBSITES REFER TO EACH OTHER.  SO THERE'S A GIVE

17    AND TAKE THERE WHICH --

18          THE COURT:  WELL, THERE'S A PARENT-SUBSIDIARY

19    RELATIONSHIP.

20          MR. COLEMAN:  YES.

21          THE COURT:  BUT IT DOES SEEM LIKE PRODUCT LINES ARE

22    DISTINCT.

23          MR. COLEMAN:  THE PRODUCT LINES ARE DISTINCT.

24      BUT AT SOME POINT WE THINK THAT THE MARKETING OF THESE

25    HEALTH CLAIMS, WHICH IS A RELATIVELY NEW THING IN THE CANDY

```
 1        INDUSTRY TO TALK ABOUT THE HEALTH OF THEIR PRODUCTS --

 2              THE COURT:  UM-HUM.

 3              MR. COLEMAN:  -- THAT'S A BIG PART OF A LOT OF OUR

 4     CASES, AND IT'S JUST SOMETHING THAT MARKETERS THAT WORK FOR

 5     THESE COMPANIES AND ARE PAID MILLIONS OF DOLLARS HAVE DECIDED

 6     THEY'LL PUSH PRODUCTS THAT WAY.

 7          BUT GETTING BACK TO THIS LITTLE GAP, THERE WAS A VIOLATION

 8     OF THE FDA REGULATIONS ON ALL THESE PRODUCTS.  WE THINK WE'VE

 9     ESTABLISHED THAT IN OUR AMENDED COMPLAINT, SO WE GET BY ANY --

10     YOU KNOW, THAT'S THE FIRST POINT.

11          AND THE SECOND POINT IS, WE'RE NOT RELYING SOLELY ON THE

12     FDA FOR OUR CLAIM AS WAS THE CASE IN THE BUCKMAN CASE.

13          IN OUR CASE, WE'RE RELYING ON CALIFORNIA LAW -- AND THERE

14     IS A POLICE INTEREST CERTAINLY, AS YOU POINTED OUT IN THE DOLE

15     OPINION, AND IT'S JUST COMMON SENSE, THAT CALIFORNIA HAS A

16     RIGHT TO PASS LAWS TO PROTECT ITS CITIZENS FROM FRAUD ON ITS

17     FOOD AND TO GET CORRECT AND FULL INFORMATION ON THE PRODUCTS.

18          ONE LAST POINT IN RESPONSE TO DEFENSE COUNSEL.

19          EVERY WORD THAT'S ON -- WHETHER IT'S THE ALTOIDS SMALLS OR

20     ANY OF THESE OTHER PRODUCTS, EVERY WORD, EVERY PLACE THAT

21     THERE'S A PHRASE ON IT IS WELL THOUGHT OUT AS A WAY TO LURE A

22     POTENTIAL CUSTOMER INTO BUYING THAT PRODUCT, AND SO THEY'RE

23     JUST NOT RANDOMLY PUT ON THE PRODUCT.

24          SO IT'S VERY IMPORTANT, ESPECIALLY ON CANDY FOOD PRODUCTS

25     WHERE CALORIES COUNT, AND THE FDA AND THE STATE OF CALIFORNIA
```

1    HAVE SAID THAT, EVEN LITTLE AMOUNTS OF CALORIES ON DENSE CANDY

2    PRODUCTS MAKE A DIFFERENCE IN THE HEALTH OF CONSUMERS.

3         SO WE THINK THAT, THAT PROTECTING CONSUMERS IS VERY

4    IMPORTANT ON ALL OUR CASES, BUT ON THESE CANDY CASES IN

5    PARTICULAR, AND WE THINK THAT THERE IS NO PREEMPTION UNDER

6    PEREZ, THAT PEREZ DESCRIBES A SITUATION THAT WE FIT IN WITH

7    BASING OUR CASE ON SHERMAN ACT, AND THERE'S NOTHING WRONG WITH

8    CALIFORNIA ADOPTING FDA REGULATIONS.

9              THE COURT:  ALL RIGHT.  I'M SORRY.  I HAVE TO

10   INTERRUPT YOU.

11        SO THANK YOU FOR AGREEING TO FILE TWO SEPARATE COMPLAINTS

12   BECAUSE THE -- WHAT YOU'RE ALLEGING AS BEING UNLAWFUL

13   REPRESENTATIONS ARE DIFFERENT FOR THE TWO COMPANIES, SO I THINK

14   IT WOULD BE APPROPRIATE TO HAVE -- YOU KNOW, YOU CAN HAVE ONE

15   THAT'S THE FLAVANOL, DAILY VALUE CALORIES, PGPR, MILK

16   CHOCOLATE; AND THEN YOU HAVE THE OTHER COMPLAINT, THAT'S THE

17   SUGAR FREE, SERVING SIZE, LOW CALORIES.  OKAY?

18        NOW, WOULD YOU ALSO CONCEDE -- I HAD MR. PIERCE GORE IN

19   HERE YESTERDAY ON A CASE AGAINST BLUE DIAMOND GROWERS.  WOULD

20   YOU ALSO CONCEDE ON THE WARRANTY ACT CLAIMS?

21        AS YOU'VE SEEN IN MY DOLE DECISION --

22             MR. COLEMAN:  YES.

23             THE COURT:  OKAY.  SO YOU'RE CONCEDING ON THAT, SO I

24   CAN JUST DISMISS THOSE BECAUSE YOU ARE CONCEDING; CORRECT?

25             MR. COLEMAN:  YES.

1          THE COURT:  OKAY.  THANK YOU.

2       NOW, WHAT ABOUT THE RESTITUTION, UNJUST ENRICHMENT?  I

3    UNDERSTAND THE LAW ON THAT IS A LITTLE BIT LESS CLEAR.  WHAT'S

4    YOUR POSITION?

5          MR. COLEMAN:  YOUR HONOR, WE'RE NOT PREPARED TO ARGUE

6    THAT THAT SHOULD STAY IN THE CASE.

7          THE COURT:  OKAY.

8          MR. COLEMAN:  BUT I -- I'LL HAVE TO THINK ABOUT IF WE

9    WANT TO DISMISS IT VOLUNTARILY.  I CAN'T IMAGINE THAT THERE

10   WOULD EVER BE AN APPEAL OF ANY OF THESE CASES, BUT SINCE THERE

11   IS SOME UNCERTAINTY IN THE LAW --

12         THE COURT:  UM-HUM.

13         MR. COLEMAN:  -- ON THAT, I WANT TO THINK ABOUT THAT.

14         THE COURT:  THAT'S FINE.  I -- YOU DON'T HAVE TO --

15         MR. COLEMAN:  BUT I UNDERSTAND YOU --

16         THE COURT:  YOU DON'T HAVE TO GET BACK TO ME ON THAT.

17   I'LL PROBABLY DO WHATEVER I'M GOING TO DO.

18      OKAY.  LET ME --

19         MR. RABER:  MAY I RESPOND TO THAT, YOUR HONOR?

20         THE COURT:  JUST VERY BRIEFLY, PLEASE.

21         MR. RABER:  OKAY.  I WOULD MAKE THIS POINT.  I KNOW

22   YOU'VE BEEN INUNDATED ON THE SUPPLEMENTAL BRIEFING ISSUE.

23         THE COURT:  OKAY.

24         MR. RABER:  AND I WOULD MAKE TWO QUICK POINTS.  I

25   THINK THE LORETO CASE IS THE BEST CASE TO LOOK AT BECAUSE IN

1    THAT CASE, YOU HAVE A SITUATION WHERE ONE SET OF CLAIMS GOT

2    PREEMPTED, WHICH ARE VERY MUCH LIKE THE CLAIMS HERE.  THE CLAIM

3    WAS "THESE LABELS VIOLATE FDCA REGULATIONS AND, THEREFORE,

4    THEY'RE ILLEGAL," ONLY THE PLAINTIFFS HERE USE THE WORD

5    "MISBRANDED."  THOSE CLAIMS WERE PREEMPTED.

6        THE CLAIM THAT WAS NOT PREEMPTED WAS THE STATEMENT ON THE

7    LABEL THAT VITAMIN C CAN HELP BLUNT THE EFFECTS OF A COLD, AND

8    THE COURT SAID THAT'S WITHIN THE STATE'S POWER.  THAT'S A

9    MISLEADING STATEMENT.  IT VIOLATES THE FEDERAL LABELING

10   REGULATIONS AND IT'S FALSE BECAUSE THERE'S NO DATA TO SUPPORT

11   IT.

12           THE COURT:  UM-HUM.

13           MR. RABER:  OKAY?

14           THE COURT:  OKAY.

15           MR. RABER:  SO LORETO IS THE BEST CASE ON THAT.

16           THE COURT:  I FIGURED YOU WOULD SAY THAT.

17           MR. RABER:  AND SECOND, THIS FICTION THAT THEY'RE

18   RELYING ON STATE LAW, THE PLAINTIFFS SHOW THEIR TRUE COLORS ON

19   THAT POINT WHEN THEY DIRECT THE COURT TO ALL THESE FDA WARNING

20   LETTERS AND FDA INTERPRETATIONS AND SAY THAT YOU OUGHT TO GIVE

21   DEFERENCE TO IT.

22           THE COURT:  UM-HUM.

23           MR. RABER:  QUESTION HERE:  WHY WOULD ANYBODY GIVE

24   DIFFERENCE TO AN FDA INTERPRETATION OF STATE LAW?  THESE CASES

25   ARE CLEARLY BASED ON THE FEDERAL LAW.  IT EXISTS BECAUSE OF THE

1    FEDERAL LAW.  IF THE FEDERAL LAW DISAPPEARS TOMORROW, THE

2    SHERMAN LAW DISAPPEARS TOMORROW.

3         BUT FOR THE -- BUT FOR THE FEDERAL REGULATIONS, THERE IS NO

4    CLAIM.  THAT FAILS UNDER BUCKMAN.

5         SO WE BELIEVE THAT THAT'S PRETTY CLEAR, YOUR HONOR, AND IF

6    YOU GO CLAIM BY CLAIM, YOU CAN SEE -- JUST AS AN EXAMPLE, THEY

7    ALLEGE IN PARAGRAPH 158 OF THE AMENDED COMPLAINT ON STANDARD OF

8    IDENTITY, THEY SAY, "DEFENDANTS' PRODUCTS 'VIOLATE 21 C.F.R.,

9    SECTION 163.130'" BECAUSE BLAH, BLAH, BLAH.

10             THE COURT:  UM-HUM.

11             MR. RABER:  I DON'T THINK C.F.R. STANDS FOR

12   CALIFORNIA FOOD REGULATIONS.  OKAY?

13             THE COURT:  UM-HUM.

14             MR. RABER:  SO THIS IS CRYSTAL CLEAR.

15             THE COURT:  UM-HUM.

16             MR. RABER:  ALSO, WE MENTIONED THE 30 CASES HERE.

17   YOU KNOW, IF YOU GO --

18             THE COURT:  34.

19             MR. RABER:  34.  IF YOU GO TUNA FISHING, YOUR HONOR,

20   AND YOU THROW A WIDE NET, YOU'RE BOUND TO GET A COUPLE OF

21   DOLPHINS IN THE NET, AND WRIGLEY AND MARS ARE A COUPLE OF

22   DOLPHINS HERE THAT SHOULD BE LET GO.

23        AND IN OUR MOTION TO DISMISS, I THINK UNLIKE A LOT OF THE

24   OTHER DEFENDANTS, WE WENT THROUGH PAINSTAKING DETAIL, CLAIM BY

25   CLAIM, TO SHOW WHY THE STATEMENTS ON THE LABELS COULDN'T

1      POSSIBLY MISLEAD REASONABLE CONSUMERS AND ARE EXPRESSLY

2      PREEMPTED BECAUSE WE COMPLY WITH THE REGULATIONS.

3          AND THOSE ARE DEFECTS IN THE COMPLAINT.  THEY'RE NOT RULE

4      9(B) DEFECTS.  THOSE ARE DEFECTS THAT ARE NOT FIXABLE BY AN

5      AMENDED COMPLAINT.

6          AND I WOULD -- IF WE HAD TIME TODAY, I'D LOVE TO GO THROUGH

7      CLAIM BY CLAIM AND SHOW EXACTLY WHY, LIKE WE DID IN OUR PAPERS,

8      WHY THOSE CLAIMS ARE --

9              THE COURT:  I DON'T WANT TO DO THAT.

10             MR. RABER:  I UNDERSTAND.

11         BUT WE LAY IT OUT AND WE DID IT BECAUSE THIS IS SO

12     IMPORTANT THAT BEFORE WE GET INTO DISCOVERY AND ALL THE BURDENS

13     OF THAT, THESE ARE LEGAL QUESTIONS THAT WE BELIEVE ARE PROPERLY

14     DECIDED AT THIS STAGE OF THE PROCEEDING.

15             THE COURT:  UM-HUM.

16             MR. COLEMAN:  CAN I HAVE 30 SECONDS, YOUR HONOR?

17             THE COURT:  ONLY 30.

18             MR. COLEMAN:  THE DE LA CRUZ CASE SAYS THAT WARNING

19     LETTERS AND THE FDA INTERPRETATION OF THEIR RULES IS AN

20     OBJECTIVE CRITERIA AS TO HOW A CALIFORNIA COURT SHOULD

21     INTERPRET THE LAW IN THIS AREA OF THE REGULATIONS, SO IT IS

22     SOMETHING TO LOOK AT.

23         IF YOU ACCEPT THE DEFENDANTS' POSITION ON PREEMPTION, THE

24     SHERMAN LAW IS A NULLITY.

25             THE COURT:  UM-HUM.

 1          MR. COLEMAN:  AND THAT JUST CANNOT BE THE LAW THAT A

 2    STATE DOES NOT HAVE THE RIGHT TO PASS A LAW THAT IS IDENTICAL

 3    TO THE FEDERAL LAW, BUT HAS ITS OWN REMEDIES TO PROTECT ITS

 4    CITIZENS, AND THAT'S ALL WE'RE DOING.

 5       THANK YOU.

 6          THE COURT:  ALL RIGHT.  I APPRECIATE YOUR WILLINGNESS

 7    TO ENGAGE IN EARLY NEUTRAL EVALUATION 30 DAYS AFTER I RULE ON

 8    THE MOTION TO DISMISS, OR THE TWO MOTIONS TO DISMISS I SHOULD

 9    SAY.

10       DO YOU WANT TO USE THE COURT'S PROGRAM OR DID YOU SELECT A

11    SEPARATE NEUTRAL?

12          MR. COLEMAN:  YOUR HONOR, WE'RE OPEN TO WHATEVER THE

13    DEFENSE WOULD BE INTERESTED IN DOING.

14          MR. RABER:  I THINK, CANDIDLY, WE CHECKED THAT BOX

15    BECAUSE THAT SEEMED LIKE THE MOST APPROPRIATE ONE FOR THIS

16    CASE.

17          THE COURT:  OKAY.

18          MR. RABER:  WE'RE HAPPY TO USE THE COURT'S PROCESS.

19          THE COURT:  ALL RIGHT.  OKAY.

20          MR. GORE:  WE HAVEN'T DISCUSSED NEUTRALS, YOUR HONOR,

21    BUT I HAVE A LIST THAT I CAN GET TO MR. RABER NEXT WEEK AND I'M

22    SURE WE'LL AGREE ON SOMEONE.

23          THE COURT:  OKAY.  I THINK, IN DEFERENCE TO THE

24    SCHEDULE OF WHOEVER THE NEUTRAL IS, I PROBABLY CAN ONLY SET

25    THIS FOR 90 DAYS.  I MEAN, I'M HOPING CERTAINLY TO ISSUE AN

1        ORDER WELL BEFORE THEN.

2            BUT LET ME GO AHEAD AND REFER YOU THEN TO THE COURT'S

3        PROGRAM.

4            ARE YOU RECOMMENDING NEUTRALS FROM THE COURT'S PROGRAM OR

5        SOMETHING SEPARATE?

6                MR. GORE:  IT WOULD BE FROM THE COURT'S PROGRAM.

7                THE COURT:  OKAY.  ALL RIGHT.  SO I'M REFERRING YOU

8        TO THE COURT'S ENE -- PARDON ME -- WITH A DEADLINE OF

9        AUGUST 2ND.  OKAY?

10           I'M HOPING TO ISSUE AN OPINION ON THIS HOPEFULLY WITHIN

11       THE NEXT MONTH, IDEALLY A LITTLE SOONER, BUT I CAN'T PROMISE

12       ANYTHING.

13           I'M NOT GOING TO BIFURCATE DISCOVERY, BUT I AM SOMEWHAT

14       SYMPATHETIC TO HOLDING OFF ON DISCOVERY UNTIL THE PLAINTIFF'S

15       COMPLAINT SURVIVES A MOTION TO DISMISS.

16           AT THIS POINT I WOULDN'T AUTHORIZE EXCEEDING THE NUMBER OF

17       DEPOSITIONS AND INTERROGATORY LIMITATIONS IN THE FEDERAL RULES.

18           I'M JUST WONDERING IF WE SHOULD -- I KNOW THE DEFENDANTS

19       ARE ASKING THAT THERE BE NO LEAVE TO AMEND BECAUSE YOU ALREADY

20       FILED A MOTION AND THE COMPLAINT WAS ALREADY AMENDED ONCE, BUT

21       I THINK THAT WOULD BE OVERLY HARSH.

22               MR. RABER:  WELL, I GUESS OUR POINT IS, YOUR HONOR,

23       WE WENT THROUGH CLAIM BY CLAIM AND I THINK IF YOU LOOK AT IT,

24       THEY EITHER VIOLATE THE REGULATIONS OR THEY DON'T, AND I JUST

25       DON'T THINK IT CAN BE FIXED IN THE SAME WAY THAT PERHAPS A 9(B)

```
1     SHORTCOMING CAN BE.
2         AND, YOU KNOW, THERE ARE JUST LOTS OF GREAT EXAMPLES ABOUT,
3     YOU KNOW, THE USE OF ALKALIS, THAT CLAIM.  THAT'S ON THE LABEL.
4     THAT'S JUST A MISTAKE ON THEIR PART.
5         AND THE REGULATION SAYS, "IF YOU'RE GOING TO USE MILK
6     CHOCOLATE AND YOU'RE GOING TO HAVE OPTIONAL INGREDIENTS, HERE'S
7     HOW YOU HAVE TO DECLARE IT," AND THE LABEL DECLARES IT EXACTLY
8     THE WAY THE REGULATION SAYS, AND WE GO THROUGH THAT CLAIM BY
9     CLAIM AND THOSE JUST CAN'T BE -- THOSE CAN'T BE FIXED.
10        MR. COLEMAN:  YOUR HONOR, WE DISAGREE WITH THEIR
11    INTERPRETATION OF THAT PARTICULAR RULE.  WE THINK IT'S CLEAR
12    THAT THE RULE SAYS THAT ANY TIME YOU USE THE PHRASE "MILK
13    CHOCOLATE" -- AND THERE'S A SPECIFIC RULE ON THE DEFINITION OF
14    "MILK CHOCOLATE."
15        THE COURT:  UM-HUM.
16        MR. COLEMAN:  IF THERE ARE OTHER INGREDIENTS IN THAT
17    MILK CHOCOLATE THAT THEY ADD SO THAT THEY HAVE A CHEAPER
18    PROCESS OF PRODUCING CHOCOLATE, THEY HAVE TO PUT IT WHERE THEY
19    SAY MILK CHOCOLATE, MILK CHOCOLATE WITH THIS PARTICULAR
20    PROCESS.  THEY DIDN'T DO THAT.
21        SO IF WE'RE GOING TO GET BACK INTO ARGUING THE CASE -- BUT
22    IF WE HAVE FAILED, AND WE DON'T THINK WE HAVE, IN ANY REGARD ON
23    THE ISSUES, WE'D LIKE THE OPPORTUNITY TO CORRECT IT BECAUSE WE
24    THINK EVERY CLAIM WE'VE BROUGHT IS A GOOD CLAIM.
25        THE COURT:  UM-HUM.
```

```
1        MR. COLEMAN:  AND IF WE FAILED TO CITE A PARTICULAR

2   REG, THEN WE'D LIKE THE OPPORTUNITY TO DO THAT.

3        MR. RABER:  I GUESS IT BOILS DOWN TO WHAT DID THIS

4   PLAINTIFF KNOW BACK BEFORE JULY OF 2012, AND ARE THEY GOING TO

5   GO BACK AND SAY, "WELL, LET'S TALK AGAIN ABOUT WHAT YOU LOOKED

6   AT AND WHAT YOU RELIED ON," AND HERE WE ARE IN APRIL OF 2013

7   AND TO GO BACK AND RECONSTRUCT WHAT SHE SAW, WHAT SHE RELIED

8   ON, THAT JUST SEEMS LIKE A PRETTY HARD THING TO DO.  I WISH MY

9   MEMORY WERE SO GOOD.

10        THE COURT:  WELL, THIS IS WHAT I'M INCLINED TO DO AT

11   THIS POINT:  I PROBABLY WILL GIVE LEAVE TO AMEND.  THERE WOULD

12   CERTAINLY BE SOME, SOME THINGS THAT I'M -- SOME MOTIONS TO

13   DISMISS ARGUMENTS THAT I'M JUST GOING TO DENY, LIKE LACK OF

14   STANDING, SOME OF THE OTHERS.  YOU CAN LOOK AT MY BRAZIL V.

15   DOLE ORDER, BUT I LARGELY EXPECT IT TO BE, YOU KNOW, CONSISTENT

16   WITH THAT.

17     I AM LOOKING A LITTLE BIT CLOSER ON THE PREEMPTION ISSUES

18   IN LIGHT OF THE RECENT CASES THAT HAVE COME DOWN FROM THE NINTH

19   CIRCUIT.

20     BUT MOST LIKELY, EVEN IF A MOTION TO DISMISS IS GRANTED, I

21   WOULD PROBABLY GIVE LEAVE TO AMEND, JUST ONE LAST SHOT.

22     SO I WOULD LIKE, AT THIS POINT, TO SET A FURTHER CMC FOR

23   JULY 17TH.  AT THAT POINT YOU'LL HAVE MY ORDER AND WE CAN

24   FIGURE OUT HOW TO PROCEED FROM THERE.

25        BUT I THINK I AM SOMEWHAT SYMPATHETIC TO THE DEFENDANTS'
```

1    ARGUMENT OF LET'S GET A SURVIVING COMPLAINT ON FILE AND THEN WE

2    CAN START THE DISCOVERY WARS.

3        OKAY?  SO LET'S HAVE THE CMC ON JULY 17TH OF 2013 AT 2:00

4    O'CLOCK.  OKAY?  AND I HOPE TO ISSUE MY ORDER FAIRLY SOON.

5        OKAY?

6                MR. RABER:  THANK YOU, YOUR HONOR.

7                THE COURT:  ALL RIGHT.  THANK YOU ALL.

8                MR. GORE:  THANK YOU, YOUR HONOR.

9                MR. COLEMAN:  THANK YOU.

10                THE COURT:  THANK YOU ALL.  AND I'M SORRY THAT YOUR

11    HEARING DATE GOT CONTINUED.

12                MR. GORE:  QUITE ALL RIGHT.  THANK YOU.

13            (THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7         I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18        DATED:  JUNE 24, 2013

19

20

21

22

23

24

25