1

2

3

4

5

6

7

8

9

10

11

12

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHYLLIS GUSTAVSON, individually and on behalf of all others similarly situated,<br><br> Plaintiff,<br><br>       v.<br><br>WRIGLEY SALES COMPANY, WM. WRIGLEY JR. COMPANY, MARS, INC., and MARS CHOCOLATE NORTH AMERICA, LLC,<br><br> Defendants. | Case No.: 12-CV-01861-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

Plaintiff Phyllis Gustavson ("Gustavson") brings this putative class action against Defendants Wrigley Sales Company and Wm. Wrigley Jr. Company, Mars, Inc., and Mars Chocolate North America, LLC (collectively, "Defendants"), alleging that Defendants' package labeling is "misbranded" because it is unlawful and misleading under federal and state law. Defendants move to dismiss Gustavson's First Amended Complaint, ECF Nos. 27, 29; Gustavson opposes, ECF Nos. 39, 41, and Defendants replied, ECF No. 46. Having considered the submissions of the parties, the parties' oral arguments, and the relevant law, the Court hereby

1

GRANTS in part and DENIES in part Defendants' Motions to Dismiss the First Amended Complaint.

## I.     BACKGROUND

### A.     Factual Allegations

Defendants Wrigley Sales Company and Wm. Wrigley Jr. Company (collectively, "Wrigley"), are among the leading producers of gum, breath mints, and hard candies. First Am. Compl. ("FAC") ¶ 2. Mars Chocolate North America, LLC (with Mars, Inc., "Mars") is one of the leading producers of chocolate candy and other types of confectionary. *Id*. Mars, Inc. is the parent company of Mars Chocolate North America, LLC, Wrigley Sales Company, and Wm. Wrigley Jr. Company. *Id.* Defendants sell their products to consumers through grocery and other retail stores throughout California and promote their products throughout California through their websites. FAC ¶ 33.

Gustavson is a California consumer who "cares about the nutritional content of food and seeks to maintain a healthy diet." FAC ¶ 212. Over the past four years, she purchased more than $25.00 worth of Defendants' food products, which she contends are "[m]isbranded" in violation of federal and California law. FAC ¶¶ 25, 28. Specifically, Gustavson contends that she purchased the following food products: (1) Eclipse sugar free gum, Winterfrost, 18pcs; (2) Eclipse sugar free gum, Polar Ice, 12 pcs; (3) Altoid sugar free small mints, peppermint and wintergreen, 50 mint tins; (4) Orbit sugar free gum, peppermint and spearmint, 14 pcs; (5) Lifesavers sugar free hard candy, 5 flavors, 2.75 oz; (6) M&M chocolate candy, 1.69 oz.; (7) Twix chocolate candy, 1.79 oz.; (8) Dark Chocolate Dove Bar, 3.3 oz.; (9) Milk Chocolate Dove Bar, 3.3 oz.; and (10) Snickers Fun Size, 11.8 oz. FAC ¶ 213.

Gustavson alleges that she "read the labels on Defendants' products . . . before purchasing them." FAC ¶ 214. Gustavson further alleges that she relied on Defendants' package labeling, "based and justified the decision to purchase Defendants' products in substantial part on Defendants' package labeling," and "would have foregone purchasing Defendant's [*sic*] products and bought other products readily available at a lower price." FAC ¶ 215. Gustavson claims that she "did not know, and had no reason to know, that Defendants' products were misbranded" and

**United States District Court**
For the Northern District of California

1  states that she would not have purchased the products "had she known the truth about them." FAC

2  ¶ 216. Although the FAC largely fails to distinguish between the Mars and Wrigley Defendants—

3  despite the fact that the entities are legally distinct and do not appear to be involved in one

4  another's labeling decisions—the various allegedly deceptive statements identified in the FAC

5  appeared either only on Mars or only on Wrigley products. Specifically, the allegedly deceptive

6  statements appearing on Mars products include: (1) nutrient content claims regarding flavanols,

7  FAC ¶¶ 70-83; (2) calorie-related claims stating that a product contains a certain percentage of

8  one's daily value of calories, FAC ¶¶ 84-100; (3) failure to identify the ingredient "polyglycerol

9  polyricinoleic acid" ("PGPR") by its common name, FAC ¶¶ 138-155; and (4) failure to comply

10  with the standard of identity for milk chocolate, FAC ¶¶ 156-161. The allegedly deceptive

11  statements appearing on Wrigley products include: (1) "low calorie" claims, FAC ¶¶ 101-105; (2)

12  "sugar free" claims, FAC ¶¶ 106-128; and (3) "serving size" claims, FAC ¶¶ 129-137. Gustavson

13  separately alleges that both sets of Defendants make a series of unlawful "health" claims on their

14  websites. FAC ¶¶ 155-185.

### 1.      Claims Against Mars

#### a.      Flavanol Nutrient Content Claims

17  Gustavson first challenges Mars's use of statements such as "natural source of cocoa

18  flavanols," "flavanols [are] found in cocoa," and "[o]ur special patented and proprietary

19  COCOAPRO® process helps retain much of the naturally occurring cocoa flavanols," on the labels

20  of Mars chocolate products—specifically, Dove Dark Chocolate. FAC ¶¶ 72, 75, 77; Exs. L, O.

21  Gustavson alleges that these claims are "nutrient content claims," *i.e.*, claims about specific

22  nutrients contained in a product that, pursuant to Section 403 of the Food, Drug, and Cosmetic Act

23  ("FDCA"), 21 U.S.C. § 343(r), must be made in accordance with federal regulations. FAC ¶ 70

24  (citing 21 C.F.R. §§ 101.13, 101.54 (identifying the requirements for making lawful nutrient

25  content claims)); *see also* 21 U.S.C. § 343(r)(1)(A) (defining "nutrition levels and health-related

26  claims" as pertaining to "a food intended for human consumption which is offered for sale and for

27  which a claim is made in the label or labeling of the food which expressly or by implication . . .

28  characterizes the level of any nutrient").

According to the FAC, Mars's flavanol "source" claims are unlawful because under applicable federal regulations, a food may only be described as a "source" of a given nutrient if it contains at least 10% of the established daily value for that nutrient. FAC ¶ 72. Mars chocolate cannot possibly contain adequate flavanols to meet this requirement, Gustavson alleges, because the Food and Drug Administration ("FDA") has not established a daily value for flavanols. FAC ¶¶ 70-72, 77-78. Alternatively, the FAC alleges that Mars's flavanol source claims are unlawful because the term "source" is not specifically defined by FDA regulation and therefore may not be used in food labeling. FAC ¶¶ 70, 73.

### b.       Calorie-Related Nutrient Content Claims

Gustavson next alleges that Mars makes unlawful nutrient content claims regarding the calories in their chocolate products. Specifically, each chocolate product identified in the FAC states in a colored box appearing on the front of the package that the product contains a "certain percentage of the Daily Value ("DV") of calories." FAC ¶¶ 85, 89, 93. The FAC contends that these statements are false and unlawful, however, because "there is no DV for calories and food manufacturers are precluded from making such claims unless a DV actually exists." FAC ¶ 85. Gustavson additionally alleges that Mars's calorie-related claims are unlawful, because FDA regulations require that nutrient content claims made on products whose fat, saturated fat, cholesterol, or sodium contents exceed certain levels be accompanied by a statement disclosing that high levels of fat, saturated fat, cholesterol, and/or sodium are present in the food. FAC ¶ 88 (quoting 21 C.F.R. 101.13(h)(1)). Although Mars chocolate products allegedly contain levels of fat and/or saturated fat that are sufficient to trigger disclosure, none of the chocolate products mentioned in the FAC complies with the FDA's disclosure requirements. FAC ¶ 93; *see also* Exs. J-N (reproducing the product labels).

### c.       PGPR

Gustavson next objects to Mars's practice of identifying the ingredient "polyglycerol polyricinoleic acid" by the acronym "PGPR" on the ingredient list for Twix bars. FAC ¶ 148. According to the FAC, federal regulations require that ingredients be identified by their "common or usual name[s]," 21 C.F.R. § 101.4(a)(1), which the regulations state "shall accurately identify or

1   describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing

2   properties or ingredients," 21 C.F.R. § 102.5(a), and which "may be established by common usage

3   or by . . . regulation," 21 C.F.R. § 102.5(d). Gustavson alleges that PGPR is not the common or

4   usual name for polyglycerol polyricinoleic acid, and that its use on Twix labels is unlawful and

5   deceptive. *See* FAC ¶¶ 148, 150.

6   **d.     Milk Chocolate Standard of Identity**

7        Gustavson's final claim directed at Mars challenges its unqualified use of the term "milk

8   chocolate" on the front of its product labels for M&Ms, Twix, and Dove Milk Chocolate. FAC ¶¶

9   156-161. The FAC alleges that the FDA has established a "standard of identity" for milk chocolate

10  that requires food manufacturers to disclose the use of certain processing techniques or the

11  inclusion of certain ingredients when identifying their products as "milk chocolate." FAC ¶¶ 157,

12  159. According to Gustavson, Mars chocolate products are subject to these disclosure

13  requirements, because Dove Milk Chocolate is processed with alkali, while M&Ms, Twix, and

14  Dove Milk Chocolate all contain the artificial flavor vanillin. FAC ¶¶ 159-160 (citing 21 C.F.R.

15  § 163.130 (standard of identity for milk chocolate)). Gustavson further alleges that the standard of

16  identity requires these disclosures to appear on the front of the package, immediately preceding or

17  following the "milk chocolate" claim, and not just in the ingredient list on the back of the package.

18  FAC ¶ 159 (quoting 21 C.F.R. § 163.130(c)(5) ("Whenever the name of the food appears on the

19  label so conspicuously as to be easily seen under customary conditions of purchase, the statements

20  prescribed in this paragraph showing optional ingredients used shall precede or follow such name

21  without intervening printed or graphic matter.")). The FAC asserts that Mars fails to comply with

22  these regulations, as the front labels of Dove Milk Chocolate, M&Ms, and Twix products do not

23  contain any disclosures regarding either alkali or vanillin. FAC ¶ 160.

24  **2.     Claims Against Wrigley**

25  **a.     Low Calorie Claims**

26       Gustavson alleges that Wrigley falsely and unlawfully claims that its sugar free gums are

27  "low calorie." FAC ¶¶ 101-105. For instance, in a promotional publication entitled "Benefits of

28  Chewing," Wrigley purportedly states that its sugar free gums are "a very low-calorie option" and

5

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

that "the FDA has allowed the claim 'Low-calorie [sugar free chewing gum] may be useful in weight control.'" FAC ¶ 101. In addition, the "International Chewing Gum Association," an organization for which Defendants are "prominent members of the board of directors," has allegedly claimed that "chewing gum provides a low-calorie snack." FAC ¶ 102 (internal quotation marks omitted). Gustavson contends that the phrase "low calorie" is a nutrient content claim governed by 21 C.F.R. § 101.60(b)(2). FAC ¶ 108. Under Section 101.60(b)(2), a food may be labeled "low-calorie" only when that food contains 40 or fewer calories per 50-gram basis. FAC ¶¶ 108-109. According to Gustavson, Wrigley sugar free gums are ineligible for "low-calorie" labeling, because "they provide more than 40 calories per 50 gram basis. For example, Wrigley's Eclipse Winterfrost sugar free gum has 83 calories per 50 grams." FAC ¶ 102.

**b.      Sugar Free Nutrient Content Claims**

Gustavson also challenges claims made on labels, "websites[,] and advertising" that Wrigley hard candies, gum, and breath mints are "sugar free." FAC ¶¶ 109-119. Federal regulations enumerate specific requirements that must be met in order to label a food "sugar free." FAC ¶ 107. Specifically, a food may not be labeled "sugar free" unless: a) "[it] contain[s] less than 0.5 grams of sugars [as defined] per reference amount customarily consumed and per labeled serving," b) it "contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless" certain disclosures are made adjacent to the label ingredient statement, *and* c) one of the following is provided: (1) the food is labeled "low calorie" or "reduced calorie" in compliance with federal regulations, (2) the food "bears a relative claim of special dietary usefulness" in compliance with federal regulations, or (3) "[s]uch term is immediately accompanied . . . by either the statement 'not a reduced calorie food,' 'not a low calorie food,' or 'not for weight control.'" 21 C.F.R. § 101.60(c)(1).

Gustavson claims that Wrigley's products do not meet federal requirements for foods labeled as "sugar free," because: (1) as discussed *supra* Part I.A.2.a, Wrigley makes low calorie claims in its promotional materials that are erroneous because the products contain more than 40 calories per 50 grams, FAC ¶¶ 109-10, 113-14; (2) the labels "omit" a disclaimer that the products are not "low-calorie," "reduced calorie," or "not for weight control," FAC ¶ 115; and (3) any

"claim of special dietary usefulness" that is provided on the labels does not meet the requirements for "placement and conspicuousness" required by federal regulations but is instead "hidden" on the back of the label, FAC ¶¶ 110-11, 120 (quoting a 2007 FDA Guidance Letter to the food industry); *see also* 21 C.F.R. § 101.60(c)(1)(iii). Gustavson further claims that Wrigley fails to meet federal requirements for labeling a food "sugar free," because Wrigley's website lists "artificial sweeteners" including maltitol, sorbitol, and xylitol as "noncaloric," when all three are actually "nutritive, caloric sweeteners." FAC ¶ 112.

### c.    Serving Size Claims

Finally, Gustavson challenges the single mint (0.2 gram) serving size Wrigley uses for sugar free breath mints such as Altoids Smalls. FAC ¶¶ 129-30, 132. She claims that Wrigley's use of the 0.2 gram serving size violates the "legally mandated serving size" for breath mints by a magnitude of ten. FAC ¶¶ 129-32 ("21 C.F.R. § 101.9(b)(2) provides that serving size . . . shall be determined from the 'Reference Amounts Customarily Consumed Per Eating Occasion' . . . that appear in [21 C.F.R.] § 101.12(b). . . . 21 C.F.R. § 101.12 provides that the serving size for breath mints is 2 grams." (alteration in original)). Gustavson asserts that the FDA's serving size restrictions are necessary because, "'[i]n order for this nutrition information to be useful to consumers, it must be accurate and based on a meaningful amount of food.'" FAC ¶ 133 (quoting a March 2004 FDA Guidance Letter to the food industry).

The FAC contends that "Defendants ignored this FDA guidance and engaged in the exact unlawful serving size practices the FDA sought to eliminate" by failing to adopt the 2-gram breath mint serving size. FAC ¶¶ 132, 134. Because Defendants underrepresented the serving size by a magnitude of ten, they similarly understated calories per serving by a magnitude of ten; thus, when accurately reported, according to the FAC, the breath mints contain "calories at levels that require[] a disclaimer or disclosure." FAC ¶¶ 132, 137.

### B.    Putative Class Claims

Gustavson seeks to bring this putative class action, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), on behalf of the following proposed class:

7

> All persons in California who purchased either: (1) Wrigley "sugar free" gum, breath mints or hard candy products; or (2) a food product manufactured or distributed by Defendants that (a) bears a flavanol claim or a percentage daily value claim for carbohydrates on its label, or (b) lists PGPR as an ingredient, or (c) that purports to be but fails to adhere to the standard of identity for milk chocolate or sweet chocolate, or (d) a product with an unlawful serving size, in the last four years.

FAC ¶ 220.

Gustavson alleges that by manufacturing, advertising, distributing, and selling misbranded products, Defendants have violated California Health & Safety Code Sections 109885, 110390, 110395, 110398, 110660, 110665, 110670, 110705, 110725, 110740, 110760, 110765, and 110770. *See* FAC ¶¶ 187-198. In addition, Gustavson asserts that Defendants have violated the standards set by 21 C.F.R. §§ 101.2, 101. 3, 101.13, 101.4, 101.9, 101.12, 101.18, 101.22, 101.54, 101.60, 102.5, 105.66, 163.123, and 163.130, which have been adopted by reference into the Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code §§ 109875 *et seq. See* FAC ¶¶ 199-205. Consequently, Gustavson's First Amended Complaint alleges the following causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, for unlawful, unfair, and fraudulent business acts and practices (claims 1, 2, and 3); (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, for misleading, deceptive, and untrue advertising (claims 4 and 5); (3) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (claim 6); (4) restitution based on unjust enrichment/quasi-contract (claim 7); (5) violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* (claim 8); and (6) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (claim 9). *See* FAC ¶¶ 231-313.

## C.    Procedural History

Gustavson filed an Original Complaint against Wrigley on April 13, 2012. ECF No. 1. Wrigley filed a Motion to Dismiss on July 2, 2012. ECF No. 18. Rather than responding to Defendants' Motion to Dismiss, Gustavson filed the FAC on July 23, 2012. ECF No. 21. The FAC added claims against Mars Chocolate North America, LLC and Mars, Inc. *Id.*

On September 14, 2012, Wrigley filed a Motion to Dismiss the Amended Complaint for: (1) lack of subject matter jurisdiction; (2) failure to state a claim upon which relief may be granted,

8

1    pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (3) failure to plead claims

2    grounded in fraud with sufficient particularity, as required by Rule 9(b) of the Federal Rules of

3    Civil Procedure. ("Wrigley Mot.") ECF No. 27. Likewise, on September 14, 2012, Mars filed a

4    Motion to Dismiss the Amended Complaint on the same bases. ("Mars Mot.") ECF No. 29.

5    Wrigley and Mars accompanied their Motions to Dismiss with requests that the court take judicial

6    notice of certain documents. ECF Nos. 28, 30. On September 19, 2012, Wrigley filed a Notice of

7    Withdrawal of its initial Motion to Dismiss in light of the FAC. ECF No. 32.

8           On November 21, 2012, Gustavson filed an Opposition to Wrigley's Motion to Dismiss,

9    ("Wrigley Opp'n") ECF No. 39, as well as an Opposition to Mars's Motion to Dismiss, ("Mars

10   Opp'n") ECF No. 41. Gustavson also filed a request for judicial notice along with her Oppositions.

11   ECF No. 40.[1] All Defendants then filed a joint Reply on December 21, 2012. ("Reply") ECF No.

12

13   [1] While a district court generally may not consider any material beyond the pleadings in ruling on a
     Rule 12(b)(6) motion, a court may take judicial notice of documents referenced in the complaint, as

14   well as matters in the public record, without converting a motion to dismiss into one for summary
     judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). A matter may be judicially

15   noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "can
     be accurately and readily determined from sources whose accuracy cannot reasonably be

16   questioned." Fed. R. Evid. 201(b). In addition, under the "incorporation by reference" doctrine, a
     district court may consider "documents whose contents are alleged in a complaint and whose

17   authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."
     *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (internal quotation

18   marks omitted). The Court finds Exhibits A, B, C, D, E, F, and G (attached to Wrigley Mot.), as
     well as Exhibits J, K, L, M, and N (attached to Mars Mot.) to be appropriate for judicial notice, as

19   they are packaging labels for twelve Wrigley or Mars products that the FAC specifically references
     and quotes. In addition, the Court takes judicial notice of Exhibits O, P, Q, and R (attached to Mars

20   Mot.), which are screenshots taken from the website www.cocoavia.com, and which are referenced
     in the FAC. *See* FAC ¶ 164.

21          The remaining documents for which the parties request judicial notice include a 2009 FDA
     Guidance Document regarding food labeling available on the FDA's website (Ex. I, attached to

22   Wrigley Mot.); an FDA response letter also available on the FDA's website (Ex. S, attached to

23   Mars Mot.); an amicus brief filed by the Solicitor General's Office in opposition to a petition for a
     writ of certiorari in *Albertson's, Inc. v. Kanter*, 129 S. Ct. 896 (2009) (Ex. 1, attached to

24   Gustavson's Motion); and a table listing the names and citations of a number of other food
     "misbranding" cases filed recently within this District (Ex. H, attached to Wrigley Mot.). The

25   Court may take judicial notice of materials available on government agency websites, *see, e.g.*,
     *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-1166, 2009 WL 6597891, at 2 (S.D.

26   Cal. Dec. 23, 2009), as well as of proceedings in other courts, *see, e.g.*, *Bias v. Moynihan*, 508 F.3d

27   1212, 1225 (9th Cir. 2007). Accordingly, the Court takes judicial notice of these additional
     exhibits, and the parties' requests for judicial notice are GRANTED in full.

28

9

46. The Court held a hearing on May 2, 2013. ECF No. 60. Post-briefing, Gustavson filed six notices of new case law relevant to these Motions, ECF Nos. 47, 51, 57-59, 67; Defendants filed three similar notices, ECF Nos. 52, 53, 66.

## II.       LEGAL STANDARDS

### A.       Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction will be granted if the Complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B.       Rule 8(a)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**United States District Court**
For the Northern District of California

10

1    (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court

2    "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light

3    most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

4    1025, 1031 (9th Cir. 2008).

5      However, a court need not accept as true allegations contradicted by judicially noticeable

6    facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look

7    beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

8    motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

9    Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in

10   the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

11   curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory

12   allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

13   *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

14   Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that

15   [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

16   1997) (internal quotation marks and citation omitted).

17     **C.**  **Rule 9(b)**

18     Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

19   Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with

20   particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor

21   Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule's 9(b)'s heightened standard, the

22   allegations must be "specific enough to give defendants notice of the particular misconduct which

23   is alleged to constitute the fraud charged so that they can defend against the charge and not just

24   deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

25   1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific

26   content of the false representations as well as the identities of the parties to the misrepresentations."

27   *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks

28   omitted). The plaintiff must set forth what is false or misleading about a statement, and why it is

United States District Court
For the Northern District of California

11

false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

### D.   Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.   DISCUSSION

Defendants seek to dismiss Gustavson's FAC for four reasons: (1) Gustavson's claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"); (2) Gustavson lacks standing to pursue her claims; (3) Gustavson's claims are neither plausible nor sufficiently particular; and (4) several of Gustavon's claims state a viable cause of action for various, claim-specific reasons. *See* Mars Mot. at i-ii; Wrigley Mot. at i-ii. For the reasons stated herein, the Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss the FAC.

### A.   Preemption

Defendants contend that all of Gustavson's claims are impliedly preempted because there is no private right of action to enforce regulations promulgated by the FDA. *See* Mars Mot. at 13. In addition, Defendants argue that the Sherman Law, Cal. Health & Safety Code §§ 109875 *et seq.*, cannot be used to enforce FDA regulations, *see id.* at 13-17, and that Gustavson's attempts to impose requirements "not identical" to FDA regulations are expressly preempted, *see id.* at 18-23; Wrigley Mot. at 12-18. Even if the Court does not find that Gustavson's claims are preempted,

Defendants urge the Court to dismiss the case under the doctrine of primary jurisdiction. *See* Wrigley Mot. at 19-21.

The Court concludes that the FDA regulations do not impliedly preempt Gustavson's state-law claims brought pursuant to the Sherman Law. However, the Court further finds that Gustavson's claims concerning: (1) calorie-related statements on chocolate; (2) the standard of identity for milk chocolate; and (3) low calorie statements about sugar free gum are expressly preempted, as they seek to impose labeling requirements that either add to or deviate from existing FDA regulations. Finally, the Court finds that Gustavson's breath mint serving size claim is appropriately dismissed under the doctrine of primary jurisdiction, but declines to dismiss her remaining claims on this ground.

### 1.     Federal and Statutory Framework

The FDCA, codified at 21 U.S.C. §§ 301 *et. seq.*, "gives the FDA the responsibility to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled.'" *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009) (citing 21 C.F.R. § 393(b)(2)(A)). Section 331 expressly prohibits the misbranding of food in interstate commerce, *see* 21 U.S.C. § 331 (a)-(c), (k), and Section 343 sets forth conditions under which food is considered "misbranded," *see* 21 U.S.C. § 343. In general, a food is "misbranded" if its labeling is "false or misleading in any particular." 21 U.S.C. § 343(a)(1).

In 1990, Congress amended the FDCA in the Nutrition Labeling and Education Act of 1990 ("NLEA"), which imposed additional food labeling requirements. Pub. L. No. 101-535, 104 Stat. 2353 (1990); *see also* H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 (stating that the purpose behind the NLEA was "to clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods.").

In addition, through the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that, "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall be the food labeling regulations of this state." Cal. Health & Safety Code § 110100. California has also enacted a number of laws and

United States District Court
For the Northern District of California

regulations that adopt and incorporate specific enumerated federal food laws and regulations. *See, e.g.*, Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."); Cal. Health & Safety Code § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in . . . 21 U.S.C. § 343(q)").

All of the alleged misbranding violations at issue in this case are covered by FDA regulations and policies, including regulations for "nutrient content" claims, 21 C.F.R. § 101.13; "sugar free" claims, 21 C.F.R. § 101.60(c); "serving size" claims, 21 C.F.R. § 101.12(b); "common name" claims, 21 C.F.R. §§ 101.4(a)(1), 102.5; and the standard of identity for milk chocolate, 21 C.F.R. § 163.130.

### 2.    Preemption and Private Rights of Action

Defendants allege that all of Gustavson's claims are preempted because the FDCA bars private enforcement of its provisions. *See* Mars Mot. at 13. The FDCA provides that, in general, "proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the *United States*." 21 U.S.C. § 337(a) (emphasis added).[2] Therefore, there is no federal private right of action to enforce the FDCA. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) (noting, in the context of the medical device provisions of the FDCA that, due to 21 U.S.C. § 337(a), "[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the [FDCA]").

Gustavson does not dispute that private litigants are expressly prohibited from suing to enforce compliance with the FDCA and its accompanying regulations. However, Gustavson contends that she is not attempting to enforce the FDCA but rather to enforce California's legal requirements, pursuant to the Sherman Law, which are identical to FDA regulations. *See* Mars Opp'n at 11. Defendants counter that this distinction is immaterial, arguing that the FDCA equally bars efforts to enforce the FDCA "indirectly" through state law. Mars Mot. at 13.

---

[2] The NLEA preemption provision also permits a state to bring proceedings, "in its own name and within its jurisdiction," to enforce certain food-labeling provisions of the FDCA if the State complies with specified procedural requirements. 21 U.S.C. § 337(b).

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1     When analyzing the scope of a preemption statute, a court's analysis must "start with the

2 assumption that the historic police powers of the States [are] not to be superseded by the Federal

3 Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S.

4 470, 485 (1996) (internal quotation marks omitted). This approach "is consistent with both

5 federalism concerns and the historic primacy of state regulation of matters of health and safety." *Id.*

6 Therefore, "[p]arties seeking to invalidate a state law based on preemption 'bear the considerable

7 burden of overcoming 'th[is] starting presumption that Congress does not intend to supplant state

8 law.'" *Stengel v. Medtronic*, 704 F.3d 1224, 1227-28 (9th Cir. 2013) (en banc) (quoting *De Buono*

9 *v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)).

10     The presumption against preemption in this case is a strong one. The regulation of health

11 and safety, including laws regulating the proper marketing of food, are traditionally within states'

12 historic police powers. *See Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963)

13 ("States have always possessed a legitimate interest in 'the protection of (their) people against

14 fraud and deception in the sale of food products' at retail markets within their borders.") (citing

15 *Plumley v. Massachusetts*, 155. U.S. 461, 472 (1894), which similarly states, "If there be any

16 subject over which it would seem the states ought to have plenary control, and the power to

17 legislate in respect to which . . . it is the protection of the people against fraud and deception in the

18 sale of food products.").

19     This presumption notwithstanding, Defendants press ahead with their preemption argument.

20 For support, they rely on the Ninth Circuit's decision in *Pom Wonderful LLC v. Coca-Cola*

21 *Company*, 679 F.3d 1170 (9th Cir. 2012). Mars Mot. at 14. In *Pom Wonderful*, the manufacturer of

22 a pomegranate juice beverage sued Coca-Cola under the federal Lanham Act, alleging that Coca-

23 Cola's competing product, "Pomegranate Blueberry," was false both in name and label because it

24 consisted of 99.4% apple and grape juice. *Id.* at 1174. As in this case, the *Pom Wonderful* plaintiff

25 also brought state-law claims under the Sherman Law, the UCL, and the FAL, alleging that those

26 state laws incorporate FDA labeling standards and prohibitions. *Id.* The *Pom Wonderful* Court

27 ultimately held that, based on the "particular circumstances of th[e] case," "the FDCA and its

28

regulations bar pursuit of both the name and labeling aspects of [plaintiff's] Lanham Act claim." *Id.* at 1176 (citing with approval *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 922 (9th Cir. 2010)).

As this Court discussed in *Brazil v. Dole Food Co.*, --- F.Supp.2d ----, 2013 WL 1209955 (N.D. Cal. Mar. 25, 2013), the Court is "not persuaded that *Pom Wonderful* stands for the sweeping proposition Defendants set forth." *Id.* at *7; *see also Bruton v. Gerber Prods. Co.*, No. 12-2412, 2013 WL 4833413, at *8-11 (N.D. Cal. Sept. 6, 2013) (rejecting a near-identical implied preemption argument in mislabeling case against a different food company). Significantly, the Court in *Pom Wonderful* limited its ruling to the federal Lanham Act and explicitly declined to address whether plaintiff's state-law claims were also preempted. *See Pom Wonderful LLC*, 679 F.3d at 1179 (vacating the summary judgment to the extent it ruled that plaintiff lacked statutory standing on its UCL and FAL claims and "remand[ing] so that the district court can rule on the state claims"). As a result, the Ninth Circuit did not specifically address the impact of the FDCA on states' historic power to protect their people against fraud and deception in the sale of food products. Nor did it grapple with the presumption that Congress did not intend to supplant state law. *Cf. Stengel*, 704 F.3d at 1227-28. Thus, the Court finds that *Pom Wonderful* is distinguishable from this case. *Accord Delacruz v. Cytosport, Inc.*, No. 11-3532, 2012 WL 2563857, at *7 n. 3 (N.D. Cal. June 28, 2012) ("The Ninth Circuit's preemption ruling [in *Pom Wonderful*] was limited to a finding that the FDCA preempted Pom's claims under the Lanham Act."); *cf. Ivie v. Kraft Foods Global, Inc. (Ivie I)*, No. 12-2554, 2013 WL 685372, at *6-7 (N.D. Cal. Feb. 25, 2013) (construing *Pom Wonderful* as "dismiss[ing] federal Lanham act claims implicitly on the basis of primary jurisdiction with the FDA," and subsequently finding that "where FDA policy is clearly established with respect to what constitutes an unlawful or misleading label, the primary jurisdiction doctrine is inapplicable because there is little risk that the courts will undermine the FDA's expertise.").

Defendants also rely on *Buckman*, 531 U.S. 341, in which the Supreme Court held that a state-law tort claim for injuries allegedly caused (in the "but for" sense) by Defendant's fraudulent representations to the FDA in the course of obtaining regulatory approval for its orthopedic bone screws was impliedly preempted by the FDCA, as amended by the Medical Device Amendments

16

United States District Court
For the Northern District of California

of 1976 ("MDA"), 21 U.S.C. § 360c, *et seq. See id.* at 344, 348. As with *Pom Wonderful*, however, *Buckman* is distinguishable from the present case, and the Court is not persuaded that its logic can be stretched to dismiss Gustavson's claims under the doctrine of implied preemption.

Initially, it bears emphasizing that *Buckman*, is factually distinguishable from this case, because it arose in the context of "Class III medical devices." *See id.* at 344. As the Supreme Court explained, medical devices are regulated under the MDA, which divides devices into three categories. *Id.* Class III devices are subject to the FDA's strictest regulation because they "presen[t] a potential unreasonable risk of illness or injury." *Id.* (internal quotation marks omitted). Consequently, before a Class III device comes to market, its manufacturer must complete a "thorough" review process with the FDA. *Id.* The parties here do not assert that the dangers arising out of food mislabeling are even remotely equivalent to the "unreasonable risk of illness or injury" presented by Class III medical devices, nor do they allege that food labeling is subjected to a comparably rigorous review process that requires premarket approval. *Cf. id.* at 344-45 (noting that "[t]he PMA process is ordinarily quite time consuming because the FDA's review requires an average of 1,200 hours [for] each submission") (internal quotation marks omitted). Thus, while the Court finds that the broad principles regarding preemption espoused in *Buckman* are relevant to the Court's analysis here, the Court bears in mind the distinct factual scenarios in which the two cases arose.

Next, in the context of food labeling—an area traditionally within the purview of the states' police powers, *see, e.g.*, *Florida Lime & Avocado Growers*, 373 U.S. 132 at 144—the Court finds it significant that Congress has not set forth a "clear and manifest" statement that it intended state food labeling claims to be subject to implied preemption. *See Chae v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010) ("We must be cautious about conflict preemption where a federal statute is urged to conflict with state law regulations within the traditional scope of the state's police powers. When we deal with an area in which states have traditionally acted, the Supreme Court has told us to start with the assumption that a state's historic police powers will not be superseded absent a 'clear and manifest purpose of Congress.'" (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009))). Indeed, the NLEA explicitly states that the Act "shall *not* be construed to preempt any provision of

17

State law, unless such provision is *expressly* preempted under [21 U.S.C. § 343-1]." NLEA

§ 6(c)(1) (emphasis added); *see also Wyeth* , 555 U.S. at 575 ("The case for federal pre-emption is

particularly weak where Congress has indicated its awareness of the operation of state law in a

field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate

whatever tension there [is] between them." (alteration in original) (internal quotation marks

omitted)). By contrast, in *Buckman*, the presumption against preemption was not in play: the Court

specifically noted that Plaintiffs' "fraud-on-the-FDA" claim did *not* implicate "a field which the

States have traditionally occupied . . . such as to warrant a presumption against finding federal pre-

emption of a state-law cause of action." 531 U.S. at 347 (internal quotation marks and citation

omitted).

Finally, to the extent that the Ninth Circuit's recent decisions in *Perez v. Nidek Co.*, 711

F.3d 1109 (9th Cir. 2013), and *Stengel v. Medtronic Inc.*, 704 F.3d 1224 (9th Cir. 2013) (en banc),

establish a "narrow gap" through which Plaintiff's claims must fit in order to escape preemption,

*see Perez*, 711 F.3d at 1120 (quoting *In re Medtronic Inc., Sprint Fidelis Leads Products Liability

Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)), Gustavson's claims that seek to impose labeling

requirements identical to current FDA regulations succeed in squeezing through that gap. With

regard to these claims, Gustavson is suing for conduct that violates the FDCA, so her claims are

not expressly preempted. But Gustavson is not suing *because* Defendants' conduct violates the

FDCA; rather, she is suing because Defendants' conduct allegedly violates California's Sherman

Law, which could have imposed the exact same regulations even if the FDCA was never passed.[3]

---

[3] This fact distinguishes this case from *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576 (6th Cir. Feb. 22, 2013) (unpublished), a case involving the alleged mislabeling of products with Vitamin C upon which Defendants also rely. In *Loreto*, the Sixth Circuit held that a claim brought under the New Jersey Consumer Fraud Act was impliedly preempted by federal law. As there was no mention of any New Jersey counterpart to the Sherman Law adopting the federal regulations as state law, "the *only* reason [defendant's] products were allegedly 'illegal' was because they failed to comply with FDCA labeling requirements." *Id.* at 579. In contrast, Gustavson alleges that the products at issue in this case are illegal because they fail to comply with various provisions of the Sherman Law.

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

The Court is not persuaded that Defendants have overcome the presumption against preemption. *See Lohr*, 518 U.S. at 485; *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 373 (N.D. Cal. 2010) ("In view of the Supreme Court's determination in *Wyeth* that Congress did not intend FDA oversight to be [the] exclusive means of ensuring drug safety and effectiveness, and in the absence of authority to the contrary in the food labeling regulatory scheme, defendants have not persuaded the court that plaintiff's state-law claims obstruct federal regulation of food labeling."); *see also Samet v. Proctor & Gamble Co.*, No. 12-1891, 2013 WL 3124647, at *6-7 (N.D. Cal. June 18, 2013) (rejecting a very similar implied preemption argument against a different food company). Accordingly, the Court DENIES Defendants' Motions to Dismiss the FAC on the basis of implied preemption as to Gustavson's claims that seek to impose labeling requirements identical to current FDA regulations. However, as will be discussed below, *see infra* Part III.A.3, the Court finds that Gustavson's claims that attempt to impose requirements that are not identical to FDA regulations— calorie-related claims on chocolate, the standard of identity for milk chocolate, and low calorie claims on sugar free gum—are expressly preempted and are dismissed for that reason.

### 3.     Preemption Based on Claims that are "Not Identical" to Federal Requirements

Defendants next contend that Gustavson is attempting to impose requirements that differ from or are in addition to FDA regulations, and thus that her claims are subject to express preemption. Mars Mot. at 18-23; Wrigley Mot. at 12-18. Pursuant to 21 U.S.C § 343-1(a), "no state . . . may directly or indirectly establish . . . any requirement . . . made in the . . . labeling of food that is not identical to" certain FDA requirements, such as 21 U.S.C. § 343(q), which applies to nutrition information, and 21 U.S.C. § 343(r), which applies to "Nutrition levels and health-related claims." Per FDA regulations, "'[n]ot identical to' . . . means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) [a]re not imposed by or contained in the applicable provision . . . or (ii) [d]iffer from those specifically imposed by or contained in the applicable provision." 21 C.F.R. § 100.1(c)(4). Gustavson responds that she seeks only to enforce labeling

19

requirements identical to those imposed by the FDA. Mars Opp'n at 15; Wrigley Opp'n at 19. The Court discusses whether each of Gustavson's specific claims is subject to express preemption below.

### a.      Claims Against Mars

### i.      Flavanol Nutrient Content Claims

As explained in Part I.A.1.a, Gustavson contends that Mars's statements concerning the presence of flavanols in certain Mars chocolate products violate FDA regulations governing when a food may be described as a source of a given nutrient. *See* FAC ¶¶ 70-83 (citing 21 C.F.R. 101.54(c)(1) ("(1) The terms 'good source,' 'contains,' or 'provides' may be used on the label and in the labeling of foods . . . *provided* that the food contains 10 to 19 percent of the RDI or the DRV per reference amount customarily consumed.") (emphasis added)). Although none of Mars's statements use the exact terms "good source," "contains," or "provides," Gustavson argues that the terms "natural source" and "found" are synonymous with these FDA-defined terms, and that to the extent they are not, they may not appear on food labels. FAC ¶¶ 72, 75.

Mars asserts that Gustavson's flavanol claims are expressly preempted, because its statements concerning flavanols are not "nutrient content claims" subject to FDA regulation. Mars Mot. at 18-19. Because flavanol claims are not subject to FDA regulation, Mars contends, any finding that Mars chocolate is misbranded based on statements regarding flavanols would impose a requirement not found in federal law and would thus fall afoul of the NLEA's express preemption provision. *See id.* at 18.

In support of its argument, Mars reasons that the FDA defines "nutrient content claims" as "claim[s] that expressly or implicitly characterize[] the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36[,] 21 C.F.R. § 101.13(b)," but that neither Section 101.9 nor Section 101.36 lists flavanols as one of the nutrients required to be in nutrition labeling. Mars Mot. at 19. Mars further argues that its statements concerning flavanols "do not 'expressly or implicitly characterize[] the level' of flavanols" in Mars chocolate, because the claims do not involve "any 'direct statement about the level (or range)' of flavanols in the product;" do not describe "'the food or an ingredient therein in a manner that suggests that a

20

**United States District Court**
For the Northern District of California

1    nutrient is absent or present in a certain amount;'" and do not suggest that "'the food, because of its

2    nutrient content, may be useful in maintaining healthy dietary practices.'" *Id.* (alteration in

3    original) (quoting 21 C.F.R. § 101.13(b)(2)).

4           Gustavson responds by citing various FDA Warning Letters, in which the FDA has

5    expressed its views on the use of the terms "source," and "flavonoid antioxidants." *See* Mars Opp'n

6    at 17-18. Specifically, in a March 24, 2011 Warning Letter sent to a producer of sprouts, the FDA

7    took the position that the term "source" is a nutrient content claim that characterizes the level of a

8    nutrient in a food. *See* FAC ¶ 73 (quoting the Warning Letter's statement: "Your Organic Clover

9    Sprouts products label bears the claim 'Phytoestrogen Source[.]' . . . These claims are nutrient

10   content claims subject to [21 U.S.C. § 343(r)(1)(A)] because they characterize the level of nutrients

11   of a type required to be in nutrition labeling . . . by use of the term 'source.'"); *see also* Mars Opp'n

12   Ex. 2 at 10 (reproducing the Warning Letter). In another Warning Letter, this one dated August 23,

13   2010, the FDA admonished Unilever for using the term "flavonoid antioxidants" (which describes

14   a category of antioxidants of which flavanols are a subset) on its Lipton iced tea products, "because

15   no RDI has been established for flavonoids." *See* Mars Opp'n Ex. 2 at 1-3 (reproducing the

16   Warning Letter); *see also* Mars Opp'n at 18-19. In the Letter, the FDA warned that, by using the

17   term "flavonoid antioxdiants," Unilever was violating 21 C.F.R. § 101.54(g)(1). *See* Mars Opp'n

18   Ex. 2 at 3.

19          The Court finds that Gustavson has alleged sufficient facts to show, for purposes of a

20   motion to dismiss, that Mars's flavanol claims are subject to FDA regulation and that the flavanol

21   claims may plausibly violate those regulations. Mars concedes that flavanols are a type of

22   antioxidant, and claims regarding antioxidants are regulated by 21 C.F.R. § 101.54(g) ("A nutrient

23   content claim that characterizes the level of antioxidant nutrients present in a food may be used on

24   the label or in the labeling of that food when" certain requirements are met). Although Mars's

25   labels do not specifically use the term "antioxidant" in connection with the flavanol claims, Mars

26   identifies no authority to establish that Section 101.54(g) ceases to govern merely because a food

27   product's label refers to the antioxidant by its precise name, rather than by a generic umbrella term.

28   Accordingly, the Court is unable to conclude at this time that Section 101.54(g) does not apply. In

21

**United States District Court**
For the Northern District of California

1   addition, despite Mars's assertion that the terms "source" and "found" do not characterize the level

2   of flavanols present in their chocolate, the only relevant authority presented at this stage indicates

3   that the FDA disagrees with Mars's position. *See* Mars Opp'n Ex. 2 at 10 ("These claims are

4   nutrient content claims subject to [21 U.S.C. § 343(r)(1)(A)] because they characterize the level of

5   nutrients of a type required to be in nutrition labeling . . . by use of the term 'source.'"). While

6   Mars disputes whether the March 24, 2011 Warning Letter is a binding statement of the FDA's

7   position on the term "source," Mars Mot. at 20, it has not identified any other FDA statements that

8   contradict this letter. Because the Court is not currently persuaded that Gustavson seeks to impose

9   labeling requirements that are not identical to those required by federal regulation, it declines to

10   find that the flavanol claims are expressly preempted.

11               **ii.**        **Calorie-Related Nutrient Content Claims**

12         As discussed in Part I.A.1.b, Gustavson alleges that Mars makes false and unlawful calorie-

13   related nutrient content claims on the front labels of its chocolate products. Gustavson claims that

14   by stating the number of calories in the package and listing the percentage by which that number of

15   calories contributes to a 2000-calorie-per-day diet, Mars falsely suggests that 2000 calories is the

16   appropriate number of calories for individual consumers. FAC ¶ 85. Gustavson further contends

17   that Mars unlawfully fails to accompany its calorie claims with a disclosure that its products

18   contain high levels of fat and/or saturated fat, in violation of 21 C.F.R. § 101.13(h)(1), FAC ¶ 89.

19         Mars argues that Gustavson's calorie-related claims are expressly preempted, because the

20   front-of-package calorie labels comply with the FDA's regulations. Mars Mot. at 20-21.

21   Specifically, Mars observes that 21 C.F.R. § 101.13(i)(3) expressly provides that "the label or

22   labeling of a product may contain a statement about the amount *or percentage* of a nutrient if . . .

23   [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and

24   [] is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat')." *Id.* Mars

25   argues that this section permits its calorie claims, because the claims do not implicitly characterize

26   the *level* of calories in the products (in that they do not imply, for instance, that the products are

27   low calorie). *Id.* at 21. It further argues that listing a percentage DV based on a 2,000 calorie diet

28   could not possibly be false or misleading within the meaning of the FDA's regulations, because the

22

1   FDA *itself* uses a 2,000 calorie day baseline to calculate nutrient DVs. *Id.*; *see also, e.g.*, 21 C.F.R.

2   § 101.9(c)(9) (requiring that labeling containing nutrient percentages be based on a 2,000 calorie

3   diet); 101.9(d)(9) (same). Mars also asserts that it is not required to accompany its calorie claims

4   with disclosure statements concerning fat and/or saturated fat, since Section 101.13(i)(3) contains

5   no such requirement. Mars Mot. at 21.

6        Gustavson does not directly respond to Mars's arguments regarding 21 C.F.R.

7   § 101.13(i)(3). Instead, Gustavson points to FDA guidance stating that the "'FDA views the

8   Nutrition Keys Basic Icons . . . and Optional Icons as nutrient claims subject to all the requirements

9   of the FDCA and the Agency's regulations.'" Mars Opp'n at 22 (quoting December 13, 2011 FDA

10  Warning Letter, Mars Opp'n Ex. 3). The implication seems to be that Gustavson believes that

11  Mars's front-of-package calorie claims are examples of the "Icons" to which this FDA guidance

12  refers, but the FAC makes no mention of these Icons, and Gustavson's briefing is sufficiently

13  vague that the Court is unable to discern what "Nutrition Keys Basic Icons" or "Optional Icons"

14  even are, let alone whether Mars's calorie claims qualify as Icons. Given that these "Icon"

15  allegations do not appear in the FAC, the Court will not consider Gustavson's arguments regarding

16  them. *See, e.g.*, *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (in evaluating a motion

17  to dismiss, "a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a

18  memorandum in opposition to a motion to dismiss").

19        Gustavson offers no other persuasive arguments to contradict Mars's interpretation of the

20  FDA's regulations governing their calorie claims. Neither does the Court perceive any. Because

21  Mars's calorie-related claims appear to comply with all applicable federal regulations, any finding

22  that these claims are unlawful and deceptive would impose requirements not identical to the FDA's

23  regulations. Accordingly, the Court GRANTS Mars's Motion to Dismiss the calorie-related claims

24  involving Mars chocolate products on the basis of express preemption. However, because the

25  "Icon" arguments alluded to in Gustavson's opposition suggest that amendment of these claims

26  may not be futile, this dismissal is without prejudice. *See id.* ("Facts raised for the first time in

27  plaintiff's opposition papers *should* be considered by the court in determining whether to grant

28  leave to amend or to dismiss the complaint with or without prejudice." (emphasis added)).

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### iii.     PGPR

As described in Part I.A.1.c, Gustavson alleges that Mars's use of the acronym "PGPR" to identify polyglycerol poyricinoleic acid is unlawful and deceptive because PGPR is not the ingredient's common or usual name. FAC ¶ 148. Mars argues that this claim is expressly preempted because nothing in the FDCA or its accompanying regulations establishes the polyglyccerol polyricinoleic acid must be referred to by its long-form name. Mars Mot. at 21-22. Mars points to a June 15, 2009 FDA Response Letter that refers to polyglycerol polyricinoleic acid by both its acronym and its long-form name as evidence that the FDA does not view the acronym as problematic. *Id.* (citing Ex. S).

At this stage, the Court is not persuaded that the FDA regulations permit the use of the acronym PGPR to describe polyglycerol polyricinoleic acid. Mars does not identify any regulation or other specific FDA guidance governing the term PGPR. The FDA letter cited in Mars's Motion to Dismiss does not purport to address whether PGPR may appear on an ingredient list in lieu of polyglycerol polyricinoleic acid, and it therefore sheds no light on the FDA's views on the matter. Absent on-point authority concerning the term PGPR, the Court cannot determine that Gustavson's PGPR claim is expressly preempted.

### iv.     Milk Chocolate Standard of Identity

In Part I.A.1.d, the Court explained that Gustavson also alleges that Mars violates the FDA's standard of identity for milk chocolate by failing to disclose that its milk chocolate is processed with alkali and/or contains vanillin on the front label of its Dove Milk Chocolate, M&M, and Twix products. FAC ¶¶ 156-61 (citing 21 C.F.R. § 163.130). Mars argues that this claim is expressly preempted, because 21 C.F.R. § 130.11, which governs "[l]abel designations of ingredients for standardized foods" generally, expressly provides:

> Some definitions and standards of identity for foods . . . require that designated optional ingredients such as spices, flavorings, colorings, emulsifiers, flavor enhancers, stabilizers, preservatives, and sweeteners be declared in a specified manner on the label wherever the name of the standardized food appears on the label so conspicuously as to be easily seen under customary conditions of purchase. Such requirements shall apply to a manufacturer, packer, or distributor of a standardized food *only if* the words or statements on the label of the standardized food significantly differentiate between two or more foods that comply with the same

24

standard by describing the optional forms or varieties, the packing medium, or significant characterizing ingredients present in the food.

(Emphasis added); *see also* Reply at 27. Mars argues that this general provision overrides Section 160.130's specific requirements, as least where, as here, Mars is not making any statements to differentiate its milk chocolate from other products bearing the standardized milk chocolate label. Reply at 27-28. Mars points out that Section 130.11 was added in 1993 precisely because the NLEA added a requirement that "all ingredients of standardized foods be declared in the ingredient list," and that, in light of this new requirement, "the declaration of certain optional ingredients in conjunction with the name would be duplicative and unnecessary." 58 Fed. Reg. 2850-01, 2851 (Jan. 6, 1993); *see also* Reply at 27-28. Because Section 130.11 permits Mars to use the term "milk chocolate" on the front of its packages without including disclaimers involving alkali, vanillin, or other optional ingredients, Mars contends that Gustavson's claim that the failure to include such disclaimers seeks to impose a requirement that deviates from federal law. Mars. Mot. at 28.

The FAC makes no reference to Section 130.11, and Gustavson offers no explanation as to how her standard of identity claim is consistent with federal law. The Court agrees with Mars's reading of the FDA's regulations, and accordingly GRANTS the Motion to Dismiss this claim on express preemption grounds.

### b.    Claims Against Wrigley

### i.    Low Calorie Nutrient Claims

As discussed in Part I.A.2.a, Gustavson challenges Wrigley's claim that its sugar free gums are "low calorie" on the ground that "low calorie" claims are subject to federal regulations that prohibit manufacturers from making such claims on food labels if the foods contain more than 40 calories per 50 grams. FAC ¶ 101-02. Gustavson alleges that Wrigley sugar free gums exceed this limit, noting as an example that Wrigley Eclipse Winterfrost sugar free gum contains 83 calories per 50 grams. FAC ¶ 102. Although the FAC does *not* allege that Wrigley's labels themselves contain low calorie claims, Gustavson argues that the websites and publications where the "low calorie" claims do appear are also governed by 21 C.F.R. § 101.60, because "websites are indeed

25

part of a products' labeling." Wrigley Opp'n at 14 (citing an August 23, 2010 FDA Warning Letter to Unilever, Inc., stating that the www.lipton.com website, and a website linked from it, both constitute labeling for an iced tea product, because the www.lipton.com website appeared on the product's label).

Gustavson's argument misses the point. While the FDA may well take the position that a manufacturer incorporates statements made on its website by including a reference to that website on a product's label, the FAC does not allege that any of Wrigley's labels contains a reference to any website on which a low calorie claim might be found. *See also* Reply at 12 ("Plaintiff relies exclusively on an FDA letter regarding a Lipton label that directed the consumer to a particular website. But Plaintiff does not allege that the Wrigley labeling directs the consumer to the websites cited by Plaintiff. Thus . . . the Wrigley publications are not part of the Wrigley labeling."). Gustavson offers no support for her theory that the FDA views *all* product-related websites— whether or not they are referenced on labels—as "labeling" subject to regulation.

As Gustavson has failed to explain how low calorie claims made on a website that is not in any way linked to the product labels at issue in this case constitute "labeling" for purposes of federal law, the Court concludes that this claim "attempts to impose additional requirements that are not required by the federal regulations." Wrigley Mot. at 15. Thus, Gustavson's claim is expressly preempted by federal law, and the Court GRANTS Wrigley's Motion to Dismiss this claim. However, because Gustavson may be able muster some support for her website-as-labeling theory, the Court dismisses this claim with leave to amend.

### ii.     Sugar Free Nutrient Content Claims

As explained *supra* Part I.A.2.b, Gustavson contends that Wrigley's use of the "sugar free" label on its hard candies, gum, and breath mints violates federal regulations, because the labels' disclaimers regarding special dietary usefulness are insufficient, FAC ¶¶ 110-111, and because the labels do not use the breath mint serving size required by 21 C.F.R. § 101.9, which is "a prerequisite for making a sugar free claim or a statement of dietary usefulness," FAC ¶ 109. The

26

1    Court addresses the first of these arguments in the section; the serving size claims will be addressed

2    *infra* in Part III.A.3.b.iii.[4]

3         The parties agree that 21 C.F.R. § 101.60(c)(1) requires foods labeled "sugar free" to

4    display one of the following on their labels: (a) a disclaimer that the food is "low calorie" or

5    "reduced calorie," in accordance with federal regulations; (b) a disclaimer that the food "bears a

6    relative claim of special dietary usefulness" in compliance with federal regulations; or (c) a

7    disclaimer that the food is "not a reduced calorie food," "not a low calorie food," or "not for weight

8    control." FAC ¶ 107 (quoting 21 C.F.R. § 101.60(c)(1)). Wrigley argues, however, that its labels

9    do, in fact, comply with the federal requirements for a "relative claim of special dietary

10   usefulness"—here, a claim that the products are "reduced calorie," *see* 21 C.F.R. §§ 101.60(b)(4),

11   101.60(c)(1)(iii)—and thus that it has fully complied with federal law. Wrigley Mot. at 14-15.

12   Federal regulation requires that a relative claim of special dietary usefulness declare, "the identity

13   of the reference food and the percent . . . that the calories differ between the two foods . . . in

14   immediate proximity to the most prominent such claim." 12 C.F.R. § 101.60(b)(4)(ii)(A). The

15   regulation also requires that "[q]uantitative information comparing the level of nutrient per labeled

16   serving size with that of the reference food that it replaces . . . [be] declared adjacent to the most

17   prominent claim or to the nutrition label . . . ." 12 C.F.R. § 101.60(b)(4)(ii)(B). Wrigley contends

18   that the placement of its relative claims of special dietary usefulness on products labeled "sugar

19   free" complies with federal requirements, because "[t]here is no requirement that the relative claim

20   be adjacent to the 'sugar free' claim. Rather, subsection (b)(4)—the section governing reduced

21   calorie claims—requires that the reference food and the percent reduction be declared in immediate

22   proximity to 'the most prominent such claim,' which refers to the 'reduced calorie claim,' *not* the

23   sugar-free claim." Wrigley Mot. at 15 (quoting 21 C.F.R. § 101.60(b)(4)(ii)(A)).

24

---

25   [4] Gustavson also cursorily alleges that Wrigley's labels fail to disclose that the "sugar free"
     products "are sweetened with nutritive and non-nutritive sweeteners or to detail the percentage of

26   the product that nonnutritive components comprise as required by regulation." FAC ¶¶ 110, 112.
     The FAC does not identify which regulations this labeling practice allegedly violates, thus

27   precluding the Court from evaluating whether the claim is expressly preempted. Regardless, as
     discussed *infra* Part III.C, this claim must be dismissed for failure to state a claim under Rule

28   12(b)(6).

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    The problem with Wrigley's argument is that its product labels do not appear to be making

2   a "reduced calorie" claim in the first place. While the back-of-package label on, for instance,

3   Eclipse sugar free gum, Winterfrost, does contain the statement: "35% fewer calories than sugared

4   gum. Calorie content has been reduced from 8 to 5 calories per two piece serving," Ex. A, this

5   appears to be limited to the disclaimer that must accompany a reduced calorie claim pursuant to 21

6   C.F.R. § 101.60(b)(4); the reduced calorie claim itself appears nowhere on the package, nor does it

7   appear on the other sugar free labels identified in the FAC. *See* Exs. A-G. As such, at this stage, the

8   Court is unable to conclude that Wrigley is in compliance with federal labeling regulations

9   concerning relative claims of special dietary usefulness, and Wrigley does not assert that its labels

10   comply with any other prong of 21 C.F.R. § 101.60(c)(1)(iii)(A). Because the Court is currently

11   unpersuaded that Wrigley's labels are in full compliance with federal regulations governing the

12   term "sugar free," the Court finds that this claim is not expressly preempted.

13                          **iii.    Serving Size Claims**

14    Finally, as explained *supra* Part I.A.2.c, Gustavson alleges that the single mint (0.2 gram)

15   serving size Wrigley uses for sugar free breath mints such as Altoids Smalls misstates the "legally

16   mandated serving size" for breath mints by a magnitude of ten. FAC ¶¶ 129-32. According to

17   Gustavson, "21 C.F.R. § 101.9(b)(2) provides that serving size . . . shall be determined from the

18   'Reference Amounts Customarily Consumed Per Eating Occasion' . . . that appear in 21 C.F.R.

19   § 101.12(b) . . . . [and] 21 C.F.R. § 101.12 provides that the serving size for breath mints is 2

20   grams." FAC ¶¶ 129-130. By underrepresenting the serving size, Gustavson claims, Wrigley

21   misleads consumers as to the number of calories in "sugar free" breath mints. *See* FAC ¶ 131.

22    Wrigley contests Gustavson's interpretation of the federally mandated serving size. It

23   contends that federal law "provides that the serving size listed on food labeling is 'an amount

24   customarily consumed and which is . . . appropriate to the food.'" Wrigley Mot. at 16-17 (quoting

25   21 U.S.C. § 343(q)(1)(A)(i)). In the case of small breath mints, Wrigley argues that the

26   "customary" and "appropriate" serving size is one mint, or 0.2 grams. *See id*. In support of this

27   assertion, Wrigley cites FDA analysis indicating that "serving sizes near 2 g are too large for small

28   breath mint products" as well as agency proposals to "require[e] the serving size on the label of all

28

United States District Court
For the Northern District of California

1    breath mints to be declared as one mint." *See id*. at 17 (quoting 62 Fed. Reg. 67,775, 67,776-77

2    (Dec. 30, 1997) and citing 2012 Regulatory Agenda, 77 Fed. Reg. 7946-01 (Feb. 13, 2012)).

3        Although Wrigley asks the Court to "defer to the FDA's judgment in interpreting its own

4    serving size regulations," *id*. at 18, such deference actually supports *Gustavson's* interpretation of

5    the federal regulatory guidelines in this instance. In spite of the FDA's indications of intent to

6    change the standard, the controlling regulation for breath mints continues to set the serving size at

7    two grams. *See* 21 C.F.R. § 101.12(b). Indeed, the very 1997 analysis that Wrigley cites

8    demonstrates that the FDA understands that the *current* serving size for breath mints is two grams.

9    *See* 62 Fed. Reg. at 67,776. While the FDA may well be on the brink of revising the mandatory

10   serving size for small breath mints, it has not yet done so, and so Wrigley's argument that

11   Gustavson seeks to impose a serving size inconsistent with that provided for by the federal

12   regulations fails. Accordingly, the Court declines to find that this claim is subject to express

13   preemption.

14                    **c.        Summary of Express Preemption Findings**

15       To summarize, the Court finds that Gustavson's claims regarding: (1) calorie-related

16   statements on Mars chocolate products; (2) the standard of identity for milk chocolate; and (3) low

17   calorie claims about Wrigley sugar free gum are subject to express preemption. The Court

18   therefore GRANTS Defendants' Motions to Dismiss these claims, but grants Gustavson leave to

19   amend. Gustavson's remaining claims regarding: (1) flavanols; (2) PGPR; (3) "sugar free"

20   statements; and (4) serving size are not subject to express preemption, and Defendants' Motions to

21   Dismiss on this basis is DENIED.[5]

22                    **4.        Primary Jurisdiction**

23       Defendants argue that, even if the Court finds that Gustavson's claims are not preempted,

24   the Court should dismiss the case under the doctrine of primary jurisdiction. The primary

---

[5] Elsewhere in their briefs, Defendants argue that Gustavson's claims are barred by the UCL's "safe harbor" for conduct authorized by other laws. *See* Wrigley Mot. at 21 (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999)). The Court need not address this argument in any depth: to the extent Defendants' conduct is permitted under federal law, it is expressly preempted; to the extent it is not, there is no basis for shielding that conduct under a safe harbor. Defendants' Motions to Dismiss on this basis is accordingly DENIED.

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1  jurisdiction doctrine "allows courts to stay proceedings or to dismiss a complaint without prejudice

2  pending the resolution of an issue within the special competence of an administrative agency."

3  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine applies when: "(1)

4  [there is a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of

5  an administrative body having regulatory authority (3) pursuant to a statute that subjects an

6  industry or activity to a comprehensive regulatory authority that (4) requires expertise or

7  uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775,

8  781 (9th Cir. 2002). However, the doctrine of primary jurisdiction "does not require that all claims

9  within an agency's purview be decided by the agency. Nor is it intended to secure expert advice for

10  the courts from regulatory agencies every time a court is presented with an issue conceivably

11  within the agency's ambit." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172

12  (9th Cir. 2002) (internal quotation marks omitted). Rather, "[p]rimary jurisdiction is properly

13  invoked when a claim is cognizable in federal court but requires resolution of an issue of first

14  impression, or of a particularly complicated issue that Congress has committed to a regulatory

15  agency." *Id.*

16          Defendants urge that all Gustavson's claims should be dismissed on the basis of primary

17  jurisdiction, but only Wrigley's argument with regard to Gustavson's breath mint serving size

18  claim merits extended discussion. Wrigley asserts that the FDA is in the process of changing the

19  regulations on breath mint serving size, pointing out that this is on the FDA's 2013 regulatory

20  agenda. *See* FDA, *Food Labeling: Serving Sizes; Reference Amount and Serving Size Declaration*

21  *for Hard Candies and Breath Mints*, *available at* http://federalregister.gov/r/0910-AG82 (accessed

22  Sept. 13, 2013). Wrigley further notes that the FDA has been expressing dissatisfaction with the

23  current serving size rules as they apply to small breath mints for many years, which suggests that

24  Wrigley breath mints are unlikely to be out of compliance with the FDA's serving size regulations

25  under an updated rule. *See* Wrigley Mot. at 21.

26          Though the Court views this as a close question, it agrees with Wrigley that Gustavson's

27  serving size claims are appropriately dismissed under the doctrine of primary jurisdiction. While

28  this case is distinguishable from other recent cases that have dismissed food misbranding claims

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   based on primary jurisdiction, in that the FDA has controlling regulations on this issue already in

2   place, *compare Hood v. Wholesoy & Co, Modesto Wholesoy Co. LLC*, 2013 WL 3553979, at *5-6

3   (N.D. Cal. July 12, 2013), *and Astiana v. Hain Celestial Group*, 905 F. Supp. 2d 1013, 1016 (N.D.

4   Cal. 2012) (no FDA guidance concerning the appropriate use of the term "natural" on cosmetics

5   labels), in light of the substantial possibility that the FDA may soon change its breath mint serving

6   requirements, the Court finds it more prudent to step back and allow the FDA regulatory process to

7   play out. *Accord Ivie I*, 2013 WL 685372, at *7 ("Because the FDA is currently in the process of

8   amending its serving size regulations with respect to small breath mints, which includes those at

9   issue here, the court declines to usurp the FDA's expertise in this area.").

10      As to Gustavson's other remaining claims, however, the Court declines to dismiss based on

11  primary jurisdiction. While this case does involve issues within the jurisdiction of the FDA, the

12  Ninth Circuit has made clear that only those claims raising issues of first impression or particular

13  complexity are appropriately dismissed or stayed based on primary jurisdiction. *See Brown*, 277

14  F.3d at 1172. Based on the information available at this stage, however, the issues in this case are

15  neither novel nor especially complex. As should be clear from the Court's discussion of express

16  preemption, the FDA has issued extensive regulations governing Gustavson's claims. *See supra*

17  Part III.A.3.

18      Likewise, Gustavson's claims do not raise highly technical issues uniquely within the

19  FDA's expertise. As with so many of the other food misbranding cases filed recently within this

20  district, Gustavson's case is "far less about science than it is about whether a label is misleading."

21  *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012). "'[E]very day courts

22  decide whether conduct is misleading,'" and the "'reasonable-consumer determination and other

23  issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.'" *Id.* at 899

24  (quoting *Lockwood*, 597 F. Supp. 2d at 1035, and *Delacruz*, 2012 WL 2563857, at *10); *see also*

25  *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1124 (N.D. Cal. 2010) (stating that

26  "plaintiffs advance a relatively straightforward claim: they assert that defendant has violated FDA

27

28

31

regulations and marketed a product that could mislead a reasonable consumer. . . . [T]his is a question courts are well-equipped to handle").[6]

In sum, the Court GRANTS Wrigley's Motion to Dismiss Gustavson's breath mint serving size claims on the basis of primary jurisdiction without prejudice, but DENIES Defendants' Motions to Dismiss Gustavson's other remaining claims on this basis.

### B.    Standing

Defendants also argue that Gustavson lacks standing—under Article III as well under the UCL, FAL, and CLRA—because she has not pleaded that she suffered any injury as a result of Defendants' alleged mislabeling practices. Mars Mot. at 9; Wrigley Mot. at 9 (each citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Specifically, Defendants contend that Gustavson fails to plead either a cognizable legal injury or plausible reliance. *See* Mars Mot. at 9-10; Wrigley Mot. at 9-10. The Court disagrees.

To adequately demonstrate Article III standing at the motion to dismiss stage, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that is fairly traceable to the challenged action of the defendant; and (3) is redressable by a favorable ruling from the Court. *See Monsanto Co. v. Geertson Seed Farms*, --- U.S. ---, 130 S. Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000) (same). Meanwhile under California's UCL and FAL, a private person has standing only if she "has suffered injury in fact *and* has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). Similarly, to bring a case under the CLRA, "[a] plaintiff . . . must not only be exposed to an unlawful practice but also have suffered some kind of

---

[6] Other courts in this district have similarly rejected arguments based on primary jurisdiction in the food labeling context, at least so long as the FDA has made its position on the labels at issue reasonably clear and is not actively engaged in revising the applicable regulations or policy. *See, e.g., Trazo v. Nestlé USA, Inc.*, No. 12-2272, 2013 WL 4083218, at *6 n.55 (N.D. Cal. Aug. 9, 2013); *Ivie v. Kraft Foods Global, Inc.* (*Ivie II*), No. 12-2554, 2013 WL 3296616, at *7-8 (June 28, 2013); *Samet*, 2013 WL 3124647, at *7; *Janney v. Mills*, No. 12-3919, 2013 WL 1962360, at *6-7 (N.D. Cal. May 10, 2013) (same); *Ivie I*, 2013 WL 685372, at *5-7 (declining to apply primary jurisdiction, except as to one claim for which the FDA was in the process of changing the applicable regulation).

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    damage." *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) (internal quotation

2    marks omitted).

3          Defendants argue that Gustavson cannot demonstrate standing, because her claimed injury

4    is that she purchased products that were "legally worthless" due to Defendants' violations of

5    federal labeling regulations. *See, e.g.*, Wrigley Mot. at 9 (citing FAC ¶¶ 1, 83). Defendants argue

6    that such regulatory violations alone do not amount to actual injury, let alone economic injury, as

7    required by the Constitution and California law. *Id.* Moreover, echoing the arguments they make in

8    relation to their contention that Gustavson fails to state a claim for purposes of Rules 8 and 9(b),

9    *see* Discussion *infra* Part III.C, Defendants assert that it is simply not plausible that Gustavson was

10   deceived into purchasing their products as a result of any misstatements on the labels. *See id.* at 9-

11   10. According to Defendants, the alleged regulatory violations are simply too "arcane" to render

12   the labels misleading to a reasonable consumer. *See id.*

13         At this stage in the litigation, Gustavson's allegations are sufficient to demonstrate both

14   constitutional and statutory standing. The FAC specifically alleges that Gustavson "would have

15   foregone purchasing Defendant's [*sic*] products and bought other products readily available at a

16   lower price" had she known they were misbranded. FAC ¶¶ 214-215; *see also* FAC ¶ 216 (stating

17   that she would not have purchased the products "had she known the truth about them"). By

18   alleging that she spent money that she would not have spent were it not for Defendants'

19   misrepresentations, Gustavson has alleged "a quintessential injury-in-fact," for Article III purposes.

20   *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011); *see also Sierra Club v. Morton,* 405

21   U.S. 727, 733 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay

22   the basis for standing."). Similarly, the loss of money is clearly an "economic injury" for purposes

23   of the UCL and FAL. *See Kwikset*, 51 Cal. 4th at 322; *see also, e.g., Bruton*, 2013 WL 4833413, at

24   *13-15 (rejecting a near identical standing argument in another food misbranding case; *Brazil*,

25   2013 WL 1209955, at *11-13 (same).

26         As regards reliance, Gustavson expressly states that she "read the labels on Defendants'

27   products . . . before purchasing them" and that she "based and justified the decision to purchase

28   Defendants' products in substantial part on Defendants' package labeling." FAC ¶¶ 214-215. While

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    Defendants' dispute the plausibility of these statements, arguing that no reasonable consumer

2    would attach any significance to these alleged labeling violations, the Court recognizes that

3    whether a practice is "deceptive, fraudulent, or unfair" is generally a question of fact that is not

4    appropriate for resolution on the pleadings. *See Williams v. Gerber Products Co.*, 552 F.3d 934,

5    938-39 (9th Cir. 2008) (citation omitted); *see also Khasin v. Hershey Co.*, No. 12-1862, 2012 WL

6    5471153, at *7 (N.D. Cal. June 28, 2012) (rejecting a similar plausibility argument because "the

7    issues Defendant raise[s] ultimately involve questions of fact as to whether Plaintiff was or was not

8    deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6)

9    motion"). Accordingly, the Court finds that Gustavson had adequately alleged both injury and

10   reliance for purposes of surviving a motion to dismiss, and DENIES Defendants' Motions to

11   Dismiss for lack of standing.

12       **C.    Failure to State a Claim**

13       Defendants allege that, "regardless of whether [their products'] labeling satisfies [the

14   FDA's] highly technical regulations, the [FAC] fails to state a claim under the UCL, FAL, and

15   CLRA," because the labels are not likely to deceive a reasonable consumer. Wrigley Mot. at 5 *see*

16   *also* Mars Mot. at 3. Defendants further argue that Gustavson's allegations regarding Defendants'

17   supposedly unlawful "health" claims are not pleaded with sufficient particularity for purposes of

18   Federal Rule of Civil Procedure 9(b). *See* Mars Mot. at 10; Wrigley Mot. at 10. Finally, Defendants

19   contend that Gustavson cannot state viable claims for restitution or violations of the Song-Beverly

20   and Magnuson-Moss Warranty Acts. *See* Mars Mot. at 24; Wrigley Mot. at 22-244. While the

21   Court finds that Gustavson's allegations that a reasonable consumer would be misled by

22   Defendants' alleged mislabeling are sufficient to survive a 12(b)(6) motion to dismiss, it agrees

23   with Defendants that Gustavson's unlawful "health" claims lack sufficient particularity and also

24   that Gustavson cannot bring claims for restitution or violations of the Song-Beverly Consumer

25   Warranty Act and the Magnuson-Moss Warranty Act.

26           **1.    Reasonable Consumer**

27       The standard for establishing a violation of California's UCL, FAL, and CLRA is the

28   "reasonable consumer" test, which requires a plaintiff to "show that members of the public are

34

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1     likely to be deceived" by the business practice or advertising at issue. *Williams*, 552 F.3d at 938.

2     Here, Defendants devote considerable effort to arguing that Gustavson's claims are facially

3     implausible because no reasonable customer is likely to be deceived by Defendants' alleged

4     misstatements, which Defendants argue are, at most, *de minimus* technical regulatory violations.

5     *See* Mars Mot. at 3-4; Wrigley Mot. at 5-6. The Court is not persuaded.

6            Gustavson may or may not be able to prove that a reasonable consumer would have been

7     misled by Defendants' alleged mislabeling practices if and when this case ever makes it to trial, but

8     neither Rule 8(a), nor the Supreme Court's decisions in *Twombly* and *Iqbal* require a plaintiff to

9     prove her case the moment she files her complaint. "The plausibility standard is not akin to a

10    probability requirement," *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted), and this Court

11    is not convinced that Gustavson's allegations about what would mislead a reasonable consumer are

12    so improbable as to be implausible. While Defendants seem to believe that what is or is not

13    misleading to a reasonable consumer is a matter of self-evident common sense, that question is

14    actually all but impossible to answer in the abstract. Accordingly, courts recognize that whether a

15    practice is "deceptive, fraudulent, or unfair" is generally a question of fact that is not appropriate

16    for resolution on the pleadings. *See Williams*, 552 F.3d at 938-40; *see Colucci v. ZonePerfect*

17    *Nutrition Co.*, No. 12-2907, 2012 WL 6737800, at *8 (N.D. Cal. Dec. 28, 2012); *see also Khasin*,

18    2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012). As stated by Judge Conti in *Collucci*, "the

19    Court is not inclined to assume the role of fact-finder in the guise of determining plausibility."

20    2012 WL 6737800, at *8. The Court therefore DENIES Defendants' Motions to Dismiss on this

21    basis.[7]

22    ─────────────────

23    [7] Gustavson is required to satisfy rule 9(b), because her second, third, fourth, fifth, and sixth causes
      of action all sound in fraud. *See Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule
      9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").

24    Because Gustavson has alleged what a reasonable consumer may find to be false and misleading
      about the Defendants' flavanol, PGPR, and sugar free claims, *see* FAC ¶¶ 70-83, 106-128, 138-

25    155, the Court finds that these claims satisfy Rule 9(b)'s heightened pleading requirement. *See*
      *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (holding that, in addition to the alleged

26    time, place, and content of an alleged misrepresentation, a "plaintiff must set forth what is false or
      misleading about a statement, and why it is false. In other words, [a] plaintiff must set forth an

27    explanation as to why the statement or omission complained of was false or misleading.") (internal
      quotation marks omitted).

28

35

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

### 2.      Unlawful "Health" Claims

Defendants also argue that Gustavson's allegations that Defendants have engaged in a "widespread practice of making unlawful and unauthorized health claims" on their websites, FAC ¶ 165, are too vague to state a claim for purposes of Rule 8(a), let alone to meet the heightened pleading standards required under Federal Rule of Civil Procedure 9(b). Mars Mot. at 10; Wrigley Mot. at 10. Defendants point out that the FAC fails to identify the websites from which it allegedly quotes or to explain the circumstances under which Gustavson allegedly viewed these websites and relied on them in purchasing Defendants' products. *See* Mars Mot. at 10-11; Wrigley Mot. at 10-11. Indeed, despite a grave pronouncement that Defendants' websites are peddling "cure all elixirs" "like the snake oil salesmen of yore," *id.* ¶ 165, Gustavson fails to identify *a single website* upon which these claims allegedly appear. These vague allegations satisfy neither Rule 8(a) nor Rule 9(b). Accordingly, the Court GRANTS Defendants' Motions to Dismiss with regard to the unlawful health claims with leave to amend.

### 3.      Unjust Enrichment

Defendants argue that Gustavson's claim for restitution based on unjust enrichment/quasi contract must be dismissed because California does not recognize "unjust enrichment" as a separate cause of action. Wrigley Mot. at 21. Despite some inconsistency in the law, several recent decisions by the California Court of Appeals have held that "[u]njust enrichment is not a cause of action, just a restitution claim." *See, e.g.*, *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011); *accord Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010). In light of this recent authority, this Court has previously determined that there is no distinct cause of action for unjust enrichment under California law. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 814 (N.D. Cal. 2011).[8] Accordingly, the Court

---

[8] Other federal courts have similarly determined that there is no independent cause of action for unjust enrichment. *See, e.g.*, *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010); *LaCourt v. Specific Media, Inc.*, No. 10-1256, 2011 WL 1661532, at *8 (C.D. Cal. Apr. 28, 2011); *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091-92 (C.D. Cal. 2010).

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

GRANTS Defendants' Motions to Dismiss Gustavson's claim for Restitution Based on Unjust Enrichment/Quasi Contract with prejudice.

### 4.   Song-Beverly Consumer Warranty Act and Magnuson-Moss Warranty Act

At a hearing on the Motions to Dismiss held on May 2, 2013, Gustavson agreed to concede her claims under the Song-Beverly Consumer Warranty Act, and the Magnuson-Moss Warranty Act. *See* ECF No. 60 at 11:18-25. Accordingly, the Court GRANTS Defendants' Motions to Dismiss these claims with prejudice. The Court notes that even were it not for Gustavson's concessions, it would dismiss these claims for the reasons stated in the Court's prior food misbranding orders. *See Bruton*, 2013 WL 4833413, at *21-22; *Brazil*, 2013 WL 1209955, at *16-17.[9]

### D.   Allegations Against Mars Based On Wrigley's Products And Allegations Against Wrigley Based On Mars Products

Finally, Defendants ask the Court to dismiss claims against Mars based on statements appearing only on Wrigley products and claims against Wrigley based on statements appearing only on Mars products. Mars Mot. at 24; Wrigley Mot. at 24-25. Defendants contend that the FAC fails to allege that Wrigley is involved in producing or selling Mars products or vice versa, *see* Mars Mot. at 24; Wrigley Mot. at 24-25, and that to the extent Gustavson attempts to hold all Defendants liable for one another's conduct through allegations that Defendants are engaged in a common scheme, such allegations are too vague and conclusory to survive a motion to dismiss, *see* Wrigley Mot. at 24 (citing FAC ¶¶ 34-39). Finally, Defendants argue that the parent-subsidiary relationship between Mars, Inc. and the Wrigley Defendants is an insufficient basis, standing alone, for holding Mars, Inc. liable for Wrigley's conduct. *See* Reply at 30. The Court agrees with Defendants on all points.

The FAC does not specify how, if at all, Mars has any role in Wrigley's production and marketing process or vice versa. Accordingly, Gustavson's common scheme allegations provide the sole basis for linking Mars to Wrigley products and Wrigley to Mars products, and these

---

[9] Despite the fact that the Court has dismissed Gustavson's only federal claim, the Court finds that it retains jurisdiction due to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

allegations are wholly generic and conclusory. *See, e.g.*, FAC ¶ 34 ("Defendants, have pursued a common plan, design, and course of conduct, acted in concert with, aided and abetted, and otherwise conspired with each other, in furtherance of their common design or scheme to deceive and injure Plaintiff and Class members as described herein."); ¶ 35 ("At all times there has been a unity of interests between Defendants to carry out the unlawful scheme described herein."); ¶ 37 ("Defendants were juridically linked through contracts governing their management and control, through which the scheme described herein has been implemented."). They are precisely the sort of "formulaic recitation[s] of the elements of a cause of action," that the Supreme Court has warned are insufficient. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Nor is the mere fact of a parent-subsidiary relationship between Mars, Inc. and Wrigley (which is all that the FAC alleges, FAC ¶ 2) sufficient to show that Mars, Inc. controls Wrigley such that it may be held accountable for Wrigley's conduct. While various theories—including the alter ego doctrine and principal-agent relationships—may provide a basis for piercing the corporate veil that separates a parent from its formally distinct subsidiary, *see, e.g.*, *Rodriguez v. J.P. Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1299-1300 (S.D. Cal. 2011), the FAC contains no allegations that would justify piercing the corporate veil in this case. Accordingly, the Court GRANTS Defendants' Motions to Dismiss all claims against Mars that relate to Wrigley products and all claims against Wrigley that relate to Mars products without prejudice. Further, should Gustavson elect to file an amended complaint, the Court directs Gustavson to file separate complaints against each set of Defendants (unless, of course, Gustavson can make sufficient particularized, plausible allegations that would justify holding all Defendants liable for one another's conduct).

## IV.    CONCLUSION

For the foregoing reasons, the Court DISMISSES without prejudice Gustavson's UCL, FAL, and CLRA claims (causes of action one through six) based on: (1) calorie-related statements appearing on Mars chocolate products; (2) the standard of identity for milk chocolate; (3) low calorie claims about Wrigley sugar free gum; (4) the serving size of Wrigley breath mints; and (5) "health" claims appearing on Defendants' websites. In addition, the Court DISMISSES without prejudice Gustavson's UCL, FAL, and CLRA claims against Mars based on sugar free statements

38

United States District Court
For the Northern District of California

1    appearing on Wrigley products, as well as Gustavson's UCL, FAL, and CLRA claims against

2    Wrigley based on the presence of flavanol statements and the use of the acronym "PGPR" on Mars

3    products. The Court DISMISSES with prejudice Gustavson's seventh, eighth and ninth causes of

4    action based on Unjust Enrichment, the Song-Beverly Act, and the Manguson-Moss Warranty Act.

5           Should Gustavson elect to file a Second Amended Complaint against each set of

6    Defendants curing the deficiencies discussed herein, she shall do so within 21 days of the date of

7    this Order. Failure to meet the 21-day deadline to file an amended complaint or failure to cure the

8    deficiencies identified in this Order will result in a dismissal with prejudice. Gustavson may not

9    add new causes of action or parties without leave of the Court or stipulation of the parties pursuant

10   to Federal Rule of Civil Procedure 15.

11   **IT IS SO ORDERED.**

12

13   Dated: September 16, 2013                                    _____

14                                                               LUCY H. KOH
                                                                 United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

39

Case No.: 12-CV-01861-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS